UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | : | Case No. 1:16-cv-465 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| RONALD JOSEPH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANT
RONALD JOSEPH'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (Doc. 44)**

This civil case is before the Court on the motion of Defendant Ronald Joseph for partial summary judgment (Doc. 44) and the parties' responsive memoranda.[1]

## I. INTRODUCTION

**A. Background.**

This is a family dispute regarding Columbia Oldsmobile Co. ("Columbia"), an Ohio close corporation established to own auto dealerships and acquire and hold income producing real estate. (Amended Complaint at ¶ 48).[2]

---

[1] Plaintiff Marie Joseph and all five Defendants share the same last name. As is common in family disputes, to avoid confusion, the Court will refer to the parties by their first name. The Court will refer to Defendant Ronald Joseph as "Ron, Sr." and Defendants George R. Joseph, Gregory C. Joseph, Richard S. Joseph, and Ronald Joseph, Jr., collectively, as "Ron's Sons."

[2] On April 12, 2016, Marie filed the Complaint, which consisted of 88 paragraphs. (Doc. 1). On January 10, 2017, Marie filed a First Amendment to her complaint, which starts at paragraph 89, where the Complaint concluded. (Doc. 27). Because these documents are intended to be read together, the Court refers to the allegations of the Complaint, and the First Amendment, collectively as the "Amended Complaint."

In 1938, George J. Joseph started Columbia. (Amended Complaint at ¶ 9). All seven of George J. Joseph's children, including Marie and Ron, Sr., are shareholders of Columbia. (*Id.*) Since George J. Joseph's death, Ron, Sr. has served as the Chief Executive Officer of Columbia. (*Id.*)

Marie alleges that, after George J. Joseph's death, Najla Joseph ("Najla") — George J. Joseph's wife, and the mother of Marie and Ron, Sr .— intended to disinherit Ron, Sr. from her interest in Columbia. (Amended Complaint at ¶ 17). Marie alleges this caused Ron, Sr. to strategically operate Columbia in a way that created a financial crisis for Najla's future estate and eventually allowed Ron, Sr., to obtain Najla's shares. (*Id.* at ¶ 19). Marie alleges that Ron, Sr. wrongfully gained, and manipulated, control over Columbia in order to acquire personal benefits not otherwise available to Marie as a minority shareholder. (*Id.* at ¶ 43).

The Amended Complaint asserts that Ron, Sr. and "Ron's Sons" (George R. Joseph, Gregory C. Joseph, Richard S. Joseph, and Ronald Joseph, Jr.) engaged in an intentional scheme to enrich themselves at Marie's expense. The Amended Complaint alleges that Ron, Sr. and Ron's Sons implemented transactions to channel assets, income streams, and things of value from Columbia to other entities owned or controlled by Ron, Sr. and/or Ron's Sons. The Amended Complaint also alleges that Ron, Sr. and Ron's Sons misappropriated corporate opportunities for themselves that should have belonged to Columbia. The Amended Complaint claims that Ron, Sr. hid this activity from Marie by fraudulently telling her that all family business assets were owned by Columbia. (*See* Amended Complaint, ¶¶ 124, 283).

Premised on this conduct, the Amended Complaint asserts claims of breach of fiduciary duties (Count One), access to corporate records (Count Two), accounting (Count Three), fraudulent and concealment (Count Four), and fraudulent breaches of fiduciary duties (Count Five) against Ron, Sr.

On July 6, 2017 — more than six months prior to the dispositive motion deadline, but after this case had been pending for more than a year — Ron. Sr. filed a motion for partial summary judgment (Doc. 44).

**B. Undisputed Facts.**

Marie acquired her Columbia shares as gifts from her parents. (Doc. 44-1 at ¶ 1).

