UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIE JOSEPH,                   : Case No. 1:16-cv-465
                                :
    Plaintiff,                  : Judge Timothy S. Black
                                :
vs.                             :
                                :
RONALD JOSEPH, *et al.*,        :
                                :
    Defendants.                 :

**ORDER GRANTING IN PART,
AND DENYING IN PART,
THE MOTION OF DEFENDANTS
GEORGE R. JOSEPH, GREGORY G. JOSEPH, RICHARD S. JOSEPH, AND
RONALD JOSEPH, JR., FOR SUMMARY JUDGMENT (Doc. 46)**

This civil case is before the Court on the motion of Defendants George Joseph, Gregory Joseph, Richard Joseph, and Ronald Joseph, Jr. (collectively, "Ron's Sons") for summary judgment (Doc. 46), and the parties' responsive memoranda (Docs. 56, 59).[1]

## I. INTRODUCTION

**A. Background.**

This is a family dispute regarding Columbia Oldsmobile Co. ("Columbia"), an Ohio close corporation established to own auto dealerships and acquire and hold income producing real estate. (Amended Complaint at ¶ 48).[2]

---

[1] Plaintiff Marie Joseph and all five Defendants share the same last name. As is common in family disputes, to avoid confusion, the Court will refer to each party by their first name. The Court will refer to Defendant Ronald Joseph as "Ron, Sr." and Defendant Ronald Joseph, Jr. as "Ron, Jr."

In 1938, George J. Joseph started Columbia. (Amended Complaint at ¶ 9). All seven of George J. Joseph's children, including Marie and Ron, Sr., are shareholders of Columbia. (*Id.*) Since George J. Joseph's death, Ron, Sr. has served as the Chief Executive Officer of Columbia. (*Id.*)

Marie alleges that, after George J. Joseph's death, Najla Joseph ("Najla") — George J. Joseph's wife and the mother of Marie and Ron, Sr. — intended to disinherit Ron, Sr. from her interest in Columbia. (Amended Complaint at ¶ 17). Marie alleges this caused Ron, Sr. to strategically operate Columbia in a way that created a financial crisis for Najla's future estate and eventually allowed Ron, Sr. to obtain Najla's shares. (*Id.* at ¶ 19). Marie alleges that Ron, Sr. wrongfully gained, and manipulated, control over Columbia in order to acquire personal benefits not otherwise available to Marie as a minority shareholder. (Amended Complaint at ¶ 43).

The Amended Complaint asserts that Ron, Sr. and "Ron's Sons" (George R. Joseph, Gregory C. Joseph, Richard S. Joseph, and Ronald Joseph, Jr.) engaged in an intentional scheme to enrich themselves at Marie's expense. The Amended Complaint alleges that Ron, Sr. and Ron's Sons implemented transactions to channel assets, income streams, and things of value from Columbia to other entities owned or controlled by Ron, Sr. and/or Ron's Sons. The Amended Complaint also alleges that Ron, Sr. and Ron's

---

[2] On April 12, 2016, Marie filed the Complaint, which consisted of 88 paragraphs. (Doc. 1). On January 10, 2017, Marie filed a First Amendment to her complaint, which starts at paragraph 89, where the Complaint concluded. (Doc. 27). Because these documents are intended to be read together, the Court refers to the allegations of the Complaint, and the First Amendment, collectively as the "Amended Complaint."

Sons misappropriated corporate opportunities for themselves that should have belonged to Columbia. The Amended Complaint claims that Ron, Sr. hid this activity from Marie by fraudulently telling her that all family business assets were owned by Columbia. (*See* Amended Complaint at ¶¶ 124, 283).

Premised on this conduct, the Amended Complaint asserts claims of "fraudulent breaches of fiduciary duties" and "faithless servant" against Ron's Sons. (Amended Complaint at ¶¶ 288-300).

On July 7, 2017 — more than six months prior to the dispositive motion deadline, but after this case had been pending for more than a year — Ron's Sons filed a motion for summary judgment. (Doc. 46).

**B. Undisputed Facts.**

For purposes of Ron's Sons' motion for summary judgment, the following facts are undisputed:

Ron's Sons are minority shareholders of Columbia. (Doc. 46-1 at ¶¶ 1-7).[3] Each of Ron's Sons owns less than one percent of Columbia's voting shares. (*Id.*)

Marie is a minority shareholder of Columbia, owning 4.05% of its voting shares and 6.77% of its non-voting shares. (Doc. 46-1 at ¶ 9).

