**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARIE JOSEPH, | ) | Case No.: 1:16-CV-00465-TSB |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **DEFENDANT RONALD JOSEPH'S** |
| | ) | **MEMORANDUM IN OPPOSITION** |
| RONALD JOSEPH, *et al.* | ) | **TO PLAINTIFF'S MOTION FOR** |
| | ) | **DEFAULT JUDGMENT** |
| Defendants. | ) | |

## I.    INTRODUCTION

Contrary to the claims in Plaintiff's Memorandum in Support of Motion for Default

Judgment (the "Memorandum"), Ron Joseph and his counsel **have not**:

- "manufactured evidence";

- "intentionally concealed" relevant or responsive documents;

- "implemented a plan to interfere with third-party subpoenas"; or

- "take[n] liberties with evidence".

(Mem. at 1.) Plaintiff's allegations in this regard have no basis in fact and are reckless

mischaracterizations of what actually has occurred in this case.

The arguments in Plaintiff's Memorandum fit into two categories: (1) those Plaintiff

previously made in discovery motions and conferences, and upon which the Court already has

ruled or received full briefing, and (2) those Plaintiff now is making for the first time. Rather

than revisit arguments on issues already decided by the Court or fully briefed by the parties, Ron

incorporates by reference his prior submissions. Newly raised arguments are directly addressed

below.

1

There was no "plan" to intentionally conceal or keep documents away from Plaintiff. In fact, just the opposite occurred: Ron has spent enormous time and resources to respond to Plaintiff's extensive discovery demands. Only upon receipt of Plaintiff's Motion did Ron first discover that he inadvertently failed to collect and produce some emails between Columbia's former CFO, Ned Van Emon, and Susan Jeffery. Had Plaintiff adhered to the Court's procedure for resolving discovery disputes, that issue would have been resolved without burdening the Court. None of the factors that might warrant default judgment are present here. Ron requests that the Court deny Plaintiff's Motion.

## II.      ARGUMENT

### A.      The Motion largely rehashes the same meritless arguments that Plaintiff has previously raised to the Court, and Ron incorporates his briefs on those issues by reference.

Aside from the new arguments addressed below, the Motion largely repeats arguments that Plaintiff has raised to the Court in discovery conferences or in her briefs in support of the multiple discovery motions that she filed in late October 2017. Rather than repeat in detail arguments he has previously made, Ron incorporates by reference his briefs in opposition to Plaintiff's discovery motions. (*See* Docs. 77, 78, 90).

For example,  Plaintiff continues to assert that Ron's counsel represented that that they had collected all responsive documents from Susan Jeffery. (Mem. at 15-16). Plaintiff cites no evidence in support that such representations were made. To the contrary, counsel for Ron informed Marie's counsel in November 2016 that Ms. Jeffery was "pretty non-responsive." (Doc. 78, PAGEID # 5491.) And on January 27, 2017 – in response to Request No. 9 of Plaintiff's Third Set of Requests for Production of Documents – Ron stated that he would produce responsive documents for years 2008-2013, but he could not produce documents after

2

2013 because "*Susan Jeffery has the documents for later years and she has not responded to multiple inquiries to provide the documents*." (emphasis added).[1]

Similarly, Plaintiff repeats the argument made in her Reply in Support of Her Motion for Extension of Time (Doc. 83) that Ron's counsel failed to produce financial records that Linda May prepared for other dealerships. (Mem. at 21-22.) Plaintiff has summarily claimed that the documents should have been produced as responsive to a request for financial statements of "the Joseph Auto Group." (Doc. 83, PAGEID # 5743.) But Plaintiff neglects to mention that Ron objected to this Request as neither relevant nor proportional to the needs of the case. (*See* Response to Marie's First Set of Requests for Production of Documents, attached hereto as Ex. 1.) Ron never indicated that he would be producing financial statements for the "Joseph Auto Group." (*Id.*) And this Court approved of that position in its Minute Entry and Notation Order on October 3, 2016, limiting discovery to an 8-year period and only to "Columbia Development Corp. and Columbia and all other entities named in the document requests that acquired a dealerships or real estate opportunity since 2012 and in which Ronald Joseph has or had an ownership interest."

