# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH | : | |
| | : | Case No.: 1:16-cv-00465-TSB |
| Plaintiff, | : | |
| | : | Judge: Timothy S. Black |
| vs. | : | |
| | : | **DEFENDANTS' JOINT OMNIBUS** |
| RONALD JOSEPH, *et al.*, | : | **MOTION IN LIMINE** |
| | : | |
| Defendants. | : | |
| | : | |

Defendants Gregory G. Joseph, George R. Joseph, Richard S. Joseph, and Ronald Joseph Jr. ("Additional Defendants") and Defendant Ronald Joseph, Sr. (collectively, "Defendants") by and through their undersigned counsel, file this Omnibus Motion in Limine and respectfully request that the Court exclude evidence and arguments that Defendants believe Plaintiff will attempt to introduce at trial. As discussed below, such evidence should be excluded under the applicable Federal Rules of Evidence and Federal Rules of Civil Procedure.

For these and the other reasons discussed below, Defendants jointly and respectfully request that this Court preclude Plaintiff from seeking to introduce any of this evidence or making any of these improper arguments.

Respectfully submitted,

/s/ James E. Burke
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457

jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower
One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.comj
arazzaghi@fbtlaw.com

*Trial Attorneys for*
*Defendant Ronald Joseph*


s/ Scott A. Kane
Scott A. Kane (0068839)
Colter Paulson (#0081903)
SQUIRE PATTON BOGGS (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Phone: (513) 361-1240
Fax:  (513) 361-1201
scott.kane@squirepb.com
colter.paulson@squirepb.com

*Trial Attorneys for Additional Defendants*

- 2 -

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARIE JOSEPH | : | |
| | : | Case No.:  1:16-cv-00465-TSB |
| Plaintiff, | : | |
| | : | Judge:  Timothy S. Black |
| vs. | : | |
| | : | **DEFENDANTS' MEMORANDUM IN** |
| RONALD JOSEPH, *et al.*, | : | **SUPPORT OF THEIR JOINT OMNIBUS** |
| | : | **MOTION IN LIMINE** |
| Defendants. | : | |
| | : | |

Defendants anticipate that Plaintiffs may seek to introduce at trial a variety of evidence and arguments that are inadmissible and inappropriate.  In order to assure a trial free from error and to enhance the Court's ability to conduct a fair and efficient trial on Plaintiff's claims for breach of fiduciary duty regarding Columbia Oldsmobile Company ("Columbia"), Defendants request that this Court address a number of issues.  Defendants recognize that every issue may not be fully resolved before trial, but hope these motions will permit the Court to more appropriately address them during trial.  Specifically, this motion addresses the following:

MIL No. #1:  Plaintiff's July 2018 Theory About Columbia's AFG Stock.
MIL No. #2:  Legal Conclusions From Plaintiff's Experts
MIL No. #3:  Plaintiff's Expert Michael D. Costello Should Be Limited To His Disclosed Opinions
MIL No. #4:  The 2008 Audio Recording Of Ronald Joseph.
MIL No. #5:  Certain Emails Discussing Non-Columbia Dealerships
MIL No. #6:  Discovery And Shareholder Inspection Disputes
MIL No. #7:  References To Exhibits That Are Not Admitted.
MIL No. #8:  "Send A Message" Arguments.
MIL No. #9:  "Golden Rule" Arguments.
MIL No. #10:  References To A Party's Wealth Or Financial Position.
MIL No. #11:  Joseph Auto Group As A Legal Entity.

Defendants respectfully submit that these individual motions in limine should be granted in their entirety for the reasons set forth below.

**MOTION IN LIMINE No. #1**
**Plaintiff's July 2018 Theory Regarding Columbia's AFG Stock.**

Defendants ask this Court to preclude Marie from making, for the first time at trial, unfounded claims based on new allegations of transfers of stock in American Financial Group ("AFG") purportedly owned by Columbia. This specious claim was not made by Marie until *after* discovery had closed, dispositive motion briefing was complete, and trial was just two months away. Nor is her new theory supported by any facts or evidence. The alleged transfers simply never occurred. *See* Declaration of Melinda Nau ("Nau Decl.), attached as Exhibit A. Marie should be precluded from presenting these newfound and false accusations at trial.

