UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | : | Case No. 1:16-cv-465 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| RONALD JOSEPH, *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING THE MOTION OF DEFENDANTS
GEORGE R. JOSEPH, GREGORY G. JOSEPH,
RICHARD S. JOSEPH, AND RONALD JOSEPH, JR.
FOR SUMMARY JUDGMENT (Doc. 118)**

This civil case is before the Court on the motion of Defendants George R. Joseph, Gregory R. Joseph, Richard S. Joseph, and Ronald Joseph, Jr. for summary judgment (Doc. 118) as well as the parties' responsive memoranda (Docs. 137, 143).[1]

## I. INTRODUCTION

This is a family dispute regarding Columbia Oldsmobile Co. ("Columbia"), an Ohio close corporation established to own auto dealerships and acquire and hold income producing real estate. Marie commenced this action alleging that Ron, Sr., Marie's brother, wrongfully gained and manipulated control over Columbia in order to acquire personal benefits not available to her. Marie also alleges that Ron's Sons assisted Ron, Sr. in implementing transactions to channel assets from Columbia to other entities owned

---

[1] Plaintiff Marie Joseph and all five Defendants share the same last name. As is common in family disputes, to avoid confusion, the Court will refer to the parties by their first name. The Court will refer to Plaintiff Marie Joseph as "Marie" - Defendant Ronald Joseph as "Ron, Sr." - and Defendants George R. Joseph, Gregory R. Joseph, Richard S. Joseph, and Ronald Joseph, Jr. as "Ron's Sons."

by Ron, Sr. and his Sons.

Ron's Sons' instant motion for summary judgment argues that they are entitled to judgment as a matter of law on all of Marie's remaining claims.[2]

## II. STANDARD

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

---

[2] At this juncture, the only claim remaining against Ron's Sons is Count Four, for breach of fiduciary duties. This Court previously granted summary judgment in favor of Ron's Sons on Count Four to the extent the claim is premised on acts or omissions prior to January 10, 2013, and to the extent based on corporate opportunities allegedly misappropriated prior to, or after, Ron's Sons' terms as directors and officers of Columbia.

### III. ANALYSIS

#### A. Marie's Claims are Derivative in Nature.

Ron's Sons argue that they are entitled to summary judgment because Marie lacks standing to assert her claims against them. The Court agrees.

A complaining shareholder is, generally, limited to asserting a derivative action to enforce a corporate claim unless the shareholder is injured in a way that is "separate and distinct" from an injury to the corporation. *See Crosby v. Beam*, 47 Ohio St. 3d 105, 107, 548 N.E.2d 217 (1989). A shareholder is not "separately and distinctly" injured when other shareholders are "similarly situated" and "could bring the same action" because "[n]one of the damage they claim is unique to them." *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St. 3d 377, 379 (1996). Derivative actions are required in these cases because "[i]f any injuries occurred, they occurred to all the other shareholders alike." *Id*.

To determine whether a claim may be brought as a direct claim, the Court must consider the nature of the alleged wrong. *Carlson v. Rabkin*, 152 Ohio App. 3d 672, 680 (2003). Here, Marie alleges that Ron's Sons, either individually or in concert with Ron, Sr.:[3]

- Implemented transactions to channel things of value from Columbia and its subsidiaries to other entities owned or controlled by Ron, Sr. or Ron's Sons (Doc. 20 at ¶ 112);

- Transferred automotive operations, real estate investments and insurance operations from Columbia and its

---

[3] This list is not intended to be exhaustive; the Amended Complaint contains 300 paragraphs. The Court recites several paragraphs here that are illustrative of Marie's claims as a whole.

3

subsidiaries to other companies that are owned or controlled by Ron, Sr. or Ron's Sons (*Id.* at ¶ 113);

- Diverted Columbia income to companies that are owned by Ron or Ron's Sons (*Id.* at ¶ 114);

- Entered into material transactions without disclosure or consent of the disinterested shareholders or disinterested members of the board of directors, and actively concealed the self-dealing transactions between Columbia and its subsidiaries on the one hand and the other companies that Ron and Ron's Sons owned or controlled on the other hand (*Id.* at ¶ 141);

- Entered into and implemented numerous financial relationships and transactions between Columbia and its subsidiaries on the one hand and other companies that Ron and Ron's Sons own or control, and did so without the consent of the disinterested shareholders or the disinterested members of the board of directors (*Id.* at ¶ 142);

- Held positions and interests in other companies that should be considered assets of Columbia, generating revenue and profits in which the shareholders of Columbia should share (*Id.* at ¶ 148);

- Held positions and interests in other companies that constitute conflicts of interest for which valid consent was never given by Columbia (*Id.* at ¶ 149);

- Conducted the operations of multiple dealerships as "the Joseph Auto Group" without providing benefits/profits from dealerships other than Columbia to Marie and other shareholders (*Id.* at ¶¶ 187-88);

- Transferred businesses out of the direct or indirect ownership or operation of Columbia without the approval of Columbia's shareholders or directors (*Id.* at ¶ 190);

