UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

```
. . . . . . . . . . . . . . . .
MARIE JOSEPH,                    .  Case No. 1:16-cv-465
                                 .
          Plaintiff,             .  Day 10 of Jury Trial
                                 .
        - v -                    .
                                 .  Monday, October 22, 2018
RONALD JOSEPH, et al.,           .  9:32 AM
                                 .
          Defendants.            .  Cincinnati, Ohio
. . . . . . . . . . . . . . . .
```

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE, AND JURY

APPEARANCES:
_____

For the Plaintiff:    KEVIN L. MURPHY, ESQ.
                      J. JEFFREY LANDEN, ESQ.
                      NICHOLAS R. GREGG, ESQ.
                      Murphy Landen Jones PLLC
                      2400 Chamber Center Drive, Suite 300
                      Ft. Mitchell, Kentucky 41017-0534

For the Defendant Ronald Joseph:

JAMES E. BURKE, ESQ.            JAMES C. FROOMAN, ESQ.
RACHAEL A. ROWE, ESQ.          Frost Brown Todd LLC
JACOB D. RHODE, ESQ.           3300 Great American Tower
Keating Muething Klekamp PLL   301 East Fourth Street
One East Fourth Street         Cincinnati, Ohio  45202
Suite 1400
Cincinnati, Ohio  45202-3752

Also present:         Christine Duggins, Paralegal
                      Donnie Guillory, IT
                      Marie Joseph
                      Ronald Joseph

Law Clerk:            Jeremy D. Smith, Esq.

Courtroom Deputy:     Scott M. Lang

Court Reporter:       Luke T. Lavin, RDR, CRR

_Proceedings recorded by stenotype; transcript
produced by computer-aided transcription._

<u>P R O C E E D I N G S</u>

1

2       (In open court at 9:32 AM, no jury present.)

3           THE COURT:  Please be seated.

4       Good morning.  We're back in the open courtroom on the

5  record.  The jury is upstairs ordering their lunch, and we are

6  prepared to proceed to instruction on the law and closing

7  argument.

8       Plaintiff is here with her lawyers.  Defendant is here with

9  his lawyers.

10      Are we ready to get the jury, or are there issues we ought

11 to address before we get them?  First, from the plaintiff?

12          MR. BURKE:  Just briefly, Your Honor.

13          THE COURT:  Yes.

14          MR. BURKE:  I assume that both sides are reserving any

15 objections that they raised at the charging conference to the

16 final jury instructions.

17          THE COURT:  Indeed.

18          MR. BURKE:  Thank you.

19          THE COURT:  Very well.

20          MR. BURKE:  One other thing, Your Honor.  I assume,

21 but you tell me if you disagree, that you read the

22 instructions, Mr. Murphy will go, and I'll continue, as opposed

23 to taking some kind of a break for lunch, even if we go a

24 little bit past noon?

25          THE COURT:  I'm inclined to do that, but I welcome to

1    hear either side.

2            MR. BURKE:  Okay.

3            MR. MURPHY:  Your Honor --

4            THE COURT:  Yes.

5            MR. MURPHY:  -- it's my understanding that the

6    plaintiff closes, the plaintiff goes last.

7            MR. BURKE:  I'm not suggesting anything else.

8            THE COURT:  Right.  You go first and last or --

9            MR. MURPHY:  Yes, that Jim closes first and then I do.

10           THE COURT:  And is that the defendant's perspective?

11           MR. BURKE:  That's not what I thought, but fine with

12   me, Your Honor.

13           THE COURT:  Very well.  Because -- hang on.  Let's

14   just talk this through.  I'm not fully invested in it.  If you

15   both agree, you both agree.  But typically plaintiff has the

16   first word and the last word.  Given the burden shifting, why

17   is it that plaintiff wants to go second rather than first and

18   last?

19           MR. MURPHY:  It's always been my experience in federal

20   court that the plaintiff opens, goes first in the opening, and

21   then the plaintiff closes and goes last.  That's always been my

22   experience.

23           THE COURT:  That's what I was saying.  You would go

24   first, he would go second, you would have the last word.

25           MR. MURPHY:  All right.

 1          THE COURT:  Is that what you wanted or intended?  I

 2   misunderstand.

 3          MR. BURKE:  I think that's right.  I think Kevin goes

 4   first, I go second, then Mr. Murphy gets to stand up and do

 5   whatever rebuttal he thinks is appropriate.

 6          THE COURT:  That's typically the way it goes.

 7      Does Ms. Rowe agree with you?

 8          MS. ROWE:  I do.  Thank you, Your Honor.

 9          THE COURT:  I just want to shake this out.  I don't

10   understand what you're saying.  Is that the way you would

11   prefer to do it?

12          MR. MURPHY:  I prefer that Mr. Burke goes and then I

13   go next.

14          THE COURT:  And then we're done?

15          MR. MURPHY:  Right.

16          THE COURT:  And why would the plaintiff not close

17   first?  I mean, that's your experience in all cases, is it not?

18          MR. MURPHY:  It's been my experience that when the

19   trial starts, the plaintiff does opening statement first, then

20   the defendant speaks, and then at the end of the trial, the

21   defendant does his closing argument first and then the

22   plaintiff.  That's been my experience.

23          THE COURT:  That's crazy, but --

24          MR. BURKE:  It's not my experience, Your Honor, and I

25   think the ordinary way it's ordinarily done is they go first at

1  the beginning, they go first at the end.

2        THE COURT:  Well, I think going first and last is a

3  good thing.

4        MR. MURPHY:  All right.

5        THE COURT:  We will proceed in that way.

6        MR. MURPHY:  Okay.

7        THE COURT:  Now, are you planning to show the jury

8  demonstrative stuff or evidence?  First, from the plaintiff's

9  perspective?

10        MR. MURPHY:  Yes.

11        THE COURT:  And the demonstrative charts that are not

12  in evidence but are assisting in closing argument are not going

13  to the jury; correct?

14        MR. MURPHY:  That is correct.

15        THE COURT:  And the defense agrees?

16        MR. BURKE:  That is correct.  There were some

17  demonstratives, as you know, that were admitted, and we will

18  point those out, but there are others that will not go back to

19  the jury, correct.

20        THE COURT:  Very well.

21     Is there anything else we need -- well, the jury's going to

22  come down, I'm going to read them the instructions, and that's

23  going to take a while, at least an hour.  And then we're just

24  going to roll straight into closing argument.  The plaintiff

25  understands?

```
 1              MR. LANDEN:  Yes, Your Honor.

 2              THE COURT:  And the defense as well?

 3              MR. BURKE:  The only thing we need, Your Honor, is a

 4  little bit of time for the IT folks to turn the podium

 5  sideways, that's all.

 6              THE COURT:  I will grant you that concession.

 7              MR. BURKE:  Thank you.

 8              THE COURT:  Very well.

 9      Yes, sir?

10              MR. LANDEN:  Your Honor, one other point on the jury

11  instructions.

12              THE COURT:  Yes.

13              MR. LANDEN:  Both sides are preserving their

14  objections from the jury charging conference.

15              THE COURT:  But of course.

16              MR. LANDEN:  And we simply want to note an objection

17  to just -- not to reargue it but just to note our objection.

18  On the variation that came out over the weekend, there's an

19  instruction there or some instructions there that were not what

20  we had asked for and not necessarily what the other side had

21  asked for either, and we just want to preserve our objections

22  on those as well.

23              THE COURT:  All objections are preserved.

24              MR. LANDEN:  Thank you, Your Honor.

25              THE COURT:  It's the Judge's responsibility to shake
```

```
 1   through the opposing proposed instructions, and then it's in

 2   its discretion to do what the evidence and the law requires.

 3             MR. LANDEN:  We understand.

 4             THE COURT:  Very well.

 5             MR. LANDEN:  Thank you.

 6             THE COURT:  Let's get the jury.

 7             COURTROOM DEPUTY:  All rise for the jury.

 8      (Jury in at 9:38 AM.)

 9             THE COURT:  The jurors can be seated as they join us,

10   the court reporter as well.

11      You may all be seated.  Thank you.  The seven members of

12   the jury have joined us this Monday morning.  Good morning.

13             MEMBERS OF THE JURY:  Good morning.

14             THE COURT:  We have reached the rubicon.  I'm going to

15   instruct you in the law, and then the lawyers are going to make

16   closing argument that's not evidence but designed to persuade

17   you.

18      I'm required by law to read you the jury instructions.

19   I've provided you with a packet, each of you with a packet.

20   Some people retain best by hearing, some people retain best by

21   reading; you can do both.  I think it's 56 pages, if you don't

22   count the covering stuff, so brace yourself.

23      The last time somebody read out loud to me was my mother

24   trying to put me to sleep.  That's not the design here.  The

25   Court and the community appreciate your close attention
```

1   throughout this trial.  I've been watching.

