**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MARIE JOSEPH | Case No. 1:16-cv-00465-TSB |
| Plaintiff, | Judge Timothy S. Black |
| v. | |
| RONALD JOSEPH | **PLAINTIFF'S RESPONSE TO** **DEFENDANT RONALD JOSEPH'S** **BILL OF COSTS** |
| Defendant. | |

Plaintiff Marie Joseph ("Plaintiff"), by and through counsel, hereby submits her Response to Defendant Ronald Joseph's Bill of Costs (the "Response").  For the following reasons, Ron's Bill of Costs (Doc. 234) should be denied.

**I.      Ron's Bill of Costs should not be considered by the Court at this time.**

The Court should deny Ron's Bill of Costs[1] at this time because there are still several variables that could result in prejudice to both the parties and the Court if the Court rules on Ron's Bill of Costs at this juncture. It would be far more efficient for the Court to consider any party's Bill of Costs (i) following the conclusion of any appeals arising from this case, and (ii) at the very least, after this Court has adjudicated the remainder of Plaintiff's claims.

*A.      This Court should deny Ron's Bill of Costs and should assess costs only after all appeals arising from this litigation have concluded.*

First, the Court should defer ruling on Ron's Bill of Costs until after any and all appeals arising from this case have concluded.  As the Court knows, the Court entered a Judgment for Defendant and Against Plaintiff on March 18, 2019 (Doc. 232) (the "March 18, 2019 Final

---

[1] Ron's Bill of Costs is not accompanied by any motion or memorandum requesting Court action, and it is therefore procedurally deficient.  That omission constitutes an independently sufficient basis for denying Ron any award of costs.

Judgment"). Per Fed. R. App. P. 4(a)(1)(A), Plaintiff has 30 days after the entry of a final judgment to file a notice of appeal, thereby initiating an appeal with the United States Court of Appeals for the Sixth Circuit. In this case, Plaintiff has until at least[2] April 17, 2019 to file a notice of appeal regarding the March 18, 2019 Final Judgment. Plaintiff intends to file such a notice of appeal as to the March 18, 2019 Final Judgment on or before that date. *See* Affidavit of Marie Joseph, attached hereto as Exhibit A, at ¶ 2.

Federal courts have discussed whether a bill of costs such as the one submitted by Ron should be considered before all appeals have concluded. Indeed, this Court has previously noted that requiring that a party rebut bills of costs before an appeal has concluded prejudices not only the party against whom the bill of costs is asserted, but also prejudices the Court. *See Med. Ctr. at Elizabeth Place, LLC v. Medamerica Health Sys. Corp.*, No. 3:12-CV-26, 2015 WL 686556, at *3 (S.D. Ohio Feb. 18, 2015) (Black, J.) (denying approval of the defendants' bill of costs, and stating that "Plaintiff *would* be prejudiced by having to expend the effort rebutting Defendants' motion for costs, where a successful appeal could render that effort moot. Moreover, this Court may be prejudiced by having to expend judicial resources to decide a motion where a successful appeal could render the Court's efforts moot") (emphasis in original).[3]

Here, the Court should again follow the sound logic of its decision in *Medical Center at Elizabeth Place, LLC*. Plaintiff will be filing a notice of appeal shortly after the submission of this Response. The outcome of that appeal could significantly change the parties' respective rights and obligations relating to Ron's Bill of Costs. Requiring Plaintiff to rebut the Bill of Costs at this

---

[2] As discussed below, the Court's March 18, 2019 Final Judgment does not dispose of all claims against all parties, and therefore it would not be appealable absent this Court's Fed. R. Civ. P. 54 statement of finality. In light of the Rule 54 language, Plaintiff intends to proceed with an appeal on or before April 17, 2019.

[3] Though *Med. Ctr. at Elizabeth Place, LLC* was decided at a time when a prior version of S.D. Ohio Local Rule 54.1 was in effect, the Court's reasoning in delaying consideration of a prevailing party's bill of costs applies to the case herein. Moreover, the current version of S.D. Ohio Local Rule 54.1 still allows for the Clerk to "defer taxation of costs pending appeal."

juncture (and requiring Ron to file a Reply in support of his Bill of Costs) would prejudice both parties because the parties' memoranda on this issue may be moot by the time Plaintiff's appeal has concluded. More importantly, the Court itself would be prejudiced by having to expend its resources to consider Ron's Bill of Costs and the parties' related filings to make a determination that may itself be mooted out by the outcome of Plaintiff's appeal. In short, the potential of prejudice and burden for both the parties and the Court means that Ron's Bill of Costs should be denied at this juncture.

> B.   The Court should deny Ron's Bill of Costs and defer assessing costs at least until the Court has ruled on Plaintiff's remaining claim.

Another independently sufficient basis for denying Ron's Bill of Costs at this time is that Plaintiff has a claim in this case that has still not been resolved by the Court and that is not scheduled to be considered substantively by the Court until after the parties' briefing on Ron's Bill of Costs has been completed. On September 17, 2018, the Court granted Ron's Motion for a Separate Trial on Claims for Equitable Relief, bifurcating Plaintiff's claims for access to corporate records (the "Corporate Records Claim") from the breach of fiduciary duty claims the parties tried before a jury in October of 2018. *See* Doc. 175. The Court subsequently ordered the parties to submit pleadings regarding Plaintiff's Corporate Records Claim. *See* Doc. 230. Ron has filed his pleading on the Corporate Records Claim and Plaintiff intends to file a response in accordance with the Court's briefing schedule.

The Court has also scheduled a status conference for May 14, 2019, "at which time the Court will address the parties' submissions [regarding the Corporate Records Claim] and set this case for a bench trial, if appropriate." Doc. 230, PageID 17446. Meanwhile, Ron's Reply to his Bill of Costs is due April 29, 2019. *See* Clerk's Notice dated March 26, 2019. Thus, the parties' briefing on Ron's Bill of Costs is set to be completed over two weeks before the parties will be

notified on May 14, 2019 as to whether the Court will set a bench trial for Plaintiff's Corporate Records Claim.

The schedules for Plaintiff's Corporate Records Claim and the parties' briefing on Ron's Bill of Costs thus preclude the parties and the Court from taking into consideration the outcome of the Court's adjudication of Plaintiff's Corporate Records Claim. Moreover, the adjudication of Plaintiff's Corporate Records Claim may lead to additional appeals from one or more of the parties to this litigation, which would only compound the prejudicial effects that may result from ruling on Ron's Bill of Costs at this time. Thus, at the very least, the Court should deny Ron's Bill of Costs at this juncture and defer assessing costs due to the current uncertainty surrounding the outcome of Plaintiff's Corporate Records Claim.

**II.    In the event the Court determines that it is in the best interests of the Court and the parties to rule on Ron's Bill of Costs at this point in time, Ron's Bill of Costs should still be denied in its entirety.**

The costs included in Ron's Bill of Costs can be broken down into four categories: (i) "Process Server Costs"; (ii) "Depositions, Trial Transcripts and Other Transcript Costs"; (iii) "Discovery/OCR Costs"; and (iv) "Photocopies and CD/DVD Costs." Those four categories total $50,821.31. In connection with his Bill of Costs, Ron submitted a spreadsheet for each of the four categories. Ron submitted supporting documents such as invoices and receipts for only two of the four categories. Finally, Ron did not file with the Court any memorandum or brief regarding his Bill of Costs.

   A.    *Ron fails to meet his burden of proving the necessity and reasonableness of the costs he seeks.*

It is well settled that for costs to be awarded to a prevailing party pursuant to Fed. R. Civ. P. 54(d)(1), the costs must be both necessary and reasonable. *See, e.g.*, *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997). The party submitting the bill of costs bears the burden

of establishing the necessity and reasonableness of the included costs.  *Id.* ("In seeking costs under Rule 54(d), the prevailing party has the burden of establishing that the expenses it seeks to have taxed as costs are authorized by applicable federal law, *including proof of necessity and reasonableness under 28 U.S.C. § 1980*") (emphasis added).  In Ron's Bill of Costs, Ron includes only four spreadsheets (one for each category of costs) and, for only *two* of the four categories, invoices evidencing the amount and purpose of some of the costs.  Two of Ron's categories of costs are thus supported by nothing more than the spreadsheet, and do not include any documentation such as invoices or receipts.  *See* Doc. 234-3 & Doc, 234-4, PageID 17575-17584.

Ron does not explain why these costs are allegedly (i) necessary, and (ii) reasonable.  For many of Ron's costs, he has not even submitted enough information to establish the *purpose* of the cost.  In fact, nowhere in his Bill of Costs does Ron even make an assertion that the costs are actually reasonable and necessary, nor does he ever explain how he actually used any of the items that are the subject of his alleged costs.  Instead, Ron has submitted only raw information that purportedly establishes the *amount* of his expenses, without addressing the alleged necessity, reasonableness and purpose of those costs.

Simply put, Ron's Bill of Costs submission falls well short of meeting his burden of proving the necessity and reasonableness of the costs he seeks, which are threshold issues for any determination regarding the propriety of a prevailing party's bill of costs.[4]  Ron's failure to meet his burden of proof on these issues requires that his Bill of Costs be denied outright.

---

[4] In the event Ron attempts to argue for the first time in his Reply to Bill of Costs that the costs were both reasonable and necessary, Plaintiff explicitly reserves her right to seek leave from the Court to file a sur-reply so that she may substantively respond to Ron's arguments on those issues.  Ron should not be permitted to include such arguments for the first time in his Reply, which would have the effect of precluding Plaintiff from submitting a responsive pleading to the Court on the issues of the purpose, necessity and reasonableness of Ron's alleged costs.

B.       *The White & White Factors*

In determining whether costs should be allowed to a prevailing party pursuant to Fed. R. Civ. P. 54, courts in the Sixth Circuit turn to the "*White & White* Factors," originally from *White & White, Inc. v. Am. Hosp. Supply Corp.,* 786 F.2d 728 (6th Cir. 1986), which were restated in *Rosser v. Pipefitters Union Local 392*, 885 F. Supp. 1068, 1071 (S.D. Ohio 1995) as follows:

1.   Were the taxable expenditures unnecessary to the case or unreasonably large?

2.   Should the prevailing party be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues?

3.   Was the prevailing party's victory so insignificant that the judgment amounted to a victory for the opponent?

4.   Was the case close and difficult?

5.   Did the losing party act reasonably and in good faith in filing, prosecuting or defending the case?

6.   Did the losing party conduct the case with propriety?

7.   Have other courts denied costs to prevailing defendants in similar cases?

8.   Did the prevailing party benefit from the case?

9.   Did the public benefit from the case?

10.  Did the case result in a profound reformation of current practices by defendant?

11.  Does the award of costs have a chilling effect on other litigants?

As discussed in more detail below, several of these *White & White* Factors support denying Ron's Bill of Costs in its entirety, particularly in light of the other issues discussed herein.

    i.  _The case was close and difficult_

  As the Court knows, this has been a close and difficult case[5] that has spanned over three years. It involved multiple parties and the disclosure and analysis of hundreds of self-dealing transactions involving Columbia Oldsmobile Company and its subsidiaries Columbia Development Corporation and Columbia Automotive, Inc. The transactions themselves involved multiple types of businesses, from the selling of new and used automobiles to real estate and insurance.

  In addition, this case has involved complex legal issues regarding the fiduciary duties owed by majority or controlling shareholders in an Ohio closely-held corporation. Ron and his Sons filed multiple summary judgment motions regarding statute of limitation issues and broader issues regarding fiduciary duties in the context of closely-held corporations. Plaintiff also filed a summary judgment motion that discussed the complexities and nuances presented by this case. The parties' briefs on these summary judgment motions totaled hundreds of pages, which were accompanied by hundreds more pages of supporting exhibits. Indeed, the record with the Court totals 17,615 pages at the time of this filing, which evidences the inherent complexity of this case.

  Ultimately, after a 10-day jury trial and extended deliberation by the jury, the jury returned a verdict for Ron. But the items discussed above establish that this case was both close and difficult regardless of the eventual victor. This _White & White_ factor weighs in favor of denying Ron's costs.

    ii.  _Plaintiff acted in good faith and conducted herself with propriety_

  Plaintiff acted in good faith and conducted herself with propriety in bringing and prosecuting this case. Plaintiff originally brought this case in April of 2016, promptly amended

---

[5] In light of all factors, including the remaining issues that have been bifurcated, Plaintiff still respectfully contends that this is a case in which she can and should ultimately prevail in whole or in part.

her Complaint in January of 2017 in light of new information uncovered by her in the early stages of discovery, and proceeded to try this case before a jury in October of 2018. At all times, Plaintiff believed—and still believes—that she has been wronged and has suffered harm as a result of Ron's conduct, and that the information uncovered in this case supports that belief. Moreover, Plaintiff engaged in good faith settlement discussions with opposing counsel, including in a private mediation and in settlement conferences involving the Court and its clerks. These *White & White* factors also weigh in Plaintiff's favor.

> iii. *Defendant Ron Joseph, Columbia and its innocent shareholders have benefited greatly from the case*

This factor, too, supports denying Ron's costs in their entirety. As a result of this case, although Ron's control over Columbia remains firmly intact, numerous transactions through which millions of dollars that have been paid by Columbia to entities Ron and Ron's sons own have been revealed.[6] After the case was filed, some—though far from all—of those transactions were reversed, repaid, or otherwise neutralized. This has benefitted Ron and other shareholders of Columbia (who are part of "the public" for these purposes) all of whom have or should have an interest in making sure that only proper outflows of money from Columbia are permitted. The result of the case has thus substantially benefitted Ron, and also weighs in favor of denying all of his costs.

> iv. *An award of costs in this instance will have a chilling effect on future litigants such as Plaintiff*

Awarding costs to Ron in this case would have a chilling effect on other litigants in situations similar to Plaintiff's, particularly in light of the items discussed in this Response. Majority and controlling shareholders of closely-held corporations are already in a position of

---

[6] It is important to remember that, while the jury returned a verdict in Ron's favor, Ron admitted at trial that many of the transactions at issue did in fact occur.

power vis-à-vis as to the minority shareholders, both in terms of corporate control and often (as is the case here) in terms of financial power as well. Awarding costs to wealthy majority and controlling shareholders like Ron after they have already won at trial in a close and complex case would chill minority shareholders who are considering litigation against majority and controlling shareholders whom the minority shareholders in good faith believe are misusing company assets to benefit themselves.

This chilling effect is further compounded when, as here, the minority shareholder's financial position stands in stark contrast to the majority shareholder's financial power. Ron is a multi-millionaire who owns a variety of businesses and properties, while Plaintiff is a guidance counselor for two parochial schools. *See* Exhibit A, Affidavit of Marie Joseph, at ¶ 3. Plaintiff is simply not in a position to be able to afford paying Ron over $50,000 for his alleged costs. Requiring Plaintiff to pay Ron that sum would be inequitable and unfair to Plaintiff, and would chill any future minority shareholders of closely-held corporations from bringing suit in good faith. This factor therefore also weighs in favor of denying Ron's costs.

### III. Each category of Ron's costs has serious issues that further warrant their denial.

#### A. *"Process Server Costs"*

Ron's first category of costs is "Process Server Costs," which he includes under the description "Fees for service of summons and subpoena" on the Court's bill of costs form. *See* Doc. 234, PageID 17492; Doc. 234-1, PageID 17494. In addition to all of the reasons discussed above, there are several additional reasons why Ron's Process Server Costs must be denied in their entirety, or at least substantially reduced.

      i.       *Ron unnecessarily served each of Plaintiff's expert witnesses with multiple subpoenas*

As can be seen in the spreadsheet submitted by Ron in conjunction with his Process Server Costs (Doc. 234-1, PageID 17495), Ron served Michael Costello with subpoenas three times, Geoffrey Stern three times, Robert Hesch three times and Paul Hess two times. The first subpoenas to Costello, Stern, Hesch and Hess were issued pursuant to a notice dated December 20, 2016 (the "2016 Subpoenas"). *See* Exhibit B. At the time Ron served notices of the 2016 Subpoenas, he was on notice that Plaintiff was seeking leave from the Court to amend her complaint, as Plaintiff had filed her Motion for Leave to Amend her Complaint on December 1, 2016. *See* Doc. 17. Moreover, Plaintiff filed with the Court a Proposed First Amendment to Her Complaint on December 2, 2016 (Doc. 20), so Ron also knew or should have known the detailed and extensive allegations Plaintiff would make if the Court granted her Motion for Leave. Despite this, Ron went ahead and served the 2016 Subpoenas anyway.

Nearly a year later, Ron served a notice for *another* set of subpoenas on Plaintiff's same four experts (Costello, Stern, Hesch and Hess) on December 4, 2017 (the "2017 Subpoenas"). *See* Exhibit C. Plaintiff formally objected to the 2017 Subpoenas upon receipt of the notices. *See* Exhibit D (December 5, 2017 correspondence with Jeff Landen and Stephen Hernick). Ron's response to Plaintiff's objections was that "Plaintiff filed an Amended Complaint after the previous subpoenas were issued and filed new expert disclosures" the prior week, thereby purportedly necessitating another round of subpoenas to the same four expert witnesses Plaintiff had previously identified prior to her amending the complaint. *See id*. But Plaintiff's "new" expert disclosures merely disclosed the same four individuals she had previously identified and on whom Ron had previously served subpoenas. *See* Doc. 82 (Plaintiff's Designation of Experts). Despite Plaintiff's objection, Ron never withdrew the 2017 Subpoenas and proceeded to serve them.

Neither the 2016 Subpoenas nor the 2017 Subpoenas were necessary. Rather than seeking information about Plaintiff's experts, using the proper mechanism of Fed. R. Civ. P. 26(b)(4), Ron pursued unnecessary Rule 45 subpoenas. Moreover, at the time Ron served the 2016 Subpoenas, Ron knew that Plaintiff was seeking leave from the Court to amend her Complaint, yet he went ahead and served the 2016 Subpoenas nearly three weeks *after* Plaintiff sought leave to amend. Ron knew or should have known that it was entirely possible that the Court would grant Plaintiff leave to file her extensive and detailed First Amendment to Her Complaint, which would result in additional discovery being conducted between the parties.

As to Plaintiff's experts, no subpoenas were necessary—and certainly not multiple sets for each expert. In addition, since Ron decided to serve the 2016 Subpoenas anyway, he should not be permitted to "double dip" and also receive the costs for the 2017 Subpoenas. Thus, in the event the Court does not deny Ron's Process Server Costs outright as to Plaintiff's expert, the Court should at least deny Ron's costs as to service of the 2016 Subpoenas.

ii.     *The subpoena served on Derek Joseph was unnecessary and the costs related to its service should be denied*

Ron includes in his Process Server Costs a $117.50 fee for the service of a subpoena on Derek Joseph. *See* Doc. 234-1, PageID 17495. Presumably, this cost is in relation to Derek Joseph's deposition. Ron's suspect motivations for deposing Derek Joseph are detailed at length in Plaintiff's Motion in Limine relating to Derek Joseph (Doc. 153), which also demonstrates why Derek Joseph's deposition was completely unnecessary.[7]

To briefly reiterate why deposing Derek Joseph was unnecessary: (i) Derek Joseph is not a party to this litigation; (ii) Derek Joseph is not a shareholder of Columbia; (iii) Derek Joseph has

---

[7] Plaintiff's Motion in Limine to Prohibit the Defendants from Compelling Derek Joseph to Trial as a Witness or Calling Him as a Witness (Doc. 153) and its memorandum in support are incorporated herein by reference.

limited first-hand knowledge of the facts of this case; and (iv) Ron's counsel's questioning of Derek Joseph during his deposition demonstrated Ron's questionable motives for deposing Derek Joseph in the first place.  Moreover, in Response to Plaintiff's Motion in Limine regarding Derek Joseph, Ron stated that he did not "oppose" that Motion because he had "no intention of calling Derek Joseph as a witness at trial," (Doc. 166, PageID 11431), which undermines any assertion Ron may make that deposing Derek Joseph was necessary.

For the reasons discussed above, the $117.50 fee for the service of a subpoena on Derek Joseph should also be denied.

### iii.    _The Process Server Costs are unreasonable_

Only the categories of costs specifically enumerated in 28 U.S.C.A. § 1920 may be included in a prevailing party's bill of costs.  Those categories are as follows:

1. Fees of the clerk and marshal;
2. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under § 1923 of [that] title;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of [that] title.

Ron lists his "Process Server Costs" under "Fees of the clerk and marshal" on the Court's bill of costs form.  However, Ron's Process Server Costs spreadsheet shows that the any costs included by Ron in the Process Server Costs category were allegedly incurred by him in connection with his voluntary retention of non-government process servers such as "Mike Mobley Reporting Service."  _See_ Doc. 234-1, PageID 17495.

Ron's Process Server Costs are thus not properly included in the "fees of the clerk and marshal" identified in 28 U.S.C.A. § 1920.  The Sixth Circuit has held that, while a "district court

may tax costs for private process server fees," it may only do so "to the extent that [the] private process server fees do not exceed the United States Marshal's fees." *Arrambide v. Wal-Mart Stores, Inc.,* 33 F. App'x 199, 203 (6th Cir. 2002). 28 C.F.R. § 0.114(a)(3) states that process of service by a United States Marshal costs "$65 per hour (or portion thereof) for each item served by" a marshal, "plus travel costs."

Nothing in the invoices and other supporting documentation submitted by Ron in connection with his Process Server Costs shows that the costs submitted by Ron are equal to or less than the United States Marshal's fees for each instance. Indeed, the majority of Ron's Process Server Costs appear to *exceed* what the United States Marshal's fees for that service. Since Ron supplies no information from which the Court can determine whether Ron's Process Server Costs are limited to the equivalent of the United States Marshal's fees for the same services, those costs should be denied in their entirety. In the alternative, the Process Server Costs must be reduced to appropriately reflect what the United States Marshal's fees would have been in each instance.

B.    *Depositions, Trial transcripts and Other Transcript Costs*

In his Bill of Costs, Ron lists $31,653.47 of what he calls "Depositions, Trial Transcripts and Other Transcript Costs," which are included on Ron's Bill of Costs form under "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" (the "Deposition Costs"). *See* Doc. 234, PageID 17492; Doc. 234-2, 17502. Those fees total $31,653.47. *Id.* at PageID 17506. Like the other categories of costs in Ron's Bill of Costs, there are serious issues with Ron's Deposition Costs that require that they be denied.

i.    *Lack of supporting documentation for Ron's Deposition Costs*

As discussed above, Ron has the burden of establishing the necessity and reasonableness of the costs he seeks. *See Hall,* 984 F. Supp. at 1146. Here, Ron has not made any assertion that

the Deposition Costs were necessary and does not include any documentation that would establish the necessity, reasonableness or purpose of the Deposition Costs.

This is an issue that affects nearly all of Ron's costs, but it bears repeating here because Ron seeks *$31,653.47* in Deposition Costs, which accounts for over 60% of the total costs sought by Ron in his Bill of Costs ($50,821.31). Moreover, "[d]epositions are not ordinarily taxable, however, when used for purposes of investigation or preparation for trial." *Id.* Ron has not included *any* documentation that would (i) establish the alleged necessity of those costs, or (ii) demonstrate that the Deposition Costs were for purposes *other than* investigation or preparation for trial. His failure to do either one of those things would be an independently sufficient basis for denying the Deposition Costs. Inasmuch as *both* of those issues are present, however, the Court should deny the Deposition Costs outright.[8] *See id.* (denying prevailing party's deposition costs when that party "failed to provide any evidence as to the necessity of the deposition at trial").

> ii.    *A number of the claimed Depositions Costs are for depositions that were clearly not necessary for trial*

In addition to the examples discussed more fully below, Ron includes in his Deposition Costs certain costs that are related to depositions that were clearly not necessary for trial in that they involved deponents who were not witnesses at trial.[9] Those alleged costs include the following:

- Cost dated 5/31/2017 for "Invoice #2017-389, video deposition of Derek and Marie Joseph taken on 5-25-17" (Doc. 234-2, PageID 17503);

- Cost dated 6/14/2017 for "Transcript – Litigation Support Services Deposition transcripts of Derek Joseph and Marie Joseph" (*id.*);

- Cost dated 8/16/2017 for "Fee for deposition transcript of Case #2008002862 for hearing held on 4-8-09 in the matter of Najla Joseph" (*id.*);

---

[8] In the event Ron decides to include arguments regarding the necessity of the Deposition Costs for the first time in his Reply, Plaintiff reserves the right to seek leave from this Court to file a sur-reply addressing those arguments.
[9] For some of these costs, there are additional reasons for denying them that are discussed more fully below.

- Cost dated 11/20/2017 for "Professional Fee – Joseph Overholser dba J.O.E. Productions LLC Videography services re: deposition of Jeff Gibson" (*id.* at PageID 17504);

- Cost dated 11/29/2017 for "Invoice #00025933: Deposition transcript of Jeffrey Gibson taken on 11-13-17" (*id.*);

- Cost dated 11/30/2017 for "Transcript – Lampke Court Reporting, Inc. Deposition transcript of Jeffrey Gibson" (*id.*);

- Cost dated 1/23/2018 for "Professional Fee – Joseph Overholser dba J.O.E. Productions LLC DVD Copy of video deposition of Alan Bieber" (*id.*);

- Cost dated 1/31/2018 for "Transcript – Lampke Court Reporting, Inc. Deposition transcripts of Alan Bieber" (*id.* at PageID 17505);

- Cost dated 3/27/2018 for "Invoice #00026118: Copy of deposition transcript of Joseph Zeuli taken on 3-2-18" (*id.*);

- Cost dated 4/30/2018 for "Invoice #26174: Copy of deposition transcript of Jeffrey Risius taken on 4-4-17" (*id.*); and

- Cost dated 5/21/2018 for "Professional Fee – Paul Eugene Weaver dba Gene Weaver & Associates Copy of Video Deposition of J. Risius" (*id.*).

Since these costs were not necessary for the trial in this matter, they should be denied.

### iii. *Costs relating to the deposition of Derek Joseph and any transcripts of same*

Included in Ron's Deposition Costs are at least two costs that relate specifically to the deposition of Derek Joseph. *See* Doc. 234-2, PageID 17503 (entries dated 5/31/2017 and 6/14/2017). As discussed above and in previous filings with this Court, the deposition of Derek Joseph was completely unnecessary. This deposition appears to have been, at most, investigatory in nature, and Derek Joseph was not called as a witness at trial by either party. As such, any costs associated with his deposition—including the two deposition costs specifically identified above—should be denied.

15

### iv. *The $3,065.38 cost for the expedited transcript of Robert Hesch*

Ron's listed Deposition Costs also includes $3,065.38 in costs for the transcript of Robert Hesch's deposition. *See* Doc. 234-2, PageID 17505 (entry dated 3/14/2018 for "Invoice #90856: Deposition of Robert Hesch taken on 3-7-18"). As evidenced by the corresponding invoice, the $3,065.38 was for a 308-page deposition transcript. *See* Doc. 234-2, PageID 17651. Thus, for purposes of Mr. Hesch's deposition transcript, Ron paid almost *ten dollars per page*. It appears that the increased costs are due to Ron's unexplained election to (i) receive the finalized transcript on an expedited basis, and (ii) to also receive a "rough transcript" in addition to the expedited official transcript. *Id.* Plaintiff should not have to pay for the costs Ron incurred in electing to receive Mr. Hesch's transcript on an expedited basis or in "rough" form, let alone both. Those costs are unreasonable and should be denied by the Court. *See*, *e.g.*, *Hill v. BASF Wyandotte Corp.*, 547 F. Supp. 348, 352 (E.D. Mich. 1982) (denying the costs of an expedited transcript when "the premium for an expedited transcript was solely for the convenience of counsel to meet a discovery deadline").

### v. *Trial transcripts*

Ron includes at least two costs that are for "court transcripts." *See* Doc. 234-2, PageID 17506 (entry dated 10/22/2018 and entry dated 11/21/2018). Those fees total $1,816.70. Again, nothing in Ron's Bill of Costs even attempts to explain how the expenditures for the "court transcripts" were necessary. It is unclear from Ron's Bill of Costs whether some or all of those costs were for transcripts actually used by Ron at trial as opposed to those obtained by Ron and his counsel purely for their convenience. The "court transcripts" costs should thus also be denied, as Ron has failed to meet his burden of proving their necessity.

       vi.       *Transcripts of Jeffrey Risius and Joseph Zeuli depositions were not necessary*

Included by Ron in his Deposition Costs are several fees relating to the depositions of Jeffrey Risius and Joseph Zeuli, two experts who were retained by Ron and his Sons, respectively. *See* Doc. 234-2, PageID 17505 (entries dated 3/27/2018, 4/30/2018 and 5/21/2018). Those fees total $1,313.59. But neither Ron nor his Sons used the testimony of Mr. Risius and Mr. Zeuli for any purpose, even though Mr. Risius was hired by Ron as a purported "rebuttal expert" to Robert Hesch's first expert report.[10] Moreover, Mr. Risius' and Mr. Zeuli's testimony were not used by Ron at trial, which further highlights how unnecessary any alleged costs associated with their depositions were. These costs should likewise be denied.

       vii.     *Transcript of April 8, 2009 hearing*

Ron also includes in his Deposition Costs a $339.15 cost for "Fee for deposition transcript of Case #2008002862 for hearing held on 4-8-09 in the matter of Najla Joseph" (the "April 8, 2009 Cost"). *See* Doc. 234-2, PageID 17503 (entry dated 08/16/2017). It is unclear what exactly this fee is even for, which is yet another demonstration of the serious issues that arise from Ron's lack of supporting documentation. The only supporting document for the April 8, 2009 Cost is what appears to be an invoice, with a copy of a check from Keating Muething & Klekamp, P.L.L. Doc. 234-2, PageID 17522. Even the description for the April 8, 2009 cost does not reveal its true purpose: it is described as a "deposition transcript" for a 2009 "hearing" held "in the matter of Najla Joseph."

Though it is unclear what the "deposition transcript" for that April 8, 2009 "hearing" contained or how (if at all) it was even used by Ron in the course of this litigation, what is clear is

---

[10] Nevertheless, Mr. Risius testified in his deposition that he was not even *asked* to render an opinion about Mr. Hesch's supplemental report, further underlining his testimony's glaring lack of necessity. *See* Doc. 112, PageID 7059.

that Ron's counsel obtained a transcript of a hearing that took place nearly *seven years before this case even began* and he is now requesting that Plaintiff be required to pay that cost. Such a cost is unreasonable and unnecessary, and it should be denied by the Court.

      C.       *"Discovery/OCR Costs"*

Ron's third category of costs is "Discovery/OCR Costs," which totals $2,040.79, as listed under "Fees and disbursements for printing" on Ron's Bill of Costs. *See* Doc. 234, PageID 17492; Doc. 234-3, PageID 17575. In support of this purported $2,040.79 of "Discovery/OCR Costs," Ron submitted nothing but a one-and-a-half-page spreadsheet, which includes only brief, vague descriptions of the alleged "Discovery/OCR Costs" Ron incurred. *See* Doc. 234-3, PageID 17576-17577. The spreadsheet does not state what documents are the subject of the costs listed under "Discovery/OCR Costs." Indeed, for some of the costs listed in the "Discovery/OCR Costs" spreadsheets, it is impossible even to determine what the alleged purpose of those costs is.[11] Nor does anything in Ron's Bill of Costs establish how (if at all) the documents included in the "Discovery/OCR Costs" were ultimately used by Ron.

Moreover, Ron did not even include any supporting documentation, such as invoices, receipts or other evidences of payment, to demonstrate that the "Discovery/OCR Costs" were necessary or even paid. That prevents Plaintiff from rebutting the substance of Ron's claim for "Discovery/OCR Costs," and also leaves the Court unable to determine the purpose of those costs and whether they were necessary and reasonable. Ron's failure to establish the necessity of the claimed "Discovery/OCR Costs" thus requires that those costs be denied.[12]

---

[11] For example, the "Discovery/OCR Costs" spreadsheet includes descriptions such as "Discovery Document Images Deliverable ($.02/page) on 11-1-17, 3,327 pages." That description offers no substance or explanation as to the actual purpose of that cost. The "Discovery/OCR Costs spreadsheet is rife with these types of vague descriptions.

[12] As with Ron's other costs that do not include sufficient (or any) supporting documentation, to the extent Ron includes that information for the first time in his Reply on Bill of Costs, Plaintiff reserves the right to seek leave from the Court to file a sur-reply addressing that information.

D.        *"Photocopies and CD/DVD Costs"*

Ron's fourth and final category of costs is "Photocopies and CD/DVD Costs," which Ron listed under "Fees for Exemplification and the Costs of Making Copies of Any Materials Where the Copies Are Necessarily Obtained for Use in the Case" on his Bill of Costs. The total cost for "Photocopies and CD/DVD Costs," as submitted by Ron, is $16,064.54.

As with the other costs included in Ron's Bill of Costs, "[t]he burden is on the party seeking reimbursement for photocopying costs to show that the copies were necessary for use in the case." *Troyer v. T. John E. Prods., Inc.*, No. 1:09-CV-821, 2012 WL 12981673, at *2 (W.D. Mich. Jan. 23, 2012). Like the "Discovery/OCR Costs" discussed above, Ron fails to submit *any* supporting documentation for the "Photocopies and CD/DVD Costs" other than a spreadsheet presumably prepared by him or his counsel. Ron's Bill of Costs submission does not include any invoices or receipts for any of the "Photocopies and CD/DVD Costs." Additionally, the descriptions in the "Photocopies and CD/DVD Costs" spreadsheet are even more vague than the descriptions found in the "Discovery/OCR Costs" spreadsheet.[13] The spreadsheet fails to identify what was copied, why it was copied or to whom payment was made. Ron provides no evidence that would support an assertion that $16,064.54 in *copying costs* is reasonable or necessary. Finally, there is no explanation as to why it was necessary to make some photocopies in color, at the cost of $.50 per page, as opposed to regular copies, which appear to be charged at $.15 per page.[14]

The vague descriptions and lack of any direct supporting documentation for the *$16,064.54* in "Photocopies and CD/DVD Costs" of unspecified documents means that Ron has not only failed to meet his burden of proving that those costs were necessary for this case, but has not even

---

[13] For example, a number of the descriptions in the "Photocopies and CD/DVD Costs" spreadsheet read only "Reproduction Charges" or "Reproduction Duplex."

[14] Nor does Ron provide anything to establish that these per page charges are consistent with reasonable rates for bulk photocopying of large document populations.

attempted to explain the purpose or nature of the "Photocopies and CD/DVD Costs."[15]  As such, the Court must also deny these costs in their entirety.  *Hall*, 984 F. Supp. at 1146 (denying the prevailing party's requests for photocopying costs because the prevailing party did not provide any "information about what was copied or how the copies were used," and "did not give the Court any information to determine the necessity of the photocopies").

### IV.     Conclusion

Ron's Bill of Costs submission to the Court fails to meet Ron's burden of proving that the costs he seeks from Plaintiff are reasonable and necessary.  Rather than address those threshold issues as to each of the four categories of costs he seeks, Ron submits only four barebones spreadsheets and two groups of invoices.  Ron makes no effort to prove that the costs he seeks are reasonable or necessary, nor does he even attempt to explain how he used any of the items that are the source of those costs.  As a result of the glaring deficiencies in Ron's Bill of Costs, as well as the prejudice to the parties and the Court that may result if the Court rules on Ron's Bill of Costs at this time, the Court should deny Ron's Bill of Costs in its entirety.

Respectfully submitted,

 */s/ Kevin L. Murphy*
Kevin L. Murphy (0021810)
J. Jeffrey Landen (0018174)
Nicholas R. Gregg (0095731)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017-0534
Tel: (859) 578-3060
Fax: (859) 578-3061
KMurphy@MLJfirm.com
JLanden@MLJfirm.com
NGregg@MLJfirm.com
*Counsel for Plaintiff*

---

[15] Plaintiff reserves the right to address any arguments Ron makes for the first time in his Reply on Bill of Costs regarding the purported necessity and reasonableness of any or all of the "Photocopies and CD/DVD Costs."

## **CERTIFICATE OF SERVICE**

I certify that on April 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy