# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| MARIE JOSEPH | Case No. 1:16-cv-00465-TSB |
| Plaintiff, | |
| | Judge Timothy S. Black |
| v. | |
| | **PLAINTIFF'S TRIAL BRIEF** |
| RONALD JOSEPH, | **REGARDING HER CORPORATE** |
| | **RECORDS CLAIM** |
| Defendant. | |

Plaintiff Marie Joseph ("Plaintiff"), by and through counsel and pursuant to the Court's May 17, 2019 Minute Entry and Notation Order, hereby respectfully submits her Trial Brief Regarding Her Corporate Records Claim.

## I.    Statement of Facts

In Plaintiff's initial Complaint, which was filed with the Court on April 12, 2016, Plaintiff asserted a claim for access to the corporate records of Columbia (the "Corporate Records Claim"). Doc. 1, PageID 11-12.  The corporate records requests that first gave rise to that claim were made on Plaintiff's behalf by her counsel in October of 2015[1] (the "October 2015 Requests").  *See* Exhibit A.  The primary request contained in the October 2015 Requests is a request to inspect "[t]he 'complete books and records of account, together with minutes of the proceedings of Columbia's shareholders, directors, and committees of the directors.'"  *Id*.  Though the October 2015 Requests go on to list a number of individual items under that primary request, the request

---

[1] As noted by the Court in its May 17, 2019 Minute Entry and Notation Order, the Court has limited the scope of the upcoming bench trial relating to Plaintiff's Corporate Records Claim to "only those corporate records requests submitted prior to filing of Plaintiff's Complaint. (Doc. 1)."  Plaintiff has made several requests subsequent to the filing of her Complaint.  *See*, *e.g.*, Doc. 120-17, PageID 8743-8746.  While Plaintiff believes that those requests are also proper in all respects, Plaintiff understands the Court's directive regarding the scope of the upcoming bench trial.  As such, this brief addresses only the corporate records requests made through Plaintiff's counsel in October of 2015.

for the "complete books and records of account" is explicitly not limited to those subsequently listed items. *Id*.

Following some correspondence between Marie Joseph's counsel and the counsel for Ron Joseph and Columbia, Joe Rouse of Keating Muething & Klekamp communicated to Marie Joseph's counsel that (i) "some information is either not available or is within the public domain," and (ii) that Ron and/or Columbia either did not provide or refused to provide "authorization" for Joe Rouse to "respond or otherwise provide [the] items" listed in the October 2015 Requests. *See* Exhibit B. Plaintiff was not provided *any* access to Columbia's corporate records in response to her October 2015 Requests.

Plaintiff then initiated this litigation in April of 2016. Copies of *some* documents that would have been responsive to Plaintiff's October 2015 Requests were produced by Ron in response to discovery conducted in this litigation. Nevertheless, only a limited subset of documents that Marie had requested to inspect were actually produced.

One example of the limited scope of the documents produced in the litigation is Ron's production of the so-called "general ledgers" for Columbia Automotive and Columbia Development. Excerpts of information purportedly exported from the general ledgers were produced by Ron in the course of discovery pursuant to Plaintiff's requests for production. But the so-called "general ledgers" produced by Ron are mere printouts of information *from* the general ledgers that evidence the dates and amounts of the outflows of money, but that provide little to no explanation as to the true nature or purpose of each of the outflows of funds.[2]

---

[2] As more fully explained below, the general ledger entries are in any event insufficient to provide meaningful information about the nature and purpose of the transactions, because the general ledger itself does not include (i) the underlying source documents or (ii) all of the information from the underlying source documents. In many ways, the general ledger functions as an index, pointing to underlying transactions that are documented elsewhere. The availability of such an index is a first step, but only the first step, toward examining the nature and purpose of the transaction that has resulted in each outflow of funds.

Moreover, Plaintiff has still not been permitted even to "inspect" the general ledgers themselves, as she originally requested in her October 2015 Requests.  Instead, as Plaintiff will show a trial, Ron has provided to Plaintiff print-outs of data from the general ledgers, and has done that only in the context of and in response to discovery in the litigation.

The inherent lack of information within the general ledger (and *a fortiori* in printouts from the general ledger) about the nature and purpose of the payments reflected there points to the need to see the source documents that lie behind the mere dates, amounts and payees of funds.  Yet Ron refuses to provide Plaintiff with access to the source documents supporting the transactions listed in the general ledgers of Columbia Automotive and Columbia Development, disingenuously asserting that Ron does not know what Marie means by "source documents."  As Plaintiff will demonstrate at trial, even if one were to assume arguendo that Ron himself does not know what source documents are, the individuals who handle the implementation of the transactions most certainly do.  Furthermore, as the proof at trial will demonstrate, without Ron or his staff providing access to the source documents, it is extremely difficult if not impossible for Plaintiff to ascertain the specific nature and purpose of each of the payments that are identified in the general ledgers.

Ron did not provide access to any source documents in response to Marie Joseph's pre-litigation requests.  Even within the context of the litigation, the ongoing refusal to provide meaningful access to source documents continued.  Plaintiff's attempts to obtain access to source documents for even a subset of the transactions listed in the general ledger[3] was resisted by Ron in the litigation as well.  With a very limited number of exceptions, Ron's production of documents

---

[3] As discussed in Plaintiff's Responsive Pleading Regarding Her Corporate Records Claim (Doc. 238), which is incorporated herein by reference, Plaintiff's counsel provided Ron's counsel with a copy of a spreadsheet identifying individual transactions for which Plaintiff would like to inspect "source documents" pursuant to her October 2015 Requests.  *See* Doc. 238, PageID 17650-17651; Doc. 238-1, PageID 17667-17689.  Even with this extremely limited population of transactions, Ron has refused to permit Plaintiff to inspect the corporate records underlying those transactions.  For the Court's convenience, another copy of that spreadsheet is attached hereto as Exhibit C.

in the litigation has not alleviated or eliminated the problem of Ron's refusal to provide access to source documents.[4] Ron has refused – and continues to refuse – to permit Marie Joseph the opportunity to inspect and copy the vast majority of the books and records to which she sought access through her pre-litigation requests.

The October 2015 Requests also include a request to inspect "[t]he records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992." Exhibit A. Despite this request, Plaintiff has not been permitted to inspect and make copies of Columbia's original stock ledgers. Though Plaintiff's counsel was given limited access to some of what appeared to be Columbia's original stock ledger early in the litigation, Ron's counsel did not permit Plaintiff's counsel to make copies of those documents. Additionally, those documents were never produced by Ron in this litigation. Instead, only computer-generated "stock registers" and "shareholder's lists" which purport to reflect Columbia's original stock ledger were produced by Ron.[5] *See* Doc. 238-3, PageID 17691-17700. Those documents are (i) not Columbia's original stock ledgers, and (ii) are limited in temporal scope inasmuch as they purport to reflect only portions of the stock ledgers "as of" a certain date.

In short, Plaintiff made requests for, among other things, Columbia's "complete books and records of account" and "[t]he records of Columbia's shareholders" in October of 2015. Even now, over three and a half years later and after extensive litigation and discovery, as the proof at trial will demonstrate, Plaintiff has been provided only limited access to *some* those documents, in

---

[4] As an example, in the context of the litigation, Ron's counsel did provide Plaintiff's counsel with access to some original documents relating to so-called "fleet transactions." But, even then, the access provided was artificially cut off before Plaintiff's counsel could complete a meaningful review, on the basis that the discovery period in the litigation had ended. The refusal of Ron's counsel to permit further inspection or copying after the close of the discovery period establishes that even the limited access to some source documents was done in the context of Rule 26 discovery and not in furtherance (or fulfillment) of Ron's obligations to Plaintiff pursuant to her extrajudicial right to inspect and copy records.

[5] Those documents appear to have been created by Ron's counsel. It is not clear to Plaintiff when they were created or from what source or sources the information contained in those documents was supposedly derived.

violation of her rights under R.C. § 1701.37 and Ron's duties to Marie as a minority shareholder.

**II.      Issues, Evidence and Arguments of Law**

Ron has not explicitly admitted that Plaintiff's October 2015 Requests were made for a reasonable and proper purpose and were otherwise made in accordance R.C. § 1701.37,[6] but Ron does not appear to be contesting that issue actively.[7]  Plaintiff therefore anticipates that the most significant issues to be addressed at trial relate to Ron's refusal to provide access to source documents for certain transactions that Plaintiff has identified[8] and documents constituting or relating to Columbia's original stock ledger.  Each category of documents will be discussed in turn.

**A.      *Source Documents***

As to the source documents that Plaintiff seeks to inspect and copy, the issues that will be before the Court at the upcoming bench trial are (i) the existence and form of the types of "source documents" that Plaintiff seeks to inspect; (ii) the manner in which those documents are kept; and (iii) the time, place and manner of Plaintiff's proposed inspection of those documents.

> **i.      *Plaintiff will establish at trial that source documents for the transactions at issue do, in fact, exist***

Though Ron and his counsel have often expressed ignorance as to what the term "source

---

[6] The October 2015 Requests were made because "Marie is concerned that Columbia has failed to account for income it has received, directly or indirectly, through its subsidiaries and holdings and/or Ronald Joseph has, in violation of fiduciary duties to minority shareholders such as Marie, failed to issue distributions and/or dividends that reasonably should have been paid over the past several years.  Marie is also concerned that there may have been a usurpation of various corporate opportunities and general dereliction of duty to the minority shareholders." Exhibit A.  Those concerns were the explicit purpose of making the October 2015 Requests, and that purpose was reasonable and proper both then and now.  In his Pleading Regarding Plaintiff Marie Joseph's Corporate Records Request (Doc. 233), Ron does not dispute that the purpose of the October 2015 Requests was both reasonable and proper.  In the event Ron decides to challenge the purpose of the Octobers 2015 Requests, Plaintiff is prepared to put forth evidence at the upcoming bench trial that the purpose of those requests was both reasonable and proper.

[7] If Ron does challenge whether Plaintiff is seeking access to Columbia's books and records for a proper purpose, Plaintiff will be prepared to address that issue at trial as well.

[8] Access to the actual general ledgers (as opposed to the printouts) may also be an issue, to the extent that the proof at trial may demonstrate that the most reasonable and efficient way to obtain access to source documents may be through use of the interactive characteristics of the computerized general ledger itself.

document" means in the context of Plaintiff's corporate records requests, the term "source document" is not actually ambiguous and is well-known to those who have actually implemented the transactions. In simple terms, a source document is any document that supports or "backs up" a given transaction or payment. Source documents include documents such as receipts, invoices or purchase orders. Indeed, Linda May (Columbia Automotive's former controller and a consultant to Columbia Automotive as of the date of the jury trial in this matter) testified at trial that she "know[s] what source documents are" and proceeded to list several examples. Tr. of Trial Day 3, 3-82:9-19. Ms. May also testified at trial that she would have a copy of an invoice for each cash disbursement (which necessarily includes those identified by Plaintiff in the spreadsheet attached hereto as Exhibit C) and that she never made a payment without receiving an invoice. *Id*. at 3-83:2-10. Plaintiff anticipates that Ms. May will testify at the bench trial consistent with her deposition testimony and the testimony she gave during the jury trial in this matter regarding her knowledge of the source documents that exist as well as where and how they are kept.

Ron tellingly has never disputed the existence of source documents for the payments reflected in the general ledger. Ron and his counsel have had every opportunity to do so, and has not.

Indeed, the Court previously ordered Ron to file a pleading "stating what documents Columbia has that are responsive to Marie's Corporate Records Requests that have <u>not</u> been produced in discovery and an explanation for why these documents have not been produced in response to Marie's Corporate Records Requests" (emphasis in original). Doc. 230, PageID 17445. In his Pleading Regarding Plaintiff Marie Joseph's Corporate Records Requests, Ron did not dispute that source documents exist, but instead avoided the substance of the Court's question by asserting that "Plaintiff has repeatedly refused to define or articulate what 'source documents'

are, what specific 'source documents' she wants to examine, and what reasonable and proper purpose examining them would serve." Doc. 233, PageID 17484. Plaintiff's rebuttal to that contention is set forth in detail in her Responsive Pleading Regarding Her Corporate Records Claim (Doc. 238).

Nevertheless, the evidence at the upcoming bench trial will demonstrate that Ron's circular argument about Plaintiff's alleged lack of specificity regarding the source documents she wishes to inspect is without merit. The source documents indisputably exist, and Ms. May—the individual in charge of Columbia Automotive's accounting processes for the relevant time period—has testified and will provide further testimony consistent with that fact.

<blockquote>ii. <em>Plaintiff will establish at trial that the relevant source documents are kept in a reasonably accessible manner</em></blockquote>

As discussed above, the evidence presented at trial will establish that the source documents exist. The evidence at trial will also demonstrate that the source document are stored in systematic fashion by the individuals to whom Ron has delegated the authority to control Columbia's finances. For example, Linda May testified in her deposition that source documents are "filed," at times in "binders" and at other times in "folders." Dep. of Linda May, 55:24-56:17, attached hereto as Exhibit D. Additionally, when asked in her deposition if there was a system in place for "tracing back the information for a particular transaction from an entry in the general ledger to the source documents," Ms. May testified that she can "look back at everything." *Id*. Moreover, Ms. May's deposition testimony described the process by which the physical copies of the source documents are stored on Columbia's premises and/or on the premises of other properties owned by Ron or an entity Ron owns or controls.[9] *See* Dep. of Linda May, 56:23-60:12, attached hereto

---

[9] Some records are kept at the premises of Columbia Automotive, Inc, and, after an uncertain period of time, transferred to storage at separate facilities on Gilbert Avenue. Additional records are stored on at the Columbia's headquarters located at 250 East Fifth Street. These records are created and/or maintained by Columbia employees.

as Exhibit E. In sum, Ms. May's deposition testimony establishes that the source documents at issue are kept in an organized and systematic manner such that Ms. May can access them.

Plaintiff anticipates that, at trial, Ms. May will provide testimony regarding this subject consistent with her deposition testimony and her testimony at the jury trial. Ms. May's anticipated testimony will establish (i) the manner in which the source documents at issue are stored and maintained, and (ii) the relative lack of difficulty in accessing those source documents and permitting Plaintiff to inspect them. Moreover, Plaintiff anticipates that the testimony at the upcoming bench trial will show that the computer program in which Columbia Automotive's general ledgers are maintained (supplied by Reynolds & Reynolds) allows for nearly instantaneous access to the source documents, their location, or both. Indeed, upon information and belief, the Reynolds & Reynolds software allows for the user to simply "click" one of the various reference numbers associated with any given transaction, which would provide access to the information underlying that transaction.[10] Such functionality would further reduce the already slight burden imposed on Columbia, if any, in making those documents available for Plaintiff to inspect.

> iii. *Plaintiff will establish at trial that she is willing to agree to a reasonable time, place and manner for her inspection of documents pursuant to her October 2015 Requests*

Plaintiff has been and continues to be willing to inspect the documents in question (i) at reasonable times that are during Columbia's ordinary business hours, (ii) in a place (or places) at which the documents are most readily accessible (presumably at Columbia's office and, if the computer program allows, through a computer terminal with access to or a copy of Columbia Automotive's records as stored in the Reynolds & Reynolds program), and (iii) in a reasonable

---

[10] This is consistent with Ms. May's testimony described above that she can "go back and look at everything."

manner that imposes as little burden on Columbia's ordinary operations as possible.[11] This will likewise be established at trial.

> iv. *The plain reading of R.C. § 1701.37 and the supporting legal authority makes clear that Ron must permit Plaintiff to inspect these documents*

R.C. § 1701.37(C) states as follows: "Any shareholder of the corporation, upon written demand stating the specific purpose thereof, ***shall*** have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, ***its books and records of account***, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof" (emphasis added). It is not the prerogative of Ron or Columbia to decide *whether* Plaintiff is able to inspect and copy Columbia's corporate records—the statute states that Plaintiff *shall* have the right to make such an inspection upon making a request that states a reasonable and proper purpose.

As discussed above, Ron has not actively challenged the propriety or reasonableness of the purpose for Plaintiff's October 2015 Requests. Pursuant to R.C. § 1701.37(C), Plaintiff has the right to inspect and copy Columbia's "books and records of account."

In this context, one threshold legal question appears to be whether the source documents that Plaintiff seeks to inspect and copy fall within the scope of R.C. § 1701.37(C) such that Plaintiff

---

[11] Ron has the burden of proving that permitting Plaintiff to inspect these documents would impose such a significant burden on Columbia that Ron's refusal to grant Plaintiff's requests is justified. *See* OSBA Corporation Law Committee Note to O.R.C. § 1701.37 (stating that the shareholder who furnishes in writing a written statement that states a reasonable and proper purpose "will be presumed to be acting in good faith and the corporation will have the burden of rebutting that presumption by proving that [the shareholder's] actual purpose is unreasonable or improper"); *see also No-Burn, Inc. v. Murati*, 2011-Ohio-5635, ¶ 17 (Ct. App.); Doc. 238, PageID 17652-17653. Ron has failed to meet that burden despite having every opportunity to do so. Nevertheless, Plaintiff has been and remains willing to work with Ron and his counsel to craft a solution that is reasonable for all parties and that would ease whatever burden may be imposed on Columbia, if any. Thus far, Ron has refused to do the same.

must be permitted to inspect them.[12] Legal authority on this issue establishes that the answer to this question is a resounding "yes"—the categories of documents that a shareholder is entitled to inspect under R.C. § 1701.37 include documents such as the source documents.

As discussed at length in Plaintiff's Responsive Pleading Regarding Her Corporate Records Claim (Doc. 238), Ohio law establishes that documents underlying transactions identified in a corporation's financial records—such as the very source documents discussed above—are included in the categories of documents listed in R.C. § 1701.37(C). *See* Doc. 238, PageID 17655-17656. Specifically, the underlying documents fall within the categories of a corporations "books and records of account," which is the subject of the primary request contained in Plaintiff's October 2015 Requests. *See William Coale Dev. Co. v. Kennedy*, 170 N.E. 434, 434 (1930) (holding that stockholders have the right to inspect "*all* books, records, papers, contracts and other written documents, and to inspect *all assets of every kind* belonging to the corporation") (emphasis added); *see also No-Burn, Inc. v. Murati, 2011-Ohio-5635*, ¶ 49 (Ct. App.) (Dickinson, J., concurring) (noting that the *William Coale* decision "suggest[s] that a shareholder's right to inspect includes access to documents *underlying the central accounting books* from which a shareholder can make his own calculations to determine whether the corporation is being managed efficiently") (emphasis added).

Moreover, the Court itself has already indicated on several separate occasions that Plaintiff is entitled to inspect the documents that are the subject of her corporate records requests. *See*, *e.g.*, Doc. 175, PageID 11733 ("Marie's requests for inspection seek broad categories of documents that she is entitled to inspect as a shareholder of Columbia"); Doc. 230, PageID 17446 ("Ohio

---

[12] Ron's refusal to provide Plaintiff the opportunity to inspect and copy the Columbia records also violates his fiduciary duties to Marie as a minority shareholder, separate and apart from his duties under R.C. § 1701.37(C). Ron's ongoing violation of those duties provides an independently sufficient basis for granting Plaintiff the relief that she seeks.

Revised Code § 1701.37(C) gives shareholders like Marie the right to inspect a corporation's records. The parties, and the experienced attorneys representing them, should be able to ensure Marie gets the records <u>she is entitled to</u> without a second trial")[13] (emphasis in original).

The legal authorities discussed above, from R.C. § 1701.37 itself to the Court's own Orders, support Plaintiff's claim that Ron *must* allow Plaintiff to inspect the source documents discussed herein. The law makes clear not only that the scope of Plaintiff's October 2015 Requests to inspect Columbia's "complete books and records of account" includes the underlying source documents discussed above, but also that inspecting those underlying source documents is critical to achieving the reasonable and proper purpose of Plaintiff's October 2015 Requests.

Plaintiff is prepared to establish the underlying facts about the existence and location of these records at the upcoming bench trial, and to advance that argument that Ron must grant her access to them for inspection and copying.

B.      *Columbia's Original Stock Ledgers*

In her October 2015 Requests, Plaintiff also requested that she be granted access to "[t]he records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992." Exhibit A. As discussed above, rather than permitting Plaintiff to inspect and copy all of Columbia's original stock ledgers, Ron asserted that some of those records could not be found but permitted Plaintiff's counsel to inspect (but not copy) others.

At the upcoming trial, Plaintiff will establish that the shareholder records exist and where they are kept. In addition, Plaintiff will elicit testimony to establish a clear line as to which

---

[13] This statement was made by the Court after the filing of the parties' Joint Proposal Regarding Corporate Records Claim on November 27, 2018 (Doc. 226), wherein Plaintiff stated that she was not "willing to forego access to source documents relating to self-dealing transactions based on any assertions by Ron that the financial statements of Columbia and its subsidiaries provide sufficient information about those transactions or that Marie's access is limited by the jury's verdict." Doc. 226, PageID 17162.

shareholder records are missing or lost, and which are still accessible.

In addition, at the upcoming trial, Plaintiff will establish that, as to the shareholder records that are neither missing nor lost, Ron has refused to allow Plaintiff to copy many of them, instead supplying subsequently produced computer-generated "stock registers" and "shareholders' lists."

Just as with his conduct in connection with the source documents, Ron's conduct regarding Columbia's original stock ledgers is a violation of R.C. § 1701.37(C). R.C. § 1701.37(C) specifically lists the corporation's "records of shareholders aforesaid" as a category of documents to which a shareholder must be given access to inspect upon making a reasonable and proper request. Moreover, Plaintiff has every right to inspect *and copy* Columbia's original stock ledgers and is not required to rely on computer-generated documents created by Ron or his counsel. *See William Coale Dev. Co.,* 170 N.E. at 435 ("the stockholders [are] not obliged to accept as 100 per cent correct statements prepared by the agents of the corporation"). Plaintiff has the right to see the information contained in Columbia's stock ledgers for herself.[14] *Id.*

Plaintiff is thus entitled to inspect and copy Columbia's original stock ledger and any other documents reflecting or relating to "records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992," including any copies of minutes or other records that reflect or otherwise reference the issuance, transfer or retirement of any such stock. Plaintiff will establish as much at trial.

---

[14] Access to Columbia's original stock ledgers is especially important given the confusion surrounding the current status of Columbia's original stock ledgers. Ron has previously taken the position in this litigation that portions of Columbia's minute books have been lost or misplaced, yet Ron has produced documents such as the "stock registers" and "shareholders' lists" referenced above, which purport to reflect stock ledger information that would presumably be contained in one or more of the volumes constituting Columbia's corporate minute books. Moreover, Ron's Sons (and not Ron himself) produced purported copies of Columbia's stock certificates, but Ron has not provided access to or otherwise produced the contemporaneously recorded information relating to the issuance or retirement of each of those stock certificates. Essentially, Ron has produced *some* information that would appear to reflect or otherwise be derived from the information contained in Columbia's original stock ledgers, but has not permitted Plaintiff to inspect and make copies of the original stock ledgers in their entirety. Plaintiff has every right to inspect the original stock ledgers pursuant to R.C. § 1701.37 and Ohio law.

III.    **Conclusion**

Plaintiff's October 2015 Requests are clear and indisputable:  Plaintiff requested, among other things, permission to inspect (i) Columbia's "complete books and records of account," and (ii) "[t]he records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992."  Plaintiff has not been permitted to inspect many of those records, which is a violation of the rights granted to her pursuant to R.C. § 1701.37 and Ron's duties to Plaintiff as a minority shareholder.  As to others, Ron has permitted limited inspection but refused to permit Plaintiff to make copies.  This, too, is a violation of R.C. § 1701.37.

As the Court has previously stated, "Ohio Revised Code § 1701.37(C) gives shareholders like Marie the right to inspect a corporation's records."  Doc. 230, PageID 17446.  The evidence at trial will unequivocally establish the existence and location of the requested records and Ron's ongoing violation of Plaintiff's rights to inspect and/or copy them. Therefore, at the upcoming bench trial, Plaintiff will also be asking the Court to make rulings regarding the "time, place and manner" of Plaintiff's future inspection and copying of those records.

Respectfully submitted,

 /s/ Kevin L. Murphy
Kevin L. Murphy (0021810)
J. Jeffrey Landen (0018174)
Nicholas R. Gregg (0095731)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
Fort Mitchell, KY 41017-0534
Tel: (859) 578-3060
Fax: (859) 578-3061
KMurphy@MLJfirm.com
JLanden@MLJfirm.com
NGregg@MLJfirm.com
*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 24, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy
