```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
 2                        WESTERN DIVISION
                             -  -  -
 3

 4    MARIE JOSEPH,                 .  Case No. 1:16-cv-465
                                    .
 5           Plaintiff,             .  Status Telephone Conference
                                    .
 6           - v -                  .  Friday, July 19, 2019
                                    .
 7    RONALD JOSEPH, et al.,        .  1:00 p.m.
                                    .
 8           Defendant.             .  Cincinnati, Ohio
                             -  -  -
 9                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE TIMOTHY S. BLACK, JUDGE
10                           -  -  -
      For the Plaintiff:          Kevin L. Murphy, Esq.
11                                J. Jeffrey Landen, Esq.
                                  Nicholas R. Gregg, Esq.
12                                Murphy Landen Jones, PLLC
                                  2400 Chamber Center Drive
13                                Suite 200
                                  P.O. Box 17534
14                                Fort Mitchell, Kentucky  41017

15    For the Defendant, Ronald Joseph:

16                                James E. Burke, Esq.
                                  Rachael A. Rowe, Esq.
17                                Jacob D. Rhode, Esq.
                                  Benjamin G. Stewart, Esq.
18                                Keating Muething & Klekamp, PLL
                                  One East Fourth Street
19                                Suite 1400
                                  Cincinnati, Ohio  45202
20
                                  James C. Frooman, Esq.
21                                Frost Brown Todd, LLC
                                  3300 Great American Tower
22                                301 East Fourth Street
                                  Cincinnati, Ohio  45202
23
      Law Clerk:                  Aren Olson
24
      Court Reporter:             M. Sue Lopreato, RMR, CRR
25                                100 East Fifth Street
                                  Cincinnati, Ohio  45202
```

*Proceedings recorded by stenotype.*
Transcript prepared by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2           (Status conference by telephone, 1:02 p.m.)
 3                          -  -  -
 4           THE COURT:  Good afternoon.  This is Judge Timothy
 5   Black on the civil case of Marie Joseph versus Ronald Joseph.
 6   I'm in the presence of the court reporter, on the record.  I'm
 7   here with my law clerk, Aren Olson.  Do we have counsel for
 8   plaintiff Marie Joseph on the line?
 9           MR. LANDEN:  Yes, Your Honor, Jeff Landen, Nick
10   Gregg, and Kevin Murphy.
11           THE COURT:  Good afternoon to the three of you.  And
12   do I have counsel on the line on behalf of defendant?
13           MR. BURKE:  Yes, Your Honor.  Jim Burke is here.
14           MS. ROWE:  Yes, Your Honor.  This is Rachel Rowe.
15   And with me are Jacob Rhode and Ben Stewart.
16           MR. FROOMAN:  And Jim Frooman, Your Honor.
17           THE COURT:  Very well.  Is there anybody on the line
18   who hasn't tendered their appearance?  No response.  We have a
19   quorum.  I would like to make a reasonably short opening
20   statement, and then I would like to hear from you each in
21   turn.
22      We're here for a status conference.  The Court's received
23   the trial briefs and then had a request to set this for
24   status, given concerns about the scope of the trial.
25   Defendant asked for it, suggested that it wouldn't take more
```

1     than an hour.  The Court does not have an hour today, and I'm

2     fully prepared and want to be laser focused.

3          I sent you, through my law clerk, an email indicating

4     that I wanted to discuss two questions today.  One, are there

5     any pre-complaint records request at issue, other than the

6     email from Roberts to Rouse dated 10/12/15.

7          And two, with regard to the 10/12/15 record request, are

8     the only issues, A, whether defendant provided plaintiff with,

9     quote, source documents, end quote; and 2-B, whether defendant

10    provided plaintiff with, quote, original stock ledgers, end

11    quote.

12         On May 14, by notation order, Court indicated that the

13    bench trial shall address only those corporate records

14    requests submitted prior to the filing of the Complaint.

15         On 5/24, plaintiff submitted a trial brief, set now two

16    issues for trial, A, whether defendant failed to meet

17    plaintiff's 10/12/15 request for Columbia's, quote, complete

18    books and records of account, end quote, by failing to provide

19    plaintiff with, quote, source documents, end quote.

20         And B, whether defendant failed to meet plaintiff's 10/12

21    request for the records of Columbia's shareholders by failing

22    to provide plaintiff with, quote, original stock ledgers, end

23    quote.

24         On June 17th, defendant filed a response arguing that the

25    request for source documents is improper because plaintiff did

1    not request them until after filing the complaint.  And two,

2    plaintiff's request for original stock ledgers is moot because

3    defendant has already agreed to provide them.

4        Plaintiff's trial brief provides that the most

5    significant issues for trial are, A, whether defendant

6    provided plaintiff with source documents; and B, whether

7    defendant provided plaintiff with the original stock ledgers.

8    But plaintiff's trial brief also indicates that trial could

9    focus on C, whether defendant provided plaintiff with access

10   to Columbia's general ledgers.

11       Plaintiff's trial brief asked the Court to resolve the

12   following questions of fact with respect to the source

13   documents.  A, whether the source documents exist.  B, whether

14   the source documents are kept in a reasonably accessible

15   manner.  And C, whether the time, place, and manner in which

16   plaintiff seeks to inspect the source documents is reasonable.

17       According to plaintiff, a, quote, source document, end

18   quote, is a document such as a receipt and invoice or a

19   purchase order that, quote, supports or backs up a given

20   transaction, end quote.  It would appear plaintiff did not ask

21   defendant for source documents specifically until 9/5/18.

22       I would like to hear very briefly your answers to the two

23   questions I posed by email three days ago, and that question

24   is, one, are there any pre-complaint records request at issue,

25   other than the email from Michael Roberts to Joseph Rouse,

1    dated 10/12/15, and with regard to that records request, are

2    the only issues whether defendant provided plaintiff with

3    source documents, and whether defendant provided plaintiff

4    with original stock ledgers.

5        I'd like to hear the answers to those two questions from

6    the plaintiff first, and then the defense.  So on behalf of

7    plaintiff, who will be heard in response to my two emailed

8    questions of three days ago?

9            MR. LANDEN:  Jeff Landen here, Your Honor.

10           THE COURT:  Very well.  Would you go ahead, please.

11           MR. LANDEN:  Okay.  Your Honor, the answer to the

12   first question is, the only request that is at issue in trial,

13   as we understand the Court's directive, is the email from

14   Michael Roberts to Joseph Rouse dated 10/12/15.  That's the

15   only request.

16           THE COURT:  Okay.  That's a straightforward answer to

17   that question.  As to question two?

18           MR. LANDEN:  The phrasing of whether the only issue

19   is if the source documents have been provided gets into the

20   question of have the source documents been provided?  That is

21   the threshold question, to which the answer is no, but then

22   that further leads to the other issues that the Court

23   mentioned in describing the situation, such as where they are

24   kept, time, place, and manner, et cetera.

25       But in terms of the documents being sought, the stuff

1    that Michael Roberts requested within that scope, and the

2    threshold issue is, indeed, if they had been provided, and

3    then -- but again, noting that we would have to go on into the

4    separate question of if the Court decides that we are entitled

5    to them, that we would be needing to address time, place, and

6    manner of where they're kept and when we could access it.

7         THE COURT:  Would you agree that whether defendant

8    provided plaintiff with source documents in the request for

9    the complete books and records of account, together with the

10   minutes, whether the question whether that request includes

11   source documents, is that not a question of law?

12      You do not ask the Court to decide as a matter of fact

13   that the source documents are part of the complete books and

14   records of account requests, instead you moved to other

15   issues.

16      But is not the threshold issue a question of law as to

17   whether the request for complete books and records of account

18   includes source documents, if not specifically referenced,

19   such source documents being documents such as a receipt, an

20   invoice, or a purchase order that supports or backs up a given

21   transaction?

22         MR. LANDEN:  Your Honor, respectfully, I disagree

23   with that from the standpoint that the question arises as to

24   whether those so-called source documents, the way we've been

25   short-handing it, are, in fact, and that's a fact question,

1    included in the complete books and records of account of

2    Columbia.  If they are, then they are included.

3            THE COURT:  Very well.  And as to question 2-B, is

4    the issue whether defendant provided plaintiff with, quote,

5    original stock ledgers, end quote?

6            MR. LANDEN:  As to that issue, Your Honor, the

7    question is one of copies having been provided of materials

8    other than the stock ledgers themselves, and that gets into

9    the issue of the assertion by the defendant that those stock

10   ledgers, the originals themselves, are lost or destroyed.  I

11   never heard destroyed, actually, just that they are lost,

12   they've not been found.  And I want to focus in on the wording

13   of whether -- in terms of the originals of things, because

14   there's really two issues there.

15   One is our ability to see the original in the sense of

16   touching pieces of paper that are -- because these are older

17   documents, that would be the original as opposed to a

18   photocopy or image of a document, in that sense.

19   And then there's another sense of the word original, in

20   which the question is are these the source -- and again, I

21   don't want to use the word source, perhaps.  Are these the

22   basic form in which the information was recorded, because of

23   the perception, which I don't think is really disputed, that

24   what we are looking at, even if we see the, quote, originals

25   in the sense of not a photocopy something, is not the thing

1    that existed in 1955 or 1968 or 1975, it's something that has

2    been generated subsequently.  So both of those issues are in

3    play.

4       The positions taken by the defendant most recently tend

5    to take the question of seeing the photocopy idea out of play,

6    and that they're saying fine, you can look at them, you can

7    make copies of things.  That would still leave the question of

8    what happened to and where are the originals in the sense of

9    those which are the basic form in which the material or

10    information is contemporaneously reported.

11        THE COURT:  And what do you make of defendant's

12    assertion that Columbia kept a hard copy stock ledger from

13    '53 to '88, the original stock ledger, and a computer

14    generated stock ledger from 1988 to the present, the computer

15    printouts?

16        MR. LANDEN:  Well, we understand that assertion,

17    Judge.  The question is as to the original stock ledger as

18    it's being described there, the information, it has been

19    provided, that predates 1988; in other words, this is the

20    distinction that I want to draw.  Let me be clear on what our

21    position is.

22       When the newly typed, newly data entered general ledger

23    is generated in 1988 and thereafter, the information had to

24    come from somewhere.  And we do not think it likely that it

25    was -- with the amount of detail that was listed there, that

1   it was based on memory. It had to be physically referencing

2   something. And what we want to get to is whatever something

3   in that regards still exists. And there are several

4   possibilities, of course. There was a contemporaneous

5   existing paper copy from which the '88 and thereafter stuff

6   was generated in its first iteration. It's also possible that

7   it didn't exist at that time, and it was recreated off of the

8   stock certificates themselves.

9       We would want to get to the bottom of that because, from

10  our standpoint, the stock certificates appeared out of, I

11  won't say thin air, but they appeared late in the case,

12  relatively speaking, and produced by Ron's sons rather than by

13  Ron, and we would like to know where those came from because,

14  from the standpoint of if they are -- again, if we're getting

15  here copies of some type of images of these, we'd want to see

16  the originals in the sense of physical paper, but then also

17  it's a fair question, we believe, but where were these?

18  Because that might lead us to where the rest of the stock

19  ledger information is.

20      THE COURT: So as to question two, are the only

21  issues whether defendant provided plaintiff with source

22  documents and whether defendant provided plaintiff with

23  original stock ledgers?

24      MR. LANDEN: In each case, that's the threshold

25  issue, but as I had indicated in regard to the source

1    documents, you know, we have the question of -- and again, I

2    will simply elaborate slightly, that the source documents

3    themselves, getting to those is the goal.  The means of

4    getting to those includes time, place, and manner.  The means

5    of getting to those also includes access to the records that

6    have already been produced in some form.  Now, I don't mean to

7    get metaphysical here, but I think it's important to make the

8    following distinction.

9        We had been provided, as we've pointed out on multiple

10   occasions, with the so-called general ledger, which is

11   actually a printout from an electronic system.  And at this

12   point, as we sit here today, we still do not have the general

13   ledger itself in its original form complete with all of its

14   functionality.

15       What's the significance of that functionality?  The

16   significance of that functionality is as a means to get to

17   source documents, but there's a step here in the middle of do

18   we even have the general ledger.

19       The answer to that is no.  We have information generated

20   from the general ledger, and it had been -- even that has been

21   produced only in the form of a generated copy produced in the

22   litigation and subject to the limitations of the protective

23   order put in place by the Court.

24       So we don't even, in the sense of being able to assume

25   that the case is over, have those documents.  We don't really

1    have them, and even if we -- to the extent that we have them,

2    we don't have them in a form that is the original.

3          THE COURT:  So may I ask a question.  In regard to

4    question number two, are you saying that there is a third

5    issue, the first being whether defendant provided plaintiff

6    with source documents; the second being whether defendant

7    provided plaintiff with original stock ledgers; and three,

8    whether defendant provided Columbia's general ledgers?

9          MR. LANDEN:  That is an issue that leads into the

10    other two, but yes, if you want to frame it up as a separate

11    issue, it's a means to an end.  But the thing that we do have,

12    we acknowledge that we have the printout, and we don't want to

13    be overly picky, as it were, in that regard.

14       At the same time, to the extent that we do not have that

15    intermediate step of the electronic version of the general

16    ledger, that is a part of the issue that is sum and substance

17    of finding the sore spot.

18          THE COURT:  And if I cast that as a third issue, are

19    those the only issues, those three issues, for trial?

20          MR. LANDEN:  Yes, Your Honor.

21          THE COURT:  Very well.  I'd like to talk to the

22    defense.  I would like the defense to answer my two questions

23    emailed to you three days ago and we'll see how we go.  So who

24    will be heard?

25          MR. BURKE:  Your Honor, this is Jim Burke.  I'll

1    speak.

2         THE COURT:  Great.  Question number one, are there

3    any pre-complaint records request at issue, other than the

4    email from Roberts to Rouse dated 10/12/15?

5         MR. BURKE:  We agree with the plaintiffs.  No, there

6    are not.

7         THE COURT:  All right.  And do you agree that the

8    only issues are the three identified, whether defendant

9    provided plaintiff with source documents, whether defendant

10   provided plaintiff with original stock ledgers, and third, did

11   defendant provide plaintiff Columbia's general ledgers?  And

12   do you think that a threshold question of law is whether those

13   three items were included in the request for complete books

14   and records of account?

15        MR. BURKE:  Number one, Your Honor, the issues of

16   stock ledgers and source documents are the only issues that

17   were preserved in plaintiff's brief, in our view.  You said,

18   when we had raised the issue early on, you know, we don't know

19   what's to be tried, and you said the plaintiff's going to have

20   to tell us.  That's what they identified.  We understand what

21   he's now saying about general ledger, although metaphysical

22   does not begin to describe it, but we believe they have the

23   general ledger.

24        We absolutely believe that the statutory term of complete

25   books and records under 1701.37 is a question of law as to

1       whether or not that includes source documents, as plaintiffs

2       are defining it, including this notion now that until I see an

3       original document, it doesn't exist to me, because the Federal

4       Rules of Evidence provide that absent some kind of evidence or

5       indication that there's something different between an

6       original and a copy, a copy is every bit as useful as an

7       original, under law.

8           And in the presentation we've heard, there's been

9       absolutely no indication of any difference between any of the

10      copies they've gotten and the original, but yes, we do believe

11      that that's a threshold question of law.

12          THE COURT:  And do you think it's a threshold

13      question of law whether defendant plaintiff -- provided

14      plaintiff with, quote, original stock ledgers, end quote?

15          MR. BURKE:  We do not because we don't think that's

16      at all contested.  And I think what Mr. Landen indicated is

17      right.  I mean, the plaintiffs stipulated in Joint Exhibit 11

18      at trial to the stock ownership as of the present time.

19          THE COURT:  Joint Exhibit 11 at trial, is that what

20      you said?

21          MR. BURKE:  At trial.

22          THE COURT:  Okay.

23          MR. BURKE:  They stipulated to the stock ledger and

24      share ownership.

25          THE COURT:  Very well.  And --

 1          MR. BURKE:  They have received every -- I'm sorry.

 2          THE COURT:  No.  You're telling me that whether

 3     defendant provided plaintiff with source documents, the

 4     threshold question is a question of law as to whether source

 5     documents are included within the request for complete books

 6     and records of account, correct?

 7          MR. BURKE:  Correct, Your Honor, because as you

 8     indicated --

 9          THE COURT:  It's correct?

10          MR. BURKE:  -- the letter that we got -- yes,

11     correct.  As you indicated, Your Honor, you indicated the

12     letter that we got, the 2015 request, which is the only

13     pre-complaint request, never mentions the word source

14     documents, and the source documents that plaintiffs are

15     talking about in their brief is a list of transactions we got

16     in September 2018, many of which did not occur until after

17     that request in 2015.

18          THE COURT:  Very well.

19          MR. BURKE:  So there's another question, which is,

20     does every request under Ohio law for the complete books of

21     records require us to go back and get, quote unquote, source

22     documents, wherever that may be?

23          THE COURT:  I understand.

24          MR. BURKE:  But Mr. Roberts' --

25          THE COURT:  I understand.

1          MR. BURKE:  But Mr. Roberts' request was broader than

2     just those transactions.

3          THE COURT:  And you believe that whether defendant

4     provided plaintiff with source documents

5     is -- the threshold question is a question of law whether

6     source documents are included within the request for complete

7     books and records of account?

8          MR. BURKE:  Yes, Your Honor.

9          THE COURT:  All right.  And as to the issue of

10    whether defendant provided plaintiff with original stock

11    ledgers, you're telling me that it's agreed that stock ledgers

12    were provided, but they were by virtue of copies, and you

13    think as a matter of law copies is sufficient versus original

14    stock ledgers; is that right?

15         MR. BURKE:  That is, Your Honor.  In addition, we

16    have given them copies of every single issued, transferred,

17    and cancelled stock certificate of Columbia dating back to

18    1953.

19       The one volume of the Columbia minute book that they are

20    concerned about is a minute book, volume four, that has some

21    handwritten and typewritten stock ledgers in the minute book

22    itself that date from the 1950s through 1988, all of which

23    precedes the request that they made in this case, and which

24    precedes the period relevant to Mr. Roberts' request.  But

25    those have also been offered to plaintiffs if they want to

1    come in and look at them.

2        After 1988, the Court's a hundred percent right, this was

3    maintained in a handwritten form by the counsel, and it was

4    updated on a word processing system as work went forward.  So

5    it is a mystery to us how we could do anything other than what

6    we have done, nor is there any indication from plaintiffs why,

7    if anything, there are these copies that they have gotten, and

8    they have inspected the originals, and they can come back and

9    inspect the originals again, in any way raise questions about

10   how they are similar to or in conformity with the originals.

11           THE COURT:  Very well.  Mr. Landen, you want a short

12   reply?

13           MR. LANDEN:  Yes, Your Honor.  As to the reference

14   that Mr. Burke just made to the paper copies of things that we

15   were permitted to inspect at one point, I believe that that

16   has been an issue earlier in the case, but counsel for Ron

17   Joseph has indicated that we can go back and inspect them

18   again, as you just heard, and we're good with that, provided a

19   couple of things that are very important.

20       When we were there inspecting certain documents, I want

21   to be clear that it didn't include everything all the way

22   back.  It just included what they had available, saying the

23   rest had been lost along the way.  But the part that was there

24   in paper, we were put in a position as to both the stock

25   ledgers, et cetera, and as to the minutes contained in those

1    various books, which were also part of our scope of what we

2    were seeking.

3         We were not permitted to make copies, and so we ended up

4    having to do, you know, long, cursive writing and printing on

5    legal pads trying to make a record for ourselves of what those

6    show.

7         What we would ask is that, in that regard, if that part

8    of it can be limited out of the consideration for the trial so

9    long as we can, A, inspect them; B, make copies of them; and

10   C, an important distinction, that we are free to do whatever

11   we want with those, rather than having them treated as an

12   ongoing basis part of something subject to the protective

13   order in the case, which is a restriction that has been

14   articulated by Ronald Joseph in the past as to that which has

15   been produced.

16        THE COURT:  Sounds to me like you guys might be able

17   to work out the issue relating to stock ledgers.  Do I

18   misapprehend, Mr. Landen?

19        MR. LANDEN:  I don't think you misapprehend, Judge.

20   I think that one can be worked out.

21        THE COURT:  All right.

22        MR. LANDEN:  But it will require that we be very

23   specific in what we're allowed to see, what we're allowed to

24   copy, and be clear that we are not limited in terms of our

25   ability to do anything with that information on an ongoing

```
1    basis.

2              THE COURT:  Is the defense --

3              MR. BURKE:  Your Honor --

4              THE COURT:  Yes, Mr. Burke.

5              MR. BURKE:  -- if I can be heard?  First of all --

6              THE COURT:  Mr. Burke, Mr. Burke --

7              MR. BURKE:  Yes.

8              THE COURT:  -- I was going to ask if you can be

9    responsive to what Mr. Landen just proposed?

10             MR. BURKE:  Yes, Your Honor.

11             THE COURT:  Go ahead.

12             MR. BURKE:  Your Honor, first, Mr. Landen has thrown

13   another issue on the table, but I will turn to that last.

14   When we produced these documents, the 1950s stock

15   certificates, 1960s, 1970s, it was far beyond the scope of

16   discovery, which is why they were -- we let them look at them.

17   They can come in and copy whatever they want.  They've already

18   got copies of all the stock certificates.  We don't care.

19        But with respect to the third question, this is all of a

20   sudden the camel's nose under the tent.  What possible reason

21   or benefit to this corporation that they are supposed to be

22   shareholders of could there be to let them, quote, make

23   whatever use we want to, closed quote, of the stock

24   certificates.

25        We have throughout maintained that they have an
```

1    obligation, as a shareholder of a privately held company, to

2    maintain the confidentiality of what they receive. That's why

3    we've been producing stuff under the protective order because

4    just that. Who knows what they want to do with it, but

5    there's no possible, proper, and reasonable corporate purpose

6    for them to, quote, do whatever they want, close quote, with

7    what we give them.

8        These are highly confidential financial and business

9    records of a privately held company, and we will maintain that

10    whatever they get, absent some showing to the Court, they need

11    to maintain confidentiality. If there's a subpoena they have

12    to respond to, or something else, that's different. They can

13    come to the Court, they can come to us and try to address

14    that, but knowing the way plaintiffs operate, Your Honor, no,

15    we are not willing to just sort of give them these things and

16    let them do willy-nilly whatever they want with them.

17        THE COURT: So does that prevent an agreed

18    resolution, Mr. Landen?

19        MR. LANDEN: Judge, I'm concerned that it may, if the

20    defendant insists that anything that has been produced or that

21    will be produced is infinitely and perennially subject to a

22    protective order in the litigation. If that is something that

23    is negotiable, then we are happy to negotiate it, and that may

24    lead to a resolution. We're happy to pursue that and then

25    report back to the Court on whether it will do so or not. But

1    I am concerned that, based on Mr. Burke's statement, it may

2    present a stumbling block to a quick resolution at issue.

3         MR. BURKE:  We're prepared to negotiate anything,

4    Your Honor.

5         THE COURT:  All right.

6         MR. BURKE:  But my question to the plaintiffs is what

7    possible reason would you have to disclose these to third

8    parties?

9         THE COURT:  And I'm not going to get in the middle of

10   that, other than to say, Mr. Landen, if it's not pursuant to a

11   protective order but it's pursuant to the principle of law,

12   that they're confidential and not to be disclosed.  Is that

13   going to prevent resolution of the offered inspection and

14   copying of the stock ledgers?

15        MR. LANDEN:  Judge, to be very clear, it depends on

16   what the restriction is.

17        THE COURT:  You can't --

18        MR. LANDEN:  If the restriction is limited to she can

19   look at them, and we presumably as counsel can look at them,

20   but she cannot, for example, share them with any other

21   shareholders of the corporation, that's a problem.  If she

22   cannot do anything with them, for example --

23        THE COURT:  Okay.  Can I interrupt?

24        MR. LANDEN:  Sure.

25        THE COURT:  Is the first example a problem,

1    Mr. Burke?  It's a yes or no.

2            MR. BURKE:  I can't answer you yes or no, Your Honor.

3            THE COURT:  Okay.  I am going to change the subject,

4    but before I do, I've heard from you all.  I heard from

5    Mr. Landen first fully.  I heard from Mr. Burke.  I gave

6    Mr. Landen a short reply.  Is there more in reply, or are you

7    done, Mr. Landen?  My sense was you were done.

8            MR. LANDEN:  I am, Your Honor.

9            THE COURT:  Mr. Burke, you need a sur sur sur-reply?

10           MR. BURKE:  The only point I'll make briefly, Your

11   Honor --

12           THE COURT:  Is that yes?

13           MR. BURKE:  -- is a motion that the general ledger --

14   I'm sorry?

15           THE COURT:  Was that yes?

16           MR. BURKE:  That's a yes, Your Honor.  I apologize.

17           THE COURT:  Go ahead.

18           MR. BURKE:  The only brief note I'd make is the

19   notion that the general ledger they've got is not somehow the

20   general ledger because they believe there's some ability to go

21   on the electronic version of our own system and automatically

22   punch up source documents is not true.  Prior testimony has

23   debunked that.  And what they have is exactly what the general

24   ledger shows.  So other than that, Your Honor, I have no other

25   comment.

1          THE COURT:  Very well.  Mr. Landen, you need a sur

2     sur sur sur-reply?

3          MR. LANDEN:  No, Your Honor.

4          THE COURT:  All right.  I appreciate you making

5     yourselves available, and I appreciate this 30 minutes with

6     you.

7       It is my clear conclusion that the issue whether source

8     documents are included within the request for complete books

9     and records of account in the first issue is a threshold

10    question of law.

11      I also believe that if the issue is that defendant

12    produced the stock ledgers but it wasn't the original, I think

13    it's a question of law whether that makes for a triable issue,

14    and I have the same sense for the general ledger.

15      The Court vacates the trial date, grants both sides leave

16    to file a motion for summary judgement specifically, and

17    having so acted, when can I expect motions for summary

18    judgement from the defendant's perspective, Mr. Burke?

19         MR. BURKE:  I will defer, if I can, to Mr. Stewart

20    and Mr. Rhode.

21         THE COURT:  Are they on the laboring oars?

22         MR. BURKE:  They are the laboring today, or the

23    laboring oar along with Ms. Rowe.

24         THE COURT:  All right.

25         MS. ROWE:  They are what we call the laborers, Your

1    Honor.

2           THE COURT:  And I'm sure it's a term of endearment.

3    Go ahead.

4           MS. ROWE:  Very much so.  If we could have 30 days,

5    we would very much appreciate it.

6           THE COURT:  Are you comfortable with that time

7    period, Mr. Landen?

8           MR. LANDEN:  Yes, Your Honor.

9           THE COURT:  All right.  Motions for summary judgement

10    are due August 19.  What was the question?  Somebody make a

11    comment?  Very well.

12           MR. MURPHY:  Your Honor, Kevin Murphy calling you

13    from Scotland.

14           THE COURT:  Well, greetings to Scotland.  All right.

15    The Court has acted.  I expect cross-motions for summary

16    judgement on the 19th of August.  I believe we've done what we

17    can today.  Does the plaintiff need to be heard further?

18           MR. LANDEN:  No, Your Honor.

19           THE COURT:  The defense?

20           MR. BURKE:  No, Your Honor.

21           THE COURT:  Very well.  Court's going to adjourn by

22    saying good-bye and hanging up.  Thank you, counsel.

23    Good-bye.

24           (Proceedings concluded at 1:36 p.m.)

25                   -  -  -

1                    C E R T I F I C A T E

2                           -  -  -

3        I, M. Sue Lopreato, the undersigned, certify that the

4    foregoing is a correct transcript from the record of

5    proceedings in the above-entitled matter.

6

7                              /s/ M. Sue Lopreato
                               M. Sue Lopreato
8                              Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25