## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | ) | Case No.: 1:16-CV-00465-TSB |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **DEFENDANT RONALD JOSEPH'S** |
| | ) | **MOTION FOR SUMMARY** |
| RONALD JOSEPH, *et al*., | ) | **JUDGMENT ON PLAINTIFF** |
| | ) | **MARIE JOSEPH'S CLAIM FOR** |
| Defendants. | ) | **CORPORATE RECORDS** |

Pursuant to Rule 56, Defendant Ronald Joseph ("Ron") moves for summary judgment on the demand for corporate records, Count Two of the Amended Complaint (*see* Doc. 1, 27), asserted by Plaintiff Marie Joseph ("Marie"). The grounds for this Motion are set forth in the accompanying Memorandum in Support.

Respectfully submitted,

/s/ James E. Burke
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower
One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.com
arazzaghi@fbtlaw.com

*Counsel for Ronald Joseph*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Ron previously explained how he fulfilled all his obligations related to each of the specific documents demanded in the October 12, 2015 corporate records request (the "2015 Records Request"), which is the only request that remains at issue. (*See* Def.'s Pleading Regarding Corp. Records Requests, Doc. 233 at 5-8.) Marie never disputed this detailed presentation. Nevertheless, Marie insisted in her Trial Brief that there remained two principal issues for trial as to the 2015 Records Request: 1) whether she was entitled to "access to source documents for transactions that Plaintiff has identified" in a list first sent on September 5, 2018; and 2) whether Ron had provided "documents constituting or relating to Columbia's original stock ledger." (Doc. 240 at 5.) Marie also commented in a footnote that "[a]ccess to the actual general ledgers . . . may also be an issue. . . ." (*Id.* at 5, n.8.)

During the July 19, 2019 status conference, the Court confirmed with Marie's counsel that the only three remaining issues she sought to present at trial as to the 2015 Records Request and her corporate records claim (Count Two) were: "the first being whether defendant provided plaintiff with source documents, the second being whether defendant provided plaintiff with original stock ledgers; and three, whether defendant provided Columbia's general ledgers[.]" (Doc. 242 at 11:3-20.) Marie's counsel then also disclosed that the confidentiality of Columbia records was an issue. (*Id.* at 17:7-15.) The Court concluded there were threshold legal questions on these alleged issues, and ordered the Parties to file cross-motions for summary judgment.

As explained below, Ron is entitled to summary judgment on the alleged remaining issues in Marie's corporate records claim related to "source documents" for a 2018 list of transactions and the "actual general ledger." The 2015 Records Request did not request "source documents" for a 2018 list of transactions, many of which had not even occurred as of October

12, 2015. The demand for "source documents" was a discovery dispute Marie's counsel first manufactured *years* after the lawsuit was filed in 2016, not a request made in the October 12, 2015 email. Marie's after-the-fact argument that the term "complete books and records of account" recited in the 2015 Records Request somehow encompasses every document a corporation has or will have in the future, including so-called "source documents" for hundreds of transactions that had not yet taken place, is not supported by the law. As used in Ohio Revised Code § 1701.37, the term "books and records of account" refers to the discrete financial and accounting records of the corporation, all of which Marie has received, including Columbia's entire general ledger, financial statements, and tax returns. Marie's suggestion that she may not have received the "actual" general ledger is contradicted by the undisputed facts, as well as Marie's conduct at trial where she authenticated, admitted, and relied upon the general ledger exactly as it was produced in an effort to prove her claims.

Moreover, even if Marie had demanded "source documents" in the 2015 Records Request (she did not) *and* O.R.C. 1701.37 required production of "source documents" (it does not), her claim still fails because she does not have a "reasonable and proper purpose" for demanding inspection of such documents. Marie's stated purpose for demanding "source documents" relating to her 2018 list of transactions is a purported concern that Ron breached his fiduciary duties, including through usurpation of corporate opportunities and diversion of assets. Those *same* issues and *same* transactions were fully litigated, and a jury of Marie's peers rendered a complete defense verdict in favor of Ron. Demanding further records to continue litigating issues that have already been fully resolved in Ron's favor is not "reasonable or proper." And in any event, it is undisputed that any "source documents" that exist are duplicative of the general ledger Marie has already received, and to search for such documents across multiple locations

2

would be unreasonably burdensome, if not impossible.

Ron is also entitled to summary judgment on the third alleged issue, related to Columbia's "original stock ledger." This alleged issue is moot because it is undisputed that all documents demanded in the 2015 Records Request related to Columbia's stock ledger and all records of shares/shareholders have been produced to Marie.

Finally, as to the confidentiality issue that Marie raised during the July 19, 2019 telephone status conference, Marie and her counsel claim that there should be no confidentiality restrictions and they should now be "free to do whatever we want" with the documents produced subject to the Protective Order that fulfill the 2015 Records Request. Plaintiff ignored the Court's request to the parties to resolve the issue, instead filing a grossly improper lawsuit in state court on July 30, 2019 and seeking emergency *ex parte* relief for unfettered access to and use of Columbia's records. The state court refused to grant emergency *ex parte* relief. Ron's long-time counsel was not afforded prior notice of nor an opportunity to be heard at this hearing, and was never told about this unconscionable tactic until after it had failed. Contrary to Marie's argument and *ex parte* actions, it is well-established that confidentiality restrictions are appropriate when shareholders obtain access to sensitive financial and commercial information of a private corporation. Ron is entitled to summary judgment on this additional aspect of Marie's claim, and the Court should affirm the applicability of its Protective Order.

## II. UNDISPUTED FACTS[1]

### A. Marie's 2015 Records Request and Corporate Records Claim

On October 12, 2015, Marie (through counsel) sent an email to counsel for Ron and Columbia Oldsmobile Company ("Columbia") (the "2015 Records Request"). (SUF ¶ 1.) She

---

[1] Pursuant to this Court's Cincinnati Civil Procedures, attached as **Exhibit 1** to this Memorandum is Ron's Statement of Proposed Undisputed Facts ("SUF").

asked to inspect and/or copy specific records of Columbia pursuant to Ohio Revised Code § 1701.37. On April 12, 2016, Marie initiated this litigation and alleged that Ron "refused to provide access to the books and records of Columbia" and should be "ordered to permit [Marie] to inspect and copy the books and records of Columbia." (Doc. 1 at ¶¶ 82-83.) She repeated these allegations and this request for relief in an Amended Complaint. (Doc. 27.)

On September 17, 2018, the Court bifurcated Marie's equitable claim for access to corporate records from her remaining legal claims against Ron, which were resolved at the jury trial. (Doc. 175; Doc. 215.) The Court determined that it only needed to resolve Marie's corporate records claim to the extent it stemmed from "corporate records requests submitted prior to the filing of Plaintiff's Complaint." (5/17/19 Minute Entry.) The Parties agree that the 2015 Records Request is the only such request. (SUF ¶ 4.)

## B. Ron Produced Columbia's General Ledger, Financial Statements, and Tax Returns

Columbia has two subsidiaries—Columbia Automotive and Columbia Development. The general ledger for Columbia Automotive is maintained and electronically stored in an accounting software program provided by Reynolds and Reynolds, and the general ledger for Columbia Development is maintained and electronically stored in an accounting software program provided by Peachtree. (SUF ¶ 5.)

Both ledgers for the years 2008-2017 were exported from the software programs and produced to Marie as text-searchable PDFs that accurately reflect the information maintained and electronically stored in those software programs. (SUF ¶¶ 6, 8.) At trial, both parties (through witnesses) authenticated, admitted into evidence, and relied upon over 100 monthly journals from Columbia Automotive's general ledger as it was produced in this case, including monthly cash disbursement journals and cash receipts journals dating back to 2012, as well as numerous

portions from Columbia Development's general ledger as it was produced in this case. (SUF ¶¶ 7, 9.)

Until she stopped working full-time and became a consultant in May 2018, Linda May handled all the general ledger bookkeeping for Columbia Automotive. (SUF ¶ 13.) Her duties and responsibilities included processing and posting all financial transactions of Columbia Automotive—the money that came in, and the money that went out. (*Id.*) She handled the payment and receipt of funds, and was responsible for posting and recording all financial transactions in the various journals and schedules of Columbia Automotive's general ledger. (*Id.*) She believed that her job was to protect the assets of Columbia and never saw anything in the accounting and bookkeeping records of Columbia that would suggest money was wrongfully diverted to Ron or his sons or entities that they own. (SUF ¶ 14.)

In addition to the general ledger, Ron also produced to Marie copies of the financial statements of Columbia for the years 2008-2017, as well as the tax returns for Columbia for the years 2008-2017. (SUF ¶¶ 10-11.)[2]

## C. The 2018 Spreadsheet of Transactions and Marie's Demand for "Source Documents"

On September 5, 2018, counsel for Marie sent counsel for Ron a list of approximately 748 transactions from the cash disbursement journal of Columbia Automotive's general ledger for the period 2012-2017 that they sought to challenge at trial (the "2018 Spreadsheet of Transactions"). (SUF ¶ 15.) Marie claims that the 2015 Records Request encompassed all "source documents" related to the 2018 Spreadsheet of Transactions, which she defined as any "document such as a receipt and invoice or a purchase order" that "supports or backs up a given transaction." (SUF ¶ 16.)

---

[2] Ron further agreed to provide to Marie Columbia's 2018 financial statements and tax returns once they are complete, subject to the Protective Order (or a non-disclosure/confidentiality agreement). (Doc. 233 at 4-5.)

The entries that Ms. May made in Columbia Automotive's cash disbursements journal and other journals and schedules in Columbia Automotive's general ledger are true and accurate reflections of the underlying transactions. (SUF ¶ 17.) There is no financial or other material information contained in any "receipt and invoice or a purchase order" related to or that "backs up" a cash disbursement from Columbia Automotive that is not reflected in Columbia Automotive's cash disbursement journal and the other corresponding journals and schedules in the general ledger. (*Id.*) In addition, Ms. May has no knowledge that any of the transactions in the general ledger reflect anything other than the underlying "receipt and invoice or purchase order," to the extent there is one. (*Id.*) Accordingly, she testified at trial that she considers the various journals and schedules in Columbia Automotive's general ledger, such as the new and used car journals, to be "source documents" as she understands that term. (SUF ¶ 18.)

Any records that exist such as invoices and receipts related to cash disbursements from Columbia Automotive are stored on-site at the Columbia Automotive dealerships for a short period of time, often in different departments, but then are moved to a closet downstairs at the Columbia Automotive dealerships or to other Joseph dealerships altogether (depending on the type of transaction). (SUF ¶ 19.) After approximately a year or two, these records are eventually moved off-site to a storage location on Gilbert Avenue where the documents are stored in boxes, in a warehouse. The files there are not centrally organized or searchable and are not readily accessible without searching through multiple boxes of materials. (*Id.*) It would be extremely time-consuming and burdensome, if not impossible, to search for and locate every record "such as a receipt and invoice or a purchase order" that might still exist somewhere in storage that relates to or "backs up" the approximately 748 separate cash disbursement entries listed in the 2018 Spreadsheet of Transactions, which date back to 2012, let alone any broader and

unidentified set of transactions.. (SUF ¶ 20.)

### D.  Columbia's Stock Ledger and Record of Shareholders

In the 2015 Records Request, Marie also requested the records of "Columbia's shareholders and the number and class of shares issued or transferred to or by them since 1992," as well as a "copy of the Stock Ledger for Columbia." (SUF ¶ 21.) She has been provided with true and accurate copies of every issued and cancelled stock certificate of Columbia dating back to 1953. (SUF ¶ 22.) These stock certificates show "Columbia's shareholders and the number and class of shares issued or transferred to or by them since 1992." (*Id.*)

Since approximately 1988, Joe Rouse has kept and maintained Columbia's stock ledger electronically using a word processing program. (SUF ¶ 23.) He maintains and updates the stock ledger based on the information in Columbia's stock certificates. (*Id.*) Marie has also been provided with true and accurate copies of the stock ledgers and ownership ledgers of Columbia dating back to 2008, which includes "a copy of the Stock Ledger for Columbia" as it existed on October 12, 2015 when the 2015 Records Request was made. (SUF ¶ 24.)

Marie stipulated to the current stock ledger of Columbia, which shows all shareholders and their respective ownership percentages of each class of stock. (SUF ¶ 25.) The current stock ledger of Columbia was admitted into evidence at trial as Joint Trial Exhibit J11. (*Id.*)

## III.  ARGUMENT

### A.  Rule 56 Standard

Summary judgment is required when there is no genuine dispute of material fact as to all or part of a claim and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B. Marie's Corporate Records Claim Premised on a Purported Demand For All "Source Documents" Fails

Marie alleges that her 2015 Records Request encompasses all "source documents" related to the cash disbursement entries listed in the 2018 Spreadsheet of Transactions, and that she therefore has a right to inspect all such documents that exist. (Doc. 238 at 3-4) (claiming the 2018 Spreadsheet of Transactions is "the complete set of specific related party transactions for which she would like to examine 'source documents'"); (Doc. 240 at 3, n.3) (claiming the 2018 Spreadsheet of Transactions lists "the individual transactions for which Marie would like to inspect 'source documents' pursuant to her October 2015 Requests"). For the reasons explained below, the Court should enter summary judgment in Ron's favor on this remnant of Marie's corporate records claim.

#### 1. The 2015 Records Request Did Not Demand To Inspect "Source Documents" For the 2018 Spreadsheet of Transactions

Marie never asked for "source documents" in the 2015 Records Request, and Columbia has complied with its obligations to produce the records she identified in that request. (Doc. 233 at 5-8.) It is undisputed that Marie *first* sent the 2018 Spreadsheet of Transactions to Ron's counsel on September 5, 2018, and that the 2018 Spreadsheet of Transactions contains many cash disbursement entries that occurred *after* the 2015 Records Request. (SUF ¶ 15, Ex. 1-F.) Indeed, nowhere in the 2015 Records Request does Marie identify *any* specific transaction or demand *any* "source documents" or "receipts" or "invoices" or "purchase orders," let alone provide "the complete set of specific related party transactions" which she now claims forms the basis of her corporate records claim. (Doc. 238 at 3-4.) The plain terms of the 2015 Records Request say nothing of the sort, which is further underscored by the numerous specific categories of documents Marie *does* request in that October 12, 2015 email. (*See* SUF, Ex. 1-A.) As set

forth in Ron's Brief in Response to Marie's Trial Brief, this controversy over "source documents" for a list of 748 transactions is nothing more than the continuation of a manufactured discovery dispute that Marie's current counsel only first raised years after this lawsuit was filed, not in the October 12, 2015 request. (Doc. 241 at 3-6.) Marie cannot establish the very first element of any "*prima facie* case under the statute . . . show[ing] that [in the 2015 Records Request] there was a demand for access to the [source] documents [for the 2018 Spreadsheet of Transactions]." *Hotchkiss v. GenBanc*, No. 93-OT-016, 1994 Ohio App. LEXIS 468, at *5 (Ohio Ct. App. Feb. 11, 1994). For this reason alone, summary judgment should be entered for Ron.

## 2. Marie's Use of the Term "Complete Books and Records of Account" in the 2015 Records Request Does Not Encompass All "Source Documents" for the 2018 Spreadsheet of Transactions

Marie attempts to improperly shoe-horn her 2018 request for "source documents" into the 2015 Records Request by claiming it is somehow encompassed by the reference to Columbia's "complete books and records of account." (Doc. 240 at 9-10.) Marie asks this Court to find that simply reciting the statutory language "complete books and records of account" in a corporate records request (among other *specific* requests for documents) automatically requires production of every piece of paper the corporation has or in the future might have, for thousands of individual transactions reflected in its general ledger. This is not the law.

So-called "source documents" were not a part of the 2015 Records Request (as addressed above), and they are not records subject to inspection under the Ohio corporate records statute. Marie's argument to the contrary is belied by the structure and terms of the statute itself. Section (A) of O.R.C. § 1701.37 mandates that "each corporation shall keep correct and complete books and records of account," together with minutes of proceedings and records of shares/shareholders. Section (C) of O.R.C. § 1701.37, in turn, goes on to give a shareholder the

9

right to inspect those "books and records of account" that a corporation is required to keep (as well as its minutes of proceedings and records of shares/shareholders), provided the shareholder states a "reasonable and proper purpose" for the inspection. It is a well-established rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (internal quotations and citation omitted). *See also Morrison v. Colley*, 467 F.3d 503, 509 (6th Cir. 2006) (same); *In re Lord Balt. Press, Inc.*, 4 Ohio St. 2d 68, 73 (1965) (same); *Rhodes v. Weldy*, 46 Ohio St. 234, 242 (1889) (same). Accordingly, the term "books and records of account" must have the same meaning when used in both O.R.C. § 1701.37(A) and (C).

The issue is what the Ohio legislature meant when it mandated that each corporation "shall keep correct and complete books and records of account," and when it gave shareholders the right to inspect those same "books and record of account". Black's Law Dictionary defines the term "books of account" as "[r]ecords of original entry maintained in the usual course of business by a shopkeeper, trader or other businessperson," and similarly the term "book account" as a "detailed statement of debits and credits giving a history of an enterprise's business transactions." *Black's Law Dictionary* (11th ed. 2019). At least one Ohio court has similarly concluded that the term "book account" has the following legal definition:

> A detailed statement, in the nature of debits and credits between persons; an account or record of debits and credits kept in a book. A book in which a detailed history of business transactions is entered; a record of goods sold or services rendered; a statement in detail of the transactions between parties.

*Huffer & Huffer Co., L.P.A. Profit Sharing Plan v. Weaver*, No. 87-CA-33, 1988 Ohio App. LEXIS 4801, at *10 (Ohio Ct. App. Nov. 29, 1988).

Numerous courts construing the term "books and records of account" in corporate records statutes analogous to O.R.C. 1701.37 have settled on a similar meaning. For example, in *Feuer v.*

10

*Merck & Co.*, 187 A.3d 873, 878 (N.J. Super. Ct. App. Div. 2018), *affirmed at* 238 N.J. 27, 207 A.3d 264 (N.J. S. Ct. 2019) the court explained that, just like in O.R.C. § 1701.37, "the phrase 'books and records of account' [in N.J. Stat. § 14A:5-28] appears not only in the fourth paragraph, which describes inspection rights, but also in the first paragraph, which describes the corporation's record-keeping obligation."[3] The court held that "the phrase 'books and records of account' does not encompass any and all records, books, and documents of a corporation"—as Marie also wrongly argues here—but rather "consists of accounting or financial documents . . . consistent with the phrase's common meaning." *Id.* (citing *Black's Law Dictionary* and collecting cases). In a passage that could have been written about O.R.C. § 1701.37, the court further explained it could not "expansively define the universe of documents subject to inspection under subsection four," because then "we must do the same regarding the universe of documents that the corporation is required to keep in the first place," and the statute "does not impose such a vaguely defined record-keeping obligation on corporations, nor does it grant . . . an equally vague scope of inspection to shareholders." *Id. See also, e.g.*, *Pederson v. Arctic Slope Reg'l Corp.*, 331 P.3d 384, 397 (Alaska 2014) (holding "the statutory phrase 'books and records of account' encompasses monthly financial statements, records of receipts, disbursements and payments, accounting ledgers, and other financial accounting documents"); *State ex rel. Jones v. Ralston Purina Co.*, 358 S.W.2d 772, 777 (Mo. 1962) (holding "books and records of account" includes "a book in which the amount of [the company's] assets and liabilities shall be recorded" and does not include the requested "analyses or tentative studies").

Consistent with the common meaning of "books and records of account", and the

---

[3] N.J. Stat. § 14A:5-28(1)—like O.R.C. 1701.37(A)—mandates that each "corporation shall keep books and records of account and minutes of the proceedings of its shareholders, board and executive committee, if any" as well as records of shares/shareholders. And N.J. Stat. § 14A:5-28(4)—like O.R.C. 1701.37(C)—in turn gives shareholders a right to seek inspection of those "books and records of account".

holdings of numerous other courts, the Ohio legislature clearly did not intend to mandate that each corporation keep complete records of every piece of paper or undefined "source document" related to every business transaction—as Marie argues. This would be impracticable, serve no policy purpose, and render the statutory words "*of account*" superfluous. Rather, "books and records of account" has a precise and definite legal meaning—it refers to the discrete accounting and financial books and records of the corporation. Those are the books and records a corporation must keep "correct and complete," and that a shareholder is entitled to inspect provided there is a "reasonable and proper purpose." O.R.C. § 1701.37(A),(C).

Here, Marie has received the "books and records of account" of Columbia. She has received copies of Columbia's entire general ledger dating back to 2008—the complete record of every single debit and credit of the company spanning almost two hundred thousand pages—as well as Columbia's reviewed financial statements and tax returns for that same period of time. (SUF ¶¶ 6-11.) Marie does not contend otherwise, except for her suggestion that the copy of the general ledger she received might not be the "actual" general ledger. (Doc. 240 at 5, n.8; 7/19/19 Hearing Tr., Doc. 242 at 11:3-17.) Any such argument is meritless. Marie has never contended (and could not show) that the copy of Columbia's general ledger she received does not accurately reflect the general ledger information that is electronically stored and maintained in Columbia's accounting software programs or any underlying "source documents". (SUF ¶¶ 6, 8.) Thus, the general ledger qualifies as an "original" under Federal Rule of Evidence 1001(d). *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information").[4]

---

[4] Moreover, Marie's complaints about the format of the general ledger have already been addressed in a previous discovery dispute ruling, where the Court concluded that "it appears Ron's counsel has made efforts to produce these documents in a 'reasonably usable form'" as required by Federal Rule of Civil Procedure 34, and "Plaintiff has not set forth any argument from which the Court can conclude otherwise." (8/21/18 Outline, Doc. 77-1 at 2-3.)

Marie's current assertion she may not have received the "actual" general ledger also contradicts her conduct at trial. *Marie's counsel authenticated with witnesses under oath, successfully admitted into evidence, and relied upon* dozens of portions from Columbia's general ledger at trial exactly as it was produced in order to prove its content and support Marie's claims. (SUF ¶¶ 7, 9.) Given her prior knowing and intentional conduct at trial, Marie has waived any right to now object (or is judicially estopped from asserting) that what she received somehow might not be the "actual" general ledger. *United States v. Soto*, 794 F.3d 635, 649 (6th Cir. 2015) ("waiver is the intentional relinquishment or abandonment of a known right") (internal quotations and citations omitted); *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship" or "playing fast and loose with the courts", and should be applied when an opponent "took a contrary position under oath in a prior proceeding and [] the prior position was accepted by the court") (internal quotations and citations omitted) (internal citations and quotations omitted).

Because Marie's recitation of the statutory phrase "books and records of account" in the 2015 Records Request, as a matter of law, did not constitute a massive request for all so-called "source documents" related to the 2018 Spreadsheet of Transactions (nor any other unidentified transactions), and because Marie has indisputably received the financial and accounting records of Columbia, summary judgment should be entered in favor of Ron.

The two cases relied upon by Marie do not compel a different result. (*See* Doc. 238 at 8-9; Doc. 240 at 9-11.) In *No-Burn, Inc. v. Murati*, 2011-Ohio-5635 (Ohio Ct. App. 2011), the court expressly *declined* to address "the scope of the statutory phrase 'books and records of account' as used in R.C. 1701.37(C)"—finding the corporation waived any such argument by not

13

raising it in the trial court below. *Id.* at ¶¶ 7-9. The *No-Burn* court considered only whether the trial court abused its discretion in concluding that a shareholder's request to inspect 16 specific and discrete categories of documents was not "over broad and unduly burdensome." *Id.* at ¶ 10. Here, Ron has explained in detail how he complied with each specific and discrete request in the 2015 Records Request (Doc. 233 at 5-8), and Marie has never disputed this detailed presentation. The *No-Burn* court neither considered nor endorsed Marie's argument that simply reciting the general phrase "complete books and records of account" in a corporate records request, among other specific and discrete requests, gives a shareholder unlimited access to every piece of paper and so-called "source document" the corporation has or in the future might have. The court in *William Coale Dev. Co. v. Kennedy*, 121 Ohio St. 582 (1930) likewise never addressed or adopted Marie's sweeping argument, considering instead only the narrow issue of which party bore the burden of proof regarding whether a corporate records request was "for unreasonable and improper purposes."

### 3. Marie's Claim Alternatively Fails Because There is No "Reasonable and Proper" Purpose for Her "Source Documents" Demand

Even if Marie had made a specific request (she did not) and the statute contemplated inspection of all "source documents" rather than just the financial and accounting records (it does not), Marie's demand still fails to comply with O.R.C. § 1701.37 because she does not have a "reasonable and proper purpose" for demanding inspection of such documents. Her stated purpose is a purported concern that "Ron has, in violation of his fiduciary duties to shareholders such as Marie, failed to issue distributions and/or dividends," that "Columbia has failed to account for income it has received," and that "there may have been a usurpation of corporate opportunities and general dereliction of duty to the minority shareholders." (SUF at Ex. 1-A; Doc. 240 at 5, n.6.) This is not a "reasonable and proper purpose" for at least two reasons.

14

*First*, Marie's stated purpose encompasses the exact issues that she fully litigated for years in this case and ultimately tried to a jury. That jury unanimously ruled that: the same transactions Marie seeks more documents about are not improper self-dealing and did not harm Columbia; there was no usurpation of corporate opportunities; and Ron did not breach his fiduciary duties. As the Court also correctly instructed the jury, as a matter of law, there is no duty to declare (or right to receive) dividends from Columbia. (Doc. 208 at 29.) Demanding further records to continue litigating these issues that have already been fully resolved as a matter of law and fact after years of litigation and weeks of trial evidence is neither "reasonable" nor "proper."

*Second*, any financial and material information from any "source document" is duplicative of the general ledger (which Marie has), and it would be unreasonably burdensome, if not impossible, to search for and locate every "source document" that might still exist for the 2018 Spreadsheet of Transactions. It is undisputed that there is no financial or other material information contained in any "receipt," "invoice," "purchase order," or other document that relates to or "backs up" a cash disbursement listed on the 2018 Spreadsheet of Transactions that is not reflected in the cash disbursement journal and the other corresponding journals and schedules in the general ledger, all of which Marie already possesses. (SUF ¶ 17.) There is absolutely no contention by Marie that there is any discrepancy between the general ledger and the underlying source documents, nor that there is any specific reason why it is necessary to go beyond the general ledger for any specific transaction or type of transaction. In any event, searching for all such documents dating back to 2012 for approximately 748 separate transactions across numerous storage locations would be extremely time consuming and burdensome, if not impossible. (SUF ¶¶ 19-20.) This is not a "reasonable and proper" request.

**C. Marie's Corporate Records Claim Premised on a Demand For A Copy of Columbia's Stock Ledger and Record of Shares Dating Back to 1992 Is Moot Because That Request Has Been Fulfilled**

In the 2015 Records Request, Marie requested the records of "Columbia's shareholders and the number and class of shares issued or transferred to or by them since 1992," as well as a "copy of the Stock Ledger for Columbia." (SUF ¶ 21, Ex. 1-A.) This request has been fulfilled, making this portion of Marie's corporate records claim moot.

It is undisputed Marie was provided with true and accurate copies of every issued and cancelled stock certificate of Columbia dating back to 1953, which fulfills her request for records of "Columbia's shareholders and the number and class of shares issued or transferred to or by them since 1992." (SUF ¶ 22.) Marie has not raised a genuine question about the authenticity of the original stock certificates or demonstrated why it would be unfair to admit the duplicates, which satisfies the evidentiary standard for admissibility under Federal Rule of Evidence 1003, and therefore also satisfies any question about whether Marie received the "actual" records in response to her corporate records request.

Despite the recent assertions of Marie's counsel about seeking to inspect the "original stock ledger" of Columbia, Marie expressly requested "[a] *copy* of the Stock Ledger for Columbia" in 2015. (SUF at Ex. 1-A) (emphasis added). Nevertheless, Marie did receive the "original" Stock Ledger as it existed on October 12, 2015 (the date of the request), as well as the stock ledgers and registers dating back to 2008, since those documents were maintained electronically and a true and accurate reflection of that information was produced. (SUF ¶¶ 23-24.) *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information"). Furthermore, Marie *stipulated* at trial to the current stock ledger of Columbia, which shows all

16

shareholders and their respective ownership percentages of each class of stock. (SUF ¶ 25.)

Ron produced documents that fully satisfy Marie's requests for a copy of Columbia's stock ledger and the records of the shareholders and the number and class of shares issued or transferred to or by them since 1992. Summary judgment should be entered for Ron.[5]

### D. Ron is Also Entitled to Summary Judgment on Marie's Claim That She and Her Counsel Have No Confidentiality Restrictions And Should Be "Free to Do Whatever We Want" With Columbia's Documents

Marie's counsel's statements at the status conference, and her surreptitious new state court lawsuit against Ron, demonstrate that she is seeking a broad order declaring that she has no confidentiality obligation and need not comply with the terms of the Court's Protective Order which applies to records produced in this case that are responsive to her 2015 Records Request. Ron is entitled to summary judgment on this issue as well. Marie's refusal to agree or accept any confidentiality restrictions at all, regardless of any resulting harm to Columbia, would violate her fiduciary obligation as a shareholder and is an independent reason that her entire corporate records claim fails as a matter of law.

Every record produced to Marie in this case and designated as "Confidential" is subject to the Protective Order, which prevents Marie from disclosing the records to the public but protects her ability to share them with her attorneys and experts. (*See* Doc. 16 at 9.) This Court also memorialized in the record that the parties "will not discuss the case with members of the press." (2/6/18 Minute Entry.) At the last status conference, however, Marie's counsel challenged these orders, explaining that she and her lawyers wanted "to do *whatever we want* with [Columbia's records], rather than having them treated as an ongoing basis that is part of something subject to

---

[5] Marie has asked to re-inspect certain minute books which her counsel previously inspected and which, they apparently believe, contain the so-called original stock ledger (that she never asked to inspect). Nevertheless, Columbia has allowed Marie and her counsel to re-inspect and copy these documents. (*See* Doc. 241-4.) In other words, Columbia has not only provided access to the specific documents about shares and the ledger that she asked to review in October 2015, it has provided access to additional documents as well.

the protective order in the case… ." (Doc. 242 at 17:7-15) (emphasis added).

Marie's lawyer claimed she was "happy to negotiate" the issue (*id.* at 19:19-24), and the Court encouraged the parties to reach a resolution (*id.* at 20:9-14). Ron made multiple proposals—suggesting that Marie sign a standard non-disclosure agreement, agree to abide by the confidentiality terms of the Protective Order moving forward, or agree to disclose documents to other shareholders if they would also agree to keep them confidential—but Marie rejected them all. (SUF ¶ 26.) Marie never explained what she wanted to do with Columbia's records that required her to share them with third parties.[6] She never made a *single* proposal that would put any restriction at all on her ability to disclose Columbia's records to anyone—including the public, the press and Columbia's direct competitors.

Instead, on July 30, 2019, Marie filed a new lawsuit and sought emergency *ex parte* relief in the Hamilton County Court of Common Pleas, asking for no confidentiality "restrictions or conditions on Marie's statutory right to examine and copy the books and records of Columbia pursuant to R.C. § 1701.37." (SUF ¶ 27, Ex. 1-I.) In other words, instead of negotiating the issue of confidentiality, as the Court instructed, Marie's lawyers asked *another court* to rule that she could do "whatever" she "wants" with Columbia's records, with no restrictions or conditions, regardless of any resulting harm to Columbia, and in spite of this Court's clear orders and direction.[7]

---

[6] Marie's counsel did argue that it would be a "problem" if she could not "share [stock ledgers] with any other shareholders of the corporation." (Doc. 242 at 20:18-22.) This is why Ron proposed that Marie *could* share any documents with other shareholders, provided they agreed to keep them confidential. Marie rejected this idea out of hand.

[7] Marie's lawyers did not provide notice to Ron's lawyers in advance of filing the motion for equitable relief—and in fact represented to Ron's lawyers that they had not and would not seek such relief. (*See* SUF ¶ 28, Ex. 1-J.) Ron intends to move to stay or dismiss Marie's new state court suit—which transparently seeks to resolve claims that have been or will be decided in this case, including a remarkable request to have a receiver appointed to run Columbia based on the same false claims and allegations that were rejected by the jury here.

Marie's argument that the corporate records statute entitles her to disclose Columbia's internal, confidential financial information to anyone is wrong. Courts applying O.R.C. § 1701.37 (and similar statutes in other states) routinely place reasonable confidentiality restrictions on inspections by shareholders. *See, e.g.*, *No-Burn*, 2011-Ohio-5635, ¶ 27 (Ohio Ct. App. 2011) (trial court properly issued "a confidentiality agreement placing limitations on [the shareholder's] use of the information he would be allowed to inspect"); *Disney v. Walt Disney Co.*, 2005 Del. Ch. LEXIS 94, *3-4, 2005 WL 1538336 (Del. Chancery Court, 2005) ("[T]he provision of nonpublic corporate books and records to a stockholder making a demand . . . will normally be conditioned upon a reasonable confidentiality order"); *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 417-418 (Texas Ct. App. 2011) (finding that "the need to protect certain confidential information from dissemination to others may exist even when a statutory right to inspection by the shareholder is invoked").

The language of the statute itself also belies Marie's position that she can do "whatever" she "wants" with Columbia's records. Marie must explain what, specifically, she wants to do with them—i.e. by explaining a proper purpose for her request in writing. ORC § 1701.37(C). She says that she wants to address concerns that Columbia failed to account for income, that Ron violated fiduciary duties, and that corporate opportunities were usurped. (Doc. 240 at 5.) Even if this was a proper purpose (it is not—see *supra* at 14-16) and the jury had not already addressed these concerns (it has), Marie would still not need to disclose Columbia's records to anyone except her lawyers and experts to determine that Ron acted properly, which she can do pursuant to the Protective Order. (Doc. 16 at 4.) *See Pederson*, 331 P.3d at 400-402 (addressing similar statute and noting that "the statutory requirement that a shareholder have a 'proper purpose' for inspecting the requested documents functions as a confidentiality protection" because

19

"[c]onfidential information is subject to inspection only insofar as it directly relates to the shareholder's proper purpose as a shareholder.").

The Court should enforce the Protective Order and enter summary judgment on Marie's additional claim that she can "do whatever [she] wants" with Columbia's records.

## IV.    <u>CONCLUSION</u>

For all the foregoing reasons, the Court should enter summary judgment in favor of Ron on Marie's remaining claim for corporate records (Count Two).

Respectfully submitted,

<u>/s/ James E. Burke</u>
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower
One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.com
arazzaghi@fbtlaw.com

*Trial Counsel for Ronald Joseph*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 19, 2019, I filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send notice to all counsel of record.


*/s/ James E. Burke*
James E. Burke

9342472