UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | ) | Case No.: 1:16-CV-00465-TSB |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **DEFENDANT RONALD JOSEPH'S** |
| | ) | **REPLY IN SUPPORT OF MOTION** |
| RONALD JOSEPH, *et al.*, | ) | **FOR SUMMARY JUDGMENT ON** |
| | ) | **MARIE'S CORPORATE RECORDS** |
| Defendants. | ) | **CLAIM** |

Marie's Opposition recites the same legally and factually baseless arguments that Ron has addressed in his previous summary judgment briefing. (*See* Doc. 244; Doc. 245) Based on the undisputed facts and clear law, the Court should grant Ron summary judgment on Marie's claim for access to corporate records (Count II).

I. **ARGUMENT**

   A. **Marie's Opposition Arguments Do Not Establish a Right to "Source Documents" for the 2018 Spreadsheet of Transactions**

      1. **Marie Concedes "Source Documents" for the 2018 Spreadsheet of Transactions Were Not Requested (and Could Not Have Been Requested) in October 2015**

As explained in Ron's previous summary judgment briefing, Marie bears the burden of demonstrating that in the 2015 Records Request there was a specific demand for access to "source documents" for the 2018 Spreadsheet of Transactions. (Doc. 244 at 8-9; Doc. 245 at 2-3.) Marie cannot meet this burden because she admits the 2018 Spreadsheet of Transactions was not provided until nearly *three years after* the 2015 Records Request, on September 5, 2018. (*See* Doc. 244-1 at ¶ 15; Doc. 246-1 ¶ 15.) Far from requesting "source documents" for each of the 748 transactions in the 2018 Spreadsheet of Transactions, the 2015 Records Request fails to even identify *one* specific transaction or demand *any* "source documents" or "receipts, invoices or

purchase orders." Because Marie neither identified nor requested "source documents" for the 2018 Spreadsheet of Transactions in the 2015 Records Request—that demand was a manufactured discovery dispute years later—the Court should grant Ron summary judgment on the "source documents" portion of her corporate records claim. (*See* Doc. 244 at 8-9; Doc. 241 at 3-6.)

> 2. **Marie's Use of the Phrase "Books and Records of Account" Does Not Create a Right to Receive "Source Documents"**

In arguing that "source documents" for the 2018 Spreadsheet of Transactions are somehow "a subset of [the] 'complete books and records of account'" and "inherently included" in the 2015 Records Request (Opp. at 1-2), Marie principally repeats the same arguments (relying on the same two cases) that Ron has already addressed and refuted in his Motion for Summary Judgment ("Ron's Motion") and Opposition to Marie's Motion for Summary Judgment ("Ron's Opposition). (*See* Doc. 244, 245.) Nothing in *William Coale Dev. Co. v. Kennedy*, 121 Ohio St. 582 (1930), *No-Burn, Inc. v. Murati*, 2011-Ohio-5635 (Ohio Ct. App. 2011), or O.R.C. § 1701.37 supports Marie's sweeping argument that a shareholder who simply recites the phrase "complete books and records of account" in a corporate records request (among other *specific* requests for documents) is thereafter entitled to production of every single record the company has or will have, including every record for hundreds of individual transactions in a company's general ledger that took place years *after* the records request was made.

Marie tellingly fails to address the plain language or structure of O.R.C. § 1701.37, including the fact that § 1701.37(A) mandates that "each corporation shall keep" the same "books and records of account" that a shareholder is entitled to inspect under § 1701.37(C). Marie does not contend the Ohio Legislature has mandated that each corporation keep complete

records of every piece of paper or undefined "source document" related to every business transaction, yet that is exactly what would be required if the Court adopted her argument that the scope of "books and records of account" in § 1701.37(C) "contains no limitations." (*See* Doc. 244 at 9-12; Doc. 245 at 3-4.) As the court in *Feuer v.Merck & Co.* explained when analyzing a corporate records statute with provisions analogous to O.R.C. § 1701.37(A) and (C), the phrase "books and records of account" in the statute "does not impose such a vaguely defined record-keeping obligations on corporations, nor does it grant . . . an equally vague scope of inspection to shareholders." 187 A.3d 873, 878 (N.J. Super. Ct. App. Div. 2018), *affirmed at* 238 N.J. 27, 207 A.3d 264 (N.J. S. Ct. 2019). (*See* Doc. 244 at 10-11.) Rather, "books and records of account" refers to discrete financial and accounting records—that is what a corporation must maintain "correct and complete" copies of, and what a shareholder is entitled to inspect. *Id.* (*See* Doc. 244 at 9-12.)

Marie tries in vain to distinguish *Feuer* and the other persuasive cases and authorities cited in Ron's Motion—which all support that "books and records *of account*" means a corporation's discrete accounting and financial records (*see* Doc. 244 at 10-12)—but she does not offer a single case where a court has ordered or approved the sweeping relief she seeks here. Namely, that a corporate records request parroting the statutory phrase "books and records of account" (among a set of *specific* requests) somehow encompasses unrequested "source documents" for a set of transactions that were not identified and did not even occur until *years after* the records request was made. To the best of the undersigned counsel's knowledge, no court has ever ordered this type of sweeping relief under any corporate records statute, and certainly not under O.R.C. § 1701.37.

Because Marie's recitation of the statutory phrase "books and records of account" in the

2015 Records Request, as a matter of law, did not constitute a massive request for all so-called "source documents" related to the 2018 Spreadsheet of Transactions (nor any other unidentified transactions), and because Marie has indisputably received the financial and accounting records of Columbia (Doc. 244 at 12-13), summary judgment should be entered in favor of Ron.

### 3. Marie's Stated Purpose is Not "Reasonable and Proper"

Marie's argument for "source documents" additionally fails because she does not have a "reasonable and proper purpose" for demanding inspection of such documents. Despite Marie's attempt to cast this as a new argument, Ron has consistently argued this is an alternative and independent ground for granting judgment in his favor. (*See, e.g.*, Doc. 233 at 12 (stating there is no "reasonable and proper purpose" for examining "source documents"); Doc. 241 at 6 (stating that even assuming "source documents" were part of the 2015 Records Request, Marie's claims still fail because the "stated purpose of investigating purported diversions of assets and usurpation of corporate opportunities . . . is clearly not 'reasonable and proper' as required under O.R.C. § 1701.37, in part because a jury has already heard and soundly rejected this *same* challenge to the *same* list of transactions after hearing over two weeks of evidence").

In Ron's Motion, he raised two reasons why Marie's purpose is neither reasonable nor proper. (*See* Doc. 244 at 14-15.) As to the first reason—that she already investigated, litigated, and lost on her claims challenging these transactions as improper—Marie does not dispute the transactions for which she seeks additional "source documents" are the *same* transactions she fully litigated and presented to a jury as purportedly improper. Demanding further records to continue litigating the same claims and issues that have been fully resolved as a matter of law and fact is not "reasonable and proper."

As to the second reason—that any "source documents" are duplicative of the information she already has in the general ledger, and to search for them would be unduly burdensome if not

4

impossible—Marie's opposition fails to refute these undisputed facts. It is undisputed that there is no material or financial information contained in any "source document" related to the 2018 Spreadsheet of Transactions (or any other transactions) that is not reflected in the complete journals and schedules of the general ledger, which have all been produced to Marie. (*See* Doc. 244-1 at ¶¶ 16-18; Doc. 244-4.) This undisputed fact was established by Linda May—the individual who created each general ledger entry for which Marie now seeks "source documents." (*Id.*) The misleading attempt by Marie's counsel to misconstrue a single page from a single incomplete journal (Opp. at 10)—as they repeatedly attempted during trial—is not only improper summary judgment evidence, but does nothing to change the undisputed testimony of Linda May.[1]

Marie's related attempt to refute the undisputed evidence as to the storage and burden (if not impossibility) of retrieving "source documents" similarly fails. (*See* Doc. 244-1 at ¶¶ 19-20.) Marie points to the deposition testimony of Ms. May in an attempt to argue that she can "look back at everything"—meaning "source documents"—using the Reynolds and Reynolds software. (Opp. at 11; Doc. 246-1 at ¶ 19.) Marie cites to (and provides the Court with) only incomplete questions and answers from page 56 of Ms. May's deposition (*Id.*; Doc. 246-3). This testimony does not establish Ms. May can retrieve "source documents" from the Reynolds and Reynolds software, as further confirmed by the following pages of her deposition. On those subsequent pages that Marie excludes, Ms. May uses the example of a vehicle sale to explain how after a transaction is posted in the general ledger accounting software, the paper documents

---

[1] Marie's unsupported argument that there is additional information she purportedly needs from "source documents" is further belied by her own conduct regarding the 99 boxes of "source documents" she *did receive* related to fleet sales (which constitute a large percentage—approximately 35%—of the 748 transactions on the 2018 Spreadsheet of Transactions). Marie did not introduce a single one of these documents into evidence at trial, instead seeking to challenge fleet sales by misconstruing incomplete excerpts from the general ledger, and then making the specious argument in her post-trial motion that she did not receive "source documents" related to fleet sales despite the fact "Defendant produced 99 boxes worth of documents as to fleet sales[.]" (Order Denying Motion for Judgment as a Matter of Law or New Trial, Doc. 231 at 9.)

are filed on-site at Columbia Automotive for a short period of time, sometimes in different departments, then moved to a closet downstairs or other Joseph dealerships altogether, and eventually moved off-site to a storage location on Gilbert Avenue. (*See* May Depo. at 56:23-60:12, attached as **Ex. 1**.) Contrary to Marie's argument, Linda May's deposition testimony is entirely consistent with her sworn declaration. (*Compare* Doc. 244-4 at ¶ 5.)

### B. Marie has been Provided a True and Accurate Copy of Columbia Automotive's "Real" General Ledger

Although Marie again attempts to argue (without any support) that she did not receive the "real" general ledger of Columbia Automotive, she does not dispute that she received a complete copy of the general ledger that accurately reflects the information stored electronically in the Reynolds and Reynolds software. (Doc. 244-1 at ¶¶ 5-6; Doc. 246-1 at ¶¶ 5-6.) This production constitutes Columbia's "original" general ledger. *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information"). Marie also admits, as she must, that her counsel authenticated with witnesses under oath and successfully admitted into evidence dozens of portions from Columbia Automotive's general ledger *exactly as they were produced* to support Marie's claims. (Doc. 244-1 at ¶ 7; Doc. 246-1 at ¶ 7.) There is simply no factual or legal basis for disputing that Marie has received Columbia Automotive's general ledger.

Marie's real contention is apparently not over the corporate records she received, but rather her demand to sit at a Columbia Automotive computer terminal and access the Reynolds and Reynolds software. As pointed out in Ron's Opposition, however, Marie does not (and cannot) offer any legal support for the proposition that O.R.C. § 1701.37 gives a shareholder the right to demand and receive unfettered personal access to a company's live and editable accounting software and data as opposed to *records* that accurately reflect the information maintained

6

electronically on that software (which Marie has indisputably been given). (Doc. 245 at 5-6.)

### C. Marie's Requests for a Copy of Columbia's Stock Ledger and Records of Shares Dating Back to 1992 Has been Fully Satisfied

As established in Ron's previous summary judgment briefing, it is undisputed that Marie's requests for a copy of Columbia's stock ledger and records of shares dating back to 1992 have been fully satisfied. (*See* Doc. 244 at 16-17; Doc. 244-1 at ¶¶ 21-25; Doc. 245 at 6-8.) Moreover, Marie *stipulated* to Columbia's stock ledger at trial, and the parties admitted the stock ledger into evidence as Joint Exhibit 11. (Doc. 244-1 at ¶ 25; Doc. 207 at 1.) Marie's Opposition argument that *her own trial stipulation* as to Columbia's stock ledger somehow does not mean she agreed "that the document is (i) accurate and/or (ii) the actual stock ledger of Columbia" is absurd. (Doc. 246-1 at ¶ 25.)

### D. Ron is Also Entitled to Summary Judgment On Marie's Claim Because She Refuses to Treat Any Columbia Records as Confidential

The Parties briefed the issue of confidentiality repeatedly and Ron did not "shoehorn" it into his Motion. (*See* Opp. at 17-18.) Marie raised the issue in the Parties' first submission on the corporate records claim. (*See* Doc. 226 at 2.) Ron maintained that Marie should agree to reasonable restrictions on her ability to disclose Columbia financial information. (*See*, *e.g.*, Doc. 233 at 4.) Marie in turn did not identify confidentiality as an issue to be resolved in her trial brief *(see* Doc. 240)—but then she changed course at the pre-trial conference and argued that the Court should rule that she and her counsel can do "whatever [they] want" with Columbia's records (Doc. 242 at 17:7-15). She then changed course again and tried to file a *new* lawsuit about corporate records and confidentiality in state court (Doc. 244 at 18), which that court has now stayed pending resolution of this case. (Sep. 19, 2019 Order, attached as **Ex. 2**.).[2]

---

[2] Marie argues that Ron mischaracterizes the state court action (Opp. 20-21), but those arguments are moot given that the state court *agreed* that allowing the new lawsuit to proceed would interfere with this Court's resolution of

The Court encouraged the parties to work this out on their own, and this should have resolved the issue. But Marie *refuses to agree to any restriction on her use of Columbia records at all*. Even now she says she "does not intend to take the information revealed through her inspection and copying of document to Columbia's competitors or to the press" (Opp. at 19-20)—but she will not agree to any requirement that would prevent her from doing so. This issue is ripe for summary judgment: i.e., whether Marie can do "whatever she wants" with records *or* whether Columbia and Ron (its President) are entitled to use reasonable judgment and place the type of routine confidentiality restrictions on inspections and copying that courts routinely allow. (*See* Doc. 245 at 20, *citing, e.g.*, *No-Burn*, 2011-Ohio-5635, ¶ 27 (Ohio Ct. App. 2011).) Marie does not address the fact that the *No-Burn* court approved a confidentiality restriction, nor does she address any of the other cases that Ron cites in his Motion where courts approved similar restrictions.

Marie also never makes a proposal of her own. She rejects Ron's proposal to simply agree that the terms of the Protective Order—already adopted by the Court—should continue to apply, even though it only places restrictions on documents designated "Confidential" (Doc. 16 at 3-4), permits her to share those designated documents with her attorneys and experts (*id.* at 9), and permits her to challenge any unreasonable designations (*id.* at 7). Of course Ron and Columbia would agree that documents which were already filed publicly (*see* Opp. at 19-20, n.14) are no longer governed by confidentiality restrictions. If there are other documents that Marie believes are wrongly designated, she can identify them at any time and, if she is right, Columbia will agree to remove the confidentiality designation.

---

the issues. Marie apparently takes issue with Ron's characterization of the *ex parte* relief she sought. (*Id.* at 21.) Of course, by definition, Ron's attorneys were not present when she sought this relief as they were not given notice or an opportunity to appear, but Marie sought some order from the state court for access to Columbia records free from the types of reasonable confidentiality restrictions that Ron has proposed in this case.

Marie generally complains that Ron's proposals allow him to act as "gatekeeper" and prohibit her from "exercising her rights as a shareholder whenever Ron determines." (Opp. at 19.) Marie cites no law for the proposition that her "rights" include the right to disclose Columbia records to anyone at any time. And in any case all of Ron's proposals would allow Marie to challenge an unreasonable confidentiality demand by Columbia. But Marie also cites no law and makes no argument to support the proposition that it is somehow inappropriate for Ron to make determinations about what Columbia documents and records can be shared with the public or its competitors. Ron is the President of Columbia. He has fiduciary obligations to *all* of its shareholders to keep Columbia's sensitive financial information private. All of his proposals have been reasonable, and Marie simply refuses to agree to keep any records confidential or even to tell Ron or this Court what she wants to do with records that would require disclosures to third parties. For these reasons, also, summary judgment should be granted in Ron's favor.

## II. CONCLUSION

For all the foregoing reasons, and the reasons stated in Ron's Motion for Summary Judgment (Doc. 244) and Opposition to Marie's Motion for Summary Judgment (Doc. 245), the Court should enter summary judgment in favor of Ron on Marie's corporate records claim (Count II).

Respectfully submitted,

*/s/ James E. Burke*
James E. Burke (0032731)
Rachael A. Rowe (0066823)
James R. Matthews (0043979)
Keating Muething Klekamp PLL
One East Fourth Street
Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
Fax: (513) 579-6457
jburke@kmklaw.com
rrowe@kmklaw.com
jmatthews@kmklaw.com

James C. Frooman (0046553)
Ali Razzaghi (0080927)
FROST BROWN TODD LLC
3300 Great American Tower
One East Fourth Street
Cincinnati, OH 45202
Tel: (513) 651-6800
Fax: (513) 651-6981
jfrooman@fbtlaw.com
arazzaghi@fbtlaw.com

*Trial Attorneys for*
*Defendant Ronald Joseph*

# CERTIFICATE OF SERVICE

I certify that on September 23, 2019, I filed Defendant Ronald Joseph's Reply in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/ James E. Burke*
James E. Burke

9451908