UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | : | Case No. 1:16-cv-465 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| RONALD JOSEPH, | : | |
| | : | |
| Defendant. | : | |

**ORDER:
(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S ACCESS TO CORPORATE RECORDS CLAIM; AND
(2) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This case is before the Court on the parties' cross-motions for summary judgment regarding Plaintiff's access to corporate records claim (Docs. 243, 244), and the parties' responsive memoranda (Docs. 245, 246, 247, 248).

## I. BACKGROUND[1]

**A. The Procedural Posture**

On April 12, 2016, Plaintiff Marie Joseph ("Plaintiff"), a minority shareholder of Columbia Oldsmobile Co. ("Columbia"), filed suit against Defendant Ronald Joseph ("Defendant"), the majority shareholder of Columbia.[2] (Doc. 1). Her complaint

---

[1] Pursuant to the Court's Standing Order, each party filed a Statement of Proposed Undisputed Facts, as well as a Response to Proposed Statement of Undisputed Facts and a Statement of Disputed Issues of Material Fact. (Docs. 243-1, 244-1, 245-1, 246-1). The Court's statement of facts set forth in this Order incorporates the material facts undisputed by the parties.

[2] The access to corporate records claim at issue here is asserted in the complaint solely against Ronald Joseph. (Doc. 1 at ¶¶ 81–83; Doc. 27 at ¶ 271). On January 10, 2017, Plaintiff filed an

contained two cognizable claims: (1) breach of fiduciary duty; and (2) access to corporate records.[3] (*Id.* at ¶¶ 74–83).

On September 17, 2018, the Court bifurcated Plaintiff's access to corporate records claim and agreed to schedule it for a separate trial "if necessary." (Doc. 175 at 4). On October 9, 2018, Plaintiff's breach of fiduciary duty claim proceeded to jury trial. (Min. Entry, Oct. 9, 2018). On October 23, 2018, the jury returned a verdict in favor of Defendant. (Doc. 210 at 20).

Thereafter, the Court conferred with counsel and set Plaintiff's access to corporate records <u>equitable</u> claim for a bench trial commencing August 19, 2019. (Not. Order, June 5, 2019). However, the Court subsequently concluded that threshold questions of law presented with regard to Plaintiff's access to corporate records claim. (Doc. 242 at 22:7–18). Accordingly, the Court vacated the bench trial and granted the parties leave to file the instant cross-motions for summary judgment. (*Id.*)

## B. The Material Facts

As to the access to corporate records claim—the sole remaining claim at issue in this case—Plaintiff alleges as follows: "[Plaintiff] made a written request for the opportunity to examine Columbia's books and records," and "[Defendant] refused to

---

addendum to the complaint, which added four additional defendants to the case, Gregory Joseph, George Joseph, Richard Joseph, and Ronald Joseph, Jr. (Doc. 27), the claims against whom were dismissed upon summary judgment (Doc. 160).

[3] Plaintiff's complaint also contained an "accounting" claim. (Doc. 1 at ¶¶ 84–88). However, as stated in the Court's Order dated November 6, 2018, "Plaintiff's accounting claim was merely a potential remedy . . . , not an independent cause of action." (Doc. 215 at 1).

allow Columbia to release *any* records or information to [Plaintiff]." (Doc. 1 at ¶¶ 72–73) (emphasis in original).

To be clear, **the only written request for corporate records at issue here is** a corporate records request dated October 12, 2015 (**the "2015 Records Request"**). (Min. Entry & Not. Order, May 14, 2019; Doc. 242 at 5:11–15, 12:2–6; Doc. 244-1 at ¶¶ 3–4; Doc. 246-1 at ¶¶ 3–4). In relevant part, the 2015 Records Request provides:

> [P]ursuant to Ohio Revised Code §§1701.37 and 1701.38, I hereby request on [Plaintiff]'s behalf, **COPIES OF** the following Columbia books and records:
> 1. The "complete books and records of account, together with minutes of the proceedings of Columbia's shareholders, directors, and committees of the directors." This request seeks, among other things:
>    a. Copy of the ground lease for the 5th and Sycamore (6 parcels of land);
>    b. The financials of Columbia Motors Acceptance Corporation (2005-2015);
>    c. The financials of Joseph Chevrolet (2005-2015);
>    d. Financial records (2005-2015) and appraisals of the following lots owned by Columbia: (i) 813 Sycamore St, (ii) 7th and Sycamore (11 parcels); and (iii) 415 Court St.;
>    e. The financials (2005-2015) for 716 Main St.;
>    f. The appraisal, if any, of 3449 St. John's Place owned by Columbia;
>    g. Financial records (2005-2015) of rent received on 9750 and 9678 Montgomery Rd.;
>    h. The financial records (2005-2015) for Columbia Hyundai;
>    i. The financial records (2005-2015) for Columbia Acura; and
>    j. Financial records (2005-2015) regarding finance and insurance ("F&I") monies of all dealerships owned by Columbia.
> 2. The records of Columbia's shareholders and the number and class of shares issued or transferred of record to or by them since 1992;
>    [. . . and]
> 4. A copy of the Stock Ledger for Columbia . . . .

(Doc. 244-2 at 2–3) (emphasis and all-caps added).[4]

---

[4] Sections three, five, and six of the 2015 Records Request are not before the Court, as the parties have not raised any issues or arguments relating to them. (*See* Doc. 242 at 11:3–20).

3

In short, Plaintiff's 2015 Records Request demanded "copies of" Columbia's "complete books and records of account," which she identified as including the ten specific items enumerated in 1(a)–(j), *supra*, as well as shareholder records and stock ledgers. (*See id.*).

Over the past three years, Defendant has provided Plaintiff with copies of many of Columbia's corporate records. Notably, Defendant has provided Plaintiff with copies of Columbia's: financial statements; tax returns; general ledgers; stock ledgers; and stock certificates. (Doc. 243-1 at ¶¶ 11, 13; Doc. 244-1 at ¶¶ 6, 8, 10–11; Doc. 245-1 at ¶¶ 11, 13; Doc. 246-1 at ¶¶ 6, 8, 10–11).

However, Defendant has refused to provide Plaintiff with full access to the following three categories of information.

First, Defendant has refused to provide Plaintiff with access to Columbia's "source documents." (Doc. 244-1 at ¶ 20; Doc. 247 at 5 n.1). As defined by Plaintiff, a source document is a "document such as a receipt and invoice or a purchase order" that "supports or backs up a given transaction." (Doc. 242 at 4:17-20). In late 2018, Plaintiff sought the source documents relating to a list of approximately 748 transactions (the "Relevant Source Documents"). (Doc. 244-1 at ¶ 15; Doc. 246-1 at ¶ 15; *see also* Doc. 238 at 3–4).

Second, Defendant has refused to provide Plaintiff with access to Columbia's "actual" general ledgers. (Doc. 247 at 6). While Plaintiff states that she has received "printed-out excerpts" of Columbia's general ledgers, she has not been permitted to access Columbia's general ledgers "as [they are] actually maintained" in Columbia's

computer-based systems (the "Actual General Ledgers"). (Doc. 243-1 at ¶ 10; Doc. 244-1 at ¶¶ 5–9; Doc. 246-1 at ¶¶ 5–9).

Third, Defendant has refused to provide Plaintiff with full access to Columbia's "original" stock ledgers. (Doc. 245 at 7). While Plaintiff states that she has received "computer-generated 'stock registers' and 'shareholders' lists'" (Doc. 243-1 at ¶ 10), as well as "copies of what purport to be Columbia['s] stock certificates" (*id.* at ¶ 13), she has not been permitted full access to the original stock ledgers, stock certificates, or shareholder records maintained at Columbia's facilities (the "Original Stock Ledgers") (Doc. 246-1 at ¶¶ 22–24).[5]

By Plaintiff's admission, **these three categories of information**—the Relevant Source Documents, the Actual General Ledgers, and the Original Stock Ledgers—**are the only categories of information left at issue in this case**. (*See* Doc. 242 at 11:3–20; *see also* Doc. 240 at 5; Doc. 242 at 12:15–17).[6]

---

[5] Defendant has permitted Plaintiff to access certain Original Stock Ledgers; however, Defendant has conditioned the copying of such documents on Plaintiff's execution of a confidentiality agreement. (*See* Doc. 244-1 at ¶¶ 22–24; Doc. 246-1 at ¶¶ 22–24). *See infra* at 16, n.13.

[6] Plaintiff sets out eleven "disputed issues of material fact." (Doc. 246-1 at 7–8). Number one does not contain an issue. (*Id.* at 7) ("incorporating" Plaintiff's responses to Defendant's statement of undisputed facts). Number two is not substantively disputed—Plaintiff has not been permitted to access the Actual General Ledgers, as defined *supra*. (*Id.* at 8). Numbers five, six, seven, and ten are legal (not factual) issues. (*Id.* at 8–9). Numbers three, four, eight, and nine are immaterial, given this Court's conclusion, *infra*, that the 2015 Records Request did not require Defendant to provide Plaintiff with the Relevant Source Documents, the Actual General Ledgers, or the Original Stock Ledgers in the first place. (*Id.*) And number eleven is outside the scope of this case. (*Id.* at 9).

5

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

The instant cross-motions for summary judgment present the following questions: **(A)** whether the 2015 Records Request required Defendant to provide Plaintiff with copies of the Relevant Source Documents; **(B)** whether the 2015 Records Request required Defendant to provide Plaintiff with access to the Actual General Ledgers; and **(C)** whether the 2015 Records Request required Defendant to provide Plaintiff with access to the Original Stock Ledgers. (Docs. 243, 244; *accord* Doc. 242 at 3:12–4:21, 22:7–14).

The Court's emphasis on "2015 Records Request" is intended to make clear that the issue before the Court is not whether Plaintiff generally possesses the right to access corporate records, but whether Plaintiff specifically asserted that right in the 2015 Records Request, such that Defendant's refusal to comply constituted a violation of law.

**A. The Relevant Source Documents**

The first question is whether the 2015 Records Request required Defendant to provide Plaintiff with copies of the Relevant Source Documents. The Court answers this question in the negative.

Section 1701.37(C) of the Ohio Revised Code provides that a shareholder has the right to examine a corporation's records "upon written demand stating the specific purpose thereof." Ohio Rev. Code § 1701.37(C).

To make out a *prima facie* case under section 1701.37(C), the shareholder must establish that: (1) there was a "demand for access to the documents"; (2) the demand for access to the documents was "in writing"; and (3) the writing contained a "specific purpose." *Hotchkiss v. GenBanc, Inc.*, No. 93-OT-016, 1994 WL 39065, at *2 (Ohio Ct. App. Feb. 11, 1994). Once a proper section 1701.37(C) demand has issued, the corporation must allow the shareholder to examine and copy the corporate records requested. *See* Ohio Rev. Code § 1701.37(C).

Of course, a section 1701.37(C) demand need not provide the corporation with an exhaustive list identifying each and every document the shareholder seeks. *See Grossman v. Cleveland Cartage Co.*, 157 N.E.2d 154, 158–59 (Ohio Com. Pl. 1959) (noting, in *dicta*, while discussing the "specific purpose" element of the statute, that

7

section 1701.37(C) "requires a statement of the specific purpose for the examination, not an enumeration of specific books and records, [and] not a detailed outline of the contemplated steps of the investigation").

Nonetheless, a section 1701.37(C) demand cannot be so broad, indefinite, or vague that it wholly fails to apprise the corporation of what records the shareholder wants to examine. *See No-Burn, Inc. v Murati*, No. CV 2008 08 5602, 2010 WL 8112675 (Ohio Com. Pl. June 15, 2010) ("[T]he court concluded that NBI was not required to respond to . . . item 18 [of the section 1701.37(C) demand] **because it was vague** and Murati withdrew it." (emphasis added)); 12 Stephanie A. Giggetts, *et al.*, *Ohio Jur. 3d Business Relationships* § 584 (2019).[7]

And "where the shareholder invites error [through an overly broad, indefinite, or vague section 1701.37(C) demand] . . . , [she] cannot thereafter properly argue about [the] limitations [she] encounters with respect to the inspection of records." Giggetts, *supra*, at § 584 (citing *Dukich v. Erico Prod., Inc.*, No. 53264, 1987 WL 13033, at *1 (Ohio Ct. App. June 18, 1987)).

---

[7] Numerous authorities support this common-sense proposition. *See* 18 Francis C. Amendola, *et al.*, *C.J.S. Corporations* § 427 (2019) ("A demand . . . should not be too broad, indefinite, or vague. It should be stated with particularity, sufficient to apprise a person of ordinary intelligence what documents are required, depending on the facts and circumstances of each case."); *Wynnefield Partners Small Cap Value L.P. v. Niagara Corp.*, No. 1261-N, 2006 WL 2521434, at *2 (Del. Ch. Aug. 9, 2006) (stating that shareholders "are required to make demands for categories of books and records with specific and discreet identification"; shareholders "need not, however, demand documents with pinpoint specificity" (quotation marks, citations, and emphasis omitted)); *Byrnes v. S.S. Stafford, Inc.*, 71 N.Y.S.2d 584, 585 (N.Y. Sup. Ct. 1947) (A shareholder "is not entitled . . . to rove at random into the books, records and other documents, as he seeks, and even were he entitled, at this time, to inspection and discovery, it would be incumbent upon him to particularize the books, records and documents upon which an inspection and discovery are desired.").

Here, the 2015 Records Request demanded "copies of" Columbia's "complete books and records of account," specifically identified as including the ten items enumerated in 1(a)–(j). (Doc. 244-2 at 2–3). However, the 2015 Records Request contained **no** reference to receipts, invoices, or purchase orders—*i.e.*, "source documents." (*Id.*) In fact, the Relevant Source Documents were not identified by Plaintiff until late 2018—three years **after** the 2015 Records Request was issued. (Doc. 244-1 at ¶ 15; Doc. 246-1 at ¶ 15; *see also* Doc. 238 at 3–4).

Nonetheless, Plaintiff argues that the demand in the 2015 Records Request for Columbia's "complete books and records of account" encompassed the Relevant Source Documents. (Doc. 243 at 5). In support of this argument, Plaintiff relies primarily on a concurrence found in *No-Burn, Inc. v. Murati*, No. 25495, 2011 WL 5188063 (Ohio Ct. App. Nov. 2, 2011). (*See id.* at 7–9).

As an initial matter, the *No-Burn* case is distinguishable, because the shareholder in *No-Burn* issued a <u>detailed</u> section 1701.37(C) demand, <u>specifically requesting the documents at issue on appeal</u>. *Id.* at *3–4, 10. The 2015 Records Request lacks any such particularity with regard to the Relevant Source Documents. (*See* Doc. 244-2 at 2–3).

Moreover, the *No-Burn* concurrence does not support Plaintiff's position. In relevant part, the *No-Burn* concurrence provides as follows:

> [A] shareholder is presumed to act in good faith when seeking to inspect "the books, records, and property of a corporation," suggesting that a shareholder's **right** to inspect includes access to documents underlying the central accounting books from which a shareholder can make his own calculations to determine whether the corporation is being managed efficiently.

9

*No-Burn*, 2011 WL 5188063, at *13 (citing *William Coale Dev. Co. v. Kennedy*, 170 N.E. 434, 435–36 (Ohio 1930)) (emphasis added).

In short, under *No-Burn*, a shareholder has the **<u>right</u>** to inspect a corporation's underlying documents upon a proper section 1701.37(C) demand. However, neither *No-Burn*, nor any other case cited by the parties (or found by this Court), suggests that a shareholder's right to inspect a corporation's underlying documents is triggered by nothing more than a perfunctory recitation of the statutory language: "complete books and records of account."

Thus, while *No-Burn* establishes that a shareholder can examine a broad range of corporate records, *No-Burn* does not sanction overly broad, indefinite, or vague section 1701.37(C) demands.[8]

It does not appear that any Ohio court has delineated a level of particularity with which a shareholder must demand a corporation's "underlying" documents. *Cf. No-Burn*, 2011 WL 5188063, at *2, 8 (declining to define the phrase "books and records of account" and noting that no Ohio court has yet done so). But wherever the line may be drawn, Plaintiff's general demand for Columbia's "complete books and records of account"—*i.e.,* the ten enumerated items, "among other things"—falls short of it. (Doc.

---

[8] This same logic applies to *William Coale*—the other case cited by Plaintiff in support of her argument. *William Coale*, 170 N.E. at 434. Like *No-Burn*, *William Coale* certainly stands for the proposition that a shareholder's right to inspect a corporation's records is broad. *Id.* (discussing the "**<u>right</u>** of [share]holders to inspect, and take copies thereof, all books, records, papers, contracts, and other written documents, and to inspect all assets of every kind belonging to the corporation" (emphasis added)). However, *William Coale* does not sanction overly broad, indefinite, or vague section 1701.37(C) demands.

242 at 2). To hold otherwise would unreasonably require a corporation, upon receipt of so broad, indefinite, and vague a section 1701.37(C) demand, to produce every scrap of paper in its possession, lest it be held in violation of the statute. *Accord Grossman*, 157 N.E.2d at 156 ("<u>There are of course, utilitarian considerations and pragmatic reasons why the directors of a corporation cannot devote their entire lives to an uninterrupted narration to separate [share]holders of the minute details of the affairs of their corporation</u>." (emphasis supplied; quotation marks and citation omitted)).[9]

It further bears noting that many of the Ohio cases cited refer to requests for in-person inspection and subsequent copying. Plaintiff's request, however, demanded "copies of" Columbia's corporate records, not in-person inspection of them. (Doc. 244-2 at 2). The nature of Plaintiff's demand (seeking "copies of" Columbia's corporate records) further supports a determination that Defendant cannot be held in violation of section 1701.37(C) for failing to provide Plaintiff with every document possibly responsive to the 2015 Records Request, given that the 2015 Records Request contains little guidance beyond a generalized purpose, a statutory quotation, and a catchall phrase: "among other things." (Doc. 244-2 at 2–3).

---

[9] Notably, this conclusion aligns with rudimentary discovery principles regarding overbreadth. *See Gen. Cable Corp. v. Highlander*, No. 1:05-CV-83, 2006 WL 1526487, at *1 (S.D. Ohio May 31, 2006) ("[Discovery Request] No. 1 requests that AGEM produce 'all of AGEM's financial books and records since its inception.' . . . The Court's assessment is that the information sought, though relevant, is also unnecessary and that the [Discovery] Request is so broad as to be objectionable."); *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 165 (Del. Ch. 2006) (stating that Delaware's corporate records statute "is certainly not meant to be a forum for the kinds of wide-ranging document requests permissible under Rule 34 [governing discovery]").

As Plaintiff's 2015 Records Request did not contain any colorable reference to the Relevant Source Documents, the request failed to meet the first *prima facie* element under section 1701.37(C)—a "demand for access to the documents." *See Hotchkiss*, 1994 WL 39065, at *2. To conclude otherwise would allow Plaintiff to "take advantage of an error which [s]he h[er]self invited or induced." *Dukich*, 1987 WL 13033, at *1 (quotation marks and citation omitted).

Accordingly, the Court concludes that, on the undisputed material facts, as a matter of law, the 2015 Records Request did not require Defendant to provide Plaintiff with copies of the Relevant Source Documents.

### B. The Actual General Ledgers

The second question is whether the 2015 Records Request required Defendant to provide Plaintiff with access to the Actual General Ledgers. Again, the Court answers this question in the negative.

Plaintiff argues that she is entitled to access the Actual General Ledgers, pursuant to the 2015 Records Request, because she believes that such access will give her "nearly instantaneous cross-reference to the relevant source documents and/or other information that underlies the transactions at issue."[10] (Doc. 243 at 11; *see, e.g.*, Doc. 242 at 10:9–18).

---

[10] Defendant disputes that the Actual General Ledgers provide such access. (*See, e.g.*, Doc. 244-4 at ¶ 5). But, as the Court explains, this dispute is immaterial, because the 2015 Records Request did not require the production of the Actual General Ledgers in the first place.

In Plaintiff's own words:

> The issue of [the Actual General Ledgers] is part and parcel with the issue regarding the source documents that Plaintiff seeks the opportunity to inspect and copy. . . . [A]ccess to [the Actual General Ledgers] is "**a means to an end**" for effectively deriving and analyzing the information that will be disclosed by the source documents underlying the transactions at issue.

(Doc. 243 at 10 n.14) (emphasis added).

However, the Court has already concluded that the 2015 Records Request did not require Defendant to provide Plaintiff with access to the Relevant Source Documents. As a result, to the extent that Plaintiff's purpose in demanding the Actual General Ledger is to access the Relevant Source Documents, that purpose is now moot, and thus Plaintiff's argument fails.

Importantly, even if Plaintiff were entitled to access the Relevant Source Documents, her attempt to access the Actual General Ledgers pursuant to the 2015 Records Request would nonetheless fail for one simple reason: she did not ask for such access. The 2015 Records Request demanded "**copies of**" "Columbia['s] books and records"—not **access to** Columbia's live accounting systems. (Doc. 244-2 at 2) (emphasis added); *cf. Pederson v. Arctic Slope Reg'l Corp.*, 331 P.3d 384, 396 (Alaska 2014) (noting, under Alaska's corporate records statute, that a shareholder would not be entitled to use a computer to browse a corporation's accounting software, where he had "never asked to use a computer to browse the [c]orporation's accounting software," but had "asked for copies of documents containing specific information" (emphasis added)).

For these reasons, the Court concludes that, on the undisputed material facts, as a matter of law, the 2015 Records Request did not require Defendant to provide Plaintiff with access to the Actual General Ledgers.

**C. The Original Stock Ledgers**

The final question is whether the 2015 Records Request required Defendant to provide Plaintiff with access to the Original Stock Ledgers. Again, the Court answers this question in the negative.

Plaintiff argues that she is entitled to access the Original Stock Ledgers, pursuant to the 2015 Records Request, because "[she] does not have to accept either copies of readily available documents or other documents generated by [Defendant] or his counsel for purposes of her extrajudicial requests to inspect and copy Columbia's shareholder records—she has a right to inspect and copy those records herself . . . ."[11] (Doc. 243 at 14).

Plaintiff is correct in stating that she does not have to accept as true the documents provided to her by Defendant. Section 1701.37(C) provides that a shareholder has "the right to examine in person . . . and copy" a corporation's records, "upon written demand stating the specific purpose thereof." Ohio Rev. Code § 1701.37(C) (emphasis added). And the Supreme Court of Ohio has stated:

---

[11] Although not determinative, it bears noting that at the trial on her breach of fiduciary claim, Plaintiff agreed to the admissibility of many of the corporate records now at issue. (*See, e.g.*, Doc. 244-1 at ¶¶ 7, 9, 25; Doc. 246-1 at ¶¶ 7, 9, 25).

> [A shareholder] is not obliged to accept as 100 per cent correct statements prepared by the agents of the corporation. . . . <u>The [share]holder may want to</u> check up the cash and securities represented by the books as on hand, in order to <u>see for [her]self that what the books show as being on hand is in fact on hand</u>.

*William Coale*, 170 N.E. at 435 (emphasis added).

Nonetheless, Plaintiff's argument fails, because the 2015 Records Request demanded "**<u>copies of</u>**" the Original Stock Ledgers—not an in-person examination. (Doc. 244-2 at 2–3) (emphasis added); (*see also* Doc. 242 at 5:11–15, 12:2–6).

Despite the plain language of the 2015 Records Request ("copies of"), Plaintiff tries to re-cast the same as a demand to "inspect and copy" the Original Stock Ledgers. (*See, e.g.*, Doc. 248 at 6). The word "inspect" appears nowhere in the 2015 Records Request. (*See* Doc. 244-2 at 2–3).

While Plaintiff certainly has the right to examine the Original Stock Ledgers in person, Plaintiff did not exercise that right in the context of the 2015 Records Request. (*See id.*). Plaintiff demanded **<u>copies of</u>** the Original Stock Ledgers, and **<u>copies of</u>** the Original Stock Ledgers are exactly what she received.

Accordingly, the Court concludes that, on the undisputed material facts, as a matter of law, the 2015 Records Request did not require Defendant to provide Plaintiff with access to the Original Stock Ledgers.[12]

---

[12] Plaintiff further argues that Defendant has improperly conditioned Plaintiff's access to the Original Stock Ledgers on Plaintiff's execution of a confidentiality agreement. (Doc. 246 at 19 n.13). As the Court has concluded that the 2015 Records Request did not require Defendant to provide Plaintiff with access to the Original Stock Ledgers, Plaintiff's argument regarding confidentially is moot.

## IV. CONCLUSION

The holding of this Order is not complicated: **<u>if you want something, ask for it</u>**. The 2015 Records Request failed to meet this basic requirement. Thus, on the undisputed material facts, Plaintiff's access to corporate records claim fails as a matter of law.

Based upon the foregoing, Defendant's motion for summary judgment (Doc. 244) is **GRANTED**,[13] and Plaintiff's motion for summary judgment (Doc. 243) is **DENIED**. Plaintiff's access to corporate records claim is hereby **DISMISSED**, and the Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**IT IS SO ORDERED.**

Date: 11/25/2019

*Timothy S. Black*
Timothy S. Black
United States District Judge

---

[13] More precisely, Defendant's motion for summary judgment is granted in all but one respect. Defendant asks the Court to grant "summary judgment" in his favor on Plaintiff's purported "claim" that "she and her counsel have no confidentiality restrictions and should be 'free to do whatever [they] want' with Columbia's documents." (Doc. 244 at 18). This confidentiality issue is not a claim that was raised in Plaintiff's complaint and is therefore not an issue for summary judgment. (Doc. 1; Doc. 242 at 17:7-15). The Court merely notes that the Protective Order entered in this case governs the discovery produced in this case. (Doc. 16). This is true regardless of whether that discovery also satisfied any portion of the 2015 Records Request. (Doc. 244-2). The Protective Order does not apply to any documents produced outside of the context of discovery in this case. (Doc. 16).