# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  August 18, 2022

Mr. James E Burke III
Mr. James R. Matthews
Mr. Jacob D. Rhode
Mr. Benjamin Guthrie Stewart
Keating, Muething & Klekamp
1 E. Fourth Street, Suite 1400
Cincinnati, OH 45202

Mr. James Charles Frooman
Mr. Ali Razzaghi
Frost Brown Todd
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202

Mr. Nicholas Robert Gregg
Murphy Landen Jones
2400 Chamber Center Drive, Suite 200
Ft. Mitchell, KY 41017

Mr. Scott A. Kane
Mr. Colter Lawrence Paulson
Squire Patton Boggs
201 E. Fourth Street, Suite 1900
Cincinnati, OH 45202

Mr. Joseph Jeffrey Landen
Mr. Kevin Luke Murphy
Murphy Landen Jones
2400 Chamber Center Drive, Suite 200
Ft. Mitchell, KY 41017

Re:  Case No. 19-3350, *Joseph v. Joseph, et al.*
Originating Case No. : 1:16-cv-00465

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                    Sincerely yours,

                    s/Laurie A Weitendorf
                    Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0334n.06

No. 19-3350

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 18, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARIE JOSEPH, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) | |
| RONALD JOSEPH, GREGORY G. JOSEPH, GEORGE R. JOSEPH, RICHARD S. JOSEPH, and RONALD JOSEPH, JR., | ) | OPINION |
| Defendants-Appellees. | ) | |

Before: BOGGS, WHITE, and READLER, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Marie Joseph appeals the grant of Defendants-Appellees' motions for summary judgment and motion *in limine* and the denial of her partial motion for summary judgment and motion for new trial. She also challenges the district court's jury instructions and interrogatories. We **AFFIRM**.

**I.**

**A.**

Columbia Oldsmobile Company ("Columbia") is a closely held Ohio corporation that was founded in 1938 by George J. Joseph, the father of Plaintiff Marie Joseph ("Marie") and Defendant Ronald Joseph ("Ron"), as Columbia Motor Sales Co. It has two subsidiaries: Columbia Development Corporation and Columbia Automotive, Inc. The former sells real estate, including numerous parcels of real estate in downtown Cincinnati and Montgomery, Ohio, and the latter sells new Acuras, Hyundais, and used cars. According to Marie, an "extensive dealership group"

No. 19-3350, *Joseph v. Joseph*

known as the Joseph Auto Group grew out of Columbia Oldsmobile Company to include not just

Columbia Development and Columbia Automotive, but other dealerships and businesses as well.

Appellant Br. at 2–3.

Both Marie and Ron are Columbia shareholders, as are Ron and Marie's five other siblings.

Ron owned 68.31% of Columbia's voting shares and is Columbia's largest shareholder, and Marie

is a minority shareholder, owning 4.05% of Columbia's voting shares.  Ron's sons, Gregory G.

Joseph, George R. Joseph, Richard S. Joseph, and Ronald Joseph, Jr. ("Ron's Sons") each own

less than one percent of Columbia's voting shares and are minority shareholders of Columbia.[1]

Since George J. Joseph's death, Ron has served as Columbia's Chief Executive Officer.  Marie

was a director of Columbia for more than thirty-eight years, from at least 1976 through 2013.

Ron's Sons were appointed as directors of Columbia from December 17, 2012 until May 10, 2013.

Marie alleges that Najla Joseph, Ron and Marie's mother, intended to disinherit Ron from

her interest in Columbia[2] and instead divide that interest equally among her six other children,

including Marie, and that, knowing that he had been disinherited, Ron created a plan to usurp

corporate opportunities from Columbia and create a "financial crisis" for Najla's future estate in

order to acquire her shares in Columbia.  R.1, PID 3.  As part of this plan, Ron allegedly

appropriated all opportunities for Columbia to acquire new dealerships and real estate and other

income-producing property without appropriate disclosure to Marie and without providing her an

opportunity to participate in the acquisitions.  Marie also alleges that Ron threatened her in an

effort to dissuade her from seeking information about Columbia and rebuffed her requests for more

information about the company, although he assured her that "the family business assets were still

---

[1] The stock ownership figures are from January 1, 2018.  Ron's share of voting stock was later reduced to 56.347%.

[2] Najla inherited 855 shares of Columbia stock from George Joseph upon his death, including 273 Class A voting shares and 582 Class B non-voting shares.

-2-

No. 19-3350, *Joseph v. Joseph*

in Columbia, that Columbia was now simply using the name Joseph Auto Group and that Ron was taking care of everything."  R.27, PID 248.  Marie also contends that Ron otherwise oppressed her as a minority shareholder and that he refused to permit her access to Columbia's books and records of account as required by Ohio law.

According to Marie, Ron's Sons worked in concert with Ron to oppress her as a minority shareholder and manipulate Columbia's affairs to acquire money or other things of value that belonged to her or were not otherwise available to her.  For example, she claims that Ron and Ron's Sons entered into various financial relationships and transactions between Columbia and its subsidiaries on the one hand, and companies that Ron and Ron's Sons owned or controlled on the other.  Marie alleges numerous other breaches of fiduciary duty on the part of Ron and Ron's Sons.

In 2008, Marie filed an action to be appointed the legal guardian of her mother and her brother Michael (the "Guardianship Litigation").  The Guardianship Litigation was opposed by Ron.  As part of the Guardianship Litigation, Ron sat for a deposition on May 13, 2009, which Marie attended.  During this deposition, Ron made several statements concerning the ownership of certain dealerships, including some at issue in this litigation.  Those statements suggested that the dealerships were owned by him and not Columbia.

### B.

Marie initiated this action by filing a three-count complaint on April 12, 2016, against Ron, asserting claims of breach of fiduciary duties, access to corporate records, and for an accounting.  Marie then filed an amended complaint on January 10, 2017, asserting an additional claim for fraud and concealment against Ron, a claim for fraudulent breach of fiduciary duties against Ron and Ron's Sons, and a faithless-servant claim against Ron's Sons.  In support of these additional claims, Marie alleged that she discovered in September 2016 that Ron owned various dealerships

No. 19-3350, *Joseph v. Joseph*

and parcels of real estate that were not part of Columbia.  She asserted that Ron concealed his separate ownership of these entities from her, and that the discovery rule for fraud-based claims should apply and toll the statute of limitations for her claims.  Marie also alleged that Ron's Sons breached their fiduciary duties to her by receiving money and other things of value that were diverted from Columbia to them by Ron, and by benefiting from their previously undisclosed ownership or control of many of the dealerships in the Joseph Auto Group.  Marie asserted that as a minority shareholder of Columbia, she was entitled to benefit from Columbia's direct or indirect ownership of those dealerships.

Ron filed a motion for partial summary judgment based on the four-year statute of limitations contained in Ohio Rev. Code § 2305.09.  He sought dismissal of the fraud-based claims in their entirety on the ground that, even if the discovery rule for fraud-based claims applied, the statute of limitations began to run in 2009 and expired in 2013, three years before Marie filed her lawsuit.  In this regard, he argued that Marie knew or should have known that his statements regarding Columbia's ownership of other dealerships were potentially fraudulent as early as 2009, when he testified at his deposition, which Marie attended, that he separately owned the dealerships in question.  Ron also sought to limit Marie's breach-of-fiduciary-duties claim and demand for accounting to events that transpired after April 12, 2012, or the four-year period before Marie filed her original complaint.

The day after Ron filed his motion for partial summary judgment, Ron's Sons filed a motion for summary judgment seeking the dismissal of all claims asserted against them.  Like Ron, they argued that the fraud-based claims were untimely because Marie was put on notice in 2009 of the possibility that Ron's statements concerning Columbia's ownership of the other dealerships were potentially false.  They also argued that Marie's breach-of-fiduciary-duties claim failed as a

No. 19-3350, *Joseph v. Joseph*

matter of law because Marie failed to allege any actions by Ron's Sons that caused her injury and because they did not owe her any fiduciary duties as minority shareholders.

The district court granted Ron's motion for summary judgment on Marie's claims for breach of fiduciary duties and accounting to the extent they were premised on acts or omissions that occurred before April 12, 2012; it also granted Ron's motion as to Marie's fraud-based claims. In dismissing Marie's claims for fraud and fraudulent breach of fiduciary duties in their entirety, the district court held that Marie was on notice of Ron's allegedly fraudulent statements regarding Columbia's ownership of other dealerships by 2009, when she attended his deposition in the Guardianship Litigation. The district court also rejected Marie's argument that her fraud-based claims should not be dismissed to the extent they were predicated on events that occurred within the four-year statutory limitations period or after Ron's 2009 deposition testimony, finding that the only instances of fraud alleged in the amended complaint related to Ron's statements regarding Columbia, which claim was time-barred.

The district court granted in part and denied in part Ron's Sons' motion for summary judgment. It granted the motion as to Marie's claim for breach of fiduciary duties to the extent the claim was premised on acts or omissions that occurred before January 10, 2013—four years before Marie filed her amended complaint—and to the extent the usurpation-of-corporate-assets claim was premised on acts taken before or after Ron's Sons served as directors and officers of Columbia. The district court granted summary judgment to Ron's Sons on Marie's faithless-servant claim but denied their motion on the issue whether Ron's Sons owed fiduciary duties to Marie. The district court held that the faithless-servant claim failed as a matter of law because Ron's Sons were not servants of Marie, a minority shareholder of Columbia; it reasoned that "if [they] were servants of anyone, it was Columbia." R.100, PID 6231. However, the district court rejected Ron's Sons'

-5-

No. 19-3350, *Joseph v. Joseph*

argument that they did not owe fiduciary duties to Marie.  It observed that, although under Ohio law, minority shareholders of a closely held corporation may owe heightened fiduciary duties if they control a corporation, this does not mean "that minority shareholders who do not control the corporation," like Ron's Sons, "owe no fiduciary duties at all.  To the contrary, . . . [they] still owe each other ordinary fiduciary duties."  *Id.*, PID 6228 (internal citation omitted).

 After this initial round of summary-judgment briefing, Ron and Ron's Sons separately moved for summary judgment on all remaining claims asserted against them.  Marie also moved for partial summary judgment on: (1) her claim that the other dealerships in the Joseph Auto Group were operated as parts of Columbia, and thus she was entitled to share in the benefit of the operation of those dealerships; (2) her claim that the related-party transactions constituted breaches of fiduciary duty; and (3) her corporate-records claim.  In her motion, Marie argued in part that she was "entitled to summary judgment that Joseph Auto Group does, in fact, exist."  R.120, PID 7898.  In this regard, Marie asserted that, despite Ron and Ron's Sons' protestations to the contrary, the Joseph Auto Group was not just a marketing name referring to various dealerships independently owned by Ron and Ron's Sons, but rather an entity that existed, was "a going concern," and was part of Columbia.  *Id.*, PID 7895–98.  She further argued that Ron and Ron's Sons were attempting to "benefit from their claims to separate ownership of the other dealerships in the Joseph Auto Group," *Id.*, PID 7911, but when all the "indicia of ownership" were considered, the dealerships were properly considered part of Columbia, *id.*, PID 7901–11.  As such, Marie argued, she was entitled to benefit from the ownership and operation of those dealerships, including the profit derived from them.

The district court granted Ron's Sons' motion for summary judgment, finding that Marie's claims against them were derivative of the corporation and that her claims against Ron's Sons did

No. 19-3350, *Joseph v. Joseph*

not come within the carveout for direct claims against controlling shareholders.  The district court granted Ron's motion for summary judgment as to Marie's claim for breach of fiduciary duties to the extent it was premised on the usurpation of a particular dealership, finding that it was not a corporate opportunity because it had been unprofitable ever since it was acquired and thus Marie could not show she had been harmed by her exclusion from "this unprofitable venture."  R.161, PID 11375–76.  The district court denied Ron's motion with respect to Marie's claim of usurpation of certain parking lots and the diversion of funds from Columbia through mechanisms such as "fleet sales," the "sweep account," and loans, investment, and management fees.  It also denied Ron's motion as to Marie's corporate-records and accounting claims.  Finally, the district court denied Marie's motion for partial summary judgment, finding that there were genuine issues of material fact related to her breach-of-fiduciary-duty and corporate-records claims.  As to her assertion that the Joseph Auto Group was a separate legal entity being operated as part of Columbia, the district court found that there were genuine issues of fact regarding "whether the Joseph Auto Group is an independent legal entity or simply a trade name," and that the court could not "simply declare that a certain type of business entity 'exists.'"  R.162, PID 11391–92.

Ron and Ron's Sons then filed a joint omnibus motion *in limine*, seeking to exclude, among other things, "any argument or claim by Plaintiff referring to the Joseph Auto Group as a legal entity." R.152, PID 11044.  The district court granted the motion with respect to the Joseph Auto Group argument, explaining that it had no authority to declare that "a business organization 'exists' that has not been formed under applicable state law."  R.186, PID 11926.  It also found that Marie's claim of entitlement to the profits of the dealerships in the Joseph Auto Group was an "apparent attempt to bring back into this case corporate opportunities" that were outside the statute of limitations.  *Id.*

-7-

No. 19-3350, *Joseph v. Joseph*

Prior to trial, the district court granted Ron's motion requesting that the court resolve Marie's equitable claims for access to corporate records and accounting separately after the trial on her breach-of-fiduciary-duties claim. At the trial on Marie's breach-of-fiduciary-duties claim, the sole issue tried to the jury was Marie's "claim for breach of fiduciary duties under Ohio law," R.188, PID 1932, specifically, Marie's claim that Ron breached his fiduciary duties by: (1) "[e]ngaging in unauthorized and undisclosed related party transactions involving Columbia Oldsmobile Co . . . and its subsidiaries, on the one hand, and Defendant, his sons, or entities they purport to own and/or control on the other"; and (2) usurping corporate opportunities from Columbia in the form of various parcels of real estate. *Id.*, PID 11934–35.

The jury returned a verdict in favor of Ron and against Marie on all claims. The district court then dismissed the demand for an accounting with prejudice on the ground that it was merely a potential remedy for Marie's breach-of-fiduciary-duties claim, rather than an independent cause of action. It also denied Marie's motions for judgment as a matter of law. Finally, the district court ordered Ron and Marie to meet and confer to file a proposal for resolving the corporate-records claim. The corporate-records claim is the subject of a related appeal.[3]

Marie subsequently filed a renewed motion for judgment as a matter of law and for a new trial, which was denied.

This appeal followed.

## II.

We review a district court's summary judgment rulings de novo. *Burnette Foods, Inc. v. U.S. Dep't of Agric.*, 920 F.3d 461, 466 (6th Cir. 2019). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[3] *Joseph v. Joseph*, No. 19-4258.

No. 19-3350, *Joseph v. Joseph*

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Queen v. City of Bowling Green*, 956 F.3d 893, 898 (6th Cir. 2020) (quoting *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012)). "Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* (quoting *Mosholder*, 679 F.3d at 448–49). Our task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Doe v. Univ. of Ky.*, 971 F.3d 553, 557 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–52).

## III.

### A.

We begin with the district court's order granting Ron's motion for partial summary judgment. The district court held that Marie's claims for breach of fiduciary duties and accounting were governed by the four-year statute of limitations set forth in Ohio Rev. Code § 2305.09(D) and thus were time-barred to the extent they were premised on acts or omissions before April 12, 2012, or four years before the original complaint was filed. The district court also held that Marie's claims for fraud and concealment and fraudulent breach of fiduciary duties were time-barred in their entirety because Ron's statements in his May 13, 2009, deposition testimony "triggered [Marie's] duty to inquire further" as to whether Ron misrepresented that Columbia "owned 'the family business assets.'" R.99, PID 6208–09. Because Marie did not file her complaint until April

No. 19-3350, *Joseph v. Joseph*

2016, more than four years after the discovery rule triggered the statute of limitations based on Ron's deposition, the district court determined that Marie's fraud-based claims were untimely.

The district court also rejected Marie's argument that she should be permitted to pursue her fraud-based claims relating to conduct that occurred during the four-year period preceding the filing of her complaint, or, in the alternative, for conduct after Ron's May 13, 2009, deposition testimony, on the ground that any disclosure Ron made during his deposition would be "inherently backward-looking" and would not relate to conduct after that date.  R.49, PID 6385.  The district court rejected this argument because "the only <u>fraud</u> alleged in the Amended Complaint is that Ron, Sr. intentionally misrepresented Columbia's assets."  R.99, PID 6210.  Accordingly, the district court held that Marie's fraud-based claims were still barred in their entirety.  For the same reason, it rejected Marie's argument that the deposition testimony did not provide her with adequate notice of *other* types of wrongdoing on the part of Ron unrelated to his statements regarding Columbia's ownership of other dealerships.

### 1.

Marie first argues that the district court wrongly concluded that her amended complaint failed to allege that Ron engaged in fraud beyond his misrepresentations regarding Columbia's ownership of other family business assets, specifically his fraudulent concealment of the related-party transactions.  In rejecting this argument, the district court noted that although the amended complaint uses the word "fraud" twenty-eight separate times, the only conduct on Ron's part that Marie alleged was intentionally misleading and on which she relied to her detriment were his statements regarding Columbia's ownership of the family business assets, which claim was time-barred.

-10-

No. 19-3350, *Joseph v. Joseph*

We agree.  To state a claim for fraud under Ohio law, a plaintiff must allege

(a) a representation, or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083–84 (Ohio 1991).  "Similar elements are necessary for fraudulent concealment, which also requires the actual concealment of a material fact and knowledge of the fact concealed." *Cianfaglione v. Lake Nat'l Bank*, 134 N.E.3d 661, 666 (Ohio Ct. App. 2019).  Additionally, Rule 9(b) requires parties bringing a claim for fraud or fraudulent concealment to specify the "who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)) (internal quotation marks omitted).  Such allegations must be made with particularity.  *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021).

Marie argues that the amended complaint sufficiently alleges that Ron engaged in fraud beyond his representations regarding Columbia's ownership of other business entities and assets, specifically, his concealment of related-party, self-dealing transactions by Columbia.  But the allegations to which she points fall short of Rule 9(b)'s particularity requirement.  In paragraph 114 of the amended complaint, for example, Marie merely states that Ron engaged in a scheme to divert Columbia's income to himself.  In paragraphs 115 through 119, Marie discusses the "three key elements" fraudulent schemes exhibit in general terms, states that Ron's scheme "manifested all three elements, thereby avoiding detection," and briefly describes the family dynamics and personal traits that purportedly allowed Ron to maintain the secrecy of his scheme.  R.27, PID 217–18.  These paragraphs speak generally to the *manner* in which Ron allegedly fraudulently

No. 19-3350, *Joseph v. Joseph*

concealed his scheme, arguably satisfying the "how" requirement for pleading fraud-based claims—though not as to any particular transaction.

The other paragraphs to which Marie points do not help her. Although she claims in paragraph 141 of the amended complaint that Ron and Ron's Sons entered into material transactions without disclosure or consent and actively concealed those self-dealing transactions, this allegation is entirely conclusory. She provides no details concerning the "when" or "where" of these transactions or their concealment as required by Rule 9(b). Paragraphs 143, 175, and 270 contain general allegations of harm Marie claims she suffered, and do not provide any additional details regarding any fraudulent concealment by Ron.

The closest the amended complaint comes to making a specific allegation of concealment by Ron comes in paragraphs 280 through 283. There, Marie alleges that Ron rebuffed her attempts to obtain information about Columbia and its business affairs and failed to fully disclose "the movement of business activities, assets and other things of value" to entities owned by Ron and his sons. R.27, PID 248. While answering the "who" and "what" of her fraudulent concealment claim, Marie still does not address the "where" and "when." As such, the district court did not err in concluding that Marie's complaint did not adequately allege fraud regarding Ron's concealment of the related-party, self-dealing transactions. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (Rule 9(b)'s requirements not met where plaintiff's complaint "discussed the . . . wrongful practices only at a high level of generality.").

Marie argues that the district court's determination that she did not plead her fraud claim relating to the related-party transactions with particularity contradicts its earlier order granting her motion for leave to file an amended complaint. In the prior order, the district court stated:

-12-

No. 19-3350, *Joseph v. Joseph*

> The "circumstances constituting fraud" are set forth at length in the proposed amended complaint. (Doc. 20 at ¶¶ 112–127, 272–287). Plaintiff groups various types of similar transactions into common allegations because the total number of entities and transactions involved makes it difficult, if not impossible, to reference each of them individually. The Court finds that the description of the unauthorized and undisclosed self-dealing transactions by which Ronald Joseph and his sons have allegedly enriched themselves at Plaintiff's expense are described with sufficient particularity to meet Rule 9(b).

R.25, PID 206.

Ron argues that the district court properly dismissed Marie's fraud-based claims because the only Rule 56(b) evidence that Marie produced related to Ron's statements regarding Columbia's ownership of various dealerships, and, in any case, her allegations do not meet Rule 9(b)'s particularity requirements. Marie argues in reply that the district court was not assessing the evidence in its order granting Ron's motion for partial summary judgment on Marie's fraud-based claims—rather, it was assessing only the sufficiency of her allegations.

Marie is correct that the district court's order granting Ron's motion for summary judgment contradicts its earlier ruling granting Marie leave to file an amended complaint. However, Marie cites no authority for the proposition that the district court was bound by that earlier determination in ruling on Ron's summary judgment motion, and Marie has not otherwise shown that the court erred. *See In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("[D]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.") (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). We therefore decline to reverse the district court on this ground.

## 2.

Marie next argues that the district court erred in concluding that Ron's 2009 deposition testimony was sufficient to put her on notice of the potentially fraudulent nature of Ron's previous statements about Columbia. She also argues that the district court should not have granted

-13-

No. 19-3350, *Joseph v. Joseph*

summary judgment to Ron because the deposition testimony did not, in any case, touch on the subject of the related-party transactions.

Section 2305.9 of the Ohio Revised Code provides that the four-year statute of limitations for fraud claims begins to run when "the fraud is discovered." Ohio Rev. Code §2305.09. The Ohio Supreme Court has interpreted § 2305.9 to require "only facts sufficient to alert a reasonable person of the *possibility* of fraud." *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1250 (Ohio 2009) (quoting *Palm Beach Co. v. Dun & Bradstreet, Inc.* 665 N.E.2d 718, 720 (Ohio Ct. App. 1995)). That is, "[c]onstructive knowledge of facts, rather than *actual* knowledge of their legal significance," is sufficient to trigger the discovery rule. *Id.* (quoting *Flowers v. Walker*, 589 N.E.2d 1284, 1287 (Ohio 1992)).

The district court relied on two excerpts from Ron's deposition in the Guardianship Litigation in finding that Marie, who was present at that deposition, was placed on notice of the possibility that Ron's prior statements regarding Columbia were fraudulent. The first excerpt, with Ron answering, reads:

> Q:    Okay. Could you describe the automobile business as it exists today? I mean—
> A:    I don't think anyone can.
> Q.    –in your involvement. What company do you work for?
> A.    I believe I work for all the companies.
> Q.    Well, what are they?
> A.    Starting with Columbia, Camargo, Joseph Chevrolet, Toyota Cincinnati, Hummer Cincinnati, Smart Car Cincinnati, Porsche Cincinnati, Audi Connection, Joseph Olds—Joseph Cadillac, Florence, Kentucky, Airport Toyota. I could have missed something, but that's basically true.
> Q.    Now, you've run through a number of companies there. Are they independent entities?
> A.    Yes.
> Q.    Columbia, is that an automobile company?
> A.    Yes.
> Q.    What automobiles do you sell from that company?
> A.    Primarily Acura and Hyundai.

-14-

No. 19-3350, *Joseph v. Joseph*

R.46-3, PID 1099.  The other portion of Ron's deposition relied on by the district court reads as follows:

> Q.  What are these various entities? Are they separate entities?
> A.  Yes.
> Q.  They are separate.  And they are owned by whom?
> A.  Columbia Acura, Columbia Hyundai, I'll repeat this again, are owned by Columbia, in which mom has a substantial interest and all the siblings have a certain amount of stock.  All right.
> Q.  That's Hyundai?
> A.  And Acura.
> Q.  Yeah.  Go ahead.
> A.  All right.  All other companies are owned by me, primarily.
> Q.  How come you didn't let the siblings have a little piece in this?
> A.  Because of what's going on today.

*Id.*, PID 1154.

When construed in the light most favorable to Marie, Ron's statements in the first excerpt alone do not necessarily suggest that Columbia does *not* own the other dealerships.  However, Ron's statements in the second excerpt were sufficient to put Marie on notice of the possibility that his previous statements regarding Columbia were potentially fraudulent.

Marie argues that Ron's labeling of certain dealerships as "independent entities" does not amount to an assertion regarding their ownership, and that independent entities may still share a common ownership.  While this may be true, any doubt as to Columbia's ownership of other dealerships is dispelled by the second excerpted portion of the deposition testimony, in which Ron states that Columbia owns Columbia Acura and Columbia Hyundai, and that "*all other companies are owned by me, primarily.*"  *Id.* (emphasis added).  Marie argues that this reference to "all other companies" refers to the companies listed in the notice to take deposition: Joseph Enterprises; Columbia Development Corporation; Columbia Development, Inc.; Columbia Oldsmobile Company; Columbia Motor Sales Company; Columbia Oldsmobile, Joseph Realty, LLC; Joseph

-15-

No. 19-3350, *Joseph v. Joseph*

Realty, LLC (4); Joseph Realty, LLC (6); Camargo Cadillac; Columbia Chevrolet, Inc.; Columbia Acura, Inc.; Columbia Hyundai, Inc.; and Columbia Square Properties LLC.  Of these companies, two—Camargo Cadillac and Columbia Chevrolet—had previously been identified by Marie as properly being considered part of Columbia.[4]  And, as the district court correctly noted, even if Marie's position were correct, Ron still indicated through his testimony that Camargo Cadillac and Columbia Chevrolet were owned by him and not Columbia, and thus that his earlier statements regarding Columbia's ownership of other dealerships were potentially untrue.

Marie's only response to the district court's determination on this point is that Camargo Cadillac and Columbia Chevrolet are only two of the several other dealerships that she placed at issue in her pleadings.  She also notes that Ron's statements do not reveal that he was operating the dealerships primarily for his or his sons' benefit, and that the district court ignored other statements by Ron indicating that the "family business assets" were part of Columbia.  However, under Ohio law, it is "[c]onstructive knowledge of facts" that triggers the statute of limitations for fraud-based claims under the discovery rule.  *See Cundall*, 909 N.E.2d at 1250 (emphasis omitted).  That standard requires only "facts sufficient to alert a reasonable person of the *possibility* of fraud."  *Id.*  Ron's assertion of ownership over two of the dealerships Marie claims should be considered part of Columbia was sufficient to put her on notice that Ron's previous statements were potentially fraudulent.

For these reasons, the district court did not err in concluding that Marie's claims for fraud and concealment and for fraudulent breach of fiduciary duties are time-barred.

---

[4] Marie alleges that as of 1988, Camargo Cadillac, as well as several other dealerships, "were all owned and operated, directly or indirectly, by Columbia Development Corporation" and thus she has a "direct or indirect interest as a minority shareholder of the parent company Columbia."  R.27, PID 229–30.  Similarly, Marie alleges that Columbia Chevrolet and several other dealerships are "still part of Columbia's Joseph Auto Group in which Marie has a direct or indirect interest as a minority shareholder of the parent company Columbia."  *Id.*, PID 232.

-16-

No. 19-3350, *Joseph v. Joseph*

**B.**

Marie also appeals the district court's first grant of summary judgment to Ron's Sons on her claim for fraudulent breach of fiduciary duties. Her claim is premised on allegations that Ron's Sons received money and other things of value belonging to Columbia from Ron, that they participated in the related-party transactions, and that they benefited from their ownership of various dealerships in the Joseph Auto Group. In moving for summary judgment, Ron's Sons argued that Marie's claim must be limited to events that occurred on or after January 10, 2013, or four years before she filed the amended complaint. They also argued that the discovery rule for fraud-based claims did not apply, but even if it did, Marie's claim accrued in 2009 when she attended Ron's 2009 deposition.

Marie argues that Ron's 2009 deposition testimony did not adequately place her on notice of her claims against Ron's Sons for the same reasons she did not have adequate notice of her claims against Ron. She also argues that the district court erred in concluding that she did not assert a "fraudulent" breach-of-fiduciary-duties claim against Ron's Sons such that the discovery rule for fraud-based claims would apply. We disagree.

We have already concluded that Ron's deposition was sufficient to put Marie on notice of that claim, so we reject her argument to the contrary for the reasons set forth above.

In granting Ron's Sons' motion for summary judgment, the district court held that Marie's claim for breach of fiduciary duties was time-barred to the extent it was premised on acts or omissions that occurred prior to January 10, 2013—four years before Marie filed the amended complaint on January 10, 2017. Under Ohio Rev. Code § 2305.09(D), claims for breaches of fiduciary duty are subject to a four-year statute of limitations and accrue when the act or omission constituting the breach occurs. Ohio Rev. Code § 2305.09(D). The district court also held that,

-17-

No. 19-3350, *Joseph v. Joseph*

even if the discovery rule for fraud-based claims applied, Marie's claim for breach of fiduciary duties accrued in 2009 when Marie attended Ron's deposition in the Guardianship Litigation. The district court concluded that the discovery rule would "not change the conclusion that her claim for breach of fiduciary duties is time-barred to the extent it is premised on acts or omissions that occurred prior to January 13, 2010." R.100, PID 6227.[5]

We agree that Marie failed to adequately allege fraud on the part of Ron's Sons and that her claim is barred to the extent it rests on acts or omissions prior to January 10, 2013. On appeal, Marie argues that paragraphs 112, 134, 135–143, and 145 of the amended complaint sufficiently allege fraudulent conduct by Ron's Sons. Although these paragraphs do name Ron's Sons, none contains any representations made by them—let alone the "who, what, when, where, and how of the alleged fraud." *Sanderson*, 447 F.3d at 877.

Paragraph 141 does allege that Ron's Sons engaged in acts of concealment—for example, by concealing the related-party transactions and entering into material transactions without disclosure, but the allegation is not made with the particularity required to allege fraud under Rule 9(b). Marie does not, for example, specify where or when Ron's Sons engaged in these acts of concealment. Her claim therefore does not adequately plead fraud. *See Smith*, 988 F.3d at 884 (stating that "parties bringing a fraudulent concealment claim 'must specify the who, what, when, where, and how of the alleged omission.'") (quoting *Republic Bank & Tr. Co.*, 683 F.3d at 256).

Marie argues that the district court's finding in this regard contradicted its prior order granting her leave to amend. In its order granting Marie's motion for leave to amend, the district court stated that Marie's complaint described the "unauthorized and undisclosed self-dealing

---

[5] This appears to have been a typo in the district court's order. It concluded its discussion by holding that Marie's claim was barred to the extent it was premised on acts or omissions "prior to January 10, 2013." R.100, PID 6227.

No. 19-3350, *Joseph v. Joseph*

transactions" with "sufficient particularity to meet Rule 9(b)," citing to paragraphs 112 through 127 and 272 through 287 of the amended complaint.  R.25, PID 206.  But paragraphs 112 through 127 of the amended complaint, appearing under the heading "Fraud and Concealment," contain factual allegations relating to Ron only.  Similarly, paragraphs 272 through 287 of the amended complaint are listed under Marie's fourth cause of action for "Fraud and Concealment," which is also asserted against Ron only.  Thus, Marie's argument that the district court's order granting summary judgment to Ron's Sons contradicted its order granting her leave to amend the complaint is without merit.

### C.

Marie argues that the district court erred in granting Ron's Sons' second motion for summary judgment and dismissing all remaining claims against them.  She asserts error in the district court's conclusion that she lacked standing to pursue a direct claim against Ron's Sons, arguing that the district court failed to properly apply *Crosby v. Beam*, 548 N.E.2d 217 (Ohio 1989), which allows for direct suits by minority shareholders against majority or controlling shareholders.  She also contends that the district court erred in holding that her injuries were not separate and distinct from those of the other minority shareholders, and that her claims were therefore derivative in nature.  We find these arguments unavailing.

### 1.

"Where the defendant's wrongdoing has caused direct damage to the corporate worth, the cause of action accrues to the corporation, not to the shareholders . . . ."  *Adair v. Wozniak*, 492 N.E.2d 426, 429 (Ohio 1986).  In other words, when "the basis of the action is a wrong to the corporation," the harm is derivative in nature.  *See Boedeker v. Rogers*, 746 N.E.2d 625, 632 (Ohio Ct. App. 2000) (quoting 12B W. Fletcher, Cyclopedia of the Law of Private Corporations (Perm.

No. 19-3350, *Joseph v. Joseph*

Ed. 2000), Sec. 5908); *see also Crosby*, 548 N.E.2d at 219.  If, however, "the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation," a shareholder may bring a direct action.  *Crosby*, 548 N.E.2d at 219.  "[A]ctions for breach of fiduciary duty [by directors or officers] are generally to be brought in derivative suits."  *Maas v. Maas*, 161 N.E.3d 863, 882 (Ohio Ct. App. 2020) (quoting *Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 WL 433789, at *3 (Ohio Ct. App. 2001)); *see also id.* ("Primarily, the right to maintain an action to recover for the alleged negligence, fraud, or misconduct of directors and officers, resulting in the depletion of corporation property, belongs to the corporation itself.").  However, a shareholder's right to inspect corporate books and records, demand an accounting, call a special membership meeting, and "be compensated for a wrongful exclusion from the organization implicate individual rights of the member."  *Carlson v. Rabkin*, 789 N.E.2d 1122, 1127–28 (Ohio Ct. App. 2003).  In determining whether a complaint states a direct or derivative claim, the court looks "to the nature of the alleged wrong rather than the designation used by the plaintiffs."  *Maas*, 161 N.E.3d at 881 (citing *Sayyah*, 2001 WL 433789, at *4).

Putting aside the corporate-records claim, which is not at issue here, Marie has failed to demonstrate that she suffered an injury separate and distinct from that of Columbia.  She points to transfers Columbia made to Pond Realty, an entity wholly owned by Ron's Sons, and of which Ron is the president, as evidence that she was individually harmed because she knew nothing about those transfers and was not afforded an opportunity to partake in them.  But Columbia's transfers of "millions of dollars to Pond Realty Company," Appellant Br. at 30, came from Columbia's own corporate assets, so it is difficult to see how Marie was "injured in a way that is separate and distinct from an injury to the corporation," *Crosby*, 548 N.E.2d at 219.

No. 19-3350, *Joseph v. Joseph*

Marie resists this conclusion by arguing that because Ron and Ron's Sons, who are also shareholders of Columbia, "benefitted from their conduct," and thus were not injured, not all of Columbia's shareholders were injured in a similar manner. Reply Br. at 12. The implication, it seems, is that because some other shareholders benefitted, Marie was uniquely harmed as a shareholder because she did not so benefit and thus is entitled to bring a direct action. We find this argument unpersuasive. Marie does not explain how she in particular was harmed. For instance, Teresa Zelina, Shirley Joseph, Renee Perry, and Michael Joseph, who are also Columbia shareholders, appear to have been harmed in the same way as Marie.

Here, the transfers from Columbia to Pond Realty harmed the value of Columbia, even if Marie was indirectly injured in that she was denied the opportunity to partake in the outflows of money. Marie herself appears to recognize as much in her brief, when she states that "[t]o appreciate how Ron's Sons' conduct caused individual harm to Appellant, it is important to identify who/what *was receiving Columbia's money or other things of value* via the related-party transactions at issue." Appellant Br. at 30 (emphasis added). The injuries that Marie complains of arise as a consequence of her position as a shareholder, not as a consequence of an "individual claim[] [she] might have apart from [her] status as [a] shareholder," because liability for loss of corporate assets, which Marie acknowledges is at issue here, "runs to the corporation and not its individual shareholders." *Adair*, 492 N.E.2d at 428. As such, Marie's claims against Ron's Sons are derivative rather than direct.

## 2.

Marie argues that she can nevertheless pursue her claims directly against Ron's Sons, as she did against Ron, pursuant to *Crosby*'s exception for suits by minority shareholders against majority or controlling shareholders in closely held corporations. *Crosby* does, indeed, allow for

No. 19-3350, *Joseph v. Joseph*

such direct claims.  Marie contends that Ron's Sons "controlled" Columbia through two actions "taken over a two-day period in May 2013," which she claims "consolidated nearly all power over Columbia" in Ron.  Appellant Br. at 28.  The district court rejected both arguments, finding that Ron's Sons were not majority shareholders and that Ron's Sons did not "control" Columbia.  We agree.

As the district court noted in its order granting Ron's Sons' motion for summary judgment, Ron's Sons are not majority shareholders in Columbia; they each own less than one percent of Columbia's voting shares.  Marie contends nevertheless that Ron's Sons exercised control over Columbia by providing the two-thirds written consent needed to replace the existing code of regulations (the company's by-laws) with a new code of regulations that allowed Columbia to have just one director.  She also contends that Ron's Sons exercised control over Columbia by voting their shares via proxy in favor of removing Marie and all other directors from Columbia's board and leaving Ron as the sole director.

To be sure, Ohio courts have recognized that shareholders need not own the majority of shares in order to "control" a corporation.  *See, e.g.*, *Kirila v. Kirila Contractors, Inc.*, No. 2015-T-0108, 2016 WL 4426409, at *6 (Ohio Ct. App. 2016) (stating that "the heightened fiduciary duty owed in a closely held corporation does not simply depend on the number of shares one owns.").  But the two examples cited by Marie do not evidence control on the part of Ron's Sons.

As to Marie's first argument, the fact that Ron's Sons voted the same way as Ron does not in and of itself suggest that Ron's Sons exercised control over the corporation.  Marie cites no authority suggesting that such a vote constitutes the exercise of "control" or imposes heightened fiduciary duties on non-controlling or non-majority shareholders.  Moreover, as majority shareholder, Ron already had sufficient votes to amend the code of regulations himself.  Under

-22-

No. 19-3350, *Joseph v. Joseph*

Ohio law, shareholders may adopt, amend, or repeal a corporation's code of regulations by majority vote at a shareholder meeting, or by written consent of two-thirds of the corporation's voting power without a meeting. Ohio Rev. Code § 1701.11(A)(1)(b), (c). At the time, Ron owned 56.347% of voting shares, which was more than enough for him to amend the code of regulations by himself. Ron's Sons did not become controlling shareholders simply by voting for a result that the majority shareholder could have obtained on his own.

We also conclude that Ron's Sons did not control Columbia by allowing their attorney, Joe Rouse, to vote their shares by proxy to appoint Ron as Columbia's sole director. Again, Marie has not pointed us to any authority suggesting that a vote in favor of or in the same way as a majority shareholder, even if that is dispositive, constitutes control over a corporation. Finally, we note again that Ron was a majority shareholder and therefore could have made himself the sole director without the votes of his sons.

### D.

Marie next argues that the district court erred in denying her motion for partial summary judgment on her claims that the Joseph Auto Group is a part of Columbia such that she should benefit from the operation of its dealerships, and that Ron and Ron's Sons engaged in self-dealing transactions.

### 1.

We lack jurisdiction to consider the denial of Marie's motion for partial summary judgment with respect to her claims against Ron. In *Ortiz*, the Supreme Court held that a party may not appeal the denial of a motion for summary judgment after a full trial on the merits has taken place. *Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011). It explained that under 28 U.S.C. § 1291, the jurisdiction of a court of appeals extends only to "appeals from . . . final decisions of the district

No. 19-3350, *Joseph v. Joseph*

courts," *id.* at 188 (quoting 28 U.S.C. § 1291), and that orders denying summary judgment typically do not qualify as "final decisions" that may be appealed. *Id.* Such rulings, the Court stated, have an "interlocutory character" and are "simply a step along the route to final judgment." *Id.* at 184. Once a full trial on the merits has taken place, "the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Id.*

However, *Ortiz* left open the possibility that orders denying summary judgment raising "purely legal" issues may be considered on appeal. *See id.* at 190; *see also Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012). "Cases fitting that bill," the Court stated, "typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." *Ortiz*, 562 U.S. at 190.

Here, Marie does not quarrel with the "substance and clarity of pre-existing law." *Id.* Instead, she argues that, with respect to her claim regarding the Joseph Auto Group, the district court failed to conduct a "nuanced inquiry" into the "indicia of ownership" of the various dealerships she alleges are part of that entity. Appellant Br. at 34–35. This is not a "purely legal issue." *Ortiz*, 562 U.S. at 190. Indeed, in denying Marie's motion for partial summary judgment, the court explicitly noted that "there are genuine issues of fact as to whether the Joseph Auto Group is an independent legal entity or simply a trade name." R.162, PID 11391; *see Kennedy v. City of Cincinnati*, 483 F. App'x 110, 111 (6th Cir. 2012) (applying *Ortiz* and noting that appeal was not of "purely legal character" where district court noted existence of "disputed questions of fact" in its summary judgment ruling). We need only look as far as Marie's opening brief for confirmation that Marie's true dispute is with the district court's factual findings. She points, for example, to indicia of ownership such as joint executive offices, signage, and insurance policies that the district

No. 19-3350, *Joseph v. Joseph*

court purportedly overlooked or did not take into full consideration in denying her motion for summary judgment.

The same is true for Marie's arguments regarding the related-party transactions. She contends that Ron and Ron's Sons failed to satisfy their burden of demonstrating that each individual related-party transaction was fair. Rather than producing source documents to legitimize the purpose and nature of these transactions, Marie asserts, they instead relied on generalized statements and "after-the-fact declarations" in opposing her motion. Appellant Br. at 40. By relying on these "blanket and unsupported statements" to find the existence of genuine issues of material fact, she argues, the district court erred. *Id.* Like her arguments regarding the Joseph Auto Group, Marie's arguments regarding the related-party transactions cannot be "asked and answered without reference to the facts of the case," *Kay v. United of Omaha Life Ins. Co.*, 562 F. App'x 380, 385 (6th Cir. 2014), and therefore do not "present neat abstract issues of law" that we may address on appeal, *Ortiz*, 562 U.S. at 191 (internal quotation marks omitted).

For these reasons, we lack jurisdiction to review the denial of Marie's motion for partial summary judgment with respect to her claims against Ron. [6]

## 2.

By contrast, we do have jurisdiction to consider the denial of Marie's motion relating to Ron's Sons. The rationale of *Ortiz* does not apply where there was no subsequent trial on the merits. In such circumstances, there is no "full record developed in court [that] supersedes the

---

[6] We recognize that the district court's order granting Ron and Ron's Sons' omnibus motion *in limine* precluded Marie from making "any argument or claim . . . referring to the Joseph Auto Group as a legal entity" at trial. R.152, PID 11044. Thus, the trial record does not reflect any resolution of the Joseph Auto Group theory. Nevertheless, because orders denying summary judgment are "by their terms interlocutory," *Ortiz*, 562 U.S. at 188 (quoting *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976)), and we have jurisdiction to review only "appeals from . . . final decisions of the district courts," 28 U.S.C. § 1291, we lack jurisdiction to review this aspect of the district court's order. Marie does not point us to any applicable exception, or, for that matter, make any argument that *Ortiz* does not apply. In any event, we address the motion *in limine* below in Section VI.

No. 19-3350, *Joseph v. Joseph*

record existing at the time of the summary-judgment motion." *Id.* at 184.  Here, the district court granted Ron's Sons' motion for summary judgment on the same day that it denied Marie's motion for partial summary judgment, dismissing all claims against them.

It is well-established that "when parties appeal the outcome of cross-motions for summary judgment, we have jurisdiction to review the denial of a motion for summary judgment." *GeoSynFuels, LLC v. Gorman*, 493 F. App'x 713, 718 (6th Cir. 2012); *see also In re Arctic Express Inc.*, 636 F.3d 781, 791 (6th Cir. 2011).  Here, Ron's Sons moved for summary judgment on all remaining claims against them, including Marie's claims relating to the Joseph Auto Group and the related-party transactions.  Marie filed her own motion seeking partial summary judgment in her favor on those same claims.  We therefore have jurisdiction to review the denial of her motion for partial summary judgment.

We first address Marie's motion with respect to her Joseph Auto Group theory.  In her motion, Marie asserted that she was "entitled to summary judgment that Joseph Auto Group does, in fact, exist."  R.120, PID 7898.  In denying the motion, the district court held that there were genuine issues of fact as to whether the Joseph Auto Group was an independent legal entity or just a trade name.  It also stated that Marie had not pointed to any authority allowing the court to "simply declare that a certain type of entity 'exists' in the absence of the prerequisites mandated by Ohio law."  R.162, PID 11392.  Finally, it found that other genuine issues of material fact existed, such as what type of legal entity the Joseph Auto Group is and who its officers and shareholders are.

We find no error in the district court's denial of Marie's motion as to that claim.  In finding that there were questions of material fact as to whether the Joseph Auto Group was an independent legal entity or simply a trade name, the district court cited deposition testimony from five witnesses

-26-

No. 19-3350, *Joseph v. Joseph*

to the effect that the Joseph Auto Group was merely a marketing term or an informal way of referring to various dealerships.  Although Marie argues that the district court overlooked numerous indicia of ownership such as official filings, advertisements, and joint offices, "we must view the evidence and draw all inferences in the light most favorable to . . . the nonmoving party[] to determine whether there is a genuine issue of material fact."  *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 392 (6th Cir. 2019).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law."  *Carhartt, Inc. v. Innovative Textiles, Inc.*, 998 F.3d 739, 742 (6th Cir. 2021) (quoting *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014)).  Viewing these facts in the light most favorable to Ron's Sons, the district court did not err in finding that there was a question of fact whether the Joseph Auto Group was a legal entity, and thus that it could not, at the summary judgment stage, grant her relief in the form of a declaration that the Joseph Auto Group "exists."

We likewise conclude that the district court did not err in denying Marie's motion with respect to the related-party transactions.  In moving for partial summary judgment, Marie challenged several categories of self-dealing transactions that Ron and Ron's Sons allegedly engaged in: (1) the transfer of $6,602,775 from Columbia to Pond Realty, an entity wholly owned by Ron's Sons and of which Ron is the president; (2) the transfer of $11,422,202 from Columbia to dealerships owned by Ron or Ron's Sons; (3) loans or investments from Columbia to dealerships owned by Ron or his sons; and (4) the use of Columbia's funds to pay for things of value for Ron and Ron's Sons' personal enjoyment.

No. 19-3350, *Joseph v. Joseph*

In opposing Marie's motion, Ron[7] explained why the transactions challenged by Marie were either legitimate or fair to Columbia. As to the transfer of money from Columbia to Pond Realty, Ron asserted that those payments either benefitted Columbia, were voided transactions that did not result in payment to Pond Realty, or constituted transfer payments that stayed within Columbia. Proceeding line-by-line through each of the general-ledger entries relied on by Marie, Ron explained that six transactions did not result in payment to Pond Realty, and that forty-one of the remaining forty-nine entries were payments for insurance for Columbia's employees. Ron further explained that the remaining eight transactions were payments to Pond Realty for management fees, which multiple Columbia employees testified were both fair and justified by services actually performed by Pond Realty.

With respect to the transfer of $11,422,202 from Columbia to other dealerships, Ron asserted that they were nothing more than "fleet sales" involving the large-scale purchase and sale of vehicles between dealerships that was facilitated by Columbia for a commission. In support of this assertion, Ron cited to the declaration of a Columbia employee stating that the general-ledger and cash-disbursement journal entries on which Marie relied reflected those transactions.

Ron also asserted that the loans made by Columbia to dealerships owned by him or his sons were all paid back with interest and thus beneficial to Columbia, citing the declaration of the Joseph family's bookkeeper and accountant. Finally, in addressing the use of Columbia funds to pay for things of value for Ron and Ron's Sons, Ron asserted that some of the transactions were from before the statutory limitations period, cited evidence showing that payments made by

---

[7] Ron's Sons' opposition to Marie's motion for partial summary judgment relied in part on Ron's opposition to Marie's motion by incorporating it by reference. Ron's Sons also argued that they did not proximately cause injury to Marie because they were not controlling shareholders, and that Marie lacked standing to pursue her breach-of-fiduciary-duties claim.

No. 19-3350, *Joseph v. Joseph*

Columbia for security systems were reimbursed, and testimony from a Columbia employee that she did not know who paid for Cincinnati Reds tickets.

In denying Marie's motion for partial summary judgment, the district court summarized the evidence and arguments presented by both Marie and Ron regarding the existence and propriety of the alleged related-party transactions. It concluded that "there are genuine issues of material fact as to whether the above-described transfers from Columbia to Ron and Ron's Sons, and/or entities owned by Ron and Ron's Sons, constituted breaches of fiduciary duty, specifically, as to whether these transactions were fair to Columbia." R.162, PID 11396. Marie argues that Ron and Ron's Sons failed to prove the fairness of each of the challenged transactions, relying instead on "conclusory and unsupported statements." Appellant Br. at 39. But a review of Ron's opposition reveals that he did not rely on mere conclusory assertions in opposing Marie's motion. Rather, he cited, among other evidence, deposition testimony and declarations from Columbia employees who were most familiar with the transactions at issue, as well as the general-ledger entries on which Marie herself relied, in justifying the propriety of the alleged related-party transactions. This evidence was not "so one-sided" that the district court was required to rule in favor of Marie. *See Doe*, 971 F.3d at 557.

## IV.

Marie next challenges the court's instructions to the jury. "On appeal, we review jury instructions as a whole 'to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision.'" *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 273 (6th Cir. 2009) (quoting *Williams v. Paint Valley Loc. Sch. Dist.*, 400 F.3d 360, 365 (6th Cir. 2005)). While erroneous jury instructions are typically reviewed under an abuse-of-discretion standard, the "legal accuracy" of jury instructions

No. 19-3350, *Joseph v. Joseph*

is reviewed de novo. *Hurt v. Com. Energy, Inc.*, 973 F.3d 509, 523 (6th Cir. 2020). And, we reverse a judgment based on erroneous jury instructions only if the instructions, when viewed as a whole, were confusing, misleading, and prejudicial. *Williams v. Eau Claire Pub. Schs.*, 397 F.3d 441, 445 (6th Cir. 2005).

## A.

Marie argues that the district court committed reversible error in instructing the jury that Ron did not engage in undisclosed self-dealing if he did not know about the transactions in which he allegedly had an interest (the "Knowledge Instruction").[8] She contends that the Knowledge Instruction was confusing and misleading because it contradicted a prior jury instruction issued by the court regarding her fiduciary-duties claim. She also argues that it was prejudicial because the district court issued the instruction only after she presented her case-in-chief, effectively requiring her to prove, retrospectively, an additional element of her claim not supported by Ohio law.

---

[8] The Knowledge Instruction reads as follows:

### BREACH OF FIDUCIARY DUTIES-SECOND ELEMENT (BREACH)
### (ALLEGED "SELF-DEALING" TRANSACTIONS)

Marie alleges that Ron breached fiduciary duties owed to her by engaging in unauthorized and undisclosed "self-dealing" transactions involving Columbia and its subsidiaries, on the one hand, and Ron, his sons, or entities they purport to own and/or control on the other, including transactions involving the "fleet sales" program, the U.S. Bank Money Center Account (also known as the "Sweep Account"), the management fees paid to Pond Realty Company d/b/a Joseph Management, other transfers from Columbia and its subsidiaries to Pond Realty Company, disbursements categorized as "loans" or "investments" to other dealerships, using Columbia employees to perform work for other businesses Ron owns, and the payments for things like club memberships and dues, sports tickets, and security services.

If you find that Marie has shown, by a preponderance of the evidence, that Ron engaged in "undisclosed self-dealing," then Ron is presumed to have breached his fiduciary duties in regards to that particular transaction unless, as explained in the next instruction, Ron proves by a preponderance of the evidence that the transaction was fair to Columbia.

Ron engaged in "undisclosed self-dealing" if (1) Ron engaged in a transaction in which Ron had a material pecuniary interest and that interest reasonably would be expected to affect Ron's judgment in a manner adverse to Columbia, and (2) Ron failed to disclose his interest in the transaction to Columbia.

**Ron did not engage in "undisclosed self-dealing" if he did not know about the transaction or transactions in which he is alleged to have an interest, as Ron did not have a duty to disclose transactions of which he was unaware.**

R.208, PID 15666 (emphasis added).

-30-

No. 19-3350, *Joseph v. Joseph*

## 1.

Marie argues that the Knowledge Instruction "directly contradicted" the district court's jury instruction listing the three elements required for Marie's breach-of-fiduciary-duties claim: "(1) the existence of a duty owed by Ron arising from a fiduciary relationship between Ron and Marie; (2) a failure by Ron to observe that duty; and (3) an injury or damage to Marie resulting proximately from Ron's failure to observe a fiduciary duty owed to Marie."  R.208, PID 15662. Marie asserts that the Knowledge Instruction added a fourth "element" to her breach-of-fiduciary-duties claim.

We disagree.  The Knowledge Instruction appeared on a separate page of the jury instructions listing "what Marie must prove by a preponderance of the evidence in order to establish that the alleged self-dealing transactions, and the alleged usurpation of corporate opportunities, constitute a 'breach' of fiduciary duties."  *Id.*, PID 15664.  Rather than adding an "element" to Marie's breach-of-fiduciary-duties claim, the court was explaining that Marie could not satisfy the second element of her claim—breach—with respect to transactions of which Ron was not aware.  This is evident from the header of the page on which the Knowledge Instruction appears, which reads, "BREACH OF FIDUCIARY DUTIES—SECOND ELEMENT (BREACH) (ALLEGED "SELF-DEALING" TRANSACTIONS)."  *Id.*, PID 15666.  Moreover, the district court explained on the very first page of the instructions relating to Marie's breach-of-fiduciary-duties claim that "[i]n the next several instructions, I will *explain each of these three elements in greater detail*."  *Id.*, PID 15662 (emphasis added).  The Knowledge Instruction was part of the district court's more detailed explanation of how Marie could satisfy the breach element of her claim.

No. 19-3350, *Joseph v. Joseph*

2.

Marie also argues that the Knowledge Instruction finds no support in Ohio law. But Marie has offered no authority for the proposition that a defendant can breach a fiduciary duty by failing to disclose transactions of which the defendant had no knowledge. Marie attempts to distinguish *Saxe v. Dlusky*, No. 09AP-673, 2010 WL 4324198 (Ohio Ct. App. Nov. 2, 2010) and *Binsack v. Hipp*, No. H-97-029, 1998 WL 334223 (Ohio Ct. App. June 5, 1998), two cases relied on by Ron as the basis for the Knowledge Instruction.

In both cases, the plaintiffs argued that the defendants should have disclosed information about the value of shares of a closely held corporation before those shares were sold. *Saxe*, 2010 WL 4324198, at *2; *Binsack*, 1998 WL 334223, at *3. In both cases, the court held that a party in a fiduciary relationship must disclose material facts known to him but not the other party. *See Saxe*, 2010 WL 4324198, at *6; *Binsack*, 1998 WL 334223, at *4.

Marie is correct that *Saxe* and *Binsack* present different factual circumstances and concerns, but she still has not shown that a personal fiduciary duty can be violated without knowledge of the undisclosed transactions.

3.

Finally, Marie argues that she was prejudiced because she did not learn that the district court would require her "to prove an additional element" of her breach-of-fiduciary-duties claim until after she presented her case-in-chief. Appellant Br. at 43. However, as discussed above, the court did not require Marie to prove an additional "element;" it merely explained that knowledge of the transaction was required for Marie to establish the "breach" element of her claim. Further, any claim that Marie was surprised or lacked notice of the Knowledge Instruction is belied by the record, which establishes that Marie was on notice that Ron's knowledge of the transactions would

-32-

No. 19-3350, *Joseph v. Joseph*

be an issue at least as early as September 26, 2018—almost two weeks before the first day of trial, and almost a month before the district court issued its final jury instructions—when the parties submitted their joint proposed jury instructions and verdict forms.  In the proposed jury instructions, Ron disputed on multiple occasions Marie's proposed instruction stating that "Ron had a duty to disclose" certain transactions, citing to both *Saxe* and *Binsack*.  Moreover, Marie herself concedes that

> [s]hortly before the trial began in the underlying case, it became clear that Ron's primary defense to Appellant's breach of fiduciary duty claims was that he did not know the related-party transactions were even occurring and that others to whom he had delegated authority caused Columbia to engage in those transactions unbeknownst to him.

Appellant Br. at 41–42 (emphasis added).  Because Marie herself acknowledges that she was on notice that Ron's knowledge of the challenged transactions would be at issue in the case, her argument that she was prejudiced by the timing of the district court's decision to include the Knowledge Instruction fails.

## B.

Marie next argues that the district court erred in failing to give her proposed agency instruction.  According to Marie, this failure meant that the jury was "instructed that a majority and controlling shareholder of an Ohio corporation can avoid liability for conduct occurring under his watch so long as he delegates to others the authority to cause the corporation to engage in that conduct and subsequently turns a blind eye."  Appellant Br. at 48.

We review a district court's refusal to issue a proposed jury instruction for abuse of discretion.  *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000).  An abuse of discretion occurs where we have "a definite and firm conviction that the trial court committed a clear error of judgment."  *Id.* (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

No. 19-3350, *Joseph v. Joseph*

"[A] district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case." *Eau Claire Pub. Schs.*, 397 F.3d at 445.

Marie argues that the district court should have issued the following agency instruction: "A principal is generally charged with the knowledge of its agents. A principal or master who delegates a course of action to his agent or servant is liable for the conduct of that agent while acting within the scope of his authority or employment." R.225-5, PID 17125. She contends that the district court's failure to issue this instruction was prejudicial because, "as to at least two categories of the related-party transactions, the jury's verdict in Ron's favor explicitly turned on whether Ron caused Columbia to engage in those transactions." Appellant Br. at 49. Marie points to the pages of the jury interrogatories in which the jury answered that Marie had not proven that Ron caused Columbia to disburse money in the form of "loans" or "investments" to Camargo Cadillac, Gold Circle Mall, and Joseph Development, and that Ron had not caused Columbia to pay management fees to Pond Realty. But by asking the jury whether Marie proved that Ron "caused" Columbia to engage in the related-party transactions at issue, the district court effectively put the agency question to the jury. Unlike the jury interrogatories relating to the usurpation of corporate opportunities, the interrogatories relating to the related-party transactions did not ask whether Ron "knew" of the transactions or otherwise directly engaged in or facilitated the related-party transactions. By using this causation terminology rather than simply asking whether Ron had knowledge, the interrogatories accounted for the possibility that Ron purposefully sought to insulate himself from liability by delegating tasks to his employees. And Marie's counsel effectively advanced this theory during closing arguments, asserting:

-34-

No. 19-3350, *Joseph v. Joseph*

> Merely saying that "I didn't know, ergo I cannot be responsible," can you imagine, is that what this is going to be reduced to? All of this can take place and he can escape liability by simply stating: I didn't know.

> He knew, he knew. And Michael Candelaresi, Ned VanEmon and Lou Rouse gave you the testimony there that he knew.

> You heard testimony that he delegates responsibility to various people at Columbia and he entrusts them with that responsibility, but now he's trying to hide behind the idea that, although he's unquestionably in control, he doesn't know what's going on.

R.220, PID 16675–76.

For these reasons, we find no reversible error in the district court's failure to give the agency instruction.

## C.

Marie also contends that the final jury instructions were incomplete because they did not encompass her claims that Ron breached his fiduciary duties of loyalty and utmost good faith, and his fiduciary duty to refrain from self-dealing. She argues that although the district court correctly instructed the jury that those duties exist, it confined a possible breach by Ron solely to his engaging in undisclosed self-dealing.

Marie has forfeited her objection. Marie did submit an instruction stating that Ron had a duty to "refrain from self-dealing, a duty of disclosure, a duty of loyalty, and a duty of utmost good faith." R.177, PID 11768. She also submitted an instruction stating that "[a] violation of any one of these duties is a breach of fiduciary duty." *Id.*, PID 11769. But merely proposing a different jury instruction does not preserve an objection to jury instructions for appellate review. *See Woodbridge v. Dahlberg*, 954 F.2d 1231, 1235 (6th Cir. 1992) (holding that plaintiffs failed to preserve objection to jury instructions where plaintiffs submitted proposed jury instruction but "[t]he judge's discussion of the jury instructions with counsel plainly reveal[ed] . . . that the trial judge was not made aware of the error about which [plaintiffs] now complain.").

No. 19-3350, *Joseph v. Joseph*

The record reveals that Marie's counsel did not object to the district court's failure to give her requested instruction. For example, when reviewing page 23 of the court's draft jury instructions, which explains that Marie alleges that Ron breached his fiduciary duties in two ways—engaging in self-dealing transactions and usurping corporate opportunities—Marie's counsel indicated that he had no objections. The district court also asked whether the parties had any objections to page 25 of the draft jury instructions, which explained the ways in which Marie could satisfy the "breach" element of her breach-of-fiduciary-duties claim with respect to the self-dealing transactions. Those instructions, like the final jury instructions, did not include an instruction that the jury could find that Ron breached his fiduciary duties by violating his duties of loyalty or utmost good faith, or by failing to refrain from self-dealing.

The only objections Marie's counsel raised with regard to the instructions on page 25 were the following: (1) the language "including transactions involving the 'fleet sales' program, . . ." failed to include other transfers of money from Columbia or Columbia Automotive to Pond Realty; (2) the parenthetical "(other than usual or customary director's fees and benefits)" after "material pecuniary interest" was unnecessary and could confuse the jury; and (3) the Knowledge Instruction was not appropriate and should instead be replaced by a "constructive knowledge and agency" instruction. R.223, PID 16982–83.

Marie points out in her reply brief that her counsel later informed the district court, before it charged the jury, that "there's an instruction there or some instructions there that were not what we had asked for and not necessarily what the other side had asked for either." R.228, PID 17370. The court responded that "[a]ll objections are preserved." *Id.* Even if Marie had properly objected to the district court's failure to instruct on the duties of good faith, loyalty, and to refrain from self-dealing, her generalized objection regarding "an instruction there or some instructions there," *id.*,

-36-

No. 19-3350, *Joseph v. Joseph*

did not make clear what instruction she was challenging. Rule 51(c) of the Federal Rules of Civil Procedure provides that a party making an objection must "do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c). And "[s]trict compliance with Rule 51 is required," meaning "failure to state specific grounds is fatal." *Rimer v. Rockwell Int'l Corp.*, 739 F.2d 1125, 1127 (6th Cir. 1984); *see also Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 427 (6th Cir. 1993) (stating that "objections must be sufficiently specific to enable the trial court to follow them if well taken."). For these reasons, we reject Marie's challenge to the jury instructions.

## D.

Marie next argues that the district court's jury interrogatories were incomplete, confusing, misleading, and improper "[f]or many of the same reasons the jury instructions were flawed." Appellant Br. at 51. She also contends that the jury interrogatories required her to prove additional elements of her breach-of-fiduciary-duties claim, for example by asking the jury whether Ron had a "material pecuniary interest" in the challenged transactions and whether the interest would affect his judgment. Marie also asserts that the jury interrogatories improperly asked those questions as prerequisites to the jury's consideration of conduct unrelated to Ron's alleged self-dealing.

Marie has forfeited these objections to the jury interrogatories. Both the district court's proposed jury instructions and proposed interrogatories asked whether Ron had a material pecuniary interest in the challenged transactions. But during the charging conference, when the district court walked the parties through the jury instructions, Marie did not object to the use of the term "material pecuniary interest." R.223, PID 16982. She only objected to the parenthetical language "other than usual or customary director's fees and benefits" in the same sentence. *Id.* More importantly, when the district court discussed each jury interrogatory with the parties,

No. 19-3350, *Joseph v. Joseph*

Marie's counsel made no objection to the questions in the interrogatories asking whether Marie had proved by a preponderance of the evidence that Ron had a material pecuniary interest in the various transactions. Similarly, Marie did not object, as she does on appeal, that the interrogatories "were . . . improperly structured as prerequisites to the jury's consideration of other issues." Appellant Br. at 52. Marie has thus failed to preserve this argument. *See Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 548 (6th Cir. 1995) (holding that defendants' failure "to formally object and state their position" regarding interrogatories as required by Rule 51 "results in a waiver of the objection advanced on appeal"); *see also Penn v. Glenn*, 265 F.2d 911, 912 (6th Cir. 1959) (per curiam) ("Appellants' contention that the interrogatories submitted to the jury did not correctly present the issue which the jury was called upon to decide is without merit in view of the appellants' failure to make objection thereto or to offer interrogatories of their own drafting in lieu thereof.").

## V.

Marie next argues that the district court abused its discretion in denying her motion for a new trial. Marie has waived this argument on appeal by failing to adequately present it in the single paragraph addressing the argument in her appellate brief.

Arguments that are raised "in a perfunctory manner, unaccompanied by some effort at developed argumentation," are waived. *See Grinter v. Knight*, 532 F.3d 567, 574 n.4 (6th Cir. 2008) (quoting *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006)). Here, the only explanation offered by Marie as to why the district court abused its discretion is "[f]or the reasons discussed above." Appellant Br. at 53. "This perfunctory attempt at argument waives this claim." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 681–82 (6th Cir. 2017).

No. 19-3350, *Joseph v. Joseph*

## VI.

Finally, Marie argues that the district court abused its discretion in granting Ron's motion *in limine* seeking to preclude her from making any argument or claim referring to the Joseph Auto Group as a legal entity. She argues that a motion *in limine* is not the proper vehicle for resolving genuine issues of material fact, which the district court did by first denying her motion for partial summary judgment on the basis that genuine issues of material fact existed, and then granting Ron's motion *in limine* precluding her from making any argument at trial on the same issue.

"We review a district court's ruling on a motion in limine for an abuse of discretion." *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard." *United States v. Gunter*, 551 F.3d 472, 483 (6th Cir. 2009). An abuse of discretion is found where we have a "definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *Landrum v. Anderson*, 813 F.3d 330, 334 (6th Cir. 2016)).

The purpose of a motion *in limine* is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).

Marie relies on *Louzon* in arguing that the district court abused its discretion by excluding her Joseph Auto Group theory via a motion *in limine*. In *Louzon*, which involved claims for national origin and age discrimination, the district court granted a motion *in limine* excluding evidence relating to the plaintiff's proffered comparators on the ground that there were material

No. 19-3350, *Joseph v. Joseph*

differences between the plaintiff and each comparator. 718 F.3d at 560. We reversed, concluding that the district court's determination that the plaintiff's comparator evidence was insufficient as a matter of law "requires a summary-judgment analysis," rather than an analysis of the admissibility of evidence at trial. *Id.* at 562.

In so holding, we reasoned that resolving non-evidentiary matters, including factual disputes, through motions *in limine* "not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.* at 561. Those protections include notice that the court will "undertak[e] a summary judgment analysis, an opportunity to demonstrate that genuine disputes of material fact exist, and the assurance that the court will not resolve factual disputes." *ATSCO Holding Corp. v. Air Tool Serv. Co.*, 799 F. App'x 310, 312 (6th Cir. 2019).

Marie argues that because the district court resolved a non-evidentiary issue through an order on Ron's motion *in limine*, a similar result should obtain here. We agree that, as in *Louzon*, the motion *in limine* here "does not require any rulings relating to the admissibility of evidence at trial." 718 F.3d at 562. In their motion, Ron and Ron's Sons argued that "Plaintiff's Joseph Auto Group theory is not a legally cognizable claim and is factually unsupported." R.152, PID 11044. In resolving Ron and Ron's Sons' motion *in limine*, the district court "agree[d]" that the Joseph Auto Group theory "is not legally cognizable." R.186, PID 11926. That proffered explanation appears to have been a legal ruling that should have been addressed on a motion for summary judgment.

Nevertheless, we find no reversible error. As an initial matter, apart from the procedural error of deciding a dispositive question of law on a motion *in limine*, Marie does not argue that the district court relied on an erroneous finding of fact, that it improperly applied the law, or that it

-40-

No. 19-3350, *Joseph v. Joseph*

applied an erroneous legal standard. *See Gunter*, 551 F.3d at 483. Instead, Marie's appeal appears to present a mere "procedural challenge" to the district court's ruling without any accompanying showing of prejudice. *Petty v. Metro. Gov't of Nashville & Davidson Cnty.*, 687 F.3d 710, 721 (6th Cir. 2012) (rejecting procedural challenge to orders on motions *in limine* that improperly resolved non-evidentiary matters where challenging party failed to demonstrate prejudice).

Here, Marie had the benefit of presenting evidence regarding her Joseph Auto Group theory in her motion for partial summary judgment. Ron and Ron's Sons opposed this motion, and the district court thereafter denied the motion in full. Although Ron filed his motion *in limine* before the court ruled on Marie's summary-judgment motion, the district court first denied Marie's summary-judgment motion before granting Ron's motion *in limine*. Thus, the concerns that normally caution against disposing of non-evidentiary issues through orders on motions *in limine*—absence of notice that a summary-judgment analysis will be applied, absence of an opportunity to demonstrate the existence of genuine issues of material fact, and absence of the court's assurance that it will not resolve factual disputes—were not present in this case. *See Petty*, 687 F.3d at 721 (affirming grant of motion *in limine* and observing that "[t]he record suggests that Metro understood that Petty's motion in limine might dispose of its affirmative defenses, and Metro fails to argue that it lacked an opportunity to present evidence in response.").

This case is thus distinguishable from *Louzon* and the decisions on which it relies. In most of those cases, the parties did not conduct summary-judgment briefing on the matter that was ultimately excluded by the trial court's *in limine* ruling.[9] *See, e.g.*, *Meyer Intell. Props. Ltd. v.*

---

[9] Although *Louzon* is more factually similar to this case in that the parties had previously litigated a motion for summary judgment on the same issue that was the subject of the subsequent motion *in limine*, it is likewise distinguishable. There, after the district court denied the defendant's motion for summary judgment, the case was transferred to a different judge. 718 F.3d at 560. The defendant thereafter filed a motion *in limine* seeking to exclude the evidence regarding the plaintiff's comparators. *Id.* We concluded that the defendant's motion *in limine* was "an

-41-

No. 19-3350, *Joseph v. Joseph*

*Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012) ("We agree with Bodum that the district court essentially converted Meyer's motion *in limine* into a motion for summary judgment. In doing so, the court did not allow for full development of the evidence and deprived Bodum of an opportunity to present all pertinent material to defend against the dismissal of its inequitable conduct defense."); *Bradley*, 913 F.2d at 1069 ("The district court entered summary judgment against Bradley following a hearing on motions *in limine* rather than in the context of ruling on a motion for summary judgment. In fact, defendants did not move for summary judgment."); *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (where no summary-judgment briefing had occurred, affirming denial of motion *in limine* and holding that defendant's argument that plaintiff could prove lost profits with reasonable certainty was argument that went to sufficiency of the evidence that was more properly raised in motion for summary judgment or for judgment as a matter of law).

In any event, we have rejected procedural challenges to orders on motions *in limine* that improperly resolved non-evidentiary matters when the district court's ruling was "substantively correct." *Louzon*, 718 F.3d at 563 n.3 (citing *Petty*, 687 F.3d at 721). In *Petty*, we affirmed the district court's *in limine* ruling resolving non-evidentiary matters, stating that under either the abuse-of-discretion standard applicable to motions *in limine* or the de novo standard of review applicable to summary-judgment motions, the district court's ruling was correct. *See Petty*, 687 F.3d at 721. In its order granting Ron's motion *in limine*, the district court referred to its order denying Marie's partial motion for summary judgment and reiterated that Marie could point to no authority permitting the court to simply declare that the Joseph Auto Group "exists." Although

---

attempt to relitigate whether [a comparator] was similarly situated to Louzon." *Id.* at 566. Here, by contrast, Ron was *successful* in defeating Marie's partial motion for summary judgment, so there was no loss to relitigate.

No. 19-3350, *Joseph v. Joseph*

Marie argues that she is not "seeking a declaration for the creation of a new entity," Reply Br. at 22, that is in fact what she sought in her summary-judgment briefing. *See* R.120, PID 7898 ("Marie is therefore entitled to summary judgment that Joseph Auto Group does, in fact, exist.").  The same is true of the district court's finding that Marie's Joseph Auto Group theory was an attempt to bring back into the case corporate opportunities that had been excluded as time-barred.

Because the district court's holding that it could not afford Marie the relief she seeks was correct under both the abuse-of-discretion and de novo standards, we affirm the district court's *in limine* ruling.

Accordingly, because Marie has failed to show prejudice, and because the district court's ruling was substantively correct, we reject Marie's challenge to the grant of Ron and Ron's Sons' motion *in limine*.

## VII.

For the reasons set forth above, we **AFFIRM**.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-3350

MARIE JOSEPH,

    Plaintiff - Appellant,

    v.

RONALD JOSEPH; GREGORY G. JOSEPH; GEORGE R. JOSEPH; RICHARD S. JOSEPH; RONALD JOSEPH, JR.,

    Defendants - Appellees.

> **FILED**
> Aug 18, 2022
> DEBORAH S. HUNT, Clerk

Before:  BOGGS, WHITE, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk