# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| MARIE JOSEPH, | : | Case No. 1:16-cv-465 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| RONALD JOSEPH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER REGARDING BILLS OF COSTS

This civil case is before the Court on Defendant Ronald Joseph's bill of costs

(Doc. 265), and the parties' responsive memoranda (Docs. 236, 267, 269); and

Defendants George R. Joseph, Gregory G. Joseph, Richard S. Joseph, and Ronald Joseph

Jr.'s bill of costs (Doc. 266), and the parties' responsive memoranda (Docs. 268, 270).[1]

## I.    BACKGROUND

This is a family dispute regarding Columbia Oldsmobile Co. ("Columbia"), an

Ohio close corporation owned by the Joseph family.  On April 12, 2016, Marie

commenced this action alleging that Ron, Marie's brother, wrongfully gained and

manipulated control over Columbia in order to acquire personal benefits not available to

her.  (Doc. 1).  Marie also asserted claims for access to corporate records.  (*Id.*)  On

---

[1] Plaintiff Marie Joseph and all five Defendants share the same last name.  As is common in family disputes, to avoid confusion, the Court will refer to the parties by their first name. The Court will refer to Plaintiff Marie Joseph as "Marie, "Defendant Ronald Joseph as "Ron," and Defendants George R. Joseph, Gregory R. Joseph, Richard S. Joseph, and Ronald Joseph, Jr. as "Ron's Sons."

January 1, 2017, Marie filed an amended complaint, adding Ron's Sons as defendants and alleging that Ron's Sons assisted Ron when implementing transactions to channel assets from Columbia to other entities owned.  (Doc. 27).

During the pendency of the litigation, Marie's claims against Ron's Sons were dismissed in full following summary judgment briefing.  (Docs. 100, 160).  Marie's claims against Ron were dismissed, in part, on summary judgment.  (Docs. 99, 161).  After the summary judgment stage, Marie's access to corporate records claims were bifurcated from her remaining breach of fiduciary duty claims against Ron.  (Doc. 175).  Marie's remaining breach of fiduciary duty claims against Ron proceeded to a two-week jury trial, and the jury returned a verdict in favor of Ron.  (Doc. 210).  After the jury trial, Marie's access to corporate records claims were dismissed as a matter of law on cross motions for summary judgment.  (Doc. 250).

Marie appealed, taking issue with essentially every decision in the case and the jury's verdict.  (Docs. 237, 252).  On August 18, 2022, Marie lost her appeals.  (Docs. 256, 257).  With all appellate rights exhausted, Defendants now seek costs related to the case.  (Docs. 265, 266).

## II.    STANDARD OF REVIEW

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  "The costs that courts may tax under Rule 54(d)(1) are confined to the costs itemized in 28 U.S.C. § 1920."  *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359

(6th Cir. 2007) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)).  The costs itemized in Section 1920 include the following:

> (1) fees of the clerk and marshal;
>
> (2) fees of the court reporter for all and any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) fees and disbursements for printing and witnesses;
>
> (4) fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) docket fees under section 1923 of this title; and
>
> (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

The language of Rule 54(d) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).  However, even with the presumption to award fees, Rule 54(d) does not give district courts "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur" and so should always subject submitted costs to "careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964) *(rev'd on other grounds, Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).

An unsuccessful party objecting to the taxation of costs has the burden of showing circumstances to overcome the presumption that favors the award of permissible costs to the prevailing party. *White & White*, 786 F.2d at 732.  "Liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).

### III. ANALYSIS

**A. Costs will be allowed.**

Marie first argues that costs for Ron and Ron's Sons should be denied in the entirety. (Docs. 263, 267, 268).[2]  To reiterate, as the unsuccessful party, it is Marie's burden to overcome the presumption that favors the award of permissible costs to the prevailing party. *White & White*, 786 F.2d at 732.  The Sixth Circuit has "identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the presumption in favor of a cost award, including the losing party's good faith, the difficulty of the case, the winning party's behavior, and the necessity of the costs." *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001) (citing *White & White*, 786 F.2d at 732-33).

#### 1. *Close and Difficult*

Marie first argues that this Court should exercise its discretion to deny the bills of costs because this case was complex and difficult. (Doc. 236 at 7).  She contends that the case was close and difficult because it involved multiple parties, it involved "analysis of hundreds of [] transactions involving Columbia," it involved "complex legal issues regarding the fiduciary duties owed by majority or controlling shareholders in an Ohio

---

[2] Defendants' bills of cost related to the breach of fiduciary duty claims and trial were submitted prior to resolution of the corporate records claim. (Docs. 234, 235).  Marie submitted objections (Doc. 236), then the Court stayed all briefing on the bills of costs until after the Sixth Circuit resolved Plaintiff's appeals (*E.g.*, 04/16/2019 Not. Order; 01/08/2020 Not. Order).  Once the appeals were resolved, the Court lifted the stay, and set a briefing schedule for the bills of costs, Marie's objections, and Defendants' replies. (02/13/2023 Not. Order).  Instead of renewing or revising certain arguments into the newly filed objections, Marie incorporates arguments from her first objections. (Doc. 267 at 3 (incorporating Doc. 236, PageID 17621-17624)).  Thus, the Court cites to Marie's first objections as necessary.

closely-held corporation," it involved nearly 20,000 pages of motion practice, and it

concluded with a 10-day jury trial.  (*Id.*).

"The closeness of a case is judged not by whether one party clearly prevails over

another, but by the refinement of perception required to recognize, sift through and

organize relevant evidence, and by the difficulty of discerning the law of the case."

*White & White, Inc.*, 786 F.2d at 732-33 (declining costs where complex antitrust trial

had taken 80 days, and there were 43 witnesses, 800 exhibits, 15,000 pages of transcripts,

and a 95-page opinion by the district court); *cf. Hunter v. Gen. Motors Corp.*, 161 F.

App'x 502, 504 (6th Cir. 2005) (reversing denial of costs because case not close and

difficult, but rather involved straightforward issues).

The Court finds that the case was not so close and difficult as to overcome the

presumption in favor of costs.  To be sure, the case was aggressively litigated and

included some factual nuances.  However, many of Marie's claims were dismissed as a

matter of law prior to trial.  (Docs. 99, 100, 160, 161, 250).  Moreover, the case leading

up to trial and the trial itself were not protracted.  Unlike *White & White*, trial lasted 11

days, and there were 16 witnesses and 191 exhibits.  Considering the case as a whole,

Marie has not carried her burden of showing that the closeness or difficulty of the case,

standing alone, overcomes the presumption in favor of costs.

### 2. *Good Faith and Propriety*

Marie next argues that she "acted in good faith and conducted herself with

propriety in bringing and prosecuting this case."  (Doc. 236 at 8).  The Court has no

doubt that Marie believes that she has prosecuted this action, and continued prosecuting

this action, in good faith.  The Court, however, finds it unnecessary to consider Marie's good faith because, good faith, standing alone, is an insufficient basis upon which to deny costs.  *White & White, Inc.*, 786 F.2d at 730-31.

### 3.  *Benefit to Other Shareholders*

Marie asserts that Ron, Columbia, and its innocent shareholders have benefited greatly from the case.  Specifically, she states that Columbia and its shareholders have an interest in "only proper outflows of money," and that her lawsuit "reversed, repaid, or otherwise neutralized" "numerous transactions," suggesting that such transactions were improper.  (Doc. 236 at 8).

*Assuming arguendo* that Marie's lawsuit corrected "improper" transactions (although the Court reiterates that Marie lost on all her claims), this factor is, at best, neutral.  *Even if* Ron, Columbia, and its shareholders received some *minor* benefit from the action, Ron, Columbia, and its shareholders (including Ron's Sons) were burdened by the distraction of litigation, the loss of its employees when required to participate in the litigation, and the cost of defending this action.  Thus, Marie has failed to show that the prevailing parties or other nonparties received any benefit from the litigation that would warrant a departure from the presumption in favor of costs.

### 4.  *Chilling Effect*

Marie next argues that requiring her to pay costs would have a "chilling effect on minority shareholders who are considering litigation against majority and controlling shareholders."  (Doc. 236 at 8-9).  As an initial matter, Marie offers no legal or factual support for this argument.  Moreover, Marie's lawsuit concerned the affairs of Columbia,

a closely held corporation owned by the Joseph family, and explicit transactions related to Columbia. These were case-specific issues and unlikely to have a chilling effect on minority shareholders in general.

Finally, Marie argues that "the chilling effect is further compounded" because it would be inequitable and unfair for Marie to pay costs. (Doc. 236 at 9). Marie suggests that it would be inequitable to require her to pay costs when Ron "is a multi-millionaire who owns a variety of businesses and properties," while Marie "is a guidance counselor for two parochial schools." (*Id.*) But, "the ability of the winning party to pay his own costs is irrelevant." *Singleton*, 241 F.3d at 539 (citing *White & White*, 786 F.2d at 730). (emphasis added).[3] So, the Court does not consider Ron's ability to pay costs.

The undersigned has presided over and managed this case since the onset and is well-versed in the circumstances of this case. Marie, as the unsuccessful party, has the burden of showing circumstances to overcome the presumption that favors awarding permissible costs to the prevailing party. She simply has not done so. Accordingly, costs will be awarded.

---

[3] Marie does not explicitly argue indigency, but she states that she "is simply not in a position to be able to afford paying Ron over $50,000 for his alleged costs." (Doc. 263 at 9). "A losing party's indigence weighs against taxing her with the winning party's costs." *Banks v. Bosch Rexroth Corp.*, 611 F. App'x 858, 861 (6th Cir. 2015) (citing *Singleton*, 241 F.3d at 539). "A party is indigent if she is 'incapable of paying the court-imposed costs at this time or in the future." *Tuggles v. Leroy-Somer, Inc.*, 328 F. Supp. 2d 840, 845 (W.D. Tenn. 2004) (quotation omitted). To the extent Marie is arguing indigency (and the Court doubts that she is), she has failed to make *any* showing that she is unable to pay, thus, this factor has no bearing on whether Marie is taxed with the prevailing parties' costs.

### B.  Reduction of Ron's Costs

Having found Marie will be taxed costs, the Court next scrutinizes the bills of costs submitted by the prevailing parties.  The Court starts with Ron's bill of costs (Doc. 265) and Marie's specific objections to those costs.  (Doc. 267 at 4-19).

#### 1.  Service Costs

According to 28 U.S.C. § 1920, permissible costs include "[f]ees of the clerk and marshal."  Ron seeks $945.01 in fees related to serving subpoenas on four experts.  (Doc. 265-2).  Marie asserts three specific objections to these costs.  (Doc. 267 at 4-5).

First, Marie contends that any private process service fee over $65 is unreasonably high because this exceeds a fee charged by the United States Marshals Service.  (Doc. 267 at 4).  The Sixth Circuit has held, albeit in an unpublished decision, "that a district court may tax costs for private process server fees to the extent that these private process server fees do not exceed the United States Marshal's fees."  *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002)).  *See also* 28 C.F.R. § 0.114(a)(3) (USMS shall collect fee of $65 per hour for process served or executed personally).

In this case, the invoices Ron submitted do not show how much time was spent serving each subpoena, so the private process server's fee may comport with the USMS fee.  (Doc. 265-2 at 3-6).  However, the Court must subject submitted costs to careful scrutiny.  And, when scrutinizing the private process server fees and when considering Marie's objection, the Court cannot say that the additional fees submitted by Ron were necessary and reasonable.  Thus, any service fee taxed to Marie that is over $65.00 will be reduced to $65.00.  And, after Ron's withdrawal of duplicative costs, discussed next,

the service of the subpoena on Michael Costello (totaling $115.00) is the only fee that must be reduced to $65/hour.  (*Id.* at 2).  Thus, **Ron's Service Costs will be <u>reduced</u> by $50.00**.

Second, Marie contends that it was unnecessary to serve the experts multiple times.  (Doc. 267 at 4).  On reply, Ron agrees to withdraw fees associated with serving the same expert multiple times.  (Doc. 269 at 4).  Accordingly, Marie's objection is sustained, and **Ron's Service Costs will be <u>reduced</u> by $568.44.**

Finally, Marie contends that a charge for a "'professional fee' in the amount of $53.13" should be stricken because "[t]hat charge is not supported by any invoice." (Doc. 267 at 5).  Ron does not respond to this argument, nor is the Court able to ascertain, after reviewing the documents, where this cost arose from.  Accordingly, Marie's objection is sustained, and **Ron's Service Costs will be <u>reduced</u> by $53.13.**

Accordingly, Marie's specific objections to the Service Costs are sustained in part. **For fees for Ron's Service Costs, Marie will be taxed $273.44**.

### 2. *Transcript Costs*

"Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party."  *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989); 28 U.S.C. § 1920 ("Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed).  Ron seeks $32,022.12 in Transcript Costs.  Marie asserts several specific objections to these costs, and the Court will take each in turn.

a.  <u>Charges relating to the depositions of Marie Joseph and Derek Joseph</u>

Marie objects to $8,537.90 in costs associated with her and Derek Joseph's depositions.  (Doc. 267 at 6-7).  Specifically, Marie argues that Derek Joseph's deposition was unnecessary, delivery fees related to the two depositions are not taxable, and expedited services for the two depositions were unnecessary.  (*Id.*)

On reply, Ron withdraws "his request to charge $1,709.40 for the costs of the Derek Joseph's transcript that Marie identifies and the $65 in delivery fees."  (Doc. 269 at 6).  Accordingly, Marie's objections to Derek Joseph's fee and the delivery fees are sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $1,774.40.**

Turning to the expedited services for Marie's deposition, "[t]his Court has discretion when determining whether to tax expedited services."  *LFP IP, LLC v. Hustler Cincinnati, Inc.*, No. 1:09-CV-913, 2016 WL 7015764, at *3 (S.D. Ohio Nov. 30, 2016) (citing *Ashland Hosp. Corp. v. RLI Ins. Co.*, No. CV 13-143-DLB-EBA, 2015 WL 5063184, at *5 (E.D. Ky. Aug. 26, 2015)).  Ron argues that an expedited transcript was necessary and reasonable because Marie's deposition took place on May 24-25, 2017, about 40 days (including two holiday weeks) before Ron filed his motion for partial summary judgment.  (Doc. 269 at 5).

Here, the Court finds that expedited services were unnecessary and for the convenience of counsel.  In some instances, particularly when a deadline is approaching, the short turnaround between Marie's deposition and Ron's motion for summary judgment may warrant an expedited transcript.  However, that is not the case here.  Ron filed his partial motion for summary judgment on July 6, 2017.  (Doc. 44).  At that time,

10

the current calendar order set a dispositive motion deadline of January 26, 2018. (Doc. 42). Ron did not need to order an expedited transcript. Accordingly, Marie's objection to expedited services for her deposition is sustained.[4]

The Court will reduce the remaining amount of expenses by 40%, resulting in a fee of $4,058.10 for Marie's videotaped deposition.[5][6] *E.g.*, *Moore v. Weinstein Co., LLC*, 40 F. Supp. 3d 945, 950 (M.D. Tenn. 2014) (reducing transcript fees by one-third "to approximate the extra cost for expedited copies"); *Allen v. Highlands Hosp. Corp.*, No. CV 04-269-GFVT, 2009 WL 10711811, at *3 (E.D. Ky. Mar. 24, 2009) (reducing deposition expenses by 40% to account for condensed copies, disk copies, and expedited services). **Ron's Transcript Costs will be <u>reduced</u> by $2,705.40.**

     b. <u>June 14, 2017 cost relating to Karl Stewart's deposition</u>

Marie argues that Ron included duplicative costs for Karl Stewart's deposition. (Doc. 267 at 8). On reply, Ron withdraws the duplicative charge. (Doc. 269 at 6).

---

[4] To the extent Marie is arguing that the costs associated with her deposition were unreasonable, the Court disagrees. Marie's deposition occurred over two consecutive days (May 24-25, 2017) and was videotaped. *Ibrahim v. Food Lion, Inc.*, 149 F.3d 1183 (6th Cir. 1998) ("Section 1920 includes as a taxable expense the cost of videotaping a deposition.").

[5] ($8,537.90 - $1,774.40) x .60 = $4,058.10

[6] The remaining fee, which is the fee after reducing Derek's transcript fee and the delivery fees, appears to include some charges associated with Derek. (*E.g.*, Doc. 265-3 at 13). Certain fees for Marie and Derek's depositions were compounded because Derek's deposition followed Marie's continued deposition on May 25, 2017. Although there are some compounded charges, the Court finds that the 40% reduction of the remaining fee accounts for both expedited services, and any services for Derek's deposition that had not already been reduced. Indeed, the Court finds the resulting $4,058.10 fee for Marie's deposition—which included two-days of videotaping, two-days of in-person court reporter services, 365 pages of transcription, and (at least) 7.50 hours of court reporter transcription services—to be very reasonable.

Accordingly, Marie's objection to the duplicative cost is sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $458.81**.

      c.  <u>August 16, 2017 cost relating to April 8, 2009 hearing in the "matter of Najla Joseph"</u>

Marie next objects to a $339.15 cost associated with obtaining a transcript from Najla Joseph's guardianship proceeding on April 8, 2009, arguing that the cost is not taxable under Section 1920 and unnecessary to this proceeding. (Doc. 267 at 8). In response, Ron argues that this is a permissible cost because the transcript of Najla's guardianship proceeding was necessary to Marie's fraudulent concealment claim on summary judgment. (Doc. 269 at 6; *see also* Doc. 99). The Court finds that Ron has adequately explained the reasonableness and necessity of this transcript. *See, e.g.*, *Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Libr.*, No. 1:99CV1701, 2007 WL 963320, at *8 (N.D. Ohio Mar. 28, 2007) (permitting transcript cost of judicial proceedings in related case). Accordingly, Marie's objection is overruled.

      d.  <u>August 30, 2017 cost relating to a filing in "Pineridge v. Joseph"</u>

Marie argues that Ron included a cost of $65.80 for a transcript in a Hamilton County Common Pleas proceeding unrelated to the instant action. Ron did not respond to this argument on reply. Accordingly, Marie's objection is sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $65.80.**

      e.  <u>October 31, 2017 cost relating to transcript of Ron's deposition</u>

Marie objects to a $577.90 cost related to Ron's deposition, which cost includes a "rough" copy of the transcript. (Doc. 267 at 9). Specifically, Marie contends that Ron

provides no justification for needing a rough copy.  (*Id.*)  The Court disagrees.  As Ron suggests, he ordered a rough copy of his deposition transcript for the first day he was deposed, only.  (Doc. 265-3 at 30; Doc. 269 at 7).  This was a reasonable expense since his deposition was continued for 11 days later.  (*Id.* at 40).  *E.g.*, *LFP IP, LLC v. Hustler Cincinnati, Inc.*, No. 1:09-CV-913, 2016 WL 7015764, at *3 (S.D. Ohio Nov. 30, 2016) (finding it necessary to obtain rough draft of previous deposition when deposition taken over the course of two days).  Accordingly, Marie's objection is overruled.

> f. December 11, 2017 cost relating to the transcript of Michael Candelaresi's deposition

Marie objects to a $664.19 cost for the transcript of Michael Candelaresi, arguing that the cost includes a fee for a rough copy of the transcript and Ron provided no justification for needing a rough copy.  (Doc. 267 at 9).  The Court disagrees. Candelaresi's deposition was taken on November 16, 2017.  The rough copy of his deposition was used, less than two weeks later, when responding to two discovery motions filed by Marie (Doc. 77-7), so ordering a rough copy was both reasonable and necessary.  Accordingly, Marie's objection is overruled.

> g. March 14, 2018 cost relating to the transcript of Robert Hesch's deposition

> h. May 21, 2018 cost relating to the transcript of Michael Costello's deposition

Marie objects to a $3,173.60 cost for Robert Hesch's deposition and a $1,819.00 cost for Michael Costello's deposition.  (Doc. 267 at 9-12).  Specifically, Marie takes issue with the expedited delivery fees for the depositions of Hesch and Costello, the

rough copy fee for Hesch's deposition, and the delivery fees associated with the two transcripts. (*Id.*)

Before discussing these costs, some background is helpful.

During the case, Marie timely disclosed Hesch and Costello as experts and provided their reports. (Doc. 82). On January 12, 2018, after the close of fact discovery, Marie filed a motion for default judgment, arguing that judgment should be entered against Ron as a sanction for withholding discovery. (Docs. 94, 107). The motion for default judgment prompted Ron to return to the discovery well. And, in an affidavit filed with the Court, Ron's counsel averred, under penalty of perjury, that he believed Ron had produced all discovery, any failure to produce was inadvertent, and the production of additional documents was imminent. (Doc. 104-3). Then, by mid-February 2018, Ron produced an additional 7,700 pages of discovery. (*E.g.*, Doc. 108 at 9).

After receiving the additional discovery, Marie provided supplemental expert reports for Hesch and Costello, dated February 28, 2018 and March 1, 2018, respectively. (Docs. 111-1, 111-2). On March 7, 2018, the parties promptly took Hesch's deposition. (Doc. 116). About a week later, Ron (and Ron's Sons) moved to strike Hesch's and Costello's supplemental reports as untimely, or, in the alternative, to extend the March 16, 2018 rebuttal expert deadline. (Docs. 105, 109, 110). Marie adamantly opposed the motions to strike and to extend the rebuttal expert deadline. (Docs. 111, 112). On April 3, 2018, the parties took Costello's deposition. (Doc. 129). Ultimately, the Court denied as moot Defendants' motions to strike Hesch's supplemental report, given the Court's Order excluding Hesch's expert report and opinion. (Doc. 150). The Court denied

14

Defendants' motions to strike Costello's supplemental report, finding the report
(i) substantially justified due to the recently disclosed documents, and (ii) harmless, since
Defendants deposed Costello and Defendants were given the opportunity to rebut
Costello's report. (Doc. 151).

Given the foregoing, the Court finds that seeking expedited delivery and ordering
a rough copy of Hesch's deposition transcript were necessary. Hesch's supplemental
report was dated February 28, 2018, and his deposition was promptly taken on
Wednesday, March 7, 2018. Although Ron requested three-day delivery, he did not
obtain a copy of Hesch's deposition transcript until Monday, March 12, 2018. (Doc. 265-
3 at 60). Thus, given the short turnaround between Hesch's deposition and the March 16
rebuttal expert deadline, the Court finds that seeking a rough copy and expedited service
were necessary and reasonable. Accordingly, Marie's objections to the expedited fee and
rough copy fee related to Hesch's deposition are overruled.

The Court also finds that seeking expedited delivery of Costello's deposition was
necessary. Costello's deposition occurred on April 3, 2018. It was both necessary and
reasonable to order an expedited copy since the dispositive motion deadline was one
month later, on May 4, 2018. Accordingly, Marie's objection to the expedited fee for
Costello's deposition is overruled.[7]

_____

[7] To be sure, there were significant discovery issues and motion practice happening around this
time. However, with full knowledge of those issues and with knowledge of the then-forthcoming
production of documents, the parties agreed to an amended calendar order. The parties agreed to
the rebuttal expert deadline of March 16, 2018 and the dispositive motion deadline of May 4,
2018. (02/6/2018 Not. Order; Doc. 105). The parties, including Marie, agreed to an expedited
schedule. Thus, the Court finds no issue taxing these expedited costs.

Finally, Marie objects to the $30.00 delivery fees associated with Hesch's and Costello's depositions.  (Doc. 267 at 11-12).  On reply, Ron withdraws his request to tax the delivery fees.  (Doc. 269 at 7).[8]  Accordingly, Marie's objection to the delivery fee is sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $30.00.**

> i.  <u>August 14, 2018 cost relating to "video transcript of the deposition of Marie Joseph"</u>

Marie objects to a $425.00 cost for a video duplication of Marie's deposition.  (Doc. 267 at 12).  Ron did not respond to this argument on reply, nor does the Court find a reasonable basis for this cost.  Accordingly, Marie's objection is sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $425.00.**

> j.  <u>August 28, 2018 cost relating to an alleged August 9, 2018 deposition of Marie and/or Ron</u>

Marie objects to a $290.15 cost that is "related to a supposed August 9, 2018 deposition of Marie and/or Ron."  (Doc. 267 at 12; *see also* Doc. 265-3 at 68).  Marie contends that the description of this cost is ambiguous and likely duplicative of prior costs.  Ron did not respond to this argument on reply, nor does the Court find a reasonable basis for this cost.  Accordingly, Marie's objection is sustained, and **Ron's Transcript Costs will be <u>reduced</u> by $290.15.**

---

[8] Ron does not specifically withdraw his request for the Costello delivery fee.  However, Ron withdraws his requests for other delivery fees, so the Court includes Costello with that withdrawal.  Moreover, "numerous courts have found that postage and delivery of depositions are not taxable."  *Dublin Eye Assocs., P.C. v. Massachusetts Mut. Life Ins. Co.*, No. CIV.A. 5: 11-128-DCR, 2014 WL 5093306, at *1 (E.D. Ky. Oct. 9, 2014) (collecting cases).

### k. October 22, 2018 cost relating to court transcripts

Marie objects to a $756.50 cost for expedited trial transcripts. (Doc. 267 at 13). Ron's states that these transcripts were ordered during trial and needed to prepare for the charging conference and closing argument. (Doc. 269 at 7). Ron also argues that the transcripts were needed for appeal.

The Court has the discretion to consider whether the cost of daily trial transcripts, was necessary for the preparation of the case. *See White & White*, 786 F.2d at 731-32. When determining the necessity of daily trial transcripts, courts have considered whether time was of the essence, the complexity of the case, the benefit from a ready reference to earlier testimony, and the length of the trial. *E.g.*, *Knop v. Johnson*, 712 F. Supp. 571, 591 (W.D. Mich. 1989) (citing cases); *Veteran Med. Prod., Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2010 WL 989802, at *3 (W.D. Mich. Mar. 16, 2010) (citing cases).

Here, the Court finds that trial transcripts were necessary and reasonable. Trial lasted eleven days, nine of which included witness testimony; hundreds of pages of exhibits were admitted; jury instructions were intricate; and the jury was provided with sixteen pages of jury interrogatories to consider. Moreover, trial transcripts were not only beneficial during the trial, but necessary to prepare for Marie's appeal. *LFP IP, LLC*, 2016 WL 7015764, at *4 ("the trial transcripts were reasonable because it was necessary to prepare briefing for Defendant's appeals"). Accordingly, Marie's objection to the cost of court transcripts is overruled.

l.   January 4, 2019 cost relating to trial transcripts

Marie objects to a $92.65 cost for a transcript of Marie's opening statement at trial.  (Doc. 267 at 13).  Marie takes issue with this cost, arguing that it was unnecessary for Ron to seek an expedited copy of the transcript.  (*Id.*)  However, the invoices show that Ron ordered the transcript on October 10, 2018, during the trial.  (Doc. 265-3 at 76-77).  Thus, as with the other trial transcripts, discussed *supra*, the Court finds this cost to be a necessary and reasonable expense.  Accordingly, Marie's objection is overruled.

m.   July 25, 2019 cost relating to transcript of status conference

Marie objects to a $116.40 cost for an expedited transcript of a status conference held on July 19, 2019.  (Doc. 267 at 13).  However, as both parties recognize, that status conference occurred a mere 30 days prior to the deadline for cross motions for summary judgment on Marie's access to corporate records claims.  *E.g.*, *LFP IP, LLC*, 2016 WL 7015764, at *3 (allowing costs for expedited deposition transcripts when taken within one month of trial).  Indeed, both parties used that transcript when preparing their cross motions for summary judgment.  (*E.g.*, Doc. 243 at 2, 4-5, 10; Doc. 244 at 2, 4, 17).  The Court finds this cost necessary.  Marie's objection is overruled.

Accordingly, Marie's specific objections to Ron's Transcript Costs are sustained in part and overruled in part.  **For fees for Ron's Transcript Costs, Marie will be taxed $26,272.56**.

### 3. *Discovery Costs*

Ron seeks $2,040.79 in what he calls "Discovery/OCR Costs."  (Doc. 265-4).  Marie objects to this entire amount, arguing that Ron failed to submit sufficient

18

supporting documentation. (Doc. 267 at 14-15). On reply, Ron agrees to reduce his Discovery Costs to $1,498.83. (Doc. 269 at 8-9). He then argues that "the Court should exercise its discretion to award these discovery-related costs—which obviously represent a small fraction of the total costs incurred by Ron in connection with discovery in this case—to Ron." (*Id.* at 9).

"Generally, trial courts have the discretion to tax the cost of copies attributable to discovery as necessarily obtained for use in the case, even if neither party uses the copy at trial." *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 298 (6th Cir. 2015) (citations omitted). "Courts often contrast copies necessarily produced to meet discovery obligations, which are recoverable, with copies produced solely for internal use or the convenience of counsel in conducting discovery, which are not." *Id.* (citations omitted). *See also Moore v. Weinstein Co.*, LLC, 40 F. Supp. 3d 945, 956 (M.D. Tenn. 2014) (awarding certain discovery costs for OCR scanning charges; scanning, imaging, and creating CDs for production; and technical time).

Here, the Court finds that these costs were necessary and reasonable to meet Ron's discovery obligations. There were significant discovery productions throughout this case, requiring the search and production of documents from 2008 onward.[9] Although Marie complains about Ron's documentation related to the Discovery Costs, the summary chart

---

[9] The Court is also well-informed in the discovery efforts by the parties in this case, having resolved many discovery disputes (most of which issues were raised by Marie) throughout the litigation. (*See e.g.*, 10/03/2016 Min. Entry & Not. Order; 10/20/2016 Min. Entry & Not. Order; 01/03/2017 Min. Entry & Not. Order; 08/21/2017 Min. Entry & Not. Order; 09/19/2017 Min. Entry & Not. Order; 02/06/2018 Min. Entry & Not. Order).

provided by Ron includes descriptions and narratives which provide context to the nature of the costs.  (Doc. 265-4, "Exhibit C to the Bill of Costs").  Specifically, the descriptions and narratives describe duplicating CDs, image conversion, and OCR scanning, which the Court finds to be taxable expenses.  (*Id.*)

Moreover, in an affidavit submitted to the Court, Ron's counsel avers, under penalty of perjury, the following:

> 3. Exhibit C to the Bill of Costs contains a list of invoices and costs incurred. The costs reflected in Exhibit C involve the costs associated with converting documents to searchable PDF documents which can be produced electronically, or creating document images which can be produced to the opposing party. All of these costs were incurred in connection with discovery in the above-captioned matter.
>
> 4. Defendants produced over 200,000 pages of documents during the course of this litigation. The costs reflected in Exhibit C represent a small fraction of the total costs and burden associated with producing the documents requested (or otherwise engaging in discovery).

(Doc. 265-1 at ¶¶ 3-4).  *See also* 28 U.S.C. § 1924 ("Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.").  Thus, the Court finds that in this case, the documentation submitted by Ron, coupled the minimal Discovery Costs sought by Ron, is sufficient to demonstrate that the costs sought were necessary and reasonable for Ron to comply with his discovery obligations in the case.

Accordingly, Marie's objections to Ron's Discovery Costs are overruled.  **For fees for Ron's Discovery Costs, Marie will be taxed $1,498.83.**

### 4.  *Copying Costs*

Section 1920 allows the taxation of costs for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  Ron seeks $12,388.83 in costs for making copies.  (Doc. 265-5).  Marie makes three specific objections to Ron's Copying Costs.  (Doc. 267 at 15-18).

Marie first argues that Ron should be denied all costs relating to copies used for depositions because Ron "has not explained why so many copies were necessary for depositions, nor does he establish that the costs incurred relat[ed] to those copies were for the Court's consideration or for the opposing party."  (*Id*. at 16 (quotation omitted)).  On reply, Ron states that he will not seek costs related to copies used for depositions.  Accordingly, Marie's objection to costs related to copies used for depositions is sustained, and **Ron's Copying Costs will be <u>reduced</u> by $1,527.65.**[10]

Marie also objects to $2,186.80 for copying costs which appear to relate to trial exhibits, but were incurred after the trial.  (Doc. 267 at 17-18).  Ron does not respond to this argument on reply or otherwise attempt to explain why these costs were necessarily for use in the case.  Accordingly, Marie's objection to costs related to trial copies incurred after trial is sustained, and **Ron's Copying Costs will be <u>reduced</u> by $2,186.80.**

---

[10] The Court derives this number from the entries in Ron's spreadsheet that refer to copying for depositions, which the Court finds to be all costs listed between October 31, 2016 and March 30, 2018.  (Doc. 265-5 at 2).

Finally, Marie objects to the remaining copying costs for trial exhibits, arguing that Ron failed to provide sufficient documentation, that any copies for her own exhibits were unnecessary given the Court's Standing Order requiring parties to provide copies to opposing counsel, and that any copies were unnecessary because counsel agreed to produce certain exhibits electronically. (Doc. 267 at 17). Ron, however, argues that these costs were necessary because these costs included demonstrative exhibits, many of which were used and necessary for trial, and binders of hard-copy exhibits, which binders were used to examine witnesses, saving the time of the jury, the Court, the witnesses, and the parties. (Doc. 269 at 9-10; Doc. 265-5; Doc. 265-1; Doc. 263 at 7).

The Court finds that Ron's Copying Costs related to materials for use at trial were reasonable and necessary. *E.g.*, *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 576 (N.D. Ohio 2011) (permitting copying costs for demonstrative exhibits, exhibits, and exhibit binders for use at trial). Indeed, having presided over the trial, the undersigned knows, with absolute certainty, that exhibit binders for witnesses and demonstrative exhibits, (nine of which were admitted into evidence), aided during the trial, were necessary, and may be taxed. (Doc. 207 at 5).

Accordingly, Marie's objections to Ron's Copying Costs are sustained in part and overruled in part. **For fees for Ron's Copying Costs, Marie will be taxed $8,674.38.**

### C. Reduction of Ron's Sons Costs

To reiterate, the Court has already found Marie's request to decline all costs to be a non-starter. The Court next scrutinizes Ron's Sons' bill of costs (Doc. 266) and considers Marie's specific objections to those costs. (Doc. 268).

### 1. Discovery Costs

Ron's Sons seek $1,735.00 in costs to image and produce electronic documents. (Doc. 266-2). Marie objects to this entire amount, arguing that it is unclear from the documentation why these costs were necessary. (Doc. 268 at 3). The documentation shows that Ron's Sons incurred these costs to retrieve information from external hard drives. And, as Ron's Sons point out, collecting information from these hard drives was necessary to respond to Marie's discovery requests. (Doc. 266-1 at 2-3; Doc. 270 at 2-3). Thus, the Court finds that these costs were necessary and reasonable to meet Ron's Sons' discovery obligations, and that these costs are taxable. *Colosi*, 781 F.3d at 298.

Accordingly, Marie's objection to Ron's Sons' Discovery Costs is overruled. **For fees for Ron's Sons' Discovery Costs, Marie will be taxed $1,735.00.**

### 2. Transcript Costs

Ron's Sons seek $7,074.11 in Transcript Costs. (Doc. 266-3). To these costs, Marie objects to a $8.50 postage fee and $11.23 late fee associated with the transcript of George Joseph. (Doc. 268 at 3-4). In their reply, Ron's Sons withdraw this request. (Doc. 270 at 2). Thus, **Ron's Sons' Transcript Costs will be <u>reduced</u> by $19.73**. Marie makes no other objections to these costs, and the Court finds the remaining Transcript Costs to be necessary and reasonable.

Accordingly, Marie's objections to Ron's Sons Transcript Costs are sustained. **For fees for Ron's Sons' Transcript Costs, Marie will be taxed $7,054.38.**

### *3. Printing and Copying Costs*

Ron's Sons seek $571.82 in Printing and Copying Costs. Marie does not, and the Court finds the Printing and Copying Costs to be necessary and reasonable. Thus, **for fees for Ron's Sons Printing and Copying Costs, Marie will be taxed $571.82.**

## IV. CONCLUSION

Based on the foregoing:

1. Defendants' bills of costs (Docs. 265, 266) are **GRANTED in part** and **DENIED in part**. Marie's objections to the bills of cost (Docs. 267, 268) are sustained in part and overruled in part.

2. **Plaintiff is taxed $36,719.21 for Ron's Costs**, which include the following:

   a. $273.44 in Service Costs;

   b. $26,272.56 in Transcript Costs;

   c. $1,498.83 in Discovery Costs; and,

   d. $8,674.38 in Copying Costs.

3. **Plaintiff is taxed $9,361.20 for Ron's Sons Costs**, which include the following:

   a. $7,054.38 in Transcript Costs;

   b. $571.82 in Printing and Copying Costs; and,

   c. $1,735.00 in Discovery Costs.

4. The Clerk shall enter a separate judgment awarding such costs.

**IT IS SO ORDERED.**

Date:    6/20/2023

Timothy S. Black
United States District Judge