In the mid-1980's, Marie initiated proceedings to obtain information and documents from Columbia. In June 1985, she signed a letter indicating that she was "satisfied" with the information that had been provided to her. (Doc. 44-1 at ¶ 2).[3]

Later that decade, Marie, her sisters, and Najla disputed Columbia's sale of real estate to Camargo Cadillac. Marie testified that she objected at the time because "Columbia bought [the property] and it should have stayed under Columbia." (Doc. 44-1 at ¶ 3).

In 1988, Marie's sister Shirley questioned some of the circumstances surrounding the Camargo Sale. (Doc. 44-1 at ¶ 4). An attorney for Columbia responded, copying Marie, advising her to "consult your own legal counsel for an explanation of the various options and remedies which you may desire to pursue." (*Id.*)

---

[3] In response to Paragraphs 2-5, 7, 10, 14-15, 17, 19 of Ron, Sr.'s Statement of Undisputed Facts (Doc. 44-1), Marie admits the factual allegations but denies any implication that the facts asserted therein put her on notice of her claims in this lawsuit.

3

At one point, Marie also owned separate shares in Joseph Chevrolet. (Doc. 44-1 at ¶ 5). Marie eventually sold those shares. (*Id.*)

In and around 2000, an attorney for Marie's mother Najla (Gerald "Tory" Weigle of Dinsmore & Shohl) made various inquiries about Columbia. (Doc. 44-1 at ¶ 7). In a September 2000 letter, he explained that Ron Joseph had started a number of car dealerships in which his siblings did not have any ownership interest:

> Over the years Ronnie Joseph has started a considerable number of other car dealerships. They have names which incorporate the Joseph name, such as Joseph Toyota, Joseph Buic, etc., *but Najla and her other children do not own any interest in them*.

(*Id.*).

Before representing Najla, Mr. Weigle had originally represented Marie, who testified in a deposition that she and her sisters "hired [attorney] Tori [Weigle] to find out what we owned." (Doc. 44-1 at ¶ 8).

In 2008, Marie filed a lawsuit to be appointed the legal guardian of her mother Najla and her brother Michael (the "Guardianship Litigation"). (Doc. 44-1 at ¶ 9). Marie testified that this lawsuit was very important to her. (*Id.*)

During the Guardianship Litigation, Marie sought discovery about a number of business entities owned by Ron. (Doc. 44-1 at ¶ 10). In a filing captioned "Motion to Set Aside Magistrate's Order," Marie's attorney referenced an argument made by Ron's counsel that Marie had "sought all the documents and records concerning more than a dozen privately held business entities only three of which the wards have an interest in." (*Id.*)

4

On May 13, 2009, Ron testified under oath at his deposition in connection with the Guardianship Litigation. (Doc. 44-1 at ¶ 12). **Marie was present during Ron's deposition**. (*Id.* at ¶ 13). Ron testified that a number of dealerships, including some that are the subject of this lawsuit including, *inter alia*, the Audi Connection and Airport Toyota, were separate from Columbia, which was an independent entity that primarily sold Acura and Hyundai automobiles:

> Q. Okay. Could you describe the automobile business as it exists today? I mean-
>
> A. I don't think anyone can.
>
> Q. –in your involvement. What company do you work for?
>
> A. I believe I work for all the companies.
>
> Q. Well, what are they?
>
> A. Starting with Columbia, Camargo, Joseph Chevrolet, Toyota Cincinnati, Hummer Cincinnati, Smart Car Cincinnati, Porsche Cincinnati, Audi Connection, Joseph Olds—Joseph Cadillac, Florence, Kentucky, Airport Toyota. I could have missed something, but that's basically true.
>
> Q. **Now, you've run through a number of companies there. Are they independent entities?**
>
> A. **Yes.**
>
> Q. Columbia, is that an automobile company?
>
> A. Yes.
>
> Q. What automobiles do you sell from that company?
>
> A. Primarily Acura and Hyundai.

(Doc. 44-3 at 46; Doc. 44-1 at ¶ 15) (emphasis added).

Later, Ron confirmed that the only two dealerships Columbia owned were Columbia Acura and Columbia Hyundai:

> Q. What are these various entities? Are they separate entities?

5

A. Yes.

Q. They are separate. And they are owned by whom?

A. Columbia Acura, Columbia Hyundai, I'll repeat this again, are owned by Columbia, in which mom has a substantial interest and all the siblings have a certain amount of stock. All right.

Q. That's Hyundai?

A. And Acura.

Q. Yeah. Go ahead.

A. All right. **All other companies are owned by me, primarily.**

Q. How come you didn't let the siblings have a little piece in this?

A. Because of what's going on today.

(Doc. 46-3 at 48; Doc. 44-1 at ¶ 17) (emphasis added).

In discovery, Marie was asked to identify the "sweeping statements" and "misrepresentations" that she alleges Ron, Sr. made in Paragraphs 124 and 283 of the Amended Complaint. (Doc. 44-3 at 4, 96). Marie's answers identify the following statements:

1. In or around the last week of January, 2007, the windshield on Plaintiff's demo car (a 2007 Chevy Trailblazer) was damaged. Plaintiff intended to go to Joseph Chevrolet to get the windshield repaired. However, Defendant Ronald Joseph instructed Plaintiff to take it instead to Columbia Chevrolet. In so instructing, Defendant Ronald Joseph told Plaintiff that "all dealerships are the same" and that she should take it to the Columbia Chevrolet store. Defendant Ronal Joseph later deducted the cost of the windshield repair—which was performed at Columbia Chevrolet—from a check that Plaintiff received from Columbia Development Corporation.

2. In or around June, 2001, Defendant Ronald Joseph visited Plaintiff at her home. During Defendant Ronald Joseph's visit, Plaintiff asked Defendant Ronald Joseph how Columbia was doing. In response, Defendant Ronald Joseph indicated that everything was doing great; that all the dealerships were part of the family business that he was overseeing and that she did not need to worry about it; that they were all doing well; that Plaintiff should not worry about money; and that

6

> Plaintiff should simply continue to take care of Najla Joseph instead of worrying about Columbia.

3. In or around February 1994, Plaintiff and Defendant Ronald Joseph were driving around Hyde Park together looking for a house for Plaintiff. When Plaintiff asked Defendant how the Joseph Auto dealerships were doing, he assured her that he was running the dealerships as the head of the family, that things were going well, and that she should not worry about it.

4. In or around 1988, written materials were published and disseminated on behalf of Columbia Development Corporation, with Defendant Ronald Joseph's picture and statement, in which it was asserted that certain dealerships, including Camargo Cadillac, Columbia Oldsmobile, Joseph Chevrolet, Joseph Toyota of Dayton, and Joseph Buick—GMC (then known as "Hocks Buick") were being operated under Columbia Development Corporation.

5. In or around the first half of 1985, Plaintiff asked Defendant Ronald Joseph for additional information about Columbia. Defendant Ronald Joseph assured Plaintiff that the family businesses were doing well and that he had things under control. On or around June 18, 1985, Defendant Ronald Joseph sent Plaintiff a letter further responding to Plaintiff's requests for information regarding Columbia. The letter requested that Plaintiff acknowledge that she was satisfied with the information she had received and that she would terminate all activities in which she requested access to information.

(Doc. 44-3 at 69-71).

## II. STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

7

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

**A. The statute of limitations bars portions of Marie's claims for breach of fiduciary duties and accounting.**

Ron, Sr. argues that the statute of limitations bars Marie's claim for breach of fiduciary duties (Count One) and corresponding demand for an accounting (Count Three). (Doc. 44 at 10-12). The Court agrees.

Claims for breach of fiduciary duty are governed by the four year statute of limitations in Ohio Revised Code § 2305.09(D). *See Antioch Co. Litig. Trust v. Morgan*, Case No. 3:10-cv-156, 2013 U.S. Dist. LEXIS 46777, at * 6 (S.D. Ohio Apr. 1, 2013). A claim for breach of fiduciary duty accrues when the act or omission constituting the breach actually occurs, rather than when the breach is discovered. *Union Savings Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App. 3d 540, 2010-Ohio-6396, ¶ 28, 946 N.E. 2d 835 (10th Dist.).

Here, Marie filed the original Complaint on April 12, 2016. (Doc. 1). Accordingly, to the extent Marie's claim for breach of fiduciary duties (Count One) is premised on acts or omissions prior to April 12, 2012, it is barred by the statute of

limitations. Ohio Rev. Code § 2305.09(D).

Similarly, Marie's claim for an accounting is time-barred prior to April 12, 2012. An accounting is a "species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another." *Skurka Aero. v. Eaton Aero, LLC*, No. 1:08-cv-1565, 2011 U.S. Dist. LEXIS 32132, at * 9 (N.D. Ohio, Mar. 25, 2011) (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)). An accounting is not an independent cause of action; rather, a plaintiff must provide a legal basis for an accounting. *Id*. (citation omitted); *see also Liquidating Tr. of the Amcast Unsecured Creditor Liquidating Trust v. Baker*, 365 B.R. 91, 123 (Bankr. S.D. Ohio 2007) ("requests for accounting and imposition of a constructive trust do not describe independent causes of action and are properly dismissed.").

Here, Count Three requests an accounting as a remedy for Ron, Sr.'s alleged breach of fiduciary duties. (Amended Complaint at ¶¶ 84-88). Because the claim that provides the legal basis for the accounting is time-barred prior to April 12, 2012, and because there can be no accounting absent an independent legal basis, Marie's claim for an accounting (Count Three) is also time-barred prior to April 12, 2012.

Accordingly, Ron, Sr.'s motion for summary judgment (Doc. 44) is **GRANTED** on Marie's claims for breach of fiduciary duties and accounting to the extent those claims are premised on acts or omissions prior to April 12, 2012.

### B. Count Four, for fraud, and Count Five, for fraudulent breach of fiduciary duties, are barred in their entirety by the statute of limitations.

Ron, Sr. argues that Marie's claims for fraud (Count Four) and fraudulent breaches of fiduciary duties (Count Five) are barred by the statute of limitations. (Doc. 44 at 12-17). The Court agrees.

In Ohio, claims for fraud are subject to the discovery rule codified at Ohio Revised Code § 2305.09. Similarly, while the discovery rule does not typically apply to claims for breaches of fiduciary duty, Courts have applied the discovery rule for claims of "fraudulent" breach, when the plaintiff sets forth "direct and specific" allegations demonstrating fraud. *See Bell v. Bell*, No. 96-3655, 1997 U.S. App. LEXIS 34647, at * 22 (6th Cir. Dec. 3, 1997); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 738 (S.D. Ohio 2009) ("in the case of a fraudulent breach of fiduciary duty, the discovery rule applies").

The Supreme Court of Ohio has interpreted the discovery rule to mean that claims for fraud accrue when the fraud is discovered or when, in the exercise of reasonable diligence, the fraud should have been discovered. *Cundall v. U.S. Bank*, 122 Ohio St. 3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 29 When determining whether fraud "should have been discovered," the relevant inquiry is whether facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry. *Id.*

This standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the **possibility** of fraud. *Id.* (citation omitted).

Constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. *Id.* (citation omitted). That is because, under Ohio law, information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. *Craggett v. Adell Ins. Agency*, 92 Ohio App. 3d 443, 454, 635 N.E.2d 1326 (8th Dist. 1993) ("information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.").

Here, the Amended Complaint asserts two instances of fraud, both of which are premised on Ron, Sr.'s alleged misrepresentation that all family business assets were in Columbia:

> 124. When Marie asked Ron for more particular information about what was going on at Columbia, Ron generally responded with sweeping statements indicating in substance that the family business assets were still in Columbia, that Columbia was now simply using the name Joseph Auto Group and that Ron was taking care of everything.
>
> ….
>
> 283. Instead, Ron made substantial misrepresentations to Marie about material facts relating to her minority shareholder interest in Columbia, including but not limited to responses to Marie's inquiries in which Ron communicated that the family business assets were still in Columbia, that Columbia was now simply using the name Joseph Auto Group and that Ron was taking care of everything.

(Amended Complaint at ¶¶ 124, 283).

Marie's discovery responses confirm that Ron, Sr. made statements to this effect on at least five occasions from 1985 to 2007. (*See* Doc. 44-3 at 69-71).

11

Later, **on May 13, 2009, Ron, Sr. testified under oath, <u>and in Marie's presence</u>**, that "Columbia" only included Columbia Hyundai and Columbia Acura, and all other businesses were owned by Ron, Sr., primarily. At that point, Marie possessed facts that, at an absolute minimum, were sufficient to alert her to the *possibility* that Ron, Sr.'s prior statements regarding Columbia were fraudulent, and triggered her duty to inquire further.[4]

Marie asserts three arguments in response. First, Marie argues that Ron, Sr.'s testimony that he was the primary owner of all "other companies" except Columbia Hyundai and Columbia Acura is vague, and cannot establish Marie's "actual notice in 2009." (Response at 15-16). Marie argues that the "other companies" Ron was referring to were only the companies for which he was asked to provide documents in the Guardianship Litigation: Joseph Enterprises; Columbia Development Corporation; Columbia Development, Inc.; Columbia Oldsmobile Company; Columbia Motor Sales Company; Columbia Oldsmobile; Joseph Realty, LLC; Joseph Realty, LLC (4); Joseph Realty, LLC (6); Camargo Cadillac; Columbia Chevrolet, Inc.; Columbia Acura, Inc.; Columbia Hyundai, Inc.; and Columbia Square Properties, LLC. (*Id.* at 16).

Plaintiff's arguments fail as a matter of law.

---

[4] Ron, Sr., asserts that a number of events put Marie on notice of the alleged fraud. Because the Court finds that Ron, Sr.'s 2009 deposition testimony was by itself sufficient to put Marie on inquiry notice, the Court will not discuss each argument at length. The Court notes, however, that a number of the other arguments raised by Ron, Sr. are insufficient, on the record before the Court, to establish notice as a matter of law. For example, Ron, Sr., argues that Marie was "satisfied" with information provided in a response to her inquiry about Columbia in 1985 (Doc. 44 at 15) but does not point to parts of the record that demonstrate what information she received. Similarly, Ron Sr. argues that an attorney for Marie's mother "accepted it as common knowledge" that Ron, Sr. owned other dealerships (*id.*) but does not point to parts of the record that impute that knowledge to Marie.

First, the statute of limitations begins when a person is in possession of facts that would alert a reasonable person of the *possibility* of fraud; it does not require *actual* knowledge. *See Cundall*, 2009-Ohio-2523, ¶ 29. Even if Marie is right that Ron, Sr.'s reference to "other" companies was limited to the companies for which he was asked to produce documents in the Guardianship Litigation, his testimony still indicated that Ron, Sr.—and not his siblings—owned, *inter alia*, Camargo Cadillac and Columbia Chevrolet, two companies that Marie alleges in this lawsuit should be part of Columbia. (*See* Amended Complaint at ¶¶ 202-2011 (Columbia Chevrolet), ¶¶ 189-201 (Camargo Cadillac)).

Second, Marie argues that the fraud-based claims should not be dismissed in their entirety. Marie argues, at a minimum, she should be able to pursue her fraud claims as to conduct that occurred between April 12, 2012, and the present (the statutory limitations period), or, conversely, after Ron, Sr.'s testimony on May 13, 2009. (Response at 4-5).

This argument fails for one simple reason: the only fraud alleged in the Amended Complaint is that Ron, Sr. misrepresented that Columbia owned "the family business assets" (Amended Complaint at ¶ 124, 283) and **Marie admits Ron, Sr. made those statements prior to his 2009 deposition**. (Doc. 44-3 at 69-71).[5] Marie possessed facts sufficient to alert her of the possibility that these statements were fraudulent in May, 2009, but did not file the Complaint until April 2016, almost seven years later.

---

[5] In her response to Ron, Sr.'s statement of undisputed facts, Marie argues that the list of five statements identified in her discovery responses was not "exhaustive." However, it is undisputed that Ron, Sr. made, at an absolute minimum, *some* of the alleged misrepresentations years prior to his 2009 testimony, and there is no Federal Rule of Civil Procedure 56 evidence of a fraudulent statement after 2009.

Third, Marie argues that Ron, Sr.'s deposition testimony was not sufficient to give Marie notice of <u>other</u>, various types of wrongdoing that is "not limited to allegations about Ron's claimed ownership of other business entities." (Response at 6). Marie argues the Amended Complaint also asserts that Ron, Sr. and Ron's Sons have "caused funds to be paid by Columbia and Columbia's subsidiaries to business entitles owned by Ron's Sons," have "caused other revenue streams to be created from Columbia or Columbia's subsidiaries to business entities owned by Ron or Ron's Sons," and that "there is no indication that any of these so-called 'related party' transactions that Ron or Ron's Sons caused Columbia and its subsidiaries to implement were properly authorized or approved." (*Id.*) (citing Amended Complaint at ¶¶ 258, 261, 263).

This argument fails as a matter of law because, again, the only <u>fraud</u> alleged in the Amended Complaint is that Ron, Sr. intentionally misrepresented Columbia's assets. (Amended Complaint at ¶¶ 124, 283).

In Ohio, to state a claim for fraud, a plaintiff is required to plead (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 169, 462 N.E.2d 407 (1984).

The Federal Rules of Civil Procedure impose additional requirements: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This provision requires a party to set forth, at a minimum, the "time, place and content" of the misrepresentation upon which the plaintiff relied, as well as the intent of the defendant, and the resulting injury. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

Here, though the Amended Complaint uses the word "fraud" 28 times, the only conduct that is arguably sufficient to state a claim for fraud—that is, the only conduct Marie alleges was <u>intentionally misleading</u> and upon which she <u>reasonably relied</u> to her <u>detriment</u>—are Ron, Sr.'s statements regarding Columbia's ownership of family business assets in Paragraphs 124 and 283. Similarly, the evidence of fraud presented by Marie in her opposition to Ron, Sr.'s motion for summary judgment is that she was "led to believe that all of the dealerships of the Joseph Auto Group were under common ownership." (Response, Ex.L at ¶ 2). The Amended Complaint's numerous conclusory allegations of "fraudulent conduct" and "fraudulent schemes" are simply insufficient to invoke the discovery rule in the absence of properly pled fraud claims premised on any conduct or representations other than those asserted in Paragraphs 124 and 283, which—as explained *infra*—accrued, at the latest, in 2009.

Accordingly, Ron, Sr.'s motion for summary judgment (Doc. 44) is **GRANTED** as to Marie's claims for fraud (Count Four) and fraudulent breaches of fiduciary duties (Count Five) because those claims are barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Defendant Ronald Joseph's Motion for Partial Summary Judgment (Doc. 44) is:

1. **GRANTED** on Plaintiff's claims for breach of fiduciary duties (Count One) and accounting (Count Three) to the extent those claims are premised on acts or omissions prior to April 12, 2012; and

2. **GRANTED** on Plaintiff's claims for fraud (Count Four) and fraudulent breach of fiduciary duties (Count Five).

**IT IS SO ORDERED**.

Date: 1/19/18

*Timothy S. Black*
Timothy S. Black
United States District Judge

16