---

[3] Paragraphs 1-7 of Ron's Sons' statement of undisputed facts (Doc. 46-1) states that each of Ron's Sons owns less than 1% of Columbia's voting shares, and that each received these shares while they were minor children. In response, Marie states that she "lacks information sufficient to admit or deny when and how [Ron's Sons] obtained their respective interests in Columbia" but that she "does not dispute that the documents purport to show that each of [Ron's Sons] is a minority shareholder holding approximately the stated percentage interest in Columbia." (Doc. 56-1 at ¶¶ 1-8).

3

Ron, Sr. is the majority shareholder of Columbia's voting shares. (Doc. 46-1 at ¶ 18).[4]

Ron's Sons were appointed as directors of Columbia from December 17, 2012 until May 10, 2013. (Doc. 46-1 at 20). Greg and George were appointed as "Vice Presidents" of Columbia on December 17, 2012. (*Id.* at ¶ 21). Richard and Ron, Jr. have never been appointed to be officers of Columbia. (*Id.* at ¶ 22).

In 2008, Marie filed a lawsuit to be appointed the legal guardian of her mother and brother (the "Guardianship Litigation"). (Doc. 46-1 at ¶ 23). As part of the Guardianship Litigation, Marie attended Ron, Sr.'s deposition on May 13, 2009. (*Id.* at ¶ 24). In that deposition, Ron, Sr. testified that several dealerships, including some that are the subject of this lawsuit, including, *inter alia*, the Audi Connection and Airport Toyota, were separate from Columbia, which was an independent entity that primarily sold Acura and Hyundai automobiles:

> Q. Okay. Could you describe the automobile business as it exists today? I mean-
> A. I don't think anyone can.
> Q. –in your involvement. What company do you work for?
> A. I believe I work for all the companies.
> Q. Well, what are they?
> A. Starting with Columbia, Camargo, Joseph Chevrolet, Toyota Cincinnati, Hummer Cincinnati, Smart Car Cincinnati, Porsche Cincinnati, Audi Connection, Joseph Olds—Joseph Cadillac, Florence, Kentucky,

---

[4] Ron's Sons assert that Ron, Sr. owns, directly or through a trust, 68.31% voting shares of Columbia. (Doc. 46-1 at ¶ 18). Marie admits Ron is a majority shareholder of Columbia's voting shares, but lacks information sufficient to admit or deny the specific percentage of ownership.

4

> Airport Toyota. I could have missed something, but that's basically true.
>
> Q. **Now, you've run through a number of companies there. Are they independent entities?**
>
> A. **Yes.**
>
> Q. Columbia, is that an automobile company?
>
> A. Yes.
>
> Q. What automobiles do you sell from that company?
>
> A. Primarily Acura and Hyundai.

(Doc. 46-3 at 78) (emphasis added).

Later, Ron confirmed that the only two dealerships Columbia owned were Columbia Acura and Columbia Hyundai:

> Q. What are these various entities? Are they separate entities?
>
> A. Yes.
>
> Q. They are separate. And they are owned by whom?
>
> A. Columbia Acura, Columbia Hyundai, I'll repeat this again, are owned by Columbia, in which mom has a substantial interest and all the siblings have a certain amount of stock. All right.
>
> Q. That's Hyundai?
>
> A. And Acura.
>
> Q. Yeah. Go ahead.
>
> A. All right. **All other companies are owned by me, primarily.**
>
> Q. How come you didn't let the siblings have a little piece in this?
>
> A. Because of what's going on today.

(Doc. 46-3 at 133; Doc. 46-1 at ¶ 25).[5]

---

[5] Marie admits the material allegations of Paragraphs 26-36 of Ron's Sons' statement of undisputed facts, but denies any implication that those facts put Marie on notice of her claims in this lawsuit.

In the Guardianship Litigation, Marie's attorney represented to the Court that Ron, Sr. argued during discovery that Marie's discovery against various entities, including Camargo Cadillac and Columbia Chevrolet, Inc., was inappropriate because "the wards had an interest in only three of the entities." (Doc. 46-1 at ¶ 26).

Also in the Guardianship Litigation, Marie's attorney stated the following regarding Ron, Sr.: "These developments raise concerns that Mr. Joseph is not handling the funds place [*sic*] in trust by his father for the benefit of his siblings and his mother properly; that he may be breaching his fiduciary duty. The same concern exists with respect to those assets not in trust but under his control for the benefit of his mother, Marie, and Michael." (Doc. 46-1 at ¶ 27).

Marie admits that she was a shareholder of Joseph Chevrolet, and that, at some point, she sold those shares to invest in another company. (Doc. 46-1 at ¶ 28).

In a decision dated August 20, 1986, the Court of Appeals for Hamilton County, Ohio, issued an opinion about the ownership of Toyota of Cincinnati, which states, in relevant part: "Prior to 1973, Joseph and Robert founded and owned all of the stock of T of C. Joseph also owned, through Pond Realty Co., the building and real estate where T of C was located." (Doc. 46-1 at ¶ 30).

Marie knew that Robert Joseph (the brother of Marie and Ron, Sr.) opened his own Oldsmobile dealership, called R.J. Oldsmobile Company, which was formed in 1974. (Doc. 46-1 at ¶ 31).

Najla, from whom Marie re-acquired her shares in 2000, was represented by Gerald "Tori" Weigle of Dinsmore & Shohl. (Doc. 46-1 at ¶ 32).

Mr. Weigle wrote a letter on behalf of Najla that stated:

> Najla does not own any stock in [Joseph Chevrolet and Camargo Cadillac]. I believe that Ronnie Joseph owns all or most of those shares, although some of the other children receive payments as lessors of property that is occupied by Joseph Chevrolet. . . .
>
> Over the years Ronnie Joseph has started a considerable number of car dealerships. They have names which incorporate the Joseph name, such as Joseph Toyota, Joseph Buick, etc., but Najla and her other children do not own any interest in them.

(Doc. 46-1 at ¶ 33).

Mr. Weigle had originally represented Marie, who testified in a deposition that she and her sisters "hired [attorney] Tori [Weigle] to find out what we owned." (Doc. 46-1 at ¶ 34).

Marie produced a document in this case that states:

> Oldsmobile has official [*sic*] notified Columbia of the cessation of both sales and service—it is no more. We have effectively managed to convert the Columbia operation into Columbia Hyundai and Columbia Acura. If the franchises hold true to the market and competition, Columbia will continue as a successful automobile dealership.

(Doc. 46-1 at ¶ 36).

## II.    STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

### III. ANALYSIS

Ron's Sons argue: (1) Marie's breach of fiduciary duty claim is barred by the statute of limitations to the extent it is premised on actions that occurred prior to January 10, 2013; (2) Ron's Sons did not owe Marie fiduciary duties in their capacities as minority shareholders of Columbia; (3) Ron's Sons could not have misappropriated corporate opportunities as a matter of law prior to, or after, their terms as directors or officers of Columbia; and (4) Marie lacks standing to bring the faithless servant claim. The Court will address each argument in turn.

**A. Statute of limitations.**

Ron's Sons argue that Marie's claim for breach of fiduciary duties is time-barred to the extent it is premised on events that occurred prior to January 10, 2013 (four years before Marie filed the Amended Complaint). (Doc. 46 at 4-9). Ron's Sons argue that Ohio's discovery rule does not apply to this claim, but even if it did, **Marie's claim accrued in 2009, when Ron, Sr. testified, in Marie's presence**, that Columbia owned Columbia Hyundai and Columbia Acura, but all other businesses were primarily owned

8

by Ron, Sr. (*Id.* at 5-9). Rons' Sons argue that, at this time, Marie "knew or should have known" of the basis of her claim. (*Id.*) The Court agrees.

Claims for breach of fiduciary duty are governed by the four year statute of limitations in Ohio Revised Code § 2305.09(D). *See Antioch Co. Litig. Trust v. Morgan*, Case No. 3:10-cv-156, 2013 U.S. Dist. LEXIS 46777, at * 6 (S.D. Ohio Apr. 1, 2013). A claim for breach of fiduciary duty accrues when the act or omission constituting the breach actually occurs, rather than when the breach is discovered. *Union Savings Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App. 3d 540, 2010-Ohio-6396, ¶ 28, 946 N.E. 2d 835 (10th Dist.). Marie filed the Amended Complaint on January 10, 2017. (Doc. 27). Accordingly, to the extent Marie's claim for breach of fiduciary duties is premised on acts or omissions that occurred prior to January 10, 2013, it is barred by the statute of limitations. Ohio Rev. Code § 2305.09(D).

Marie argues that Ohio's discovery rule applies. (Doc. 56 at 7-12). Ohio's discovery rule provides: "[i]f the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; **nor, if it is for fraud, until the fraud is discovered**." Ohio Rev. Code § 2305.09 (emphasis added).

The Court does not agree that Ohio's discovery rule applies. Initially, on its face, the discovery rule does not apply to claims for breaches of fiduciary duty. The Supreme Court of Ohio has declined to expand the discovery rule to torts not expressly identified in the statute, reasoning that the legislature's "express inclusion of a discovery rule for certain torts arising under [§] 2305.09, including fraud and conversion, implies the

9

exclusion of other torts arising under the statute[.]" *Antioch Co. Litig. Trust v. Morgan*, 633 F. App'x 579, 582 (6th Cir. 2016) (quotation omitted). Accordingly, Ohio's discovery rule does not typically apply to claims for breach of fiduciary duty. *See In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 875, 907 (6th Cir. 2008) ("the general rule is clear that the discovery rule does not apply to claims arising out of a breach of fiduciary duty.").

Marie argues that the discovery rule applies in this case because her claim is one for "fraudulent" breach of fiduciary duty. (Doc. 56 at 8). That argument fails for two reasons: Marie did not plead a claim for fraud against any of Ron's Sons, and even if she had, she was on notice of the possibility of her claim by 2009.

1. *Marie has not asserted a "fraudulent" breach of fiduciary duty against Ron's Sons.*

Courts have applied Ohio's discovery rule to claims for breaches of fiduciary duty in limited situations when the plaintiff alleges, with specificity, that the breach was fraudulent. *See Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 738 (S.D. Ohio 2009) ("in the case of a fraudulent breach of fiduciary duty, the discovery rule applies"); *Orvets v. National City Bank*, 131 Ohio App. 3d 180, 189 (discovery rule applied to plaintiff's breach of fiduciary duty claim when the "fundamental nature" of plaintiff's claim was for fraud). However, for the discovery rule to apply to a claim for "fraudulent" breach of fiduciary duty, the plaintiff must set forth a "direct and specific allegation of fact showing fraud." *Bell v. Bell*, No. 96-3655, 1997 U.S. App. LEXIS 34647, at * 22 (6th Cir. Dec. 3, 1997) (quotation omitted). Facts "showing mere

10

concealment"—**even intentional concealment**—are insufficient to toll the statute of limitations. *Id.*

In Ohio, to state a claim for fraud, a plaintiff is required to plead (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 169, 462 N.E.2d 407 (1984).

The Federal Rules of Civil Procedure impose additional requirements: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This provision requires a party to set forth, at a minimum, the "time, place and content" of the misrepresentation upon which the plaintiff relied, as well as the intent of the defendant, and the resulting injury. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

Here, the Amended Complaint does not assert a claim for fraud against Ron's Sons. The Amended Complaint does not allege that Ron's Sons made any false representation to Plaintiff, that Ron's Sons took any action with the intent of misleading Marie, that Marie justifiably relied on any representation or concealment by Ron's Sons, or that Marie suffered an injury as a result of any intentional fraudulent conduct by Ron's Sons. While the Amended Complaint alleges that Ron's Sons "actively concealed"

11

certain information from Marie, that assertion is insufficient as a matter of law to invoke the discovery rule in the absence of a properly-plead fraud claim. *Bell*, 1997 U.S. App. LEXIS 34647, at * 22.[6] The Amended Complaint does not set forth a *prima facie* case of fraud against Ron's Sons, much less meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b).

The fact that Count Four is captioned "fraudulent breaches of fiduciary duties" is irrelevant. In determining the applicable statute of limitations, courts are to look to the actual nature or subject matter of the claims, not the form in which the action is pleaded. *See Metz v. Unizan Bank*, 649 F.3d 492, 499 (6th Cir. 2011) ("in determining the applicable statute of limitations, we should 'look to the actual nature or subject matter of the case, rather than the form in which the action is pleaded.'") (quotations omitted); *see also Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (1984) (stating the "grounds for bringing the action are the determinative factors" and "the form is immaterial.").

For the foregoing reasons, the "nature" of Marie's claim for breach of fiduciary duty against Ron's Sons is <u>intentional</u>, but not <u>fraudulent</u>. The caption of the claim is simply insufficient to invoke the discovery rule in the absence of a properly pled fraud claim.

---

[6] In *Bell*, the Sixth Circuit held plaintiff's allegations that defendant "used his control of the company" to pay all profits to himself, that "such was done intentionally and maliciously with the expressed specific intent to damage Plaintiff for Defendants' benefit," and that defendants "<u>concealed their machinations from Plaintiff</u>" insufficient to invoke the discovery rule because plaintiff did not sufficiently plead fraud under Ohio law and Rule 9(b). *Bell*, 1997 U.S. App. LEXIS 34647 at ** 15-23 (emphasis added). The Court finds this holding instructive here, as Marie argues repeatedly that Ron's Sons "actively concealed" information and acted "intentionally," but does not sufficiently plead a claim for fraud against Ron's Sons.

2. *Even if the discovery rule applied, Marie was on notice of the possibility of her claim in 2009.*

Ron's Sons argue that, even if the discovery rule applied, it would not change the conclusion that Marie's claim for breach of fiduciary duties is barred prior to January 10, 2013, because Marie was aware of the possibility of her claim prior to that date. (Doc. 46 at 5-8). The Court agrees.

Applying the discovery rule, the Supreme Court of Ohio has held that claims for fraud accrue either when the fraud is discovered or when, in the exercise of reasonable diligence, the fraud should have been discovered. *Cundall v. U.S. Bank*, 122 Ohio St. 3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 29. When determining whether fraud "should have been discovered," the relevant inquiry is whether facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry. *Id.*

This standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the **possibility** of fraud. *Id.* (citation omitted). Constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. *Id.* (citation omitted). That is because, under Ohio law, information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. *Craggett v. Adell Ins. Agency*, 92 Ohio App. 3d 443, 454, 635 N.E.2d 1326 (8th Dist. 1993) ("information sufficient to alert a reasonable person to the

possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.").

Here, the Amended Complaint asserts two instances of fraud:

124. When Marie asked Ron for more particular information about what was going on at Columbia, Ron generally responded with sweeping statements indicating in substance that the family business assets were still in Columbia, that Columbia was now simply using the name Joseph Auto Group and that Ron was taking care of everything.

….

283. Instead, Ron made substantial misrepresentations to Marie about material facts relating to her minority shareholder interest in Columbia, including but not limited to responses to Marie's inquiries in which Ron communicated that the family business assets were still in Columbia, that Columbia was now simply using the name Joseph Auto Group and that Ron was taking care of everything.

(Amended Complaint, ¶¶ 124, 283). [7]

Accordingly, the only "fraud" in the Amended Complaint that could invoke the discovery rule is premised on Ron, Sr.'s assertions that family business assets were still in Columbia. But **on May 13, 2009, Ron, Sr. testified under oath, and in Marie's presence**, that "Columbia" only included Columbia Hyundai and Columbia Acura, and all other businesses were owned by Ron, Sr., primarily. (Doc. 46-3 at 133; Doc. 46-1 at ¶

---

[7] The Response argues the alleged fraud is not limited to claimed ownership of various businesses. (Doc. 56 at 9). The Response argues that Ron's Sons committed fraud because (1) money was diverted to Ron's Sons without authorization, (2) Marie did not know prior to this lawsuit that Ron's Sons owned some Joseph Auto Group Dealerships, and (3) Joseph Auto Group Dealerships were operated in a way that masked distinctions between the entities. (*Id.* at 9-11). However, the **Amended Complaint does not allege a claim of fraud against Ron's Sons premised on these or any other facts.** Upon a thorough review of the allegations of the Amended Complaint, the only conduct that is arguably sufficient to state a claim for fraud—that is, the only conduct Marie alleges was intentionally misleading and upon which she reasonably relied to her detriment—are Ron's statements in Paragraphs 124 and 283.

25). At that point, Marie possessed facts that, at a minimum, would have alerted a reasonable person of the *possibility* that Ron, Sr.'s prior statements regarding Columbia were fraudulent. Even if the discovery rule applied to Marie's claims against Ron's Sons—and it does not—it would not change the conclusion that her claim for breach of fiduciary duties is time-barred to the extent it is premised on acts or omissions that occurred prior to January 13, 2010.[8]

Accordingly, Ron's Sons' motion for summary judgment (Doc. 46) is **GRANTED** as to Marie's claim for breach of fiduciary duties to the extent it is premised on acts or omissions prior to January 10, 2013.

### B. Ron's Sons Owed Marie a fiduciary duty as shareholders of Columbia.

Ron's Sons argue that Marie's claims for breach of fiduciary duties fail to the extent they are premised on Marie's assertion that Ron's Sons owed fiduciary duties as shareholders of Columbia, because, Ron's Sons argue, minority shareholders do not owe each other fiduciary duties. (Doc. 46 at 12-14).[9]

---

[8] Ron's Sons argue that a number of events put Marie on notice of Ron, Sr.'s alleged fraud. Because the Court finds that Ron, Sr.'s 2009 deposition testimony was by itself sufficient to put Marie on inquiry notice, it will not discuss each argument at length. The Court notes, however, that a number of other arguments raised by Ron's Sons appear insufficient, on the record before the Court, to establish notice as a matter of law. As one example, Ron's Sons argue that Najla's attorney acknowledged that Ron, Sr. owns a number of other car dealerships that his siblings do not have an interest in, but they do not point to any portion of the record attributing that knowledge to Marie.

[9] Ron's Sons also argue that they cannot be liable as accomplices to Ron, Sr.'s breach of fiduciary duties. (Doc. 46 at 10-12). This argument is correct as a matter of Ohio law, but fails in this instance. The Amended Complaint alleges that Ron's Sons breached fiduciary duties they independently owed to Marie.

15

This argument is not well-taken. It is "well settled" under Ohio law that shareholders in a closely held corporation "owe one another a fiduciary duty to act in good faith and refrain from self-dealing." *Burns v. Burns Iron & Metal Co.*, 6th Dist. Sandusky No. S-12-024, 2013-Ohio-2024, ¶ 18 (citing *Heaton v. Rohl*, 193 Ohio App. 3d 770, 2011-Ohio-2090, 954 N.E.2d 165, ¶ 54 (11th Dist)); *Morgan v. Ramby*, 12th Dist. Warren Nos. CA2010-10-095, CA2010-10-101, 2012-Ohio-763, ¶ 23.

Ron's Sons rely on the Supreme Court of Ohio's opinion in *Crosby v. Beam*, 47 Ohio St. 3d 105, 548 N.E.2d 217 (1989), which held that majority, <u>or controlling</u>, shareholders of a close corporation owed minority shareholders "heightened" fiduciary duties. (Doc. 46 at 12-14). Ron's Sons argue that they own less than a combined 4% of Columbia's voting shares, are not "majority" or "controlling" in any sense, and accordingly, do not owe fiduciary duties to Marie. (*Id.*)

This argument fails as a matter of law. While *Crosby* suggests that minority shareholders may owe heightened fiduciary duties if they are actually "controlling" the corporation, it did not hold that minority shareholders who do not control the corporation owe no fiduciary duties at all. *See Crosby*, 47 Ohio St. 3d at 111. To the contrary, in situations where *Crosby's* <u>heightened</u> duty does not apply, shareholders of closely-held corporations still owe each other <u>ordinary</u> fiduciary duties. *See Morgan*, 2008-Ohio-6194, at ¶ 21 (holding that, while *Crosby* did not impose "heightened" fiduciary duties between two equal shareholders, they still "owed one another an ordinary fiduciary duty as shareholders in a close corporation.").

16

### C. Ron's Sons are entitled to summary judgment on the corporate opportunity claims to the extent they are premised on acts or omissions before, or after, they were directors or officers of Columbia.

Ron's Sons argue they are entitled to summary judgment on Marie's claim for breach of fiduciary duties to the extent it is premised on the allegation that Ron's Sons misappropriated Columbia's corporate opportunities.

First, Ron's Sons argue that they did not become directors or officers of Columbia until December, 2012, and cannot be liable for misappropriating corporate opportunities prior to that date. (Doc. 46 at 15-16). The Court agrees.

In Ohio, a claim for misappropriation of corporate opportunities can only be asserted against a corporation's officers or directors. *See Prodan v. Hemeyer*, 80 Ohio App. 3d 735, 743-44, 610 N.E.2d 600 (8th Dist. 1992) ("usurpation of a corporate opportunity is established when the corporation shows that (1) **the officer or director** acquired information about the opportunity while acting for the corporation; and (2) the opportunity is in the corporation's line of business) (emphasis added); *Hubbard v. Pape* 2 Ohio App. 2d 326, 329, 203 N.E.2d 365 (1st Dist. 1964) ("It is a general rule in equity jurisprudence that **officers and directors of a corporation**, who acquire knowledge and information, in their fiduciary capacity, of investment or other business opportunity, in their corporation's business, cannot appropriate the opportunity of financial or business gain for themselves as individuals [.]") (emphasis added).

For this reason, Marie's corporate opportunity claims fail against Ron's Sons to the extent they are premised on acts or omissions occurring prior to, or after, their terms as officers or directors of Columbia.

17

Second, Ron's Sons argue they have had other real estate and automotive interests outside of Columbia throughout most of their lives, and accordingly, any opportunity they encountered in those areas did not belong to Columbia. (Doc. 46 at 17-18). The Court does not agree.

Under Ohio law, a corporate director or officer may not misappropriate opportunities it discovered <u>while acting for the corporation</u>. *See Prodan*, 80 Ohio App. 3d at 743-44. The fact that Ron's Sons had interests in other similar businesses is not dispositive. How and when Ron's Sons learned about any of the corporate opportunities Marie alleges, and whether they acquired this knowledge while acting on behalf of Columbia, are issues of fact the Court cannot resolve on the record before it.

Accordingly, Ron's Sons' motion for summary judgment is **GRANTED** on Marie's corporate opportunity claims to the extent they are premised on Ron's Sons' actions prior to, or after, their terms as directors or officers of Columbia.

### D. Ron's Sons are entitled to summary judgment on the faithless servant claim.

Count Six of the Amended Complaint asserts a claim against Ron's Sons under the faithless servant doctrine. That doctrine, as adopted by Ohio courts, provides:

> [d]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his *entire agreed compensation*, due to the failure of such an employee to give the stipulated consideration for the agreed compensation. Further, as public policy mandates, an employee cannot be compensated for his own deceit or wrongdoing. However, an employee's compensation will be denied only during his period of faithlessness.

*Roberto v. Brown Cty. Gen. Hosp.*, 59 Ohio App. 3d 84, 86, 571 N.E. 2d 467 (12th Dist. 1989) (emphasis in original).

Ron's Sons argue this claim fails as a matter of law because Marie, a minority shareholder of Columbia, was not their "employer." (Doc. 46 at 18-20). The Court agrees.

The faithless servant doctrine applies when a party is disloyal to his *employer*. *Roberto*, 59 Ohio App. 3d at 86. It does not provide a cause of action to a <u>shareholder of the party's employer</u>. *Edelman v. Jelbs*, 2015-Ohio-5542, 57 N.E.3d 246 (10th Dist). In *Edelman*, the Ohio Tenth District Court of Appeals held that appellant—a shareholder of a close corporation—did not have a faithless servant claim against appellees—officers and shareholders—as a matter of law. *Id.* at ¶¶ 42-44. The Court reasoned that appellees were servants of the *company* but not its *shareholders*, and accordingly, could not have been faithless to the appellant:

> We hold that the faithless servant doctrine should not be applied in this context. Appellees, though they owed fiduciary duties to appellant (since appellant was a shareholder in the company), were servants of the company, EDCO, not appellant, and therefore could not have been faithless to appellant in the relevant sense.

*Id.* at ¶ 44.

Here, if Ron's Sons were servants of anyone, it was Columbia. They were not servants of Marie, a minority shareholder of Columbia, and could not have been

19

"faithless" to Marie as a matter of law. Ron's Sons are entitled to summary judgment on Count Six of the Amended Complaint.[10]

## IV. CONCLUSION

For the foregoing reasons, the motion of Defendants Gregory G. Joseph, George R. Joseph, Richard S. Joseph, and Ronald Joseph, Jr., for summary judgment (Doc. 46) is:

1. **GRANTED** on Plaintiff's claim for breach of fiduciary duties: (1) to the extent the claim is premised on acts or omissions prior to January 10, 2013, and (2) to the extent the misappropriating claim is premised on misappropriating corporate opportunities prior to, and after, Ron's Sons' terms as directors and officers of Columbia;

2. **GRANTED** on Plaintiff's faithless servant claim;

3. **DENIED** on the issue of whether Ron's Sons owed Plaintiff fiduciary duties.

**IT IS SO ORDERED**.

Date:   1/19/18

Timothy S. Black
United States District Judge

---

[10] The Response argues the issue of whether a minority shareholder has standing to bring a faithless servant claim is "still undecided" in Ohio. Another way to put it is: "it is not the law." *Edelman*, 2015-Ohio-5542, ¶ 44.