### B.   Plaintiff's new arguments are untrue and do not warrant default judgment.

#### 1. Ron did not intentionally withhold communications between Susan Jeffery and Ned Van Emon.

Most of the new arguments Plaintiff raises in her Motion fault Ron for not producing documents that he was never obligated to produce and, in most instances, Plaintiff had not requested. However, the Motion did alert Ron's counsel for the first time that Susan Jeffery produced additional emails with Ned Van Emon that they had not seen. Ron's counsel had in good faith endeavored to produce all communications with Susan Jeffery relating to Columbia,

---

[1] Indeed, Ron's Discovery Responses informing Plaintiff more than a year ago that Susan Jeffery had failed to respond to multiple inquiries for documents are attached as Exhibit 8 to Plaintiff's Memorandum.

and until Plaintiff filed her motion, they believed they had. Indeed, in order to help facilitate Susan Jeffery's subpoena production, within two days of Plaintiff's request, Ron agreed to a complete waiver of any accountant-client privilege with Susan Jeffery. (Doc. 78, PAGEID # 5492.) Contrary to Plaintiff's allegations about withholding or concealing documents, counsel for Ron encouraged counsel for Susan Jeffery to make a complete and full production, advising him that neither Ron nor any of the other Defendants have "objected to the subpoena or filed anything that would limit your client's response to the subpoena." (*See* 8/7/17 Email from James Frooman, attached hereto as Ex. 2.)

As explained below, and further detailed in the Affidavit of James C. Frooman attached hereto as Ex. 3 ("Frooman Affidavit"), it now appears that some communications with Susan Jeffery were missed in the document collection process. Since first discovering this issue when Plaintiff's Motion was filed, Ron has collected and will produce the remaining communications with Susan Jeffery relating to Columbia next week.

In her Second Requests for Production, Plaintiff asked for all communications with Susan Jeffery (the former outside accountant for Columbia) relating to Columbia. Ron initially objected to this request on the grounds that it was overly broad, unduly burdensome, not relevant, and not proportional to the needs of the case. (Responses and Objections to Plaintiff's Second RFP, No. 10, attached hereto as Ex. 4.) If Ron was truly seeking to conceal or withhold documents he could have simply stood on that objection. But in an effort to avoid another discovery dispute, Ron agreed to produce documents responsive to that request.

The Frooman Affidavit details how this occurred. In connection with the termination of former CFO Ned Van Emon's employment with Columbia in September 2016, counsel for Ron requested that a Columbia representative collect and provide all communications between Ned

Van Emon and Susan Jeffery. (Frooman Aff. at ¶ 9, Ex. 3 hereto.) The Columbia representative searched Mr. Van Emon's computer for emails between Mr. Van Emon and Ms. Jeffery, and provided those emails to counsel for Ron. (*Id.* at ¶¶ 9-10, 15.) When counsel for Ron subsequently set out to review and produce communications with Susan Jeffery related to Columbia in response to Plaintiff's Second RFP No. 10, they believed they had already received all communications between Ned Van Emon and Susan Jeffery, and confirmed this with the Columbia representative. (*Id.* at ¶ 10.) Counsel for Ron had no reason to believe any communications were inadvertently missed. (*Id.* at ¶ 11.) Counsel for Ron reviewed these communications and, until Plaintiff filed her motion, thought they had produced all responsive documents. (*Id.* at ¶¶ 10, 11, 20.)

Upon receiving Plaintiff's Motion and seeing certain communications between Mr. Van Emon and Ms. Jeffery for the first time, counsel for Ron promptly inquired of the Columbia representative who originally collected Ned Van Emon's emails. (*Id.* at ¶¶ 13-15.) The Columbia representative confirmed her belief that she had forwarded all communications between Mr. Van Emon and Ms. Jeffery, and after double-checking, was still unable to locate the communications cited by Plaintiff on Mr. Van Emon's computer. (*Id.* at ¶ 16.) Recognizing there had to be some explanation, Counsel for Ron involved IT personnel to review Mr. Van Emon's computer. (*Id.* at ¶ 17.) The IT personnel located the cited communications, and others, in other files on Mr. Van Emon's computer. (*Id.*)

It turns out that, despite the beliefs of all involved at the time, there were in fact additional communications. This explains Exhibits 21-23 to Plaintiff's Motion, which are all communications between Mr. Van Emon and Ms. Jeffery found by IT personnel.[2] Counsel for

---

[2] It should be noted that Ron did produce most of Exhibit 23. Plaintiff did have Susan Jeffery's initial email and the Bardahl Formula Worksheet relating to Columbia's working capital. (*See* RJ 009464 to RJ 009466.)

Ron has collected these additional emails and will produce all additional responsive documents next week. (*Id.* at ¶ 19.)

It is unclear why Plaintiff's counsel chose to first raise these issues in a motion for default judgment. Had Plaintiff's counsel asked Ron's counsel about these issues sooner, they would have promptly undertaken an investigation and produced any responsive documents that were inadvertently omitted from the document collection. In August 2017, Plaintiff argued generally to this Court that "other communications with the accountants, have not been produced." Plaintiff provided no details. The Court observed that "[t]he parties need to confer, outside the presence of the Court, to clarify whether all of this information has been produced (and if it has not, the reason for its non-disclosure before this issue can be properly addressed at an informal discovery conference." (*See* Informal Discovery Conference Outline, Aug. 21, 2017, Issue No. 3, Doc. 78-1 at PAGEID # 5512.) Plaintiff made no such attempt to confer with Ron's counsel about this issue before filing her Motion for Default Judgment.

### 2. Ron did not intentionally omit the schedules to Columbia's 2013 and 2014 Financial Statements.

Plaintiff also claims that "the circumstances support the conclusion that" the schedules to Columbia's Financial Statements for December 31, 2014 and 2013 (the "2014 Financial Statements") and the schedules to Columbia's Financial Statements for December 31, 2013 and 2012 (the "2013 Financial Statements") "were intentionally omitted for tactical reasons." (Mem. at 19-20, n.6, Ex. 15.) However, Ron did produce the 2013 Financial Statements with accompanying schedules at bates pages RJ007124 to RJ007155, along with dozens of other financial statements. Plaintiff's allegation that Ron intentionally omitted the schedules to the 2014 Financial Statements is also not true, and does not make any sense. Had Ron's counsel desired to "intentionally omit[]" these schedules, why did they produce the schedules to the other

financial statements, including the schedules for the Financial Statements covering the very next time period – December 31, 2015 and 2014 (the "2015 Financial Statements")? Indeed, between the 2013 Financial Statements and the 2015 Financial Statements, Plaintiff had schedules covering the entire 2012 to 2015 time period. Moreover, the schedules to the 2015 Financial Statements (produced by Ron) contain nearly the exact same line items and amounts as the apparent schedules to the 2014 Financial Statements contained in Exhibit 6 to Plaintiff's Memorandum. (*Compare* schedules to 2014 Financial Statements, Memorandum at Ex. 6, *with* same schedules to 2015 Financial Statements, attached hereto as Ex. 5.)[3] The truth is that Ron's counsel produced the financial statements in the same form they were provided by Columbia's former CFO and outside accountant. Ron did not withhold the schedules to the 2014 Financial Statements from production.[4]

Ron produced the 2014 Financial Statements with the missing schedules, along with at least one other financial statement containing schedules, on September 13, 2016. Plaintiffs deposed Columbia's former CFO, Ned Van Emon, on October 28, 2016, but did not ask him about the schedules. And in the fifteen months that followed, Plaintiff's counsel never once asked counsel for Ron whether the schedules to the 2014 Financial Statements were missing, and counsel for Ron was not aware that they were missing until receiving Plaintiff's Motion. Again, if Plaintiff's counsel had followed this Court's procedures and alerted Ron's counsel about this apparent issue, it would have been promptly investigated and resolved.

---

[3] If, for example, the Schedule of Property and Equipment entries regarding Columbia Chevrolet and Audi in the 2014 Financial Statements were truly "of great significance" to Plaintiff as she now alleges (Mem. at 13-14), Plaintiff in fact possessed the schedules from the 2015 Financial Statements to inquire about them (yet she chose not to do so.)

[4] Notably, other than Exhibit 6 to Plaintiff's Memorandum (which apparently includes some schedules to the 2014 Financial Statements with accountant hand-written notes), Plaintiff does not cite bates labels for, or attach copies of, the 2014 Financial Statements containing the allegedly missing schedules, although she implies the outside accountants produced them. Ron still has not seen (and never possessed) these allegedly missing schedules.

### 3.  Ron did not manufacture evidence.

Plaintiff also accuses Ron and his counsel of manufacturing evidence. (Mem. 3-7.) This accusation is baseless and, like Plaintiff's accusation about the financial statement schedules, also makes no sense. The "evidence" Plaintiff alleges Ron and his counsel manufactured are a series of unsigned Annual Shareholders and Directors Minutes and Actions Taken in Writing that, on their face, principally relate to ordinary corporate issues such as the annual election of Directors and Officers. (*See* Mem. at Ex. 2.) Defendants have not relied upon these unsigned documents to support any of their defenses in this matter, and Plaintiff has not articulated any reasons why the unsigned documents are relevant to her claims (they are not). Moreover, at least three of the specific documents Plaintiff alleges were "manufactured" and produced unsigned "to deceive" her were in fact *signed* and produced to her. (*See, e.g.*, 4/1/10 Actions Taken in Writing, 7/3/14 Actions Taken in Writing, and 1/1/15 Actions Taken in Writing, attached hereto as Ex. 6.)[5]

Ron's counsel first refuted this allegation that unsigned documents were manufactured for the litigation in October 2016. (*See* Letter from Rachael Rowe to Kevin Murphy and Jeffery Landen, Oct. 17, 2016, attached hereto as Ex. 7.) Counsel for Ron disclosed that Joe Rouse and his assistant prepared these unsigned documents. (*Id.*) Counsel for Ron also expressed they would readily make Joe Rouse available for deposition. Plaintiff's unsupported accusation that

---

[5] Plaintiff makes several flawed leaps in logic to conclude that Ron and his counsel "manufactured" and produced these unsigned documents "in order to deceive Plaintiff." (Mem. 6.) First, Marie alleges Ron's counsel supposedly represented that the meeting minutes were "accurate" and "contemporaneous," even though Plaintiff cites no such evidence and does not even specify what she means by "accurate" (i.e. whether the minutes are authentic documents, whether everything reflected in the meeting minutes is true, or something else) or "contemporaneous" (i.e. whether the minutes were created the same day of the meetings, within days, weeks, or months, whether the minutes were created before this litigation commenced, or something else). Second, because witnesses did not recall attending meetings at their depositions, Plaintiff concludes the meetings never happened. (Mem. at 5-6.) Because Plaintiff assumes that the meetings never happened, she makes the illogical conclusion that Ron's counsel, "in order to deceive Plaintiff. . . . manufactured evidence when none existed." (Mem. at 6-7.)

Ron's litigation counsel sought to prevent Joe Rouse from being deposed (Mem. at 7 n.6) is false and contradicted by the written correspondence between counsel on this issue. Shortly after Plaintiff raised the issue of unsigned documents, counsel for Marie requested the deposition of Joe Rouse, among others, and counsel for Ron responded that Joe Rouse "will do what is necessary to make [himself] available." (*See* 12/22/16 and 12/31/16 email correspondence, Doc. 58-2 at PAGEID # 1845-48.) Plaintiff chose not to depose Joe Rouse until October 2017.

When Joe Rouse was deposed, he explained the mundane nature of these unsigned Minutes and Actions. He explained that he created the unsigned Minutes and Actions as a matter of routine corporate maintenance in response to instructions by individuals at Columbia, as he would for other closely held corporate clients in the course of representation, and that he does not know why some of them were never signed. (Joe Rouse Dep. at 157.) There was nothing nefarious or deceitful about the creation of these documents, or unusual about the fact a closely held family corporation would not follow all corporate formalities, particularly when one individual like Ron controls over 60% of the voting shares of the company. In addition to the representations from counsel by Ron that none of these unsigned documents were manufactured for the litigation, the internal document numbers of these documents also plainly reflect that they were not recently manufactured for the litigation "in order to deceive Plaintiff." (Mem. at 6.)[6] Plaintiff's conspiracy theory about these documents is untrue and represents yet another attempt by Plaintiff to mask the absence of any evidence to support her claims, through endless purported discovery disputes.

---

[6] The minutes for annual shareholder and director meetings have no document numbers except for the last one, December 30, 2015, which has a document number of 961136.1. The annual shareholder and director meeting minutes from 2001-2015 were all created in that same document (which has the document number 961136.1). The document numbers and dates for the other unsigned documents are in chronological order and are as follows: 2417780.1 (dated January 2, 2008), 3459915.1 (dated April 1, 2010), 4893230.1 (dated December 17, 2012), 5545871.2 (dated July 3, 2014), 6302747.1 (dated November 1, 2014), and 6423533.1 (Undated).

### 4.  Plaintiff's other new allegations are also without merit.

Plaintiff's other new allegations relate to documents that were not specifically requested and Ron was not required to produce. Plaintiff frequently fails to identify a specific document request to which any particular document was responsive. Plaintiff's position in her Motion seems to be that if there is a document that Plaintiff hopes may be helpful to her case, Ron should have produced it, regardless of whether Plaintiff formally requested it or if it was within Ron's possession, custody, or control.

For example, Plaintiff summarily asserts that various IRS documents produced by third parties should have been produced by Ron. Specifically, she claims IRS Form 3115s were responsive to her requests, but does not point to any document request that sought them. (Mem. at 16-19.) Just because documents were produced by a third party does not mean the documents were responsive to document requests served on Ron. Plaintiff argues that the documents are "highly relevant to Plaintiff's case" because they list other dealerships as "related parties" under IRS regulations. (Mem. at 17-18.) IRS Form 3115 is an Application for Change in Accounting Method. These arcane IRS forms dealing with change in accounting methods, taken out of context, bear no relevance to Plaintiff's claims.[7]

Plaintiff also claims that Ron failed to produce documents from third-party accounting firm Barnes and Dennig, asserting without any citation that "Mr. Bieber testified that neither Ron nor his counsel had ever asked for documents in the possession, custody or control of Mr. Bieber or Barnes Dennig for the purpose of responding to Plaintiff's document requests." (Mem. at 20.) Mr. Bieber never gave any such testimony. In fact, Mr. Bieber's deposition included the following exchange:

---

[7] Similarly, documents relating to an IRS audit of Columbia, which Plaintiff briefly lists and includes as Exhibit 20 to her Memorandum, are not relevant to Plaintiff's claims and were not responsive to any of Plaintiff's document requests. Plaintiff does not reference any particular document request to which she claims they were responsive.

> MR. LANDEN: **But were you asked to provide documents for production in this litigation?**
>
> MR. BIEBER:   **Yeah.** I think I provided these reports.

(Dep. of Alan Bieber 34:16-35:1 (emphasis added).) Plaintiff identifies a single valuation report she claims Ron and Barnes Dennig improperly withheld, prepared "January 16, 2013." (Mem. at 20.) Contrary to Marie's allegations, Ron in fact did produce the January 16, 2013 valuation at bates-labeled pages RJ179379 to RJ179508 in May of 2017, more than seven months prior to Mr. Bieber's deposition. Ron requested and produced documents from Mr. Bieber in response to certain requests where Ron anticipated Mr. Bieber was likely to have responsive documents.

Another new allegation relates to an email chain between Ron's counsel and Mark Kleissler, which attached a schedules with Kleissler's handwritten notes. Plaintiff claims that these were responsive to a request seeking Ron's communications with K.B. Parrish. (Mem. at 9-14.) Plaintiff theorizes that Ron did not produce these documents because Mr. Frooman speculated in an email that the notes might constitute Mr. Kleissler's work papers. But the reason this email exchange was not produced is because Plaintiff never requested it. Plaintiff did not seek communications between Ron's counsel and K.B. Parrish.[8]

Plaintiff also claims that Ron should have produced car dealership applications and bank account documents. (Mem. at 28.) Once again, these documents were never requested, and Plaintiff does not suggest any document request that sought them.

Another criticism Plaintiff levels at Ron is for not producing "source documents." (Mem. at 22.) Plaintiff employs quotation marks when she uses "source documents," but never defines

---

[8] Indeed, in the same document requests seeking "communications with K.B. Parrish & Co.," Plaintiff specified when she was seeking communications with *counsel* for Ron as opposed to communications with Ron. (*See, e.g.*, Ex. 7 to Memorandum, Request No. 8.) Plaintiff clearly understood that requesting communications with Ron did not encompass communications of Ron's counsel.

what she means by the term. The term does not even appear in her document requests, much less is it defined therein. Plaintiff does not explain why she needs "source documents" or why the production of Columbia's entire general ledger is insufficient. Plaintiff requested "all documents relating to any Transactions[9] between Columbia" and other Joseph entities, but Ron objected to these Requests as overly broad, unduly burdensome, and not proportional to the needs of the case. (*See* Responses and Objections to Third Set of RFPs, Nos. 17-19, Ex. 8 to Memorandum.) These Requests alone called for the collection and production of hundreds of thousands or more pages, which would have included, for example, collecting and producing all documents relating to the transfer of every single vehicle between dealerships. This is why Ron produced Columbia's entire general ledger instead, which shows all funds that flowed in or out of Columbia.

Plaintiff previously asked Ron to produce all documents "supporting the numbers" in the general ledger. (*See* Letter from Jeffrey Landen to Ali Razzaghi and Stephen Hernick, June 30, 2017, attached hereto as Ex. 8.) Ron's counsel explained that what Plaintiff was asking for would likely require the production of millions of pages of documents and was "not remotely proportional to the needs of this litigation." (Letter from Stephen Hernick to Jeffrey Landen, July 13, 2017, at ¶ 7, attached hereto as Ex. 9.) Plaintiff has not provided, and there is no evidence to suggest, that any of the numbers in the general ledger are inaccurate. Ron's counsel did indicate, however, that they would nevertheless consider producing documents for specific transactions (*id.*), but Plaintiff's counsel never made any such request.

---

[9] Plaintiff defined Transactions beyond any ordinary meaning of the word to include any "participation in the business affairs of an entity" and any "conduct that has produced or is intended to produce any payment, tangible benefit or intangible benefit." Plaintiff's overly broad definition of Transactions was one reason why Ron objected to these Requests.

**5.  Plaintiff fails to meet the legal standard for the ultimate sanction of a default judgment.**

"The Court of Appeals has described entry of a default judgment as the most severe discovery sanction available." *Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 454 (S.D. Ohio 2012) (citing *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008)). "Such a harsh sanction should be entered 'only in extreme situations showing a clear record of contumacious conduct by the' party." *Pension Plan of the Pac. Nw. Labs, Battelle Mem'l Inst. v. Orange-Douglas*, No. 2:14-cv-218, 2014 WL 5782957, *1 (S.D. Ohio Nov. 6, 2014) (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). It is "a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (quoting *Patton v. Aerojet Ordinance Co.*, 765 F.2d 604, 607 (6th Cir. 1985)).

The United States Court of Appeals for the Sixth Circuit measures the propriety of this sanction against four factors: (1) whether the party's failure to cooperate in discovery is attributable to "inability" as opposed to willful bad faith, or fault of the witness; (2) whether the adversary was prejudiced by the sanctioned party's failure to cooperate in discovery; (3) whether the sanctioned party was warned that failure to cooperate could lead to default judgment; and (4) whether less dramatic sanctions were imposed or considered before default was ordered. *Bank One*, 765 F.2d at 1079 (citing *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988)). *See also Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998); *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997); *Harmon v. CSX Transp.*, 110 F.3d 364, 367 (6th Cir. 1997). None of the four factors are implicated in this case.

As to the first factor, there is no evidence that Ron or his counsel acted in willful bad faith. Rather, as explained above, the documents that were not previously produced were the

13

result of an oversight rather than any bad faith or willful attempt to conceal documents. As soon as Plaintiff's Motion was filed, Ron's counsel promptly conducted a diligent inquiry, determined that certain potentially responsive documents had not been collected, obtained those documents, and will produce them next week.

The second factor is also not implicated because there is no prejudice to Plaintiff. No documents were lost or discarded. Plaintiff now has the communications between Mr. Van Emon and Ms. Jeffery which were missed in Ron's previous productions. Moreover, Plaintiff took the deposition of Mr. Van Emon in October 2016, before she ever requested communications with Ms. Jeffery, and she has never sought Ms. Jeffery's deposition during the eighteen-plus months that this case has been pending.

As to the third factor, Ron's counsel had no knowledge of these additional documents prior to Plaintiff's filing of her Motion and, therefore, had no prior warning of any sanctions, much less the risk of a default judgment. Had Plaintiff's counsel raised the issue with Ron's counsel in the first place pursuant to this Court's procedures, this issue would have been promptly resolved.

Finally, because Plaintiff ignored the Court's procedure for handling discovery disputes, no less drastic sanctions were imposed or even considered by the Court. The fourth factor is therefore also not implicated.

Because Plaintiff has failed to demonstrate any of the factors of the Sixth Circuit's four-pronged test, her Motion for Default Judgment should be denied. An entry of default judgment – the "most severe discovery sanction available" – is not warranted. *Ward.*, 279 F.R.D. at 454. (S.D. Ohio 2012).

14

      **C.**      **Ron's alleged refusal to provide Plaintiff access to Columbia's corporate records does not (even if true) warrant default judgment.**

Plaintiff makes a final argument that Ron's alleged refusal to provide her with Columbia records in response to inspect books and records also entitles her to an entry of default judgment. (Mem. at 29-32.) Plaintiff cites no case holding that default judgment is an appropriate remedy for a denial of a corporate records request, however. Plaintiff's allegations relating to her right to inspect books and records are false and/or misleading and, in any event, do not support any of the four factors that must be evaluated in considering whether to grant default judgment.[10]

**III.**      **CONCLUSION**

Ron admits that there were additional communications between Ned Van Emon and Susan Jeffery that were overlooked in the electronic document collection process, and therefore were inadvertently not produced by Ron. Counsel for Ron was alerted to this issue for the very first time in Marie's Motion, and has taken prompt action to remedy the situation. Despite the contentious nature of this family dispute, the undersigned counsel for Ron, as officers of the Court, did not, and would not, engage in the reckless and false accusations of intentional fraud and bad faith lodged by Plaintiff. There was no "plan" to intentionally conceal or keep documents away from Plaintiff, and none of the relevant factors for a default judgment have been satisfied. Ron requests that the Court deny Plaintiff's Motion.

---

[10] Plaintiff devotes two pages to an alleged "agreement" Mr. Frooman made with U.S. Bank, which supposedly deprived her of access to Columbia's records. (Mem. at 29-31.) What Plaintiff overlooks is that any "agreement" had no effect on her access to records *from Columbia*. Plaintiff also argues that Ron's counsel have stonewalled her efforts to evade this Court's discovery orders. (Mem. at 31-32.) While discovery in this case was ongoing, Plaintiff sent letters to Columbia requesting access to corporate records. Plaintiff is transparent about why she sent these requests outside of the litigation: to avoid this Court's discovery orders. (Mem. at 32 ("Mr. Frooman also ignored that the discovery in this case has thus far been limited to the period January 1, 2008 to the present. Nothing in O.R.C. § 1701.37 places a time limitation on the records a shareholder has a right to inspect.").) Plaintiff neglects to mention that Ron's counsel asked that she instead serve any additional requests in the form of formal discovery requests. Ron and his counsel have made available hundreds of thousands of pages of documents to Plaintiff in this litigation.

Respectfully submitted,

*/s/ James E. Burke*
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething & Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower
One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.com
arazzaghi@fbtlaw.com

*Trial Attorneys for Defendant Ronald Joseph*

## CERTIFICATE OF SERVICE

I certify that on February 2, 2018, I filed Defendant Ronald Joseph's Memorandum in
Opposition to Plaintiff's Motion for Default Judgment with the Clerk of Court using the
CM/ECF system, which will send notice to all counsel of record.

*/s/ James E. Burke*
James E. Burke

8178680.1

16