On December 17, 2010, Columbia purchased 1,000 shares of AFG stock. Ex. A, ¶ 5.[1] From December 16, 2010 through January 2016, any AFG dividends were received in cash by Columbia and included in Columbia's cash account. *Id.* Beginning in 2016, Columbia participated in AFG's dividend reinvestment program—in other words, instead of receiving cash dividends, Columbia received additional shares of AFG stock corresponding to the dividend amount. *Id.* From January 2016 through the present, that program increased the amount of AFG stock owned by Columbia. *Id.* Today, Columbia owns 1,036 shares of AFG stock. *Id.* There has never been a sale or transfer of AFG stock. All AFG dividends either were received in cash by Columbia or reinvested in the dividend reinvestment program, resulting in additional shares of AFG stock. *Id.* Marie should be precluded from making any claim to the contrary at trial.

Marie's false damages theory should also be precluded because it is untimely and Defendants never had the opportunity to seek dismissal on summary judgment. On April 3, 2017, Ron served Marie an interrogatory asking her to "[s]tate the amount and describe in detail

---

[1] Columbia purchased another 1,000 shares during 2013, but those were canceled on December 8, 2013, leaving the number of shares at 1,000.

the calculation of all alleged damages." (*See* Doc. 119-3 at 1, 3). Marie made no mention of her AFG stock theory in her response—or anywhere else through the close of fact discovery and the close of expert discovery. Even her April 17, 2018 "Interim Supplemental Answers" to that interrogatory do not mention the AFG stock. (Doc. 119-3 at 3.). Marie also made no mention of her AFG stock theory in any of the hundreds of pages of summary judgment briefing.

On July 19, 2018, after dispositive motion briefing was complete, less than a month before trial was originally scheduled to begin (*see* June 15, 2018 Notation Order), and less than two months before the currently scheduled trial (*see* July 17, 2018 Notation Order), Marie served a new set of "Interim Supplemental Answers" to the Damages Interrogatory (*see* Exhibit B (Marie's July 2018 Interim Supplemental Answers to Ron's Second Set of Interrogatories). For the first time, Marie disclosed her intention to seek damages at trial based on a theory that Defendants "caused [AFG] stock owned by Columbia and dividends issued in relation to that stock to be transferred to the Defendants or entities they purport to own or control." (*Id.*)

This is the very type of untimely disclosure that the Federal Rules were designed to prevent. Indeed, Marie was required, at the outset of her lawsuit, to "disclose a computation of each category of damages claimed" and to supplement that initial disclosure as any new information became available under Rules 26(a) *and* (e). If a party fails to make a required disclosure, then he or she "is not allowed to use that information ... at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). Courts routinely prevent parties from seeking to recover damages based on theories that they did not disclose during discovery. *See Big Lots Stores, Inc. v. Luv N' Care, LTD*, 302 F. App'x 423, 429-30 (6th Cir. 2008); *D&D Underground Utils. Inc. v. Walter Martin Excavating Inc.*, No. 12-241-GFVT, 2015 U.S. Dist. LEXIS 59666, at *17 (E.D. Ky. May 7, 2015).

Defendants had no meaningful opportunity to challenge Marie's new damages theory in discovery or dispositive motions.  Because it is demonstrably false, and because Marie waited to disclose it until after discovery had closed, and even after dispositive motions were briefed, the Court should preclude her from presenting evidence or arguments in support of it at trial.

### MOTION IN LIMINE No. #2
### Bare Legal Conclusions From Plaintiff's Experts

This Court should exclude the proffered testimony of Plaintiff's proposed attorney-experts, Geoffrey Stern and Paul R. Hess of the law firm Kegler Brown Hill & Ritter Co. LPA. These attorneys offer only bare legal conclusions that will not help the trier of fact "understand the evidence or determine a fact in issue" as required by Fed. R. Evid. 702.  Legal conclusions are not proper expert testimony.  *See Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("testimony offering nothing more than a legal conclusion … is properly excludable under the Rules").  Although Rule 704(a) allows an expert's opinion to embrace "an ultimate issue to be decided by the trier of fact," the Sixth Circuit has emphasized that "the issue embraced ***must be a factual one***."  *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (emphasis added).  In other words:  "Expert opinions which express a legal conclusion are not admissible."  *N. River Ins. Co. v. Empls. Reins. Corp.*, 197 F. Supp. 2d 972, 981 (S.D. Ohio 2002) (citing *Berry*, 25 F.3d at 1354).  This is especially so when the expert couches his opinions in terms that have a "distinct and specialized meaning in the law different from that present in the vernacular." *Woods*, 110 F.3d 1220 (emphasis in original; citation omitted).  As *Woods* explains:  "a district court abuses its discretion when it allows a witness to define legal terms, especially terms that carry a considerable amount of legal baggage."  *Id*.

### A.    The Legal Opinions Of Mr. Stern and Mr. Hess.

Mr. Stern and Mr. Hess were engaged by Marie to give legal opinions. *See* Stern Report, attached as Exhibit C; Hess Report, attached as Exhibit D.  Rather than reviewing the facts of this case, they were given the same list of "Assumed Facts" stating that Defendants had lied to Marie and stolen from Columbia. *See* Stern Report at 6-7, ¶ 9 (assuming that Ron Sr. "led Marie Joseph to believe that the automotive dealership operations commonly referred to as the Joseph Auto Group were owned and operated by Columbia or its subsidiaries"); *id*. at ¶ 14-15 (assuming self-dealing transfers of money to Defendants).  Both attorneys relied exclusively on those "assumed facts" to give their opinions.  Stern Report at 2; Hess Report at 3.

Mr. Stern produced a two-page report on legal ethics.  The first ten paragraphs discuss various Ohio Rules of Professional Conduct.  Stern Report at 1-2, ¶ 1-10.  The next two paragraphs present legal conclusions:  First, that "if Ronald Joseph, Gregory Joseph, or outside attorneys for Columbia assisted in fraudulent or illegal conduct," then they would have a duty to disclose facts "necessary to avoid the lawyer's assistance in the client's illegal or fraudulent act." *Id*. at 2, ¶ 11.  Second, that "if the Court determines that Ronald Joseph, Gregory Joseph or outside attorneys for Columbia engaged in dishonesty fraud, deceit, or misrepresentation" then they violated their duties under "the Ohio Rules of Professional Responsibility." *Id*. at 2, ¶ 12.

Mr. Hess similarly divides his analysis into defining legal terms related to fiduciary duties, Hess Report at 2-3, and giving legal conclusions that Ronald Joseph, Sr. breached those duties. *Id*. at 3-4.  Based on the assumed facts, Mr. Hess states that "Ronald Joseph has failed to comply with the standard of care applicable to him and breached his fiduciary duties." *Id*. at 3, ¶ 2-4.  He identifies the following as breaches:  entering into "self-dealing transactions," "failing to cause appropriate meetings to be conducted," "failing to maintain and preserve corporate records," and "refusing to allow inspection or copying of corporate records." *Id*. at 3, ¶ 2-4.

**B.    The Legal Conclusions Of Each Expert Should Be Excluded.**

This Court should apply the Sixth Circuit cases of *Woods*, 110 F.3d at 1220, and *Berry* 25 F.3d 135, and exclude the opinions of Marie's attorney-experts.  Mr. Stern defines his opinions exclusively in terms of violations of the Ohio Rules of Professional Responsibility, which Marie will presumably attempt to place before the jury.  Stern Report at 1-2.  Similarly, Mr. Hess' defines the legal terms and then gives opinions stating that Defendants violated those same legal terms.  Hess Report, at 1-3.  Moreover, neither expert purports to know or determine any of the facts at issue in this case.  Both attorneys recognize this and specifically state that their opinions are contingent on the truth of the "Assumed Facts" they were given.  As a result, neither attorney has looked at any documents in this case, nor have they read any depositions, or reviewed any of Columbia's financial reports.

In short, these expert reports have no real substance.  They are nothing but the thoughts of an attorney on a hypothetical situation that assumes not only disputed facts, but also future findings by the trier of fact.  It would make little sense—and indeed, it would be entirely circular—for the trier of fact to rely on these *conditional* opinions, when assumptions about the very same factfinder's future conclusions form the conditional basis for those opinions.  *See Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (testimony consisting of legal conclusions is inadmissible because it is not helpful to the jury and invades the province of the court to determine applicable law and to instruct the jury as to that law).

### MOTION IN LIMINE No. #3
### Plaintiff's Expert Michael D. Costello Should Be Limited To His Disclosed Opinions

Plaintiff served a supplemental expert report of her proffered expert, Michael Costello, dated March 1, 2018 (the "Supplemental Costello Report").  Doc. 113-1, PageID 7072-73.  The Supplemental Costello Report contains a list of ten "differences" that Mr. Costello "observed"

between the management and accounting practices of Columbia and automobile dealerships owned by Additional Defendants and/or Ronald Joseph, Sr. separate from Columbia. *Id*.

Mr. Costello was questioned about these ten observations during his April 3, 2018 deposition, including as to how the observations related to any expert opinion he would seek to offer at trial. Mr. Costello testified that the observations were themselves his "opinion":

> Q. Okay. Which one of them are opinions versus asserted facts?
>
> A. Well, my position is they're all my opinions. I mean, there're facts that highlighted here that are, as I said earlier, differences between the management accounting practices observed for Columbia Oldsmobile and the other Joseph Auto Group dealership and so, you know, some of them are listed as facts and really just -- I mean, I can't say every one of them, but many of them are things that, you know, I'm looked into and so it's factual information. But at the same time it's given here as my opinions because -- take number three, for example, I'm just focused on it right now. And, you know just looking at the records, the management fees paid by CAI to Joseph Management is equal to 30 percent or more of net earnings, but then I go on to say, with the exceptions of Toyota of Cincinnati and Joseph Chevrolet, the amounts paid by other Joseph Auto Group dealerships to Joseph Management at the times prior to 2015 have been approximately four to six percent of net earnings rather than 30 percent or more. **So I'm just pointing out a fact, but it becomes an opinion because, you know, I'm just, again, pointing out a management accounting practice that's different.**
>
> Q. Well, I understand the first part of that, you're pointing out a fact or your understanding of the fact. What about you pointing it out makes it an opinion?
>
> MR. MURPHY: Object to form. You can answer.
>
> A. Well, in my -- I mean, you may disagree with me on this, but in my mind I have spent, oh, gosh, you know, 40-plus years of my life in becoming educated as an accountant, becoming educated as a business valuation professional, becoming educated as a fraud professional and forensic accounting professional. … So in my mind, and like I say, you may disagree with this, but, you know, if you asked a retail clerk in Victoria Secret, you know, tell me what's the significance of this number three right here, I think she would probably say, well, you know, I read this and it says what it says and it just really, other than that, doesn't have any significance to me. When I read this, what I'm saying to you, and I'm trying to explain it to you so you will understand, in my mind there is a difference between the management accounting practices that were observed for the Columbia Oldsmobile Company and its subsidiaries and the management accounting practices observed for dealerships which are the other Joseph Auto Group dealerships. So I'm using my training, skill and education to say that I have observed this and it is material and that becomes an opinion. In other words, you

ask the little clerk, she's going to say, well, I read that and there it is.  To her that would be a fact.  **To me it's a fact turned into an opinion because I'm a professional that has all of the requisite skill, training, experience and the like to be able to say, this is my opinion that there are differences.  And it's just as simple as that.**

(Doc. 129, PageID 9599-600, Costello Dep. p. 187:12-190:18) (emphasis added).

Given the unusual nature of the observations offered as "opinions," Mr. Costello was questioned regarding any further opinions or conclusions he might seek to draw from his observations.  He testified adamantly that he would not offer any other opinions, including specifically as to the supposed significance of his observations:

Q.  All right.  Are you offering any expert opinions as to the significance of any of the items in one to 10 other than you view them as significant?
A.  That's all -- that's all I've said, I view them as significant and here they are, that's correct.
Q.  All right.
A.  So other expert opinions, if you don't see them on these pages, then you're not going to get them from me.
Q.  Okay.  And including, say, number three, that's the one you picked out as an example, you're not offering any opinions about the subject matter of number three other than the words that are set forth right there in number three, correct?

MR. MURPHY:  Objection.

Q.  You're not going to get up on the stand and say in my expert opinion number three means X, Y and Z, right?

MR. MURPHY:  Objection.

A.  That's correct.

(Doc. 129, PageID 9600-01, Costello Dep. 192:4-193:1); (*see also id.* 101:4-101:25 – not offering any opinion regarding alleged damages; 121:6-121:20 – not offering any opinion regarding the reasonableness of management fees or compensation of employees; 135:10-136:4 – not offering any opinion on the appropriateness of loans or interest received by Columbia for loans).  While Mr. Costello himself was explicit that he would not offer any opinions beyond the observations expressly set forth in his reports, including the Supplemental Costello Report, counsel for Plaintiff objected to the questioning of Mr. Costello establishing that limit.

- 8 -

Any attempt by Plaintiff to elicit further opinion testimony from Mr. Costello regarding the subject of the Costello Supplemental Report would be improper. Rule 26 requires that an expert report contain "a *complete* statement of *all opinions* the witness will express *and the basis and reasons* for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). It is not appropriate for a litigant to seek to introduce new opinions at trial that were not included in the expert's report. *See Roberts v. Galen of Va., Inc.*, 325 F.3d 776, 782-84 (6th Cir. 2002) (discussing Rule 26(a) and affirming order limiting expert testimony to opinions included in report); *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, No. 08-cv-12247, 2010 U.S. Dist. LEXIS 20444, at *10-12 (E.D. Mich. Mar. 8, 2010) (granting motion to exclude expert testimony outside scope of expert reports and holding that the scope of any testimony by an expert would be "limited to the subject matter he or she timely disclosed in his or her Rule 26(a)(2)(B) expert report"); *Asher v. Unarco Material Handling, Inc.*, No. 06-548, 2008 U.S. Dist. LEXIS 48918, at *8-12 (E.D. Ky. June 25, 2008) (granting motion to preclude party from using new opinions of its experts at trial that were "outside the scope of opinions contained in the original reports"). Any such attempt by Plaintiff in this case would be particularly unfair given Mr. Costello's insistence at his depositions that his opinions were strictly limited to the observations in his report. (*E.g.*, Doc. 129, PageID 9600, Costello Dep. 192:12-14 – "So other expert opinions, if you don't see them on these pages, then you're not going to get them from me").

## MOTION IN LIMINE No. #4
### The 2008 Audio Recording Of Ronald Joseph.

This Court should also exclude a surreptitious audio recording made by Marie Joseph of a heated argument between Ron and Marie in 2008 related to guardianship proceedings involving their mother, Najla Joseph. This audio recording – produced by Marie at MAR003841 – is over an hour in length. The dialogue between Marie and Ron spans the first 43 minutes. The rest of

the recording consists primarily of inaudible conversations with other individuals.

The argument stems from Marie's application filed in February 2008 to remove Najla as guardian of her brother, Michael Joseph, based on Najla's alleged incompetence.[2] This led to further proceedings and many intra-family disputes over who would serve as Najla's guardian. *See In re guardianship of Najla Joseph*, Hamilton County Probate Court No. 2008002862.[3] The argument between Ron and Marie involves these emotionally charged issues over familial care and guardianship, Marie's public claims that their mother was incompetent, and Ron's belief that Marie was stealing from him and from Najla. The argument took place (and the audio recording was made) sometime after Marie applied to remove Najla as guardian in February 2008, and before Marie was first deposed on October 23, 2008.

This secret audio recording, made without Ron's consent or knowledge, should be excluded from evidence under Rule 401 because it was made and involves events well-outside the applicable four-year statute of limitations (Doc. 99, 100), and because it is irrelevant to the issues that will be tried in this case. This case involves the business dealings of the Defendants related to Columbia since 2012. The conversation captured in the audio recording has no tendency to make any fact of consequence in this case more or less probable, and therefore should be excluded from evidence at trial. Fed. R. Evid. 401.

The Court should also exclude the recording under Rule 403. Any potential probative value is substantially outweighed by the danger of unfair prejudice based upon this highly

---

[2] Michael Joseph's guardianship case can be found at Hamilton County Probate Court No. 1995004607, and most of the case filings are accessible online: https://www.probatect.org/court-records/court-record-search/case-search-results/case-detail?case_id=52920 (last accessed 8/22/18)

[3] Most of the case filings from Najla's guardianship proceedings are also accessible online: https://www.probatect.org/court-records/court-record-search/case-search-results/case-detail?case_id=3105138 (last accessed 8/22/18)

emotional and deeply personal argument. The prejudice is clear when one realizes that only Marie knew the conversation was being recorded, so Marie orchestrated the conversation to make herself look better and Ron look worse. The secret audio recording is also likely to "mislead[] the jury" about the claims at issue in the case and "confus[e] the issues" material to those claims, which substantially outweighs any potential probative value. Fed. R. Evid. 403.

**MOTION IN LIMINE No. #5**
**Certain Emails Discussing Non-Columbia Dealerships**

This Court should apply its summary judgment decisions regarding the ownership of the non-Columbia dealerships and exclude two email chains that relate only to those other dealerships. In one set of emails from July 2011, Additional Defendants joke about having the dealerships in which they own 20% each pay them $1,000 per month in management fees. The other email string, from March 2013, discusses raising money for investment opportunities in internet start-ups. These emails should be excluded from trial because, among other reasons, *they are not discussing Columbia*. Under this Court's summary judgment decision, Plaintiff's claims are limited to Columbia, and therefore these emails have no relevance to this lawsuit—and, indeed, would be exceedingly misleading for the jury.

**A.  The July 2011 Emails Do Not Relate To Columbia And Are Outside The Statute Of Limitations.**

The emails sent during July 2011 discuss a "proposal" from Ron Joseph Jr. that dealerships owned by Additional Defendants pay management fees. *See* Emails dated July 6, 2011, attached as Exhibit E. Ron Jr. jokingly "proposes" that all "profitable dealerships that we own 20% in begin to pay management fees of 1000 dollars each month to each brother." *Id*. Greg responds that "none that we own 20% in are profitable," and in response to Ron Jr.'s note that Audi is profitable, Greg says "I know, I was just kidding." *Id*.

This Court should exclude these emails because they do not relate to Columbia at all. The "proposal" concerns only dealerships in which Additional Defendants each hold a **20% interest**. Because Additional Defendants own less than *1% of Columbia*, PageID6232, the emails by definition are not discussing Columbia. As such, introducing the emails as evidence relating to Plaintiff's claims about Columbia would be misleading and unfair. Although there is no evidence that Additional Defendants were involved in setting the amount of Columbia's management fees, jurors could easily confuse these emails as discussing management fees paid by Columbia. More importantly, evidence relating to transactions between entities owned exclusively by Defendants (and thus governed by different legal rules) would be both confusing and misleading when Plaintiff's claims only involve Columbia.

The emails are also irrelevant because they occurred in 2011 and therefore cannot form a basis for liability under this Court's decision granting summary judgment to Additional Defendants "to the extent the [fiduciary duty] claim is premised on acts or omissions prior to January 10, 2013." Order, Dkt #100, PageID6232. This is especially important where Plaintiff has no evidence that the "proposed" payments ever occurred. *See* Richard Joseph Dep. at 90:9-11 ("What is written in [the emails] did not happen … that looks like a sarcastic comment from my brother."); *see also* Greg Joseph Dep. at 36:11 (the potential payments discussed in that email never occurred); Ron Joseph Jr. Dep. at 87:19-23 ("this entire string of emails are sarcastic, which is a fair amount of the emails brothers do").

**B.    The March 2013 Emails Also Do Not Involve Columbia And Would Be Misleading And Unfairly Prejudicial.**

The second email string, from March 2013, should be excluded from trial for similar reasons. *See* Emails dated March 9-14, 2013, attached as Exhibit F. This email string begins with an email between Additional Defendants discussing investment opportunities, such as

wantalease.com, various real estate deals, and local internet startup statzhub.com.  *Id.* (email dated 3/9).  After some discussion of various potential investments in internet start-ups, Ron Jr. writes:  "Let's have a real plan with real money for real investments. Or lets commit to inve[st] then panic about the cash and swap will write the checks" (email dated 3/14).  George responds that "getting money is easy once we commit to a plan" and then says they "can have dealerships funnel money somewhere like swap or pond or board fees to an entity we commonly own … [or] have each store pay swapalease." *Id.* (email dated 3/14).

Once again, these emails are not talking about Columbia, but about other dealerships and investments owned by Additional Defendants.  There is no evidence that Additional Defendants used Columbia's money for personal investments, such as swapalease.com or wantalease.com.  And Plaintiff has never demonstrated such.  Unsophisticated jurors could easily miss the distinction between Defendants' ability to take money out of dealerships they 100% own and other dealerships like Columbia in which Defendants do not hold 100% ownership.

Plaintiff should not be allowed to avoid this Court's summary judgment decisions by expanding this case to Defendants' other dealerships in the hopes of profiting from jury confusion.  In *Marshall v. Rawlings Co., LLC*, No. 3:14-359, 2018 U.S. Dist. LEXIS 32493, at *42-48 (W.D. Ky. Feb. 28, 2018), the court excluded a "numbered list of events" that discussed horrific workplace bullying because the list was not related to her remaining claims and therefore "the risk of both confusing and misleading the jury" was great.  These emails are the same "type of confusing information" that "could muddle the issues," *id*, by confusing investments and other dealerships with Plaintiff's claims about money taken from Columbia.  *See also Storrs v. Univ. of Cincinnati*, No. 1:15-136, 2018 U.S. Dist. LEXIS 17451, at *16-17 (S.D. Ohio Feb. 2, 2018) (excluding evidence "not relevant" to the issues that survived summary judgment); *Antioch Co.*

*Litig. Tr. v. Morgan*, No. 3:10-156, 2014 U.S. Dist. LEXIS 69761, at *4-6 (S.D. Ohio May 21, 2014) (excluding evidence relevant to a theory on which summary judgment was granted).

## MOTION IN LIMINE No. #6
### Discovery And Shareholder Inspection Disputes.

This case has seen more than its share of discovery disputes, including many claims of impropriety against Defendants' counsel. None of those disputes should come before the jury. Courts universally agree that presenting "evidence or argument" about discovery disputes or discovery objections "would be irrelevant and unfairly prejudicial" in a jury trial. *Rheinfrank v. Abbott Labs., Inc.*, No. 1:13-144, 2015 U.S. Dist. LEXIS 120581, at *22 (S.D. Ohio Sep. 10, 2015); *Galloway v. Big G Express, Inc.*, No. 3:05-545, 2008 U.S. Dist. LEXIS 52048, at *18-19 (E.D. Tenn. July 3, 2008) (precluding "[a]ny reference to discovery disputes between parties and any documents or items subject to any discovery dispute"). If Plaintiff is allowed to discuss discovery, Defendants "under any concept of fairness, would be entitled to call [their] witnesses to explain how discovery rules function, and how, in this case, they impacted on the discovery disputes in which the parties were embroiled." *Empire Gas Corp. v. Am. Bakeries Co.*, 646 F. Supp. 269, 276 (N.D. Ill. 1986). This would create "one of the pitfalls Rule 403 is designed to prevent: confusion of the issues and misleading of the jury." *Id.*

Not only are jurors ill-equipped to understand the federal rules regarding discovery, this Court has already addressed Plaintiff's complaints. *See Hinkle v. Ford Motor Co.*, No. 3:11-24, 2012 U.S. Dist. LEXIS 130585, at *17-18 (E.D. Ky. Sep. 13, 2012) ("[I]t would not be proper to present arguments, statements, or evidence to the jury regarding discovery disputes. Likewise, it would not be proper for the plaintiffs to read to the jury discovery objections… Those matters are properly presented to the Court for resolution."). As explained by an Ohio court, the rules of civil procedure "adequately provide for sanctions or other remedies when requests for discovery

- 14 -

are not properly met." *Burwell v. American Edwards Labs*., 574 N.E.2d 1094, 1102 (Ohio App. 1989) ("[W]e can conceive of no reason why the discovery matters in this case should have been allowed to be presented to the jury.").

Leaving discovery to the courts is especially important where there are accusations of misconduct. For example, in *Thuy Van v. Language Line Servs.*, No. 14-cv-03791, 2016 U.S. Dist. LEXIS 85620, at *9 (N.D. Cal. June 30, 2016), the plaintiff argued that the jury should learn about defendants' egregious discovery conduct. But the court rejected those claims because such disputes "do not bear on the *merits* of Plaintiff's claims" and are therefore "not relevant." *Id.* at *10 (emphasis added). It was concerned about the "particularly high" risk of unfair prejudice from "evidence regarding discovery disputes, discovery negotiations, claims of privilege" and plaintiff's claims that documents were "forged." *Id.* at *9-11. It noted that the "risk of unfair prejudice is particularly high here because this Court has already denied two meritless motions for sanctions filed by Plaintiff against Defendants." *Id.* at *11-12. Just as in *Thuy Van*, this case had contentious discovery with unfounded accusations of misconduct—and Plaintiff has added opposing counsel to her witness list in an apparent attempt to bring her discovery claims before the jury. But discovery disputes should not be decided by jurors.

Nor should Plaintiff be permitted to shoehorn evidence of her shareholder inspection claim as "discovery" evidence for the same reasons of irrelevance and unfair prejudice. In addition, Plaintiff has explicitly admitted that the claim is "equitable" in nature. (Compl. ¶¶ 81-88 and Prayer for Relief C & D (seeking "equitable relief" to "inspect and copy the books and records of Columbia"); First Am. Compl., Prayer for Relief C & F (same)). Equitable claims like a shareholder inspection request must be determined by a court, not by a jury. *See Leary v. Daeschner*, 349 F.3d 888, 909-10 (6th Cir. 2003) ("because Plaintiffs' original complaint

involved only claims that were equitable in nature, Plaintiffs were not entitled to a jury trial"). Where a plaintiff brings claims for both law and equity, the jury will decide the legal claims but the Court nonetheless determines equitable claims. *See, e.g., Chao v. Metro Fitness, Inc*., No. 2:08-cv-14, 2008 U.S. Dist. LEXIS 121903, at *4 (S.D. Ohio June 17, 2008) (granting a jury trial for legal claims, but leaving the equitable relief to the judge); *Chilton v. National Cash Register Co*., 370 F. Supp. 660, 666 (S.D. Ohio 1974) (granting a jury trial for issues at law but denying it for equitable claims).

### MOTION IN LIMINE No. #7
### References To Exhibits That Are Not Admitted.

This Court should exclude any references or disclosures to the jury of the contents of any exhibit which has not been admitted into evidence, or which has been excluded from evidence by the Court. Pursuant to Rule 103, to the extent practicable, the "court must conduct a trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). In this case, Plaintiff has repeatedly made misleading arguments and statements about the contents of documents, and about documents and evidence that are not admissible—particularly as it relates to the contents of entries from Columbia's general ledger. The Court should preclude Plaintiff and her counsel from making references and arguments to the jury about the contents of exhibits that have not been admitted into evidence. *See e.g., Galloway*, 2008 U.S. Dist. LEXIS 52048, at *16-17 (granting motion in limine to preclude "[r]eference to or disclosure to the jury in argument or otherwise, the contents of any exhibit which has not been admitted into evidence or which has been expressly excluded from evidence by the Court").

### MOTION IN LIMINE No. #8
### "Send A Message" Arguments.

This Court should preclude Marie from asking the jury to "send a message" to the

Defendants or to act as the "conscience of the community" or to make similar arguments. Courts, including this Court, have prevented parties from making these type of arguments, because they encourage the jury to reach a verdict based on passion or prejudice and can "distract the jury from its sworn duty to reach a just and fair verdict."  *Storrs*, No. 1:15-cv-136, 2018 U.S. Dist. LEXIS 17451, at *21, *citing Whitehead v. Food Max*, 163 F.3d 265, 277 (5th Cir. 1998).  Such arguments should be precluded here as well under Rule 403, because they have no probative value and are likely to result in unfair prejudice.

## MOTION IN LIMINE No. #9
### "Golden Rule" Arguments.

This Court should also preclude Marie from asking the jurors to put themselves in her shoes, to treat her as a family member or friend, or to make any similar "Golden Rule" style of arguments.  Such arguments are improper under Rule 403 because they have no probative value, can only serve to confuse and mislead the jury, and could potentially prejudice the jury against the Defendants.  This Court, and many courts, have precluded parties from making these "Golden Rule" style of arguments.  *Storrs*, No. 1:15-cv-136, 2018 U.S. Dist. LEXIS 17451, at *22 ("[C]ourts have generally found the 'Golden Rule' argument improper because a jury which has put itself in the shoes of one of the parties is no longer an impartial jury… ."), *quoting Minato v. Scenic Airlines, Inc.*, 908 F.2d 976 (9th Cir. 1990).

## MOTION IN LIMINE No. #10
### References To A Party's Wealth Or Financial Position.

This Court should preclude Marie from arguing or making assertions about the Defendants' wealth, including any alleged ability to pay a verdict, or from arguing or asserting that Defendants have more financial resources than does Marie.  (Indeed, this Court has already ruled that Plaintiff was not entitled to the tax returns or compensation of Ron Joseph, Sr.)

Because these type of arguments are not relevant to any legal issue in the case, have no probative value, could serve only to confuse and inflame the jury, and therefore have been excluded by this Court and others pursuant to Rule 403.  *Storrs*, No. 1:15-cv-136, 2018 U.S. Dist. LEXIS 17451, at *20; *Cleveland v. Peter Kiewit Sons' Co*., 624 F.2d 749, 757 (6th Cir. 1980) ("Appealing to the sympathy of jurors through references to financial disparity is improper.") (citation and internal quotations omitted).

### MOTION IN LIMINE No. #11
### Joseph Auto Group As A Legal Entity.

This Court should exclude any argument or claim by Plaintiff referring to the Joseph Auto Group as a legal entity.  For the reasons explained in Defendants' summary judgment briefing, Plaintiff's Joseph Auto Group theory is not a legally cognizable claim and is factually unsupported.  References to that theory at trial would confuse and mislead the jury about the nature and extent of Plaintiff's claims and the entities that are at issue.

Respectfully submitted,

/s/ James E. Burke
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower

One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.comj
arazzaghi@fbtlaw.com

*Trial Attorneys for*
*Defendant Ronald Joseph*


s/ Scott A. Kane
Scott A. Kane (0068839)
Colter Paulson (#0081903)
SQUIRE PATTON BOGGS (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Phone: (513) 361-1240
Fax:  (513) 361-1201
scott.kane@squirepb.com
colter.paulson@squirepb.com

*Trial Attorneys for Additional Defendants*




## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018 a true and correct copy of the foregoing was

filed with the Court's ECF system, which transmitted a copy to all counsel of record.


s/ James E. Burke


- 19 -