- Acquired businesses for their personal benefit rather than the benefit of Columbia (*Id.* at ¶¶ 209, 223-24);

- Acquired real estate investment opportunities for their personal benefit that "were not properly offered to the

4

    disinterested shareholders, officers and directors of Columbia" (*Id.* at ¶¶ 244-246);

- Acquired insurance entities that "were not properly offered to the disinterested shareholders, officers and directors of Columbia or its subsidiaries" (*Id.* at ¶¶ 253-256);

- Caused management fees to be paid by Columbia and its subsidiaries to business entities owned by Ron's Sons without obtaining the approval of the disinterested shareholders or the disinterested directors of Columbia (*Id.* at ¶¶ 258-260);

- Diverted funds and business activities "away from Columbia and the Columbia subsidiaries" (*Id.* at ¶ 266).

<u>These claims are all derivative in nature</u>. If Ron's Sons diverted cash, assets, and business opportunities away from Columbia, they injured Marie <u>and all of Columbia's other shareholders alike</u>. If Ron's Sons acquired businesses, opportunities, and real estate that should have been offered to Columbia, they injured Marie <u>and all of Columbia's other shareholders alike</u>. If Ron's Sons engaged in self-dealing transactions without obtaining the required authorization from Columbia, they injured Marie <u>and all of Columbia's other shareholders alike</u>.

    Marie has not set forth any evidence that she suffered an injury "separate and distinct" from an injury to Columbia. The injuries of which Marie complains, if they occurred, injured all of the shareholders as well. *See Palmer v. Fox Software,* 107 F.3d 415, 419-420 (6th Cir. 1997) (minority shareholder's claims "that [another minority shareholder] injured [corporation] by taking from it opportunities that [plaintiff] contends belonged to it, and by preventing the corporation from making profits" were <u>required to be brought as a derivative action</u> because "[t]hose injuries were shared by all of the other

5

shareholders"); *Sayyah v. O'Farrell*, 12th Dist. Brown App. No. CA2000-06-017, 2001 Ohio App. LEXIS 1914 at * 11 (April 30, 2001) (claims pertaining to "the depletion of corporate property" are derivative in nature). Accordingly, Marie's claims were required to be brought derivatively pursuant to Fed. R. Civ. P. 23.1. *See Maloof v. BT Commer. Corp.*, 261 Fed. App'x 887, 889 (6th Cir. 2008) (<u>an action to redress injuries to a corporation cannot be maintained by a shareholder in his own name</u>).

   **B.** **The *Crosby* Exception Does Not Apply.**

Marie argues she falls into an exception to the derivative requirement announced by the Supreme Court of Ohio in *Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E. 2d 217 (1989). The *Crosby* exception allows minority shareholders in close corporations to assert claims directly against majority or controlling shareholders in certain circumstances:

> Claims of breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ. R. 23.1.

*Crosby*, 47 Ohio St. 3d 105, paragraph three of the syllabus.

Marie's argument fails: there is no evidence that Ron's Sons "control a majority of shares" in Columbia. The undisputed evidence is that <u>they do not</u> control anywhere close to a majority of Columbia's shares: in fact, each of Ron's Sons owns less than one percent of Columbia's voting shares. (Doc. 46-1 at ¶¶ 1-7).

6

Despite Ron's Sons' relatively meager ownership interests in Columbia, Marie argues they de facto "controlled" the company in two ways.

First, Marie alleges that on May 9, 2013, Ron's Sons signed an Action by Written Consent of Shareholders, which eliminated the existing Code of Regulations and substituted a new Code of Regulations. (Doc. 137 at 10). Under Ohio law, shareholders may adopt, amend or repeal a code of regulations <u>by written consent of two-thirds</u> of the voting power or, alternatively, at a meeting by a <u>majority vote</u>. *See* Ohio Rev. Code § 1701.11(A)(1)(b)-(c). Though Ron, Sr. owned sufficient voting shares to amend the Code of Regulations himself through a vote, Marie argues that he required the additional votes of his Sons to amend by written consent, and Ron's Sons accordingly "controlled" Columbia by using their less-than-one-percent interests to execute the Written Consent of Shareholders.

Second, Marie argues that Ron's Sons allowed Joseph Rouse—Ron, Sr.'s attorney—to vote their shares via proxy at May 10, 2013 meeting, wherein Mr. Rouse voted Ron's Sons' shares in favor of eliminating Marie's role as a member of Columbia's Board of Directors and to make Ron, Sr. the sole director. (Doc. 137 at 10).

Marie's arguments are not well-taken for four reasons.

First, the *Crosby* exception only allows direct claims against shareholders who "control a majority of shares" in a close corporation. Ron's Sons simply did not <u>control a majority</u> of shares in Columbia by voting their less-than-one-percent interests in favor of the new Code of Regulations and removing Marie as a director.

7

Marie attempts to avoid the conclusion that Ron's Sons do not control Columbia by arguing there is "strong evidence that Ron's Sons have used their shares in conjunction with Ron to exercise supermajority control over the affairs of Columbia." (Doc. 137 at 5). This argument is not availing. The entirety of the "strong evidence" Marie cites is the fact that Ron's Sons voted the same way Ron, Sr. did, twice, in May 2013. (*Id.*) The Court does not interpret the *Crosby* exception to allow direct claims against every minority shareholder who votes with a majority shareholder on a corporate resolution. *Crosby* expressly allows direct claims only against majority or controlling shareholders. Ron's Sons are neither.[4]

Second, Ron's Sons did not "control" Columbia in regards to the vote that removed Marie as a director and appointed Ron, Sr. as the sole director because

---

[4] In *McLaughlin v. Beeghly*, 84 Ohio App. 3d 502 (10th Dist.), the Ohio Tenth District Court of Appeals held that one shareholder in a close corporation with three equal shareholders controlled the corporation by "disregarding corporate procedures" and "effectively exercising the voting power of" one of the other two equal shareholders. *Id.* at 507. The court held that, to all intents and purposes, the defendant "controlled the voting power" of one of the other two equal shareholders "as if he actually owned those shares." *Id. McLaughlin* is occasionally cited for the proposition that one shareholder does not have to necessarily own a majority of shares to be in "control" of the corporation.

This Court does not find the reasoning of *McLaughlin* applicable to this case. Columbia—unlike the corporation in *McLaughlin*—has a majority shareholder: Ron, Sr. The parties have not cited, and this Court is not aware of, any authority standing for the proposition that minority shareholders can "control" a close corporation—for purposes of *Crosby* standing or otherwise—when another shareholder actually owns a majority of shares in the corporation.

Second, even if a minority shareholder could "control" a close corporation with a majority shareholder, the facts asserted by Marie do not establish any such "control." The Court cannot conclude that Ron's Sons "controlled" Columbia by voting their shares to amend a Code of Regulations that Ron, Sr. could have changed himself by a vote. Ron's Sons' votes were neither necessary nor sufficient to amend the Code of Regulations. Similarly, the Court cannot conclude that Ron's Sons "controlled" Columbia by giving someone else the ability to vote their shares by proxy.

8

Ron's Sons did not vote their shares on that issue. Ron's Sons authorized Mr. Rouse to vote their shares by proxy on "the election of a Director or Directors." (Doc. 138-2 at 1-5). There is no evidence that Ron's Sons "controlled" Columbia through Mr. Rouse; to the contrary, Mr. Rouse does not recall communicating with any of Ron's Sons about the proxy. (Doc. 118-4 at 5-6).[5]

Third, even if Ron's Sons "controlled" Columbia by voting their relatively insignificant shares in favor of a new Code of Regulations and removing Marie as a director, that is not consequential. Marie may only assert direct claims against Ron's Sons if they used their (alleged) control "to deprive [Marie] of the benefits of [her] investment." *Crosby*, 47 Ohio St. at 109-110. Marie has not set forth any argument or evidence that Columbia's adoption of a new Code of Regulations, or her removal as a director, deprived her of the benefit of her investment as a minority shareholder.

Fourth, and finally, the rationale of the *Crosby* exception does not support allowing Marie to assert direct claims against Ron's Sons. The Supreme Court of Ohio explained in *Crosby* that derivative lawsuits were not effective remedies for claims against majority shareholders in close corporations because recovery in derivative lawsuits accrues to the corporation and would accordingly "remain under the control of

---

[5] Marie objects to the following statement in Ron's Sons' statement of proposed undisputed facts as irrelevant and misleading: "Deposition discovery of Mr. Rouse, Ron, Joseph Sr. and each of the Additional Defendants has confirmed there was no communication regarding the reason for the proxy and no effort by them to control the vote or affect the rights of Plaintiff." (Doc. 138 at 10). Here, the Court relies on the actual testimony of Mr. Rouse, which the Court finds to be both relevant and straightforward. Marie's objection is overruled. *See* Doc. 159, Order Denying Plaintiff's motions to strike.

the very parties who are defendants in the litigation." 47 Ohio St.3d at 109 (emphasis supplied). That concern is not present here; any recovery that accrued to Columbia in a derivative lawsuit would not be under the "control" of Ron's Sons, who each own less than one percent of Columbia's voting shares.

## IV. CONCLUSION

Marie's claims against Ron's Sons are derivative in nature. Marie has not set forth any argument or evidence demonstrating that she has been harmed in a way that is "separate and distinct" from Columbia. Though the *Crosby* exception allows minority shareholders to assert direct claims against majority shareholders in certain circumstances, there is no evidence that Ron's Sons—who each own less than one percent of Columbia's voting shares—control the company. Marie simply does not have standing to assert these derivative claims against Ron's Sons directly.

Accordingly, Ron's Sons' motion for summary judgment (Doc. 118) is **GRANTED**.

**IT IS SO ORDERED.**

Date: 8/27/18

*Timothy S. Black*
Timothy S. Black
United States District Judge