2       Members of the jury, you've heard the evidence and the

3   arguments of counsel.  It's now the duty of the Court to

4   instruct you on the law which applies to this case.

5       The Court, the Judge, and the jury have separate functions.

6   You decide the disputed facts, and I give the instructions of

7   law.  It's your sworn duty to accept these instructions and to

8   apply the law as it is given to you.  You're not permitted to

9   change the law or apply your own idea of what you think the law

10  should be.

11      You have two main duties as jurors.  The first duty is to

12  decide what the facts are from the evidence that you saw and

13  heard here in the courtroom.  Deciding what the facts are is

14  your job, not mine, and nothing I have said or done during the

15  trial was meant to influence your decision about the facts in

16  any way.

17      Your second duty is to take the law that I give you and

18  apply it to the facts.  It's my job to instruct you about the

19  law, and you're bound by the oath that you took at the

20  beginning of the trial to follow the instructions that I give

21  you, even if you personally disagree with them.  This includes

22  the instructions that I gave you before and during the trial,

23  and these instructions.  All the instructions are important,

24  and you should consider them as a whole.

25      The lawyers will talk about the law during their closing

argument perhaps, but if what they say is different from what I say and what is written here, you must follow what I say.  What I say about the law controls.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.  I'll provide some background on the parties in this case.

In a civil case, a plaintiff asserts a claim against the defendant.  The plaintiff in this case is Marie Joseph.  The defendant in this case is Ronald Joseph.  I'll later describe the legal claim asserted in the case.

The plaintiff and the defendant are brother and sister with the same last name.  In these jury instructions I'll sometimes refer to plaintiff as "Marie" rather than as Ms. Joseph, and refer to the defendant as "Ron" rather than as Mr. Joseph.  You may have noticed that counsel and some witnesses have done the same.  This does not imply any personal familiarity with either of the parties or favoritism toward either one of them, nor is it intended as a signal of disrespect to either of them.  The use of their first names is simply an effort to avoid confusion.

Columbia Oldsmobile Company, which I will refer to as "Columbia," is not a party to this case, but Marie's allegations relate to Columbia.  Columbia is a closely held corporation organized under the laws of the state of Ohio.  A

closely held corporation is a corporation that has relatively
few shareholders and whose shares are not traded in the stock
market.

As to the burden of proof, the person who claims that
certain facts exist must prove them by a preponderance of the
evidence.  This duty is known as the burden of proof.

Preponderance of the evidence is the greater weight of the
evidence, that is, evidence that you believe because it
outweighs, in your mind, the evidence opposed to it.  A
preponderance means evidence that is more probable, more
persuasive, or of a greater probative value.  You must weigh
the quality of the evidence.  Quality may or may not be
identical with the greater number of the witnesses.

So as to the nature of this action, the plaintiff, Marie,
has asserted a claim against the defendant, Ron, which will be
discussed in more detail.  For now, it's sufficient to state
that Marie asserts a claim against Ron for breach of fiduciary
duties, which is solely related to the corporate activities of
Columbia, of which Ron is a majority shareholder and Marie is a
minority shareholder.

The plaintiff, in this case Marie, has the burden in a
civil case to prove every essential element of her claim.  In
this civil case, Marie must prove each element of her claim for
breach of fiduciary duties by a preponderance of the evidence.

Marie's claim for breach of fiduciary duties is premised on

multiple alleged actions and omissions.  In other words, Marie
alleges that multiple actions and omissions allegedly taken or
not taken by Ron each constitute a breach of fiduciary duty.
You should consider each act or omission that Marie claims
constitutes a breach of fiduciary duty separately.

If Marie establishes all the elements of her breach of
fiduciary duties claim by the preponderance of the evidence for
any particular act or omission, you must find for Marie as to
that act or omission.  If Marie fails to establish any element
of her claim by the preponderance of the evidence for any
particular act or omission, you must find for Ron as to that
act or omission.

Evidence is all the testimony received from the witnesses,
including depositions, exhibits admitted during the trial, any
facts agreed to by the lawyers, and any facts which the Court
requires you to accept as true.  Evidence may be direct or
circumstantial, or both.

Direct evidence is the testimony given by a witness who has
seen or heard the facts to which he or she testifies.  It
includes exhibits admitted into evidence during the trial and
the stipulations that you are instructed to accept as fact.

Circumstantial evidence is the proof of facts or
circumstances by direct evidence from which you may reasonably
infer other related or connected facts which naturally and
logically follow, according to the common experience of

1   humankind.

2        To infer, or to make an inference, is to reach a reasonable

3   conclusion of fact, which you may, but are not required to,

4   make from other facts which you find have been established by

5   direct evidence.  Whether an inference is made rests entirely

6   with you.

7        You may infer a fact or facts only from other facts that

8   have been proved by the greater weight of the evidence, but you

9   may not infer a fact or facts from a speculative or remote

10  basis that has not been established by the greater weight of

11  the evidence.

12       Counsel may have agreed upon written stipulations and

13  exhibits concerning certain evidence, and these will be with

14  you during your deliberations.

15       What evidence excludes.  Evidence does not include the

16  pleadings or any statement of counsel made during the trial,

17  unless such statement was an admission or agreement admitting

18  certain facts.  The opening statements and the closing

19  arguments of counsel are designed to assist you, but they are

20  not evidence.

21       Statements or answers ordered stricken, or to which the

22  Court sustained an objection, or which you were instructed to

23  disregard, are not evidence and must be treated as though

24  you've never heard them.

25       You must not guess why the Court sustained an objection to

1  any question or what the answer to the question might have

2  been.  You must not consider as evidence any suggestion

3  included in a question that was not answered.

4      Some charts and summaries have been shown to you in order

5  to help explain facts disclosed by books, records, and other

6  documents in evidence in the case.  These charts or summaries

7  are not themselves evidence unless they were admitted into

8  evidence or proof of any facts.  If the charts or summaries do

9  not correctly reflect facts or figures shown by the evidence in

10 the case, you should disregard them.

11     Charts and summaries are used as a matter of convenience.

12 To the extent that you find they are not truthful summaries of

13 facts or figures shown by the evidence in the case, you should

14 disregard them entirely.

15     As to credibility, you are the sole judges of the

16 credibility of the witnesses and the weight their testimony

17 deserves.  You may be guided by the appearance and conduct of

18 the witness, or the manner in which the witness testifies, or

19 by the character of the testimony given, or by evidence

20 contrary to the testimony.

21     You should carefully examine all of the testimony given,

22 circumstances under which each witness has testified, and every

23 matter in evidence tending to show whether a witness is worthy

24 of belief.  Consider each witness' intelligence, motive and

25 state of mind, and demeanor or manner while testifying.

1    Consider the witness' ability to observe the matters as to
2    which the witness has testified, and whether the witness
3    impresses you as having an accurate recollection of these
4    matters.  Also consider any relation each witness may have with
5    either side of the case, the manner in which each witness might
6    be affected by the verdict, and the extent to which the
7    testimony of each witness is either supported or contradicted
8    by other evidence in the case.

9    Inconsistencies or discrepancies in the testimony of a
10   witness, or between the testimony of different witnesses, may
11   or may not cause you to discredit such testimony.  Two or more
12   persons seeing an event may see or hear it differently.

13   In weighing the effect of a discrepancy, always consider
14   whether it pertains to a matter of importance or an unimportant
15   detail, and whether the discrepancy results from innocent error
16   or intentional falsehood.

17   After making your own judgment, you will give the testimony
18   of each witness such weight, if any, that you may think it
19   deserves.  In short, you may accept or reject the testimony of
20   any witness, in whole or in part.

21   In addition, the weight of the evidence is not necessarily
22   determined by the number of witnesses testifying to the
23   existence or non-existence of any fact.  You may find that the
24   testimony of a smaller number of witnesses as to any fact is
25   more credible than the testimony of a larger number of

witnesses to the contrary.

The Rules of Evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for expert witnesses. An expert witness is a person who, by education and experience, has become an expert in some art, science, profession, or calling. Expert witnesses state their opinions as to the matters in which they profess to be an expert and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide the opinion of an expert is not based upon sufficient evidence and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's testimony is outweighed by evidence, other evidence, you may disregard the opinion entirely. You decide who to believe.

Normally a lay witness, that is, a witness who is not identified as an expert, may not express an opinion. However, a lay witness may offer an opinion that's rationally based on the witness' perception. Lay witness opinions may be based on particularized knowledge acquired by the witness by virtue of his or her position in a business.

In deciding the value of a lay opinion, you will consider the opportunity the witness had to observe the facts and his or

1   her knowledge of and experience with those facts.  In addition,

2   you will apply the usual rules for testing credibility and

3   deciding the weight to be given to the testimony.

4        A witness may be discredited or impeached by contradictory

5   legal evidence, by a showing that he or she testified falsely

6   concerning a material matter, or by legal evidence that at some

7   other time the witness has said or done something or has failed

8   to say or do something which is inconsistent with the witness'

9   present testimony.

10       In addition, a witness may be discredited or impeached by

11  showing that the witness has made a false statement, whether

12  under oath or not, in other circumstances in which the witness

13  had a motive to make false statements.

14       If you believe that any witness has been so impeached, then

15  it's your exclusive province to give the testimony of that

16  witness such credibility or weight, if any, as you may think it

17  deserves.

18       If a witness is shown knowingly to have testified falsely

19  concerning any material fact, you have a right to distrust such

20  witness' testimony on other particulars, and you may reject

21  part or all of the testimony of that witness or give it such

22  weight as you may think it deserves.

23       An act or omission is "knowingly" done if done voluntarily

24  and intentionally, and not because of mistake or accident or

25  some other innocent reason.

1    As to exhibits, a number of exhibits and testimony related

2    to them have been introduced.  You will determine what weight,

3    if any, the exhibits should receive in the light of all the

4    legal evidence.

5    You may note that some documents have not been introduced

6    and are not exhibits with you in the jury room.  These

7    documents are not legal evidence.  We will send binders

8    upstairs with all of the exhibits that are before you.

9    Very well.  As to plaintiff's claim, now my instructions

10   will focus on the specific allegations and defenses for this

11   lawsuit.  I will explain the legal terms used here after I

12   provide a general overview of Marie's claim.

13   Marie has asserted a claim for breach of fiduciary duties

14   against Ron, for which she seeks damages.  Marie alleges that

15   on and after April 12, 2012, Ron, the majority shareholder of

16   Columbia, breached fiduciary duties he owed to Marie as a

17   minority shareholder of Columbia and that these breaches

18   proximately caused Marie financial damages.  Ron denies that he

19   breached any fiduciary duties, denies that any of the

20   transactions or actions about which Marie complains harmed

21   Columbia or Marie in any way, and asserts that these

22   transactions and actions were fair to Columbia and its

23   shareholders.

24   Though Marie's claim is premised on numerous transactions,

25   she alleges that Ron breached his duties in two ways:

1    First, Marie alleges that Ron breached duties owed to her

2   as a shareholder of Columbia by engaging in unauthorized and

3   undisclosed self-dealing transactions involving Columbia and

4   its subsidiaries, on the one hand, and Ron, his sons, or

5   entities they own or control on the other.  The alleged

6   transactions at issue include:

7    Number one:  Management fees paid by Columbia Automotive,

8   Inc. and Columbia Development Corporation to Pond Realty

9   Company, doing business as Joseph Management Company, an entity

10  that Ron's sons own and of which Ron is the president.

11   Number two:  Other transfers from Columbia and its

12  subsidiaries to Pond Realty Company.

13   Three:  Fleet sales transactions between Columbia and

14  entities owned or controlled by Ron and his sons including, but

15  not limited to, Joseph Chevrolet Company, Joseph T of C Co.,

16  Inc., Joseph Buick-GMC Truck, Inc. and Camargo Cadillac.

17   Four:  Disbursements of Columbia's money to Pond Realty

18  Company to be held in the sweep account, also known as the U.S.

19  Bank Money Center account.

20   Five:  Disbursements of money in the form of loans and/or

21  investments from Columbia Development Corporation to Camargo

22  Cadillac Company, Joseph Development, and Gold Circle Mall.

23   Six:  Using Columbia employees to perform work for Ron and

24  for other entities he owns or controls.

25   Seven:  Using Columbia funds to pay for personal expenses,

1 such as county club expenses, dining club dues, continuing

2 legal education expenses, security services, Cincinnati Reds

3 tickets, and other items such as food and meals.

4     Ron denies all of these allegations and asserts that all of

5 these transactions were fair to Columbia and that all of the

6 transactions ultimately benefited Columbia and Marie.

7     Second, Marie alleges that Ron breached duties owed to her

8 as a minority shareholder of Columbia by usurping or taking

9 corporate opportunities for himself by causing other companies

10 to acquire two lots of land.  One of the lots is located at

11 3464 Poole Road and was acquired by Joseph T of C in 2012.  The

12 other lot is located at 8583 Colerain Avenue and was acquired

13 by Joseph Realty LLC in 2014.  I'll refer to both lots

14 collectively as the "parking lots."  Marie alleges that the

15 opportunity to acquire the parking lots should have been

16 offered to Columbia and Ron's failure to do so harmed Columbia

17 and caused Marie damages.

18     Ron denies that he was involved with the purchase of the

19 parking lots, denies that he had an obligation to offer the

20 opportunity to acquire the parking lots to Columbia, and denies

21 that the purchase of the parking lots by other entities harmed

22 Columbia or caused damage to Marie.

23     Marie's claim for breach of fiduciary duties is limited to

24 alleged acts or omissions by Ron that occurred on or after

25 April 12, 2012.  Any evidence or testimony concerning acts or

1  omissions that took place before April 12, 2012 is relevant

2  only to the extent it might support the elements of Marie's

3  claim with respect to acts or omissions that took place on or

4  after April 12, 2012.

5      As to the elements of breach of fiduciary duties, Marie's

6  claim, to prove her claim for breach of fiduciary duties

7  against Ron, the law requires Marie to establish:  one, the

8  existence of a duty owed by Ron arising from a fiduciary

9  relationship between Ron and Marie; two, a failure by Ron to

10  observe that duty; and, three, an injury or damage to Marie

11  resulting proximately from Ron's failure to observe a fiduciary

12  duty owed to Marie.  Marie must prove each one of these

13  elements by a preponderance of the evidence.  In the next

14  several instructions, I'll explain each of these three elements

15  in greater detail.

16      The first element:  duty.  To satisfy the first element of

17  her claim, Marie must prove by a preponderance of the evidence

18  that Ron had a duty to Marie arising from a fiduciary

19  relationship.

20      A fiduciary is a person having a duty, created by his or

21  her undertaking, to act primarily for the benefit of another in

22  matters connected with the undertaking.

23      In a close corporation, a majority shareholder occupies a

24  position of trust in relation to the corporation and to

25  minority shareholders.  Therefore, both parties agree that Ron

1    owed fiduciary duties to Marie in her capacity as a minority

2    shareholder of Columbia regarding matters connected with

3    Columbia.  These duties include but are not limited,

4    necessarily, to the duty to refrain from self-dealing, a duty

5    of disclosure, a duty of loyalty, and a duty of utmost good

6    faith.

7        As to the second element -- breach -- the second element of

8    Marie's claim is that she must prove by a preponderance of the

9    evidence that Ron breached the fiduciary duties he owed to

10   Marie.

11       As I've explained, Marie alleges that Ron breached

12   fiduciary duties in two different ways:  one, by engaging in

13   self-dealing transactions with Columbia on one side of the

14   transaction and companies Ron and/or his sons own or have an

15   interest in on the other side; and, two, usurping corporate

16   opportunities by acquiring two parking lots for other companies

17   without first offering the opportunity to acquire the parking

18   lots to Columbia.

19       In the next several instructions, I will explain what Marie

20   must prove by a preponderance of the evidence in order to

21   establish that the alleged self-dealing transactions, and the

22   alleged usurpation of corporate opportunities, constitute a

23   breach of fiduciary duties.

24       Keep in mind that Marie alleges multiple actions or

25   omissions taken by Ron each constitute a breach of fiduciary

duty.  If Marie is able to show by a preponderance of the evidence that one action or omission by Ron was a breach of fiduciary duty, it does not necessarily follow that the other alleged actions or omissions were also breaches of fiduciary duty.  Similarly, if Marie is not able to show that one action or omission by Ron was a breach of fiduciary duty, it does not necessarily follow that the other alleged actions or omissions also do not constitute breaches of fiduciary duty.  You must consider whether each act and omission alleged by Marie constitutes a breach of fiduciary duty.

As to usurpation of corporate opportunities, Marie alleges that Ron breached fiduciary duties owed to her by allegedly usurping corporate opportunities in connection with the acquisition of the two parking lots by Joseph T of C and Joseph Realty LLC.  Marie alleges the opportunity to acquire these parking lots should have been, but were not, presented to Columbia.

In order to prove that Ron's failure to offer the opportunity to acquire a particular parking lot to Columbia constituted a breach of fiduciary duties, Marie must show by a preponderance of the evidence that:  one, Ron acquired knowledge or information about the opportunity to purchase the parking lot; two, Ron acquired that information in his capacity as a fiduciary of Columbia and did not acquire that information in his personal capacity or his capacity as an owner or

1  employee of another company; three, the purchase of the parking

2  lot was in Columbia's line of business; four, the purchase of

3  the parking lot would have been advantageous to Columbia; and,

4  five, Columbia was able to purchase the parking lot.

5      If you find that Marie has proved each of these elements by

6  a preponderance of the evidence, then you must find for Marie

7  on this part of her claim.  If you find that Marie has failed

8  to prove any one of these elements by a preponderance of the

9  evidence, then you must find for Ron on this part of Marie's

10 claim.

11     As to breach relating to alleged self-dealing transactions,

12 Marie alleges that Ron breached fiduciary duties owed to her by

13 engaging in unauthorized and undisclosed self-dealing

14 transactions involving Columbia and its subsidiaries, on the

15 one hand, and Ron, his sons, or entities they own or control on

16 the other, including transactions involving the fleet sales

17 program, the U.S. Bank Money Center account, also known as the

18 sweep account, the management fees paid to Pond Realty Company

19 doing business as Joseph Management, other transfers from

20 Columbia and its subsidiaries to Pond Realty Company,

21 disbursements categorized as loans or investments to other

22 dealerships, using Columbia employees to perform work for other

23 businesses Ron owns, and the payment of things like club

24 memberships and dues, sports tickets and security services.

25     If you find that Marie has shown, by a preponderance of the

1   evidence, that Ron engaged in undisclosed self-dealing, then

2   Ron is presumed to have breached his fiduciary duties in

3   regards to this particular transaction unless, as explained in

4   the next instruction, Ron proves by a preponderance of the

5   evidence that the transaction was fair to Columbia.

6       Ron engaged in undisclosed self-dealing if Ron engaged in a

7   transaction in which Ron had a material pecuniary interest and

8   that interest reasonably would be expected to affect Ron's

9   judgment in a manner adverse to Columbia, and, two, Ron failed

10  to disclose his interest in the transaction to Columbia.

11      Ron did not engage in undisclosed self-dealing if he did

12  not know about the transaction or transactions in which he is

13  alleged to have an interest, as Ron did not have a duty to

14  disclose transactions of which he was unaware.

15      Fairness.  If Marie shows by a preponderance of the

16  evidence that Ron engaged in a transaction or transactions that

17  constitute undisclosed self-dealing, that does not mean that

18  transaction or those transactions are a breach of fiduciary

19  duties.  Instead, the burden of proof shifts to Ron to prove,

20  by a preponderance of the evidence, that the transaction or

21  transactions constituting undisclosed self-dealing were fair to

22  Columbia.

23      In determining whether a transaction was fair to Columbia,

24  you must consider whether the transaction was intrinsically

25  fair to Columbia as of the date of the transaction.  You should

1   consider all aspects of each transaction in reaching this

2   determination.  You should consider whether the transaction was

3   for a legitimate business purpose.

4       If Ron proves by a preponderance of the evidence that an

5   undisclosed self-dealing transaction was fair to Columbia, then

6   you should find that transaction is not a breach of fiduciary

7   duties.  If Ron does not prove by a preponderance of the

8   evidence that an undisclosed self-dealing transaction was fair

9   to Columbia, then you should find that the transaction is a

10  breach of fiduciary duties.

11      The third element of Marie's claim is that she must prove

12  by a preponderance of the evidence that Ron proximately caused

13  an injury to Marie that resulted in money damages to Marie.

14  Damage to Marie is an essential element of Marie's claim for

15  breach of fiduciary duty.

16      Even if you determine that Ron failed to demonstrate that a

17  transaction was fair to Columbia, you must separately consider

18  whether Marie has demonstrated by a preponderance of the

19  evidence that a transaction caused damages to Marie.

20      Marie, as the plaintiff, has the burden of proving damages

21  by a preponderance of the evidence.  Damages means the amount

22  of money that will reasonably and fairly compensate the

23  plaintiff for any injury you find was caused by the defendant.

24      It is for you to determine what damages, if any, have been

25  proved.  Your award must be based upon evidence and not upon

1    speculation, guesswork, or conjecture.

2        Damage is proximately caused by an act or failure to act

3    whenever it appears from the evidence that the act or failure

4    to act played a substantial part in bringing about or actually

5    causing the damage, and that the damage was either the direct

6    result or a reasonably probable consequence of the act or

7    omission.  Proximate cause contemplates a probable or likely

8    result, not merely a possible one.

9        A client is charged with the knowledge of his attorney's

10   notice or knowledge of facts or information acquired in the

11   course of the representation for which the attorney has been

12   engaged.  As a general rule, an attorney acting within the

13   scope of his authority represents his client, and his acts or

14   omissions are to be regarded as the acts of the person he

15   represents and are equivalent to the acts of the client

16   himself.

17       No duty to declare dividend.  A dividend is a distribution

18   of earnings and profit made by a corporation to its

19   shareholders.  Dividends are paid from a corporation's surplus,

20   that is, the surplus earnings that remain after defraying every

21   expense of the corporation.

22       Shareholders of an Ohio corporation have no right or

23   entitlement to dividends.  The power to declare dividends rests

24   with the directors of the corporation, and a large discretion

25   is given to them whether to retain its surplus profits as part

of the working capital or divide it out to the shareholders.

An abuse of that discretion may give rise to a cause of action.

But plaintiff's claim in this lawsuit is not premised on the failure to declare dividends.  In other words, plaintiff's not alleging that defendant breached his duties to her by not declaring a dividend in any particular year.

Compensatory damages.  If you find that Ron is liable to Marie for breach of fiduciary duties, then you must determine an amount that is fair compensation for all of her damages.  These are called compensatory damages.  The purpose of compensatory damages is to make a plaintiff whole, that is, to compensate Marie for any damage that she has suffered.  Marie must prove her damages by a preponderance of the evidence.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.

On the other hand, the law does not require that a plaintiff prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, if any, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

Nominal damages.  If you find for Marie and decide that Ron

1    breached his fiduciary duties, but you also find that Marie

2    failed to prove by a preponderance of the evidence any actual

3    damages attributable to the breach, then you may award her

4    nominal damages.  Nominal means trifling or small.

5        The fact that I've instructed you as to the proper measure

6    of damages should not be considered as indicating any view of

7    mine as to which party is entitled to your verdict in this

8    case.  Instructions as to the measure of damages are given for

9    your guidance only in the event you should find in favor of

10   Marie based on a preponderance of the evidence in accordance

11   with the other instructions.

12       Punitive damages.  Marie alleges that she should be awarded

13   punitive damages.  You may only consider whether Marie is

14   entitled to punitive damages if you've already determined that

15   she has established that Ron breached a fiduciary duty and that

16   Marie is entitled to compensatory damages.  If you find for Ron

17   on the claim for breach of duties, fiduciary duties, or if you

18   only award Marie nominal damages, then you may not award

19   punitive damages.

20       If you determine that Marie established by a preponderance

21   of the evidence that Ron breached a fiduciary duty and you

22   award her compensatory damages, then you are -- then you are

23   not required to also award punitive damages to Marie.  You may

24   not award punitive damages unless you determine that Marie

25   proved by clear and convincing evidence that Ron acted with

malice.

Malice means: one, a state of mind characterized by hatred, ill will, or a spirit of revenge or, two, a conscious disregard for the rights and safety of another person that has a great probability of causing substantial harm. Substantial means major or significant and not trifling or small.

As to punitive damages, the burden is by clear and convincing evidence. Unlike the other claims in this action, Marie must establish that she is entitled to punitive damages by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard of clear and convincing evidence does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

If you decide Ron is liable for punitive damages, you must also decide whether Ron is liable for the reasonable attorney's fees of counsel employed by Marie in the prosecution of this action. If you decide that Ron is liable for those attorney's fees, the Court, the Judge, will determine the amount.

You may not award Marie attorney fees unless you first find, first, that Marie is entitled to compensatory damages and, second, that Marie is entitled to punitive damages.

1   I've given you the instructions on the law applicable to

2   this case.  I will now instruct you on how to conduct your

3   deliberations in the jury room and to prepare your verdict.

4   Upon retiring to the jury room, you will select one of your

5   number to act as your foreperson.  The foreperson will preside

6   over your deliberations and will be your spokesperson here in

7   court.  A verdict form has been prepared for your convenience.

8   The verdict must represent the considered judgment of each

9   of you.  In order to return a verdict, it's necessary that each

10  juror agree.  Your verdict must be unanimous.

11  It is your duty, as jurors, to consult with one another and

12  to deliberate with a view to reaching an agreement, if you can

13  do so without disregard of the individual judgment.  You must

14  each decide the case for yourselves, but only after an

15  impartial consideration of the evidence in the case with your

16  fellow jurors.  In the course of your deliberations, do not

17  hesitate to reexamine your own views, and to change your

18  opinion, if convinced it is erroneous.  But do not surrender

19  your honest conviction as to the weight or effect of evidence

20  solely because of the opinion of your fellow jurors or for the

21  mere purpose of returning a verdict.

22  Remember at all times that you are judges of the facts.

23  Your sole interest is to seek the truth from the evidence in

24  the case.

25  Nothing said in these instructions and nothing in any

 1  verdict prepared for your convenience is meant to suggest or

 2  convey in any way or manner any suggestion or hint as to what

 3  verdict I think you should find.  What the verdict shall be is

 4  your sole and exclusive duty and responsibility.

 5      If it becomes necessary during your deliberations to

 6  communicate with me, you may send a note by the courtroom

 7  deputy, signed by your foreperson or by one or more members of

 8  the jury.  No member of the jury should ever attempt to

 9  communicate with me by any means other than a signed writing,

10  and I will never communicate with any member of the jury on any

11  subject touching the merits of the case otherwise than in

12  writing, or here orally in open court.

13      Bear in mind that you are never to reveal to any person,

14  not even to me, how the jury stands, numerically or otherwise,

15  on the questions before you until you have reached a unanimous

16  verdict.

17      The Court will place in your possession the exhibits and

18  the verdict form.  The foreperson of the jury will be

19  responsible for the return of the exhibits and the verdict form

20  after your verdict has been reached.

21      You will retire after closing arguments to the jury room to

22  deliberate your verdict.  The courtroom deputy will confer with

23  you regarding any recess or adjournment.

24      Remember that you must make your decision solely on the

25  evidence that you saw and heard here in court.  Do not try to

gather any information about the case on your own while deliberating.  Don't conduct any experiments inside or outside the jury room.  Don't bring any books -- like a dictionary, if those still exists -- or anything else with you to help you with your deliberations.  Do not conduct any independent research, reading or investigation about the case.  Do not conduct Internet research, no Googling, et cetera, and do not visit any of the places that were mentioned during the trial. Make your decision based only on the evidence that you saw and heard here in the courtroom.

Now that the evidence is in and after closing arguments are completed, you will go to the jury room, and you are, of course, free to talk about the case in the jury room with your fellow jurors only.  In fact, it's your duty to talk with each other about the evidence, to make every reasonable effort you can to reach unanimous agreement.  Talk with each other. Listen carefully and respectfully to each other's views.  Keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Don't hesitate to change your mind if you're convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently or just to get the case over with.  In the end, your vote must be exactly that:  your own vote.  It's important for you to reach unanimous agreement, but only if you

1    can do so honestly and in good conscience.

2        No one will be allowed to hear your discussions in the jury

3    room, and no record will be made of what you say.  You should

4    all feel free to speak your minds.  Listen carefully to what

5    the other jurors have to say, and then decide for yourself.

6        Let me finish up by repeating something that I've said to

7    you earlier.  Nothing that I have said or done during trial was

8    meant to influence your decision in any way.  You decide for

9    yourselves.

10       Now you're going to be presented with some interrogatories

11   preparatory to your verdict form.  Written questions are called

12   interrogatories.  You must answer them in writing, starting

13   with the first question.  You must follow carefully the

14   directions about how to proceed.

15       A question is answered when all jurors agree.  All jurors

16   must sign at the end of the interrogatories.  If all jurors

17   cannot agree on an answer, you are instructed to report to the

18   Court.

19       I'll now review with you the interrogatories that you will

20   answer during deliberations and from which you will reach your

21   verdict.  I caution you not to make any inference by reason of

22   the order in which I read them.

23       All right.  These pages, 42 through 60, are what you're

24   going to do upstairs.  You're going to answer these questions.

25   I'm going to walk through them with you.

1    Jury Interrogatory Number 1, breach of fiduciary duties

2  based on the alleged usurpation of purchase of lot at 3464

3  Poole Road.

4    Number 1:  Did Marie Joseph prove by a preponderance of the

5  evidence that defendant Ronald Joseph knew about the purchase

6  of a parking lot at 3464 Poole Road by Joseph T of C in 2012?

7  You mark yes or no after all seven of you agree to that answer.

8    If the answer to the preceding question is no, this ends

9  your deliberations on this portion of Marie Joseph's claim and

10  you should move on to the next Jury Interrogatory, Number 2.

11  If the answer to the preceding question is yes, proceed to the

12  next question.

13    Did Marie Joseph prove by a preponderance of the evidence

14  that defendant Ronald Joseph acquired knowledge about the

15  purchase of a parking lot at 3464 Poole Road by Joseph T of C

16  in 2012 in his capacity as a majority shareholder or director

17  of Columbia?  You mark yes or no when all seven agree.

18    If the answer to 2 is no, this ends your deliberation on

19  this portion of Marie's claim and you should move on to the

20  next Jury Interrogatory, Number 2.  If the answer to the

21  preceding question is yes, you proceed to the next question,

22  number 3.

23    Did Marie prove by a preponderance of the evidence that the

24  purchase of a parking lot at 3464 Poole Road by Joseph T of C

25  in 2012 was in Columbia's line of business?  You answer yes or

1    no when all seven agree.  If the answer's no, that ends your

2    deliberation on this portion.  You go to the next Jury

3    Interrogatory, Number 2.  If the answer to the preceding

4    question is yes, proceed to the next question.

5        Did plaintiff Marie Joseph prove by a preponderance of the

6    evidence that the purchase of a parking lot at 3464 Poole Road

7    that was, in fact, purchased by Joseph T of C in 2012 would

8    have been advantageous to Columbia?

9        If the answer's no, you're done here and you go to

10   Interrogatory 2.  If it's yes, you go to the next question, the

11   next page, number 5.

12       Did plaintiff Marie prove by a preponderance of the

13   evidence that Columbia was able to purchase a parking lot at

14   3464 Poole Road in 2012?

15       If the answer's no, you're done with this portion.  You go

16   to Jury Interrogatory 2.  If the answer's yes, proceed to the

17   next question.

18       6:  Did plaintiff Marie prove by a preponderance of the

19   evidence that the purchase of a parking lot at 3464 Poole Road

20   by Joseph T of C in 2012 proximately caused her monetary

21   damages?  If the answer's no, you're done with this.  Go to

22   Interrogatory 2.  If the answer's yes, you go to question 7.

23       Question 7 states:  State below the monetary damages, if

24   any, that plaintiff Marie Joseph proved by a preponderance of

25   the evidence were proximately caused to her by defendant Ronald

1  Joseph in connection with the purchase of a parking lot at 3464

2  Poole Road by Joseph T of C in 2012.  This question refers only

3  to compensatory damages.  Punitive damages will be addressed in

4  a separate interrogatory.  But if there are compensatory

5  damages, you state the amount at the bottom of 43.

6      And now you move to Interrogatory Number 2, breach of

7  fiduciary duties based on alleged usurpation of purchase of lot

8  at 8583 Colerain Avenue.

9      1:  Did plaintiff Marie prove by a preponderance of the

10  evidence that defendant Ronald Joseph knew about the purchase

11  of a parking lot at 8583 Colerain Avenue by Joseph Realty LLC

12  in 2014?

13      If your answer is no, that ends your deliberations on this

14  portion.  You go to Interrogatory Number 3.  If your answer's

15  yes, proceed to the next question.

16      2:  Did plaintiff Marie prove by a preponderance of the

17  evidence that defendant Ron acquired knowledge about the

18  purchase of a parking lot at 8583 Colerain Avenue by Joseph

19  Realty LLC in 2014 in his capacity as a majority shareholder or

20  director of Columbia?

21      If the answer's no, you go to Interrogatory Number 3.  If

22  the answer's yes, you continue.

23      Question 3:  Did plaintiff Marie prove by a preponderance

24  of the evidence that the purchase of a parking lot at 8583

25  Colerain Avenue by Joseph Realty LLC in 2014 was in Columbia's

1    line of business?

2        If no, you go to Interrogatory Number 3.  If yes, you

3    continue here to question 4.

4        Did Marie prove by a preponderance of the evidence that the

5    purchase of a parking lot at 8583 Colerain Avenue that was in

6    fact purchased by Joseph Realty LLC in 2014 would have been

7    advantageous to Columbia?

8        If you answer no, you're done with this interrogatory and

9    you go to Interrogatory Number 3.  If it's yes, you continue to

10   question 5.

11       Did plaintiff Marie prove by a preponderance of the

12   evidence that Columbia was able to purchase a parking lot at

13   8583 Colerain Avenue in 2014?

14       If the answer to that question's no, you're done with this

15   interrogatory and you go to the next one.  If your answer's

16   yes, you continue on this page to question 6.

17       Did Marie prove by a preponderance of the evidence that the

18   purchase of a parking lot at 8583 Colerain Avenue by Joseph

19   Realty LLC in 2014 proximately caused her monetary damages?  If

20   your answer's no, you go to the next jury interrogatory.

21   You're done here.  But if the answer's yes, you proceed with

22   these questions to number 7.

23       State below the monetary damages, if any, that plaintiff

24   Marie proved by a preponderance of the evidence were

25   proximately caused to her by defendant Ron in connection with

the purchase of a parking lot at 8583 Colerain Avenue by Joseph Realty LLC in 2014.  This question refers only to compensatory damages and you state the amount, if any, there.  Punitive damages will be addressed later.

Interrogatory Number 3, breach of fiduciary duties based on fleet sales.

Did Marie Joseph, plaintiff, prove by a preponderance of the evidence that Ronald Joseph, defendant, caused Columbia to engage in transactions in the fleet sales program?  If the answer's no, this ends your deliberations on this interrogatory and you go to Number 4.  If it's yes, continue answering these questions.

Number 2:  Did plaintiff Marie prove by a preponderance of the evidence that defendant Ron had a material pecuniary interest in the fleet sales program and that that interest reasonably would be expected to affect his judgment in a manner adverse to Columbia?

If it's yes, you continue.  If it's no, you're done here and go to Interrogatory 4.

If it's yes, you go to question 3.

Did plaintiff Marie prove by a preponderance of the evidence that defendant Ron failed to disclose his interest in the fleet sales transactions to Marie?  If no, you're done with this interrogatory, go to the next.  If yes, continue with these questions.

1       As to question 4, if yes:  Did defendant Ronald Joseph

2 prove by a preponderance of the evidence that the fleet sales

3 transactions were fair to Columbia?  If yes, this ends your

4 deliberations on this portion of the claim.  You go to the next

5 jury interrogatory.  If the answer is no, you proceed to the

6 next question on the next page, number 5.

7       Did Marie Joseph prove by a preponderance of the evidence

8 that the fleet sales transactions proximately caused her

9 monetary damages?  If the answer's no, this ends your

10 deliberations on this portion.  You go to the next jury

11 interrogatory, to wit, 4.  If your answer is yes, you go to

12 question 6 here.

13       State below the monetary damages, if any, that Marie Joseph

14 proved by a preponderance of the evidence were proximately

15 caused to her by defendant Ronald Joseph in connection with

16 Columbia's participation in fleet sales transactions.

17       This question refers only to compensatory damages.

18 Punitive damages will be addressed later.  Fill in the blank if

19 the answer is appropriate.

20       Jury Interrogatory Number 4, breach of fiduciary duties

21 based on U.S. Bank Money Center account.  Did plaintiff Marie

22 prove by a preponderance of the evidence that defendant Ron

23 caused Columbia to transfer funds to the sweep account, also

24 known as U.S. Bank Money Center account, which was held in the

25 name of Pond Realty?

1    If the answer to this question is no, this ends your

2  deliberations on this portion and you go to Interrogatory

3  Number 5.  If it's yes, you continue here to question 2.

4    Did plaintiff Marie prove by a preponderance of the

5  evidence that defendant Ron had a material pecuniary interest

6  in the transfer of funds from Columbia to the sweep account,

7  also known as U.S. Bank Money Center account, and that that

8  interest reasonably would be expected to affect his judgment in

9  a manner adverse to Columbia?  If the answer's no, you're done

10 with this portion.  If it's yes, you continue.

11   3:  Did plaintiff Marie prove by a preponderance of the

12 evidence that defendant Ron failed to disclose his interest in

13 the transfer of funds from Columbia to the sweep account, also

14 known as the U.S. Bank Money Center account, to Marie?  If the

15 answer is no, you're done with this interrogatory.  If it's

16 yes, you continue to question 4.

17   Did defendant Ronald Joseph prove by a preponderance of the

18 evidence that the transfers of funds from Columbia to the sweep

19 account, also known as U.S. Bank Money Center account, were

20 fair to Columbia?  Yes or no.

21   If the answer is yes, you're done with this interrogatory.

22 If the answer is no, you go to question 5 on page 49.

23   Did plaintiff Marie Joseph prove by a preponderance of the

24 evidence that the transfers of funds from Columbia to the sweep

25 account, also known as U.S. Bank Money Center account,

1    proximately caused her money damages?  If the answer is no,

2    you're done with this interrogatory.  If it's yes, you move to

3    the next question.

4       6:  State below the monetary damages, if any, Marie Joseph

5    proved by a preponderance of the evidence were proximately

6    caused to her by defendant Ronald Joseph in connection with the

7    transfers of funds from Columbia to the sweep account, also

8    known as U.S. Bank Money Center account.  This question only

9    refers to compensatory damages, not punitive damages.  Fill in

10   the amount, if any, as appropriate.

11      Jury Interrogatory Number 5, breach of fiduciary duties

12   based on transactions with Camargo Cadillac, Gold Circle Mall,

13   and Joseph Development.

14      1:  Did plaintiff Marie prove by a preponderance of the

15   evidence that defendant Ronald Joseph caused Columbia to

16   disburse money as either loans or investments to Camargo

17   Cadillac, Gold Circle Mall, and Joseph Development?  If the

18   answer's no, you're done with interrogatory number 5.  If it's

19   yes, you continue.

20      Question 2:  Did plaintiff Marie prove by a preponderance

21   of the evidence that defendant Ronald Joseph had a material

22   pecuniary interest in the disbursements from Columbia to

23   Camargo Cadillac, Gold Circle Mall, and Joseph Development, and

24   that defendant's interest reasonably would be expected to

25   affect his judgment in a manner adverse to Columbia?

1    If the answer is no, you're done with this interrogatory.

2  If it's yes, you proceed to question 3.

3    Did plaintiff Marie prove by a preponderance of the

4  evidence that defendant Ron failed to disclose his interest in

5  the disbursements from Columbia to Camargo Cadillac, Gold

6  Circle Mall, and Joseph Development to Marie?

7    If the answer's no, you're done with this interrogatory.

8  If it's yes, you proceed to the question below, number 4.

9    Did defendant Ron prove by a preponderance of the evidence

10 that the disbursements from Columbia to Camargo Cadillac, Gold

11 Circle Mall, and Joseph Development were fair to Columbia?

12    If the answer's yes, you're done with this interrogatory.

13 If it's no, you continue to the next question on page 51.

14    Did plaintiff Marie prove by a preponderance of the

15 evidence that the disbursements from Columbia to Camargo

16 Cadillac, Gold Circle Mall, and Joseph Development proximately

17 caused her monetary damages?

18    If the answer's no, you're done with this interrogatory.

19 If it's yes, you proceed to the final question on this

20 interrogatory.

21    State below the monetary damages, if any, that plaintiff

22 Marie Joseph proved by a preponderance of the evidence were

23 proximately caused to her by defendant Ronald Joseph in

24 connection with the disbursements from Columbia to Camargo

25 Cadillac, Gold Circle Mall, and Joseph Development.  This

1  question only refers to compensatory damages.  Punitive damages

2  will be addressed later.  You fill in the amount, if any, as

3  appropriate.

4      Jury Interrogatory Number 6.  1:  Did plaintiff Marie

5  Joseph prove by a preponderance of the evidence that defendant

6  Ronald Joseph caused Columbia to pay management fees to Pond

7  Realty Company doing business as Joseph Management?

8      If the answer to this question is no, this ends your

9  deliberations on this interrogatory and you move to the next

10  one.  If it's yes, you continue with the questions.

11      2:  Did plaintiff Marie Joseph prove by a preponderance of

12  the evidence that defendant Ronald Joseph had a material

13  pecuniary interest in the payment of management fees by

14  Columbia to Pond Realty Company doing business as Joseph

15  Management, and that interest reasonably would be expected to

16  affect his judgment in a manner adverse to Columbia?

17      If your answer's no, you're done with this interrogatory.

18  You go to the next.  If it's yes, you continue to question 3.

19      Did plaintiff Marie prove by a preponderance of the

20  evidence that defendant Ronald Joseph failed to disclose his

21  interest in the payment of management fees by Columbia to Pond

22  Realty Company doing business as Joseph Management to Marie?

23      If the answer's no, you're done with this interrogatory.

24  If it's yes, you continue to question 4.

25      Did defendant Ronald Joseph prove by a preponderance of the

1  evidence that the management fees paid by Columbia to Pond

2  Realty Company doing business as Joseph Management were fair to

3  Columbia?

4      If the answer's yes, you're done with this interrogatory

5  and you go to the next one.  If your answer's no, you go to

6  questions 5 and 6.

7      5:  Did plaintiff Marie prove by a preponderance of the

8  evidence that the payment of management fees by Columbia to

9  Pond Realty Company doing business as Joseph Management

10  proximately caused her monetary damages?  If your answer's no,

11  you go to the next jury interrogatory.  If it's yes, proceed to

12  the next question here, 6.

13      State below the monetary damages, if any, that plaintiff

14  Marie proved by a preponderance of the evidence were

15  proximately caused to her by defendant Ronald Joseph in

16  connection with the payment of management fees by Columbia to

17  Pond Realty Company doing business as Joseph Management.

18      This question refers only to compensatory damages, not

19  punitive damages, which will be addressed later.  You state the

20  amount, if any, as appropriate.

21      Jury Interrogatory Number 7, breach of fiduciary duties

22  based on other payments and benefits.

23      Did plaintiff Marie Joseph prove by a preponderance of the

24  evidence that defendant Ronald Joseph caused Columbia to make

25  other miscellaneous payments, including other transfers from

1    Columbia and its subsidiaries to Pond Realty Company, other

2    inter-company transactions, payments to Columbia employees for

3    work performed for other companies, and payments for benefits

4    such as club memberships and dues, sports tickets and security

5    services?

6        This section does not cover any of the transactions

7    referred to in the previous jury interrogatories.  If your

8    answer to the first question is no, this ends your

9    deliberations on this jury interrogatory.  If it's yes, you

10   proceed to the following question.

11       2:  Did plaintiff Marie prove by a preponderance of the

12   evidence that defendant Ronald Joseph had a material pecuniary

13   interest in Columbia making other miscellaneous payments,

14   including other transfers from Columbia and its subsidiaries to

15   Pond Realty Company, other inter-company transactions, payments

16   to Columbia employees for work performed for other companies,

17   and payments for benefits such as club memberships and dues,

18   sports tickets and security services, and that that interest

19   reasonably would be expected to affect his judgment in a manner

20   adverse to Columbia?

21       This section doesn't include any of the transactions

22   referred to in the previous jury interrogatories.  If your

23   answer is no, you're done with this interrogatory.  If it's

24   yes, you proceed to question 3.

25       Did plaintiff Marie prove by a preponderance of the

1  evidence that defendant Ronald Joseph failed to disclose his

2  interest in Columbia's making other miscellaneous payments,

3  including other transfers from Columbia and its subsidiaries to

4  Pond Realty Company, other inter-company transactions, payments

5  to Columbia employees for work performed for other companies,

6  and payments for benefits such as club memberships and dues,

7  sports tickets and security services to Marie?  Was this failed

8  to be disclosed to Marie.

9       This section doesn't include any of the transactions

10  referred to in the prior jury interrogatories.  If your answer

11  is no, you're done with this jury interrogatory.  If it's yes,

12  you proceed to question 4.

13       Did defendant Ronald Joseph prove by a preponderance of the

14  evidence that all other miscellaneous payments made by

15  Columbia, including other transfers from Columbia and its

16  subsidiaries to Pond Realty Company, other inter-company

17  transactions, payments to Columbia employees for work performed

18  for other companies, and payments for benefits such as club

19  memberships and dues, sports tickets and security services,

20  were fair to Columbia?

21       If the answer's yes, you're done with this interrogatory.

22  If it's no, you continue to 5.

23       Did plaintiff Marie prove by a preponderance of the

24  evidence that other miscellaneous payments by Columbia,

25  including other transfers from Columbia and its subsidiaries to

1   Pond Realty Company, other inter-company transactions, payment

2   to Columbia employees for work performed for other companies,

3   and payments for benefits such as club memberships and dues,

4   sports tickets and security services, proximately caused Marie

5   monetary damages?

6       This section doesn't cover any of the transactions already

7   referred to in the previous interrogatories.  If the answer's

8   no, this ends your deliberations on this jury interrogatory.

9   If the answer's yes, you proceed to question 6.

10      State below the monetary damages, if any, that Marie proved

11  by a preponderance of the evidence were proximately caused to

12  her by defendant Ronald Joseph in connection with other

13  miscellaneous payments made by Columbia, including other

14  transfers from Columbia and its subsidiaries to Pond Realty

15  Company, other inter-company transactions, payments to Columbia

16  employees for work performed for other companies, and payments

17  for benefits such as club memberships and dues, sports tickets

18  and security services.

19      This section of the verdict form does not cover any of the

20  transactions referred to in the prior interrogatories.

21  Question 6 refers only to compensatory damages, not punitive

22  damages, which will be dealt with in Jury Interrogatory Number

23  8.

24      Jury Interrogatory Number 8, punitive damages.  You should

25  only respond to this interrogatory if you found for Marie on

any of the above claims and if you awarded Marie more than
nominal compensatory damages. If you found for Ron on all
claims, or if you awarded Marie no compensatory damages or
nominal compensatory damages, then your deliberations are
complete and you should sign the form at the bottom of these
instructions.

So as to punitive damages, 1: Did plaintiff Marie prove by
clear and convincing evidence that defendant Ron breached
fiduciary duties owed her and, in doing so, acted with malice
towards plaintiff Marie in matters related to Columbia?

If your answer is no, your deliberations are complete and
you move to the form following. If the answer's yes, you
proceed to the following question.

2: What amount of punitive damages are fair and reasonable
to award plaintiff Marie Joseph given all the facts and
circumstances?

Ohio law limits punitive damages in a civil case such as
this to a total of not more than $350,000, so you may not award
more than that amount as punitive damages.

3: Is defendant Ronald Joseph liable for the reasonable
attorney fees of counsel employed by plaintiff Marie Joseph in
the prosecution of this action? If the answer to this question
interrogatory is yes, then the Judge will determine the amount
of reasonable attorney's fees.

And then on page 58 each of you sign, verifying your

1    answers to the preceding jury interrogatories, and you proceed

2    to the verdict forms.

3        On page 59 we help you with the verdict forms.  You have to

4    complete one of the two attached verdict forms.  You must sign

5    and date the verdict for plaintiff if you answered yes to one

6    or more of the following questions:  Jury Interrogatory Number

7    1, question 6; Jury Interrogatory Number 2, question 6; Jury

8    Interrogatory Number 3, question 5; Jury Interrogatory Number

9    4, question 5; Jury Interrogatory Number 5, question 5; Jury

10   Interrogatory Number 6, question 5; or Jury Interrogatory

11   Number 7, question 5.

12       If you did not answer any of the above-listed questions, or

13   did not answer yes to any of the above-listed questions, you

14   must sign and date the verdict form for defendant Ronald

15   Joseph.  Once you have completed one of the attached verdict

16   forms, please notify the courtroom deputy.

17       So you use page 59 to determine whether you sign the

18   verdict form for the plaintiff Marie Joseph or you sign the

19   verdict form for defendant Ronald Joseph.  You all sign your

20   name reflecting your decision.

21       I'm going to send you upstairs with all your jury

22   instruction packages and the interrogatories, but as the

23   exhibits go up with the notebooks, I'm going to send you up one

24   packet of the jury interrogatories and the verdict forms.  That

25   should be placed in the foreperson's hand, and that's the one

1  you fill out, so we've only got one floating.  The rest of them

2  are stapled to yours for your convenience.

3      These instructions are designed to assist you.  If you

4  really follow them closely and walk through them, you're

5  perfectly capable of doing this.  If you have a question of me,

6  it's got to be in writing.  It's got to be signed by the

7  foreperson or by a juror.  If you send me a question, I've got

8  to go round up the lawyers, discuss it with them, and then

9  write you an answer, and I may answer "It's up to you."  You

10  need to decide what the facts are.  You walk through the law on

11  the jury interrogatories and reach a verdict that is fair and

12  just based on the evidence and the law.

13      After closing arguments, you go upstairs, the first thing

14  you do is pick a foreperson.  That person has no power more

15  than any other person.  That person's job is to make sure

16  everybody's heard and that you fill out the forms

17  appropriately.

18      You listened carefully, and that was a lot of reading.  I

19  thought the Judge did a really good job reading out loud.

20      (Laughter.)

21          THE COURT:  And I'm not going to require you to listen

22  to me more reading instructions.  The lawyers are going to make

23  closing arguments.  The plaintiff Marie Joseph's lawyer gets to

24  go first and last, the defendant's lawyers go second, and when

25  they're done, you go to the jury room and begin your

deliberations, and I believe we're providing lunch.

Do you need a break before we launch into the lawyers? Do you need a ten-minute break, or are you ready to go?

JUROR NO. 4: I could go for a break.

THE COURT: We're ready to go.

Mr. Murphy, are you prepared to give closing argument on behalf of plaintiff?

MR. MURPHY: Yes, Your Honor.

THE COURT: Very well. You may proceed, unless you need a short break to get stuff stirred up.

Don't break that.

AUDIOVISUAL SPECIALIST ST. JOHN: Sorry.

THE COURT: We're going to proceed. Is there any juror who really needs a break?

(No response.)

THE COURT: They're ready for you, sir.

MR. MURPHY: All right.

(Excerpt of closing arguments was previously transcribed and filed at U.S. District Clerk of Courts Docket No. 220.)

THE COURT: Very well.

Members of the jury, it's now time to do your duty, to go to the jury room and deliberate, being certain that each of the seven of you have a full opportunity to state what you see and state what you think. Work together, work toward reaching a unanimous verdict, and every minute you're up there, know that

1   the Court and the community and the participants in this

2   lawsuit are extraordinarily grateful for the work you have done

3   and will now go finish.

4       Out of respect for you, we'll rise as you leave.

5           COURTROOM DEPUTY:  All rise for the jury.

6       (Jury out at 1:24 PM.)

7   BEFORE THE COURT

8           THE COURT:  You may all be seated.

9       The jury has left the room and has gone to deliberate.  We

10  want to send up momentarily the original interrogatories and

11  verdict forms and the exhibits of the parties.

12      Have the parties worked through the exhibits and cleared

13  with the courtroom deputy that both notebooks properly contain

14  the admitted exhibits, or do you need to look at that before we

15  send it up?

16      From the plaintiff's perspective?

17          MR. GREGG:  We provided our plaintiff's admitted

18  exhibits this morning.  I have not conferred with Mr. Lang

19  since then, but I'm happy to do so before they get sent up to

20  the jury.

21          THE COURT:  Very well.  See if we can expedite that.

22      The same over there?

23          MR. BURKE:  Yes, Your Honor.

24          THE COURT:  Which lawyer is going to work that

25  through?

1          MR. BURKE:  My paralegal and Jacob, I think, are the

2     ones who know a lot more than I do.

3          THE COURT:  Very well.  Well, I'd like to get them up

4     soon.

5        We're going to recess momentarily, and I need to be able to

6     reach you.

7        Do we have a cellphone number for plaintiff that will be

8     turned on with a ringer such that we can call one cellphone and

9     find you?

10         MR. LANDEN:  Yes, Your Honor.

11         THE COURT:  Will you deliver that to the courtroom

12    deputy.  Unless you want to spread it across the record at this

13    time.

14         MR. LANDEN:  That's all right.  I'll hand it to him.

15         THE COURT:  All right.

16       Do we have one number we can get you on a cell?

17         MR. BURKE:  Yes, Your Honor.

18         THE COURT:  And the phone will be turned on?

19         MR. BURKE:  We'll get it to the deputy.

20         THE COURT:  All right.

21         MR. BURKE:  Your Honor, I take it you'll want us back

22    here by the end of the day for jury dismissal?

23         THE COURT:  Yeah.  At 4:30 I'd ask the lawyers come

24    back such that we'll try and get the jury released at or around

25    that time if we have not heard from them beforehand.  The

1   reason I need your phone number, as you know, is if there are

2   any questions or if we get a verdict.

3       Well, it's been a long, hard slog, and it's now in the

4   hands of seven ordinary citizens.  We're in recess till we

5   communicate with you.

6               MR. BURKE:  Thank you, Your Honor.

7               COURTROOM DEPUTY:  All rise.  This court is in recess.

8       (Proceedings recessed at 1:26 PM.)

9       (In open court at 4:31 PM, no jury present.)

10              THE COURT:  Please be seated.  Thank you.

11      We're back on the record in *Joseph v. Joseph*.  The jury's

12  in the jury room deliberating.  Plaintiff is here with her

13  lawyers.  Defendant is here with his lawyers.

14      It's 4:31.  I asked the courtroom deputy to go upstairs and

15  ask the jury if they're ready to recess for the day or if they

16  wanted to continue more for today, that the normal break time

17  is 4:30, and they have elected to recess for the day.  I'm

18  going to call for them, bring them down to the courtroom,

19  admonish them, and send them home and send us all on our ways.

20      Anybody need to be heard before we proceed in that way?

21  From plaintiff's perspective?

22              MR. MURPHY:  No, Your Honor.

23              THE COURT:  Defense?

24              MR. BURKE:  No, Your Honor.

25              THE COURT:  All right.  Let's get the jury.

```
 1            MR. BURKE:  Do you want us back tomorrow, Your Honor?

 2            THE COURT:  Yes, please.

 3            MR. BURKE:  Tomorrow morning?

 4            THE COURT:  9:30.

 5            MR. BURKE:  Thank you.

 6            THE COURT:  Very well.  We just want to show them that

 7    you guys are engaged and eager to hear the results of their

 8    work.

 9            COURTROOM DEPUTY:  All rise for the jury.

10        (Jury in at 4:33 PM.)

11            THE COURT:  The jurors can be seated as they join us,

12    the court reporter as well.

13        You may all be seated.  The seven jurors have rejoined us

14    in the courtroom.  The parties and the lawyers are here.

15        It's a little bit after 4:30.  Our typical time to break is

16    4:30.  I inquired, and you're ready to break.  I wanted you

17    down here in the courtroom to make sure all seven of you were

18    alive and breathing, and you are.  So we're going to break for

19    the day and ask that you come back at 9:30.

20        Go to the jury room.  I'll make you walk down again, put

21    you in the box, count noses, and send you up at 9:32 to

22    continue your deliberations.

23        Does anybody want to tell me what the three instructions

24    are over the break?  One, don't talk to anybody about it.

25            A JUROR:  Right.
```

1          THE COURT:  You're allowed to talk to yourselves, but

2     only in the jury room.  And if at any point you want to take a

3     break in the jury room, you can take a break, but no discussion

4     of the case until all seven are back in the room ready to go.

5        So don't discuss it with anyone.  And people are going to

6     ask you, "Ohh, you're deliberating?  Oh.  How's it going?"

7     Unh-unh.  Nothing.  No independent research.  I guess that's

8     keep an open mind until you reach your decision.

9        We appreciate the work you're doing.  I hope you have a

10    good, comfortable break.  I ask that you be in the jury room by

11    9:25 at the latest so we can bring you in the courtroom at 9:30

12    and send you up to start talking.  Don't start talking until

13    you've been in the courtroom and sent up.

14       Out of enormous respect for you, we'll rise as you leave

15    for the day.

16          COURTROOM DEPUTY:  All rise for the jury.

17       (Jury out at 4:35 PM.)

18    BEFORE THE COURT

19          THE COURT:  The jury's left.  You may be seated.

20       We're ready to break for the evening.  I understand there

21    was an inquiry about whether you could start to get your stuff

22    out of the courtroom.  Absolutely.

23       Is there anything else that requires the Court's attention

24    before we break for the day?

25          MR. MURPHY:  No, Your Honor.

1      MR. BURKE:  No, Your Honor.  Thank you.

2      THE COURT:  Very well.  Have a good evening.  We're in

3   recess till 9:30.  I'll see you all in the courtroom at that

4   time.

5      COURTROOM DEPUTY:  All rise.  Court is in recess.

6    (At 4:35 PM, the trial was recessed, to be continued on

7   Tuesday, October 23, 2018, at 9:30 AM.)

8                          - - -

9                      MISCELLANEOUS

10  Court's Charge to the Jury ....................... 8
    Dismissal of Jury ............................... 56
11

12                         - - -

13                 C E R T I F I C A T E

14      I, Luke T. Lavin, RDR, CRR, the undersigned, certify

15   that the foregoing is a correct transcript from the record of

16   proceedings in the above-entitled matter.

17

18                          s/Luke T. Lavin
                             _____
                             Luke T. Lavin
19                           Official Court Reporter

20                          - - -

21

22